1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

9

CONFEDERATED TRIBES OF THE CHEHALIS
RESERVATION
420 Howanut Road
P.O. Box 536
Oakville, WA  98568

TULALIP TRIBES
6406 Marine Drive
Tulalip, WA  98271

HOULTON BAND OF MALISEET INDIANS
88 Bell Road
Littleton, ME  04730

AKIAK NATIVE COMMUNITY
P.O. Box 52127
Akiak, AK  99552

ASA'CARSARMIUT TRIBE
P.O. Box 32249
Mountain Village, AK  99632

ALEUT COMMUNITY OF ST. PAUL ISLAND
2050 Venia Minor Road
P.O. Box 86
St. Paul Island, AK  99660

Plaintiffs,

Case No.: 1:20-cv-1002


COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 1

1

2    v.

STEVEN MNUCHIN, SECRETARY, UNITED
3    STATES DEPARTMENT OF THE TREASURY
     1500 Pennsylvania Ave., N.W.
4    Washington, D.C.  20220

5              Defendant.

6        Plaintiffs Confederated Tribes of the Chehalis Reservation ("Chehalis"), Tulalip Tribes

7    ("Tulalip"), Houlton Band of Maliseet Indians ("Houlton Band"), Akiak Native Community

8    ("Akiak"), Asa'carsarmiut Tribe ("Asa'carsarmiut") and Aleut Community of St. Paul Island

9    ("ACSPI"), federally recognized Indian Tribal governments that provide essential governmental

10   services to their citizens, by and through counsel, state and allege as follows:

11                               **<u>INTRODUCTION</u>**

12       1.       Congress enacted the Coronavirus Aid, Relief, and Economic Security Act

13   ("CARES Act"), H.R. 748, 116th Cong. (2020), which President Trump signed into law on

14   March 27, 2020, to respond to the devastating impacts of the COVID-19 pandemic.  Title V of

15   the CARES Act, Section 5001, amends the Social Security Act by creating the Coronavirus

16   Relief Fund ("Section 601") and appropriating $150,000,000,000 for fiscal year 2020 "payments

17   to States, Tribal governments, and units of local government."  Section 601(a)(1).  Title V

18   mandates that the Secretary of the United States Department of the Treasury "shall reserve . . .

19   $8,000,000,000 of such amount for making payments to Tribal governments."  Section

20   601(a)(2)(B).

21       2.       There are 574 federally recognized Tribal governments that maintain a

22   government-to-government relationship with the United States.  These include Indian tribes and

23   nations in the lower-48 states, such as Chehalis, Tulalip, and the Houlton Band, as well as native

24

25

COMPLAINT FOR DECLARATORY                          Kanji & Katzen, P.L.L.C.
AND INJUNCTIVE RELIEF                               811 1st Ave., Suite 630
– Page 2                                              Seattle, WA 98104
                                                       206-344-8100

villages in Alaska, such as Akiak, Asa'carsarmiut and ACSPI.  Defendant Steven Mnuchin,

Secretary of the U.S. Department of the Treasury ("Defendant" or "Secretary"), threatens to defy

Congress's mandate by diverting Title V relief funds away from these sovereign Tribal

governments to more than 230 for-profit corporations incorporated under the laws of the State of

Alaska and their shareholders.  These "state-chartered and state-regulated private business

corporations," *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520, 534 (1998),

which conduct business worldwide through dozens of subsidiaries, are not "Tribal governments"

and are not eligible to receive Title V funds under the plain language of the CARES Act.

3.      The Secretary's designation and treatment of these private corporations as Tribal

governments reduces the funds available for allocation and distribution to Plaintiffs, who are in

dire need of the funds to support the necessary and increased expenditures caused by the

COVID-19 pandemic.  The Secretary is required to disburse all $8,000,000,000 by April 26,

2020, and Plaintiffs' injury is imminent.  Plaintiffs accordingly request that the Court

preliminarily and permanently enjoin Defendant to allocate and disburse all $8,000,000,000

reserved by Congress to federally recognized Tribal governments, exclusive of Alaska Native

regional corporations and village corporations ("ANCs"), according to a reasonable formula

consistent with the CARES Act.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

1362.  Chehalis, Tulalip, the Houlton Band, Akiak, Asa'carsarmiut and ACSPI maintain

government-to-government relations with the United States and have governing bodies duly

recognized by the Secretary of the U.S. Department of the Interior.  Plaintiffs assert claims

arising under the Constitution and laws of the United States, including the Administrative

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 3

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

Procedures Act, 5 U.S.C. §§ 701-706. The allegations of the Complaint give rise to an actual controversy within the meaning of 28 U.S.C. § 2201.

5.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because the Defendant, the Secretary of the U.S. Department of the Treasury, is an officer of the United States and because a substantial part of the actions or omissions giving rise to the claims occurred in this District, a substantial part of the property that is the subject of the action is situated in this District, and the Defendant maintains his principal place of business in this District.

## PLAINTIFFS

6.  Plaintiff Confederated Tribes of the Chehalis Reservation is a federally recognized Indian tribal government whose governing body is recognized by the Secretary of the Interior. *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5463 (Jan. 30, 2020). Chehalis exercises sovereign powers of self-governance and jurisdiction over the Chehalis Reservation, which was set aside by Executive Order in 1864 at the confluence of the Chehalis and Black Rivers and is located within the exterior boundaries of the State of Washington. Chehalis brings this action on its own behalf and on behalf of its members.

7.  Plaintiff Tulalip Tribes is a federally recognized Indian tribal government organized pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 5123, whose governing body is recognized by the Secretary of the Interior. *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5465 (Jan. 30, 2020). Tulalip exercises sovereign powers of self-governance and jurisdiction over the Tulalip Reservation, which was reserved in the 1855 Treaty of Point Elliot

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 4

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

and is located within the exterior boundaries of the State of Washington.  Tulalip brings this action on its own behalf and on behalf of its members.

8.    Plaintiff Houlton Band of Maliseet Indians is a federally recognized Indian tribal government whose governing body is recognized by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5463 (Jan. 30, 2020).  The Houlton Band exercises sovereign powers of self-governance and jurisdiction over its trust lands located within the exterior boundaries of the State of Maine, lands which were purchased and taken into trust for the benefit of the Band following enactment of the Maine Indian Claims Settlement Act of 1980. The Houlton Band brings this action on its own behalf and on behalf of its members.

9.    Plaintiff Akiak Native Community is a federally recognized Indian tribal government located along the Kuskokwim River in Alaska whose governing body is recognized by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5466 (Jan. 30, 2020).  Akiak brings this action on its own behalf and on behalf of its members.

10.    Plaintiff Asa'carsarmiut Tribe is a federally recognized Indian tribal government located along the Yukon River in Alaska whose governing body is recognized by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5466 (Jan. 30, 2020). Asa'carsarmiut brings this action on its own behalf and on behalf of its members.

11.    Plaintiff Aleut Community of St. Paul Island is a federally recognized Indian tribal government located on St. Paul Island in the Bering Sea in Alaska whose governing body is recognized by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 5

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5467 (Jan. 30, 2020).  ACSPI brings this action on its own behalf and on behalf of its members.

## DEFENDANT

12.    Defendant Steven Mnuchin, the Secretary of the U.S. Department of the Treasury ("Treasury"), is charged by Congress with allocating and distributing relief funds to Tribal governments under Title V of the CARES Act and is sued in his official capacity.  Defendant's actions violate the plain language of the Act and threaten Plaintiffs with imminent irreparable injury, as set forth below.

## THE CORONAVIRUS AND COVID-19 PANDEMIC

13.    In December 2019, a new coronavirus known as SARS-CoV-2 was detected in Wuhan, Hubei Province, People's Republic of China, causing outbreaks of the coronavirus disease COVID-19.  On March 11, 2020, the World Health Organization declared that the COVID-19 outbreak can be characterized as a pandemic, stating its deep concern over both the alarming levels of spread and severity, and the alarming levels of inaction as the rates of infection continued to rise across the world.[1]

14.    On March 13, 2020, President Trump issued a Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, recognizing the preventative and proactive measures taken by all levels of government to slow the spread of the virus and treat those affected.[2]

---

[1] Tedros Adhanom Ghebreyesus, *WHO Director-General's opening remarks at the media briefing on COVID-19*, World Health Org. (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.
[2] Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, The White House (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 6

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

15.     According to the Centers for Disease Control and Prevention (CDC), as of April 15, 2020, the United States has experienced 632,548 confirmed cases of COVID-19, and suffered 31,071 deaths.[3]  The CDC reports that "[t]he federal government is working closely with state, local, tribal, and territorial partners, as well as public health partners, to respond to this situation."[4]

16.     COVID-19 is causing devastating harm in Indian country.  By way of just a few examples, as of April 15, 2020, the Navajo Nation alone has reported 921 cases and 38 deaths related to COVID-19.[5]  The Pueblo of Zuni has reported 33 cases.[6]  And the Cherokee Nation has reported 28 cases with one fatality as of April 9.[7]  Native Americans suffer from disproportionately high rates of diabetes, cancer, heart disease, asthma, which subject them to greater risk of fatal complications from COVID-19.

## THE IMPACT OF COVID-19 ON PLAINTIFFS' GOVERNMENTS AND CITIZENS

17.     In creating the Title V Tribal government stabilization fund, numerous members of Congress spoke directly to the tremendous hardships that COVID-19 has inflicted on federally recognized Tribal governments.  These governments have needed to engage in robust public health activities and to provide enhanced health care and other essential public services in response to the pandemic.  Simultaneously, the revenues from tribally-owned businesses that

---

[3]  Ctrs. for Disease Control and Prevention, *Cases in U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited Apr. 16, 2020).
[4]  Ctrs. for Disease Control and Prevention, *Situation Summary*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html (last updated Apr. 7, 2020).
[5]  Press Release, Office of the President and Vice President, The Navajo Nation, *83 New Cases of COVID-19 and Five More Deaths Reported* (Apr. 15, 2020), https://tinyurl.com/y744pcpg.
[6]  Press Release, Pueblo of Zuni, *Public Notice to the Zuni Community* (Apr. 15, 2020), http://www.ashiwi.org/COVID19/DailyPSAUpdate4-15-20.pdf.
[7]  Chris Polansky, *Following First Death, Cherokee Nation Braces for Increase in Coronavirus Cases*, Pub. Radio Tulsa (Apr. 9, 2020), https://www.publicradiotulsa.org/post/following-first-death-cherokee-nation-braces-increase-coronavirus-cases.

would normally support those governmental activities have evaporated overnight because Tribal governments have closed those businesses to help fight the virus and protect their communities, especially their elders and other high risk populations.

Chehalis

18.     The Chehalis Reservation comprises 5,420 acres of trust and fee lands located in southwest Washington State.  Chehalis has 979 members.

19.     Chehalis provides government services throughout the Chehalis Reservation, including, inter alia, public safety and police services; jail services; a civil and criminal court system; critical infrastructure, such as water treatment plants; maintenance services for government and community facilities; a health clinic; behavioral health and social services; natural resource protection and enforcement; planning and licensing; elder care programs; Early Head Start and Head Start programs; and community programs for youth and adults.

20.     Chehalis business enterprises on the Chehalis Reservation include a casino, two hotels, the Great Wolf Lodge (an indoor water park), fast food franchises, and three gas stations with convenience stores.

21.     In response to the COVID-19 crisis, Chehalis has declared a State of Emergency and issued a shelter in place order.  Chehalis has placed non-essential employees on administrative leave and closed all of its enterprises, except the gas stations.  The closure of these enterprises has nearly eliminated Chehalis's tax base and other revenue streams, which fund essential government services and employee salaries.

22.     Chehalis has incurred substantial additional expenses to address the COVID-19 crisis.  Chehalis created an Incident Operation Center, which is tasked with providing assistance to Reservation residents and maintaining basic services such as, inter alia, clinic operations,

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 8

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

meals for elders and children who normally eat at school, garbage and sanitation services, policing, and other basic services.  The emergency services provided by Chehalis during the State of Emergency are unbudgeted expenses.

23.     As of April 16, 2020, Chehalis's emergency efforts have prevented any COVID-19 cases on the Chehalis Reservation.

Tulalip

24.     The Tulalip Indian Reservation comprises 22,000 acres of trust and fee lands located north of Everett in Snohomish County, Washington.  Tulalip has 4,977 members, with 2,700 of those members residing on the Reservation.  The Reservation has approximately 15,000 residents in total, of which approximately 12,000 are non-Indians.

25.     Tulalip provides government services throughout the Tulalip Indian Reservation, including public safety and police services; a fire department; jail services through a contract with Snohomish County; a civil and criminal court system; critical infrastructure, such as water treatment plants; maintenance services for government and community facilities; a health clinic and various treatment programs; behavioral health and social services; natural resource protection and enforcement; planning and licensing; elder support programs; child care services; early childhood and other educational programs; child welfare services; tribal employment programs; housing services; emergency management; a domestic violence safe house; and licensing, permitting, and other regulatory services.

26.     Tulalip business enterprises on the Reservation include the Tulalip Resort Casino and Resort Hotel, Tulalip Amphitheatre, Quil Ceda Creek Casino, Tulalip Bingo, Tulalip Broadband, Salish Networks, the Tulalip Liquor & Smoke Shop, and two gas stations with

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 9

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

associated convenience stores.  Tulalip also engages in extensive commercial leasing on the Reservation, including to national retailers such as Seattle Premium Outlets (Simon Property Group), Walmart, Home Depot, Cabela's, and numerous restaurants.

27.     Snohomish County had the first confirmed case of COVID-19 in the United States, just miles down Interstate-5 from the Tulalip Reservation.  In response to the COVID-19 crisis, Tulalip issued a Stay at Home Emergency Order, closed its government offices, and closed all of its enterprises, except Salish Networks and the gas stations.  The closure of these enterprises has almost entirely eliminated Tulalip's tax base and other revenue streams, which fund essential government services and employee salaries.

28.     Tulalip has incurred substantial additional expenses to address the COVID-19 crisis. Tulalip has mobilized its emergency management team, increased COVID-19 testing capabilities, procured additional personal protective equipment (PPE), repurposed its health clinic for acute care, established a telemedicine service, converted tribal community buildings for quarantine of exposed individuals, purchased an additional ambulance, and increased spending on services like tribal elder checks and food distribution programs.  The emergency services provided by Tulalip during the COVID-19 crisis are unbudgeted expenses.

29.     On March 17, 2020, Tulalip had its first positive case of coronavirus.  As of April 16, 2020, Tulalip has had ten confirmed COVID-19 cases, eight of whom have recovered. Tulalip has suffered one COVID-19-related death thus far.

Houlton Band

30.     The Houlton Band has 1,835 tribal citizens and 1,444 acres of trust and fee lands located in Aroostook County in northeastern Maine.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 10

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

31.     As of March 16, 2020, the Tribal Chief declared a Public Health Emergency on behalf of the Houlton Band of Maliseet Indians, which included a work-from-home order.  Since that time, the Houlton Band has been working to build its staff's capacity to effectively and efficiently work from home.  On March 16, 2020, the Band also closed two of its businesses, a campground and a roller-skating rink, which frequently host parties and weddings.  The Band does not have any large businesses (and has no gaming enterprise) that produce substantial revenue.

32.     The Houlton Band is located in a rural area, where its citizens already experience significant health disparities.  As a result of COVID-19, the Band has opened an emergency food pantry to assist with food security needs, and has been helping to support citizens who have lost their jobs.  While experiencing revenue losses, the Band has also had to incur overtime costs for essential and Emergency Operation Center staff.  The COVID-19 pandemic has imposed substantial financial needs and hardships on the Houlton Band.

Akiak

33.     The Akiak Native Community has 535 enrolled tribal members and 29.16 acres of fee lands located in Akiak, Alaska.  Akiak is located along the Kuskokwim River and is only accessible by air and water.  On March 26, 2020, the Akiak Council declared a Public Health Emergency on behalf of tribal members, which included the closure of Akiak's small gaming operation and recreational activities.  This Public Health Emergency also closed the community to non-essential travel.

34.     The closest hospital with physicians, respiratory relief, and testing supplies is in Bethel, Alaska, which is approximately 30 air miles and 60 land miles away.  It is only

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

accessible by air at this time.  While the community of Akiak has a local health clinic, the tribal community has gone for days at a time without any health care services due to the unavailability of the one trained health aide.

35.     As a result of the COVID-19 pandemic, Akiak has started a food bank to provide for families in need, has distributed cleaning supplies, is providing water and sewer service to those with disconnected service due to non-payment, and has identified sites to quarantine families.  Akiak depends on its small gaming operation for community funding, and its closure has created financial hardship for tribal government.

### Asa'carsarmiut

36.     The COVID-19 pandemic has increased the significant challenges facing the Asa'carsarmiut Tribe.  The Tribe must address the needs of its homeless families as well as of the many intergenerational families who live in overcrowded substandard housing, lacking water and sewer services.  These conditions create a danger to the entire community, and the Tribe is unable to obtain necessary sanitary products because there is no airline service currently.  Prior to the pandemic, the Tribe was working to construct a new tribal government office building, but those efforts have been halted, and the current building does not support proper social distancing work areas and is very difficult to sanitize.  While the Tribe has a small gaming office, it has been closed due to COVID-19 and the Tribe is unable to raise critical funds to meet its needs.

### ACSPI

37.     The Aleut Community of Saint Paul Island is an isolated fishing community located in the middle of the Bering Sea. ACSPI has a total of 1,554 tribal members, with 95% of St. Paul's population being ACSPI tribal members.  The ACSPI, including its representative

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 12

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

sovereign governing body the Tribal Government of St. Paul, its tribal businesses, and its tribal fishermen represent approximately two-thirds of St. Paul's local economy and jobs. The ACSPI employs between 80-100 year-round staff. Tribal fishermen employ an additional 75 residents.

38.    In the past four weeks, due to COVID-19 the community has lost its only passenger airline to bankruptcy, leaving ACSPI isolated and without any means of reaching the 800-mile distant Alaska mainland for necessary health care and other critical needs. While the fishing market has collapsed, ACSPI has devoted almost every available Tribal government resource to responding to the pandemic threat. The financial impacts on ACSPI and its tribal members are immense, as it seeks to charter planes, establish quarantine facilities, and deal with the sudden and severe economic dislocations from the COVID-19 pandemic. On April 2, 2020, the President of the Tribal Government declared a COVID-19 Public Health Disaster.

**CONGRESS APPROPRIATED CORONAVIRUS RELIEF FUNDS FOR TRIBAL GOVERNMENTS, WHICH DO NOT INCLUDE ALASKA NATIVE CORPORATIONS**

39.    Title V of the CARES Act, Section 5001, amends the Social Security Act by creating the Coronavirus Relief Fund ("Section 601") and appropriating $150,000,000,000 for fiscal year 2020 "payments to States, Tribal governments, and units of local government." Section 601(a)(1). Title V mandates that the Secretary of the U.S. Department of the Treasury "shall reserve . . . $8,000,000,000 of such amount for making payments to Tribal governments." Section 601(a)(2)(B). The Secretary is required to disburse these stabilization funds to Tribal governments "not later than 30 days after the date of enactment of this section," Section 601(b)(1), that is by April 26, 2020.

40.    States, Tribal governments, and units of local government must use Title V funds "to cover only those costs of the State, Tribal government, or unit of local government that— (1)

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 13

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

are necessary expenditures incurred due to the public health emergency with respect to the Coronavirus Disease 2019 (COVID–19); (2) were not accounted for in the budget most recently approved as of the date of enactment of this section for the State or government; and (3) were incurred during the period that begins on March 1, 2020, and ends on December 30, 2020." Section 601(d).

41.     The portion of the $8,000,000,000 paid "to a Tribal government shall be the amount the Secretary shall determine, in consultation with the Secretary of the Interior and Indian Tribes, that is based on increased expenditures of each such Tribal government (or a tribally-owned entity of such Tribal government) relative to aggregate expenditures in fiscal year 2019 by the Tribal government (or tribally-owned entity) and determined in such manner as the Secretary determines appropriate to ensure that all amounts available under subsection (a)(2)(B) for fiscal year 2020 are distributed to Tribal governments."  Section 601(c)(7).

42.     Congress defined the three types of governments to whom the Secretary may pay relief funds.  "The term 'State' means the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, the Commonwealth of the Northern Mariana Islands, and American Samoa."  Section 601(g)(4).  "The term 'unit of local government' means a county, municipality, town, township, village, parish, borough, or other unit of general government below the State level with a population that exceeds 500,000."  Section 601(g)(2).

43.     Under Title V, "[t]he term 'Tribal government' means the *recognized governing body* of an Indian Tribe."  Section 601(g)(5) (emphasis added).  Title V further provides that "[t]he term 'Indian Tribe' has the meaning given that term in section 4(e) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 5304(e))."  Section 601(g)(1).

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

44.     The Indian Self-Determination and Education Assistance Act (ISDEAA) defines "Indian tribe" as "any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act (85 Stat. 688) [43 U.S.C. § 1601 et seq.], *which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians*." 25 U.S.C. § 5304(e) (emphasis added).  This definition includes "any Alaska Native village or regional or village corporation" *but only if* it "is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." *Id.*

45.     In the Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454 (108 Stat. 4791, 4792) ("Tribe List Act"), Congress required the Secretary of the U.S. Department of the Interior ("Interior") to prepare a list of exactly those entities: "The Secretary [of the Interior] shall publish in the Federal Register a list of all Indian tribes which the Secretary *recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians*." 25 U.S.C. § 5131(a) (emphasis added).

46.     As it does each year, on January 30, 2020, acting pursuant to the Tribe List Act, Interior published its list of 574 "Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs."  85 Fed. Reg. 5462-01 (Jan. 30, 2020) ("This notice is published pursuant to Section 104 of the Act of November 2, 1994 (Pub. L. 103-454; 108 Stat. 4791, 4792) . . . .").  These *recognized* entities include "Indian Tribal Entities Within The Contiguous 48 States Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs" as well as "Native Entities Within the State of Alaska Recognized by and Eligible To Receive Services From the United States Bureau of Indian

Affairs." *Id.* at 5462, 5466 (noting "We have continued the practice of listing the Alaska Native entities separately for the purpose of facilitating identification of them.").

47.     While this list of 574 federally recognized Indian tribes includes more than 200 Alaska Native villages, including Akiak, Asa'carsarmiut and ACSPI – who, like Chehalis, Tulalip and the Houlton Band, maintain a government-to-government relationship with the United States – *it does not include* any Alaskan Native regional or village *corporations* ("ANCs"). Because ANCs are not "recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians," they are not "Indian Tribes" for purposes of Title V of the CARES Act. And because ANCs are not "Indian Tribes," they are not "Tribal governments," which Title V defines as "the recognized governing body of an Indian Tribe." Section 601(g)(5).

48.     ANCs thus are not eligible to receive any Coronavirus Relief Fund payments under Title V of the CARES Act. The statutory language is unambiguous, and the Secretary must carry out the intent of Congress by disbursing relief funds to federally recognized Tribal governments, exclusive of ANCs. The Secretary does not have discretion to disregard Congress's mandate by designating and treating ANCs as "Tribal governments."

49.     This makes perfect sense. ANCs are not governments, they are for-profit corporations incorporated under the laws of the State of Alaska, created pursuant to the Alaska Native Claims Settlement Act (ANCSA). *See* 43 U.S.C. § 1602(g), (j) (defining Alaska Native regional corporations and village corporations). These private corporations, like other corporations, are owned by their shareholders, including non-Indian shareholders. And ANCs, like other corporations, have access to funding opportunities under other sections of the CARES Act, whereas Tribal governments are not eligible for all of those funding sources. Congress is

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 16

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

clear that Title V relief funds are to supplement "*government*" budgets, not corporate coffers.

Section 601(d)(2).

50.     There are more than 230 separate ANCs, including 12 regional corporations and approximately 225 village corporations.[8]  The 12 regional corporations alone have over 138,000 shareholders,[9] and own scores of corporate subsidiaries, operating in all 50 states and countries across the globe.[10]  Their business holdings include everything from construction to pipeline maintenance to real estate management to telecommunications to government and military contracting to environmental remediation to facilities maintenance to catering and camp services to venture capital and financial management to aerospace engineering.[11]

51.     Nor do ANCs have "recognized governing bodies."  A "recognized governing body" pertains to a political body that serves the interests of "citizens," the "body politic," not corporate shareholders.  ANCs are not governments, they do not govern, and they do not provide government services.  Instead, ANCs have corporate boards of directors and are owned by private individuals.  *See* 43 U.S.C. § 1606(f) (providing that the management of regional corporations "shall be vested in a board of directors"). Because ANCs do not have "recognized

---

[8]  Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited Apr. 15, 2020).  A 13th Regional Corporation was also formed for non-resident Alaska Natives, but the current status of the 13th Regional Corporation is unclear.  *See, e.g.*, ANCSA Reg'l Ass'n, *About the Alaska Native Claims Settlement Act*, https://ancsaregional.com/about-ancsa/ (last visited Apr. 15, 2020) (noting that the 13th Regional Corporation was involuntarily dissolved by the State of Alaska in 2013).

[9]  ANCSA Reg'l Ass'n, *Economic Impacts*, https://ancsaregional.com/economic-impacts/ (last visited Apr. 15, 2020).

[10]  Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited Apr. 15, 2020); NANA Reg'l Corp. Inc., *Overview* (May 17, 2017), https://www.nana.com/regional/shareholder-relations/Shareholder-Preference/files/2017_NRC_One_Sheet_OVR_0256_1024_Part1.pdf.

[11]  *See* Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited Apr. 15, 2020); Alaska Bus., *The 2019 Top 49ers*, https://digital.akbizmag.com/issue/october-2019/the-2019-top-49ers/ (last visited Apr. 15, 2020).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 17

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1  governing bodies," they do not qualify as "Tribal governments" under Title V and are not

2  eligible for relief funds.

3        52.    Even if such boards could be characterized as "governing bodies," which they

4  cannot, these boards are not "recognized."  "Recognition" is an Indian law term of art that refers

5  to entities with a government-to-government relationship with the United States, which ANCs

6  simply do not have.  While the Secretary of the Interior recognizes Tribal governments, they do

7  not recognize as authoritative the so-called governing bodies of ANCs.  *See, e.g.*, Indian Entities

8  Recognized by and Eligible To Receive Services From the United States Bureau of Indian

9  Affairs, 85 Fed. Reg. 5462-01, 5462 (Jan. 30, 2020) (Interior stating that "The listed Indian

10  entities are acknowledged to have the immunities and privileges available to federally recognized

11  Indian Tribes by virtue of their government-to-government relationship with the United States as

12  well as the responsibilities, powers, limitations, and obligations of such Tribes.").  ANCs openly

13  represent in their own public-facing materials that they do not maintain a government-to-

14  government relationship with the United States.[12]

15  ## DEFENDANT'S DESIGNATION OF ALASKA NATIVE CORPORATIONS AS TRIBAL GOVERNMENTS VIOLATES THE CARES ACT

16

17        53.    Congress mandated that the Secretary only allocate and distribute Title V relief

18  funds to federally recognized Tribal governments.  Nevertheless, Defendant has determined to

19  treat ANCs as "Tribal governments" for purposes of making these payments.  Defendant's action

20  is in violation of the CARES Act.

21

22  _____

23  [12]  *See, e.g.*, ANCSA Reg'l Ass'n, *Overview of Entities Operating in the Twelve Regions*, https://ancsaregional.com/overview-of-entities/ (last visited Apr. 15, 2020) (stating that both regional

24  corporations and village corporations "do not possess a government-to-government relationship with the federal government").

25

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 18

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

54.     In order to determine the amounts that would be paid to each Tribal government under Title V, and as a condition of funding, Defendant requested certain data from Tribal governments on or about Monday, April 13, 2020, publishing a Certification for Requested Tribal Data ("Certification") form on the Treasury website.[13]

55.     The Certification form is clear that Defendant has determined to treat ANCs as Tribal governments for purposes of allocating and disbursing Title V Coronavirus Relief Funds. The Certification asks each funding applicant to state its "**Population:** Total number of *Indian Tribe* Citizens/Members/*Shareholders*, as of January 1, 2020" (italics added) and includes a Note defining "Indian Tribe" as "any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act (85 Stat. 688, 43 U.S.C. 1601 et seq.), which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians."

56.     The Certification also asks for "**Land Base:** Total number of land acres held by the Indian Tribe and any tribally-owned entity (to include entities in which the Indian Tribe maintains at least 51% ownership) as of January 1, 2020 (to include lands held in trust by the United States, owned in restricted fee status, owned in fee, or selected pursuant to the Alaska Native Claims Settlement Act)."  Lands "selected pursuant to the Alaska Native Claims Settlement Act" are ANC-owned lands.  In *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520 (1998), the Supreme Court explained that through ANCSA "Congress authorized the transfer of . . . approximately 44 million acres of Alaska land to state-chartered private business corporations," *id.* at 524, "without any restraints on alienation or significant use

---

[13] U.S. Dep't of the Treasury, *Submission Required for Receipt of Coronavirus Relief Fund Payments*

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 19

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

restrictions, and with the goal of avoiding 'any permanent racially defined institutions, rights, privileges, or obligations,'" *id.* at 532-33 (citations omitted).[14]  ANC-owned lands are *not* Indian country.  *Id.*

57.    The Treasury website provides that "Governments eligible for payments must provide payment information and required supporting documentation through the electronic [Certification] form accessible below.  To ensure payments are made within the 30 day period specified by the CARES Act, governments must submit completed payment materials not later than 11:59 p.m. EDT on April 17, 2020.  Eligible local and Tribal governments that do not provide required information—and in the case of a local government, the required certification—by 11:59 p.m. EDT on April 17, 2020, may not receive any payment from the Fund."[15] According to the website of the U.S. Department of the Interior, Indian Affairs, payments will be paid no later than April 24, 2020, once the recipient has registered through the web portal.[16]

58.    Defendant's designation of ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds is a final agency action for purposes of judicial review under 5 U.S.C. § 704.

## PLAINTIFFS HAVE STANDING TO PURSUE THIS ACTION

59.    Defendant's action threatens Plaintiffs with imminent, irreparable injury.  Each of the Plaintiffs has submitted its Certification with all required information to the Secretary to

---

(Apr. 13, 2020), https://forms.treasury.gov/caresact/stateandlocal.
[14]  *See also* ANCSA Reg'l Ass'n, *Overview of Entities Operating in the Twelve Regions*, https://ancsaregional.com/overview-of-entities/ (last visited Apr. 15, 2020) ("Through ANCSA, Alaska Native corporations hold title to roughly 44 million acres of land held in private corporate ownership.").
[15]  U.S. Dep't of the Treasury, *The CARES Act Provides Assistance for State and Local Governments*, https://home.treasury.gov/policy-issues/cares/state-and-local-governments (last visited Apr. 16, 2020).
[16]  Indian Affairs, U.S. Dep't of the Interior, *Indian Affairs to Assist Tribes Eligible to Receive Funding from Treasury Under the Coronavirus Relief Fund* (Apr. 14, 2020), https://www.bia.gov/as-ia/opa/online-press-release/indian-affairs-assist-tribes-eligible-receive-funding-treasury-under.

receive funds under Title V.  Defendant must distribute these funds by April 26, 2020.

60.     Once Defendant allocates and distributes the defined, limited pool of Title V Coronavirus Relief Funds to Tribal governments, inclusive of ANCs, Plaintiffs will lose any access or ability to receive the portion of that limited pool illegally appropriated to the ANCs. Plaintiffs are in dire need of these funds to cover the governmental costs resulting from the increased and necessary expenditures associated with the COVID-19 pandemic.  Plaintiffs' most recent budgets did not account for the tremendous financial strain that the pandemic would place on their governmental operations.

61.     The Chehalis Tribe is providing a broad array of unbudgeted emergency services, including, for example, daily operation of its Incident Operation Center, COVID-19 clinical work, delivering meals to elders and children no longer able to attend school as a result of the State of Washington's school closure, increased cleaning and sanitation supplies, accounting services associated with tracking expenditures above normal budgeted activity, and planning for reopening of tribal government.  Chehalis has been forced to maintain all essential services for its citizens despite a reservation-wide shelter-in-place State of Emergency order and the closure of its tribal government and virtually all of its tribal enterprises.

62.     The Tulalip Tribes likewise face daunting governmental challenges as a result of the COVID-19 pandemic.  Tulalip has appointed a new Tulalip Health Officer, passed a Communicable Disease Ordinance and instituted isolation protocol, increased its COVID-19 testing capabilities so that tribal members can be tested at the Tulalip Health Clinic, transformed the Clinic into an acute health care clinic, directed the Clinic to obtain additional PPE, and purchased an additional ambulance for the Tulalip Fire District to meet emergency health needs. Tulalip has also borne increased costs for food distribution programs for children, elders and general welfare payments to assist tribal members in preparing to shelter-in-place by purchasing

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 21

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

food and cleaning supplies, the payment of administrative leave and emergency leave for all employees.

63.     The Houlton Band, Akiak, Asa'carsarmiut and ACSPI have also incurred unbudgeted expenses as they respond to the COVID-19 pandemic and protect the health and safety of their citizens.

64.     The increased and necessary expenditures by Plaintiffs and other federally recognized Tribal governments resulting from the devastating impacts of the COVID-19 pandemic are exactly the costs that Congress intended the Coronavirus Relief Funds to cover. Congress did not intend for these funds to be paid to private, for-profit corporations, who seek to maximize financial return for their tens of thousands of individual shareholders.

65.     Two scenarios illustrate the injury caused by Defendant's designation of ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds. Under the first scenario, if Defendant allocates the $8,000,000,000 equally among all 574 federally recognized Tribal governments, each Tribal government would receive just under $14,000,000.  If Defendant includes the 237 ANCs, however, an equal allocation among all 811 entities would reduce that amount to less than $10,000,000, a difference of more than $4,000,000 for each of the 574 federally recognized Tribal governments.  Plaintiffs would thus lose approximately 30% of their properly allocated share of Title V funds through the illegal appropriation of those funds to ANCs.

66.     Under the second scenario, Defendant may allocate the $8,000,000,000 considering the population, land base, employees, and expenditures of each Tribal government. The data requested by the Certification form indicates that the Secretary is considering this approach.  Under this approach, the ANCs will have an outsized impact.  Together, the ANCs

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 22

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

own approximately 44 million acres of land.[17]  These landholdings are equivalent to the total

trust land base of *all federally recognized Tribal governments* in the lower-48 states combined.[18]

The 12 regional ANCs alone have over 138,000 shareholders, employ more than 43,000 people

worldwide, and generated more than $10.5 billion in revenues in 2018.[19]  Under any formula that

considers ANCs' corporate shareholders, land base, employees, and expenditures, the relief

funds available to federally recognized Tribal governments, including Chehalis, Tulalip, the

Houlton Band, Akiak, Asa'carsarmiut and ACSPI will be vastly reduced, given their more

modest population, land base, and economic size.

67.     Under either scenario, because some ANCs are closely affiliated with federally

recognized Alaska Native villages, and many corporate shareholders are tribal members, some

entities in Alaska would effectively "double dip" (in some cases "triple dip") from the limited

pool of funds, with the same community receiving duplicative funding – one allotted to the

corporation(s), and the other directly to the federally recognized Tribal government.  On the

other hand, if the Secretary properly allocates and distributes Title V funds directly to federally

recognized Tribal governments only, Alaska Native villages may use their funds in partnership

with ANCs if they determine that is the most effective way to meet the needs of their

communities, consistent with the other requirements of the Act.

---

[17]  Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited Apr. 15, 2020).

[18]  Office of the Special Tr. for American Indians, U.S. Dep't of the Interior, *OST Statistics and Facts*, https://www.doi.gov/ost/about_us/Statistics-and-Facts (last visited Apr. 15, 2020) ("The Indian trust consists of 55 million surface acres and 57 million acres of subsurface minerals estates held in trust by the United States for American Indians, Indian tribes and Alaska Natives. Over 11 million acres belong to individual Indians and nearly 44 million acres are held in trust for Indian tribes.").

[19]  *See* Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited Apr. 15, 2020).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 23

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

68.     This Court can redress Plaintiffs' injury caused by Defendant by awarding

declaratory and injunctive relief enjoining Defendant not to treat ANCs as Tribal governments

for purposes of allocating and distributing Title V Coronavirus Relief Funds, and enjoining the

Secretary to allocate and disburse all $8,000,000,000 reserved by Congress under Title V to

federally recognized Tribal governments, exclusive of ANCs, according to a reasonable formula

consistent with the CARES Act.

### COUNT I
### (Declaratory and Injunctive Relief under 5 U.S.C. § 706 and 28 U.S.C. §§ 2201-2202)

69.     Plaintiffs restate, reallege, and incorporate by reference all preceding paragraphs

and allegations.

70.     The APA authorizes judicial review of federal agency actions.  5 U.S.C. § 702.

71.     The APA provides that the reviewing Court shall hold unlawful and set aside

agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).  It further provides that a

reviewing Court shall hold unlawful and set aside agency action, findings, and conclusions found

to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5

U.S.C. § 706(2)(C).

72.     Under Title V of the CARES Act, Alaska Native regional corporations and village

corporations do not meet the statutory definition of "Tribal government," do not meet the

statutory definition of "Indian Tribe," and do not have a "recognized governing body."

73.     By designating ANCs as Tribal governments for purposes of allocating and

distributing Title V Coronavirus Relief Funds, the Secretary has acted in a manner that is

arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of the

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 24

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

CARES Act and the APA, 5 U.S.C. §§ 701-706.  Plaintiffs are entitled to an order declaring the same.

74.     By designating ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds, the Secretary has acted in a manner that is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the CARES Act and the APA, 5 U.S.C. §§ 701-706.  Plaintiffs are entitled to an order declaring the same.

75.     Plaintiffs are entitled to a preliminary and permanent injunction enjoining the Secretary not to designate or otherwise treat ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds, and enjoining the Secretary to allocate and disburse all $8,000,000,000 reserved by Congress to federally recognized Tribal governments, exclusive of ANCs, according to a reasonable formula consistent with the CARES Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

76.     Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of Plaintiffs that Defendant's designation of Alaska Native regional corporations and village corporations as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

77.     Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of Plaintiffs that Defendant's designation of Alaska Native regional corporations and village corporations as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds is in excess of Defendant's statutory jurisdiction, authority, limitations, or short of statutory right.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 25

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

78.     Preliminarily and permanently enjoin Defendant not to designate or otherwise treat Alaska Native regional corporations and village corporations as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds, and enjoining the Secretary to allocate and disburse all $8,000,000,000 reserved by Congress to federally recognized Tribal governments, exclusive of Alaska Native regional corporations and village corporations, according to a reasonable formula consistent with the CARES Act.

79.     Award Plaintiffs their reasonable attorney's fees, costs and such other relief as the Court deems just and appropriate.

Dated this 16th day of April, 2020.

KANJI & KATZEN, P.L.L.C.

/s/ Riyaz A. Kanji
Riyaz A. Kanji, D.C. Bar # 455165
303 Detroit Street, Suite 400
Ann Arbor, MI 48104
Telephone:  734-769-5400
Email:  rkanji@kanjikatzen.com

/s/ Cory J. Albright
Cory J. Albright, D.C. Bar Application Pending
WSBA # 31493
811 1st Avenue, Suite 630
Seattle, WA  98104
Telephone:  206-344-8100
Email:  calbright@kanjikatzen.com

*Co-Counsel for the Confederated Tribes of the*
*Chehalis Reservation and the Tulalip Tribes*

*Counsel for the Houlton Band of Maliseet Indians,*
*Akiak Native Community, Asa'carsarmiut Tribe*
*and Aleut Community of St. Paul Island*

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 26

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1

2

CONFEDERATED TRIBES OF THE CHEHALIS
RESERVATION

3

/s/ Harold Chesnin
Harold Chesnin, WSBA # 398

4

Lead Counsel for the Tribe
420 Howanut Road

5

Oakville, WA  98568
Telephone:  360-529-7465

6

Email:  hchesnin@chehalistribe.org

7

8

TULALIP TRIBES

9

/s/ Lisa Koop Gunn
Lisa Koop Gunn, WSBA # 37115

10

Tulalip Tribes, Office of the Reservation Attorney
6406 Marine Drive

11

Tulalip, WA  98271
Telephone:  360-716-4550

12

Email:  lkoop@tulaliptribes-nsn.gov

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
– Page 27

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100