**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Steven MNUCHIN, Secretary, United States Department of the Treasury, <br><br> Defendant. | Case No. 1:20-CV-01002-APM (consolidated with Case No. 1:20-cv-1059-APM) |

**[LODGED] AMICUS BRIEF OF THE NATIVE AMERICAN FINANCE OFFICERS ASSOCIATION, THE GILA RIVER INDIAN COMMUNITY, THE PENOBSCOT NATION, AND THE NOTTAWASEPPI HURON BAND OF THE POTAWATOMI**

Donald R. Pongrace (D.C. Bar No. 445944)
Merrill C. Godfrey (D.C. Bar No. 464758)
Akin Gump Strauss Hauer & Feld, LLP
2001 K Street, N.W.
Washington, D.C. 20006
(202) 887-4000
dpongrace@akingump.com
mgodfrey@akingump.com

*Attorneys for the Native American Finance Officers Association, the Gila River Indian Community, the Penobscot Nation, and the Nottawaseppi Huron Band of the Potawatomi*

The Native American Finance Officers Association ("NAFOA"), the Gila River Indian Community, the Penobscot Nation, and the Nottawaseppi Huron Band of the Potawatomi support the plaintiffs' complaints and Motions for Temporary Restraining Order and Preliminary Injunction for the reasons stated herein.[1] Title V of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act" or "Act"), Pub. L. 116-136 (2020), amends the Social Security Act to create the $150 billion Coronavirus Relief Fund ("the Fund") for "payments to States, Tribal governments, and units of local government." 42 U.S.C. § 601(a)(1). Under the Act, Treasury is required to pay $8 billion to Tribal governments for increased, unanticipated, necessary governmental expenditures caused by the COVID-19 pandemic. Defendant should be required to distribute all $8 billion in funds appropriated for "Tribal governments" under the Act using a method that reasonably reflects this statutory mandate to fund governmental expenses, such as relying on tribal certifications of monthly budgetary impacts. As the Cheyenne River Plaintiffs have put the matter in their prayer for relief, Treasury should be required to distribute these funds "according to a reasonable formula consistent with the CARES Act." Cheyenne River Complaint ¶ 74.

## ARGUMENT

**I.   RELIEF IN THIS MATTER SHOULD BE TAILORED TO THE STATUTORY REQUIREMENT TO DISTRIBUTE AND USE FUNDS FOR UNANTICIPATED GOVERNMENTAL EXPENDITURES CAUSED BY THE COVID-19 PANDEMIC**

The CARES Act requires that the $8 billion in Tribal relief funds be paid to "Tribal governments" for governmental expenditures. 42 U.S.C. § 601(g)(5); *id.* § 601(a)(2)(B)

---

[1] No party's counsel authored this brief in whole or in part, and no party or person other than NAFOA, the Gila River Indian Community, the Penobscot Nation, and the Nottawaseppi Huron Band of the Potawatomi contributed money intended to fund preparing or submitting the brief.

("$8,000,000,000 of such amount for making payments to *Tribal governments*") (emphasis added); *id.* § 601(c)(7) ("the amount paid under this section for fiscal year 2020 to a *Tribal government*") (emphasis added); *id.* § 601(d) ("A State, *Tribal government*, and unit of local government shall use the funds") (emphasis added). The Act requires that Treasury pay to each "Tribal government" an amount "that is based on increased expenditures of each such Tribal government (or a tribally-owned entity of such Tribal government) relative to aggregate expenditures in fiscal year 2019 by the Tribal government (or tribally-owned entity)." 42 U.S.C. § 601(c)(7).

In turn, Tribal governments are allowed to use the funds only for "necessary expenditures incurred due to" COVID-19 that "were not accounted for in the budget most recently approved" by the Tribal government and are "incurred during the period that begins on March 1, 2020, and ends on December 30, 2020." *Id.* § 601(d). This formulation is based strictly on increased, unanticipated, governmental budgetary "expenditures" due to COVID-19, whether of the government itself or through its tribally owned entities.

The formulation for Tribal governmental expenditures differs from the formulation for States and local governments in § 601(c)(1)–(5), wherein States are to receive a minimum payment of $1,250,000,000, plus a pro rata adjustment based on population. It also differs from the allocation to the District of Columbia and territories, which each receive a fixed amount based on population. By contrast, the Act explicitly requires the Secretary to make a determination based upon budget information—increased, unexpected budget "expenditures"—for a Tribal government.

Treasury's failure thus far to focus on and adhere to this statutory language is the source of most of the present controversy, because the argument has become *who* gets the funds in the first instance rather than the proper method for allocating such funds tailored to the ultimate

statutory uses. The present controversy would likely not have arisen if Treasury had provided guidelines to Tribal governments that required submissions based on estimated governmental deficits caused by decreased revenues and increased governmental expenditures for services to constituents caused by COVID-19. And it would be resolved if Treasury were to calculate outlays to Tribal governments using a formulation that focuses solely on decreased governmental revenues for services due to COVID-19 and increased governmental expenditures due to the COVID-19 pandemic. Whether Alaska Native corporations ("ANCs") receive funds directly or through recognized Tribal governments would not be such a source of controversy if the amounts of funds allocated were based on reasonable estimates of actual budgetary impacts for Tribal governmental services provided to Tribal members. The relief sought by the Cheyenne River plaintiffs is the relief most closely tailored to these statutory objectives.

The failures in Treasury's approach to date can be remedied quickly. As sovereign nations, most Tribal governments have the capacity to readily provide their respective estimates of their FY 2020 tribal government budget needs as a result of the COVID-19 pandemic. Each Tribal government should simply be given 48 hours to submit a certified estimate of the unanticipated budgetary impact of the COVID-19 pandemic on a monthly basis from March 2020 to December 2020. Treasury's allocation should be based on these self-certifications, adjusted to include a minimum per-Tribal government amount.

The Alaska Native Claims Settlement Act created a structure for Alaska Native villages that is different from tribal governments in the Lower 48 states. That system led to a complicated hierarchy of entities that may provide varying levels of services and programs to Alaska Natives. Still, that does not override the explicit language of the CARES Act, which requires that the

$8 billion be distributed to Tribal governments to provide support for increased, unanticipated governmental expenditures caused by the COVID-19 pandemic.

## CONCLUSION

Relief in this case should be tailored to require Treasury to allocate all $8 billion in a manner reasonably calculated to address increased, unanticipated, Tribal governmental expenditures caused by the COVID-19 pandemic.

Donald R. Pongrace (D.C. Bar No. 445944)

*/s/ Merrill C. Godfrey*
Merrill C. Godfrey (D.C. Bar No. 464758)
Akin Gump Strauss Hauer & Feld, LLP
2001 K Street, N.W.
Washington, D.C. 20006
(202) 887-4000
dpongrace@akingump.com
mgodfrey@akingump.com

*Attorneys for NAFOA, the Gila River Indian Community, the Penobscot Nation, and the Nottawaseppi Huron Band of the Potawatomi*