UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> STEPHEN MNUCHIN, IN HIS OFFICIAL CAPACITY AS Secretary of the Treasury, SECRETARY, <br><br> Defendant. | UTE TRIBE'S REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER <br><br><br> Civil Case No.: 1:20-cv-1002-APM |

The Ute Indian Tribe of the Uintah and Ouray Reservation files this reply in support of its motion for a temporary restraining order and for a preliminarily injunction: 1) preventing Defendant from allocating and distributing funds set aside for tribal governments under Title V of the Coronavirus Aid, Relief and Economic Security Act to regional or village corporations established under the Alaskan Native Claims Settlement Act; and 2) requiring Defendant to allocate and distribute those funds to tribal governments as required by the Act.

On April 24, the United States filed a notice that it was relying upon its response brief in the lead case as its response brief to the Ute Tribe's motion. The Tribe therefore provides its reply based upon that incorporated response brief.

The Tribe views the United States' use of its response brief in that other case as its response brief to the Ute Tribe to be a strategic attempt to avoid taking on the Ute Tribe's arguments—arguments that the United States cannot defeat.

**I.     DISCUSSION OF REMEDIES**

In its opening brief, the Tribe discussed that the Secretary had wrongly allowed for-profit corporations in Alaska to directly apply for CARES funding. Under the Act, those funds must only be used for governmental expenses of a recognized tribe.

In his response, the Secretary makes multiple arguments which, if accepted, would result in this Court and the Tribe not knowing how the Secretary is going to allocate funds, and not knowing how much of the funds the Secretary is going to unlawfully give to ANCs until he has disbursed the funds.

This Court is required to prevent that from occurring. The reason the Court is required to prevent that from occurring is that the Plaintiffs have brought the underlying legal issue (determining what entities qualify as recognized governing bodies of Indian tribes) to this Court, and have shown that they will be irreparably injured by any disbursement to the ANCs. The Court is required to determine the legal issue *before* the disbursement is made.

It is essential that the Court provide a remedy which will maintain this Court's jurisdiction to resolve the legal issue presented. The Tribe offers three suggestions based upon this general Court's equitable powers.

    **A.     THE COURT MUST DETERMINE, IN ITS ORDER ON THE PENDING MOTION, THE MEANING OF "RECOGNIZED GOVERNING BODY OF AN INDIAN TRIBE.".**

In his response brief, the Secretary argues that it should not be enjoined because its attorney now argues the Secretary *might* adopt the "stop gap" argument that it attributes to the Cheyenne River Sioux Tribe. He then asserts that if he were to adopt that position, there *might* be some for-profit Alaska corporation which *might* be entitled to some small amount of Title V CARES Act funding. The Secretary asserts that he has not yet decided whether he will adopt that "stop gap" interpretation.

First, this Court is required, when deciding the current motion, to determine the meaning of "recognized governing body of an Indian Tribe." The Ute Tribe does not agree with the "stop gap" argument that the Secretary attributes to the Cheyenne River Sioux Tribe. If, as the Ute Tribe argues, and as Cheyenne River also at least primarily argues, ANCs are simply not within the definition of "recognized governing body of an Indian Tribe," then the Court is required to issue that ruling now, to prevent irreparable injury to the Tribes. The Tribes argue that ANCs are not within the definition, and the Secretary has provided his briefs and arguments on his contrary position. This Court is required to decide that issue.

Second, the Secretary has not provided any proof that there is any for-profit corporation which would be entitled to funds under that "stop gap" interpretation. His attorneys' conjecture, that there might, is insufficient to defeat the current motion for TRO and preliminary injunction. Notably, the Secretary did not even ask the for-profit Alaska corporations for any of the information which he would have needed in order to apply the interpretation that his attorney is now arguing the Secretary might (or might not) apply. The Secretary's argument to this court appears to be an attempt to convince the Court not to enjoin the Secretary, but to also leave the Secretary with the ability to adopt any of the alternatives put forward by his attorney in this case—including alternatives which could result in for-profit corporations taking the lion's share of the money that Congress directed the Secretary to give to federally recognized tribes.

Third, the parties have put forth multiple interpretations of the phrase "recognized governing body of an Indian Tribe." This Court has the duty to determine what the law is, and because the injury her would be irreparable, it has the duty to make that determination now. If it agrees with the "stop gap" argument, it must so hold in its order on the pending motion, and must require the Secretary to apply that definition. While the Ute Tribe would not agree with the Court

adopting that interpretation, the Court's holding requiring the Secretary to apply that definition may, as a practical matter, resolve the matter.

      **B.    THE COURT HAS THE POWER TO ENJOIN ANY DISTRIBUTION TO AN ANCS PENDING COURT REVIEW OF SUCH ALLOCATIONS.**

In its opening brief, the Tribe discussed that this Court has the power to issue injunctive barring distribution to the ANCs. As a narrower alternative, this Court has the power to bar distribution to the ANCs (and only to the ANCs, not to the 574 federally recognized tribes) pending review of the definition that the Secretary uses in his plan of distribution, to provide for review of that definition before the irrevocable harm is caused through distribution. *See also PPG Indus., Inc. v. United States*, 729 F. Supp. 859, 861 (Ct. Int'l Trade 1990) (where the disposition of goods would have deprived the court of jurisdiction to enter a remedy later, the court enjoined the disposition pending completion of the case). This more limited alternative relief would provide the parties with an opportunity to bring any further motions within the 14 days that the TRO would be in place.

**II.    THE SECRETARY'S BRIEF IS BASED UPON HIS NAÏVE AND INCORRECT UNDERSTANDING OF 638 CONTRACTING.**

In his response brief, the Secretary asserts that because for-profit Alaskan corporations can enter into 638 contracts with the United States, those corporations are recognized governing bodies of an Indian Tribe.

His argument is wrong. First, it is based upon a complete lack of understanding of 638 contracting. There are, in fact numerous entities that have some relationship to tribal governments, but which are not themselves tribal governments, which have entered into 638 contracts. In fact, many of those entities which are not federally recognized tribes but which enter into 638 contracts. have far closer relationship to federally recognized tribe and have far more similarity to federally recognized tribes than the for-profit corporations in Alaska. *E.g., Pink v. Modoc Indian Health*

*Project, Inc.*, 157 F.3d 1185 (9th Cir.1998) (two tribes joined together to create an entity for 638 contracting); *J.L. Ward Associates, Inc. v. Great Plains Tribal Chairman's Health Board,* 842 F.Supp.2d 116 (D.S.D. 2012) (multiple tribes joined together for 638 contracting). To enter into those 638 contracts, the entity that is not a tribe must be expressly delegated tribal sovereign power. *Id.* Tribally associated entities like those discussed above, but unlike the Alaska corporations, are accorded the underlying tribe or tribes' sovereign immunity from suit. *Id.* They are not, themselves recognized tribes; and therefore like the Alaskan for profit corporations, they are not included on the list of federally recognized tribes. The possibility that an ANC might have a 638 contract, or that any other entity might have a 638 contract, does not turn that entity into an Indian Tribe.

The money at issue in this case *must* pass through a recognized governing body of an Indian Tribe. If a federally recognized governing body, in the lower 48 or in Alaska, then lawfully provides that money to a contractor or other entity for CARES Act goods or services, that is the recognized tribal government's prerogative. In fact, it is likely that much of the money for tribes will ultimately be paid to non-governments for goods and services to combat COVID-19. That will happen in Alaska, just as it will happen in the Lower 48. The Alaska corporations, like any other non-government, should only get funds under Section 601 as a pass-through from a tribal government. They should only get those funds to the extent they are providing goods or services to a recognized tribal government; and under self-determination, *it is the recognized tribal government that would make the decision to give them those funds*.

III.   **THE SECRETARY'S ATTEMPT TO GIVE MONEY TO ANCS VIOLATES TRIBAL SELF-DETERMINATION.**

The Secretary's attempt to prevent the recognized tribal government from making that decision—that the Secretary will make the decision for the tribes in Alaska--is the opposite of the

federal policy of tribal self-determination. All three branches of the federal government recognize the overarching federal policy of self-determination, and they interpret federal laws consistent with that overarching policy. "Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination." Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians, 471 U.S. 845 (1985) (citing numerous cases).

> We have repeatedly recognized the Federal Government's longstanding policy of encouraging tribal self-government. *See, e.g.*, *Three Affiliated Tribes v. Wold Engineering*, 476 U.S. 877, 890 (1986); *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 138, n. 5 (1982); *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143–144, and n. 10 (1980); *Williams v. Lee*, 358 U.S. 217, 220–221 (1959).

Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 14 (1987). As *Iowa Mutual Insurance* and *National Farmers Union Insurance* both discuss, interpretation of federal Indian law is governed by this over-arching policy, and the Court interprets congressional acts regarding tribes consistent with that over-arching policy. The Secretary's attempt to impose a definition that is contrary to tribal-self-determination and must be rejected.

There are exactly 574 entities that have "recognized governing bodies of Indian tribes." For our convenience, for Congress' convenience, those tribes are in the published recognized tribes list. Those are the only entities hat meet the definition that Congress used.

> When the Indian Self-Determination and Education Assistance Act was passed in 1975, there was some ambiguity over the status of Indian tribes in Alaska. More ambiguity arose from language in the ISDEAA because the term "Indian tribe" was defined by the Act to include "any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act [43 U.S.C.A. §§ 1601 et seq.] which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." The List of Federally Recognized Tribes published by the Department of Interior had similar language. It wasn't until the 1993 publication of the List that the status of Indian tribes in Alaska was clarified, by listing just the tribes and not the corporations. Congress confirmed the List in 1994.

Indian Self-Determination and Education Assistance Act (ISDEAA) 1975 Indian Self-Determination and Education Assistance Act (ISDEAA) 1975 (University of Alaska Fairbanks,

6

Federal Indian Law for Alaska Tribes (available at https://www.uaf.edu/tribal/112/unit_3/indianselfdeterminationandeducationassistanceactisdeaa1975.php). Those 574 are more than capable of distributing the CARES Act funds. Those in Alaska can give the funds to the ANCs if appropriate. Congress directed the Secretary to give the funds to the recognized governing bodies, and the Secretary must do so.

## IV. THE TRIBE'S INTERPRETATION OF THE CARES ACT IS CORRECT.

The Secretary also asserts that there would have been better ways for Congress to have worded CARES Act 601(g) to exclude for profit corporation. He is right, the language could have been better. The CARES Act was one of numerous massive pieces of legislation that Congress was considering, and additional time for editing for clarity would have been good in some ways but bad for governments, businesses, and citizens who needed relief. *Cf.* Defendant's Response at 7-8 (asserting that the Secretary should be given greater leeway when executing the congressional directive because he is required to act relatively quickly to disburse the funds to recognized tribal governments.) The Tribe similarly believes that the wording of this brief, and other briefs in this case could have been better if the parties had more time to edit. But the fact that the language could have been better does not mean that the existing language is ambiguous; and even if those words standing alone were ambiguous, they are clear in context and clear in the legislative history.

The Secretary's own assertion that the language could have been better cuts much more strongly against the Secretary than in favor of the Secretary. There also would have been far, far better ways for Congress to have included for-profit corporations under Title V if Congress had actually wanted to allow those corporations to double dip in the CARES Act. At the very least, Congress would not have added the words "recognized governing body" if it was meaning to include for profit corporations in Title V. One of the basic rules of statutory construction is that those words must be given meaning. *E.g., Couvertier v. Gil Bonar*, 173 F.3d 450, 453 (1st Cir.

7

1999).  The Secretary asserts that this Court should not interpret those words as an alternative shorthand way of referencing the 574 tribe that are on the well-known, important, list of federally recognized Indian Tribes.  It is wrong.

Additionally, as the Tribe discussed in its opening brief, the overarching structure of the CARES Act shows that Title V is the title for governments, while other titles provide the relief for corporations.  The for-profit Alaskan corporations are not recognized tribal governments by the United States.  Congress, working speedily, provided an overarching structure which include titles for for-profit corporations, and a separate title for governments.  That intent is clear in the statute.  The Secretary does not dispute that point.  Instead, while acknowledging that Title V is the title for governments and that corporations have relief under other titles, he asserts that Congress incorporated an outdated decision from the Ninth Circuit as a way of slipping into title V a second provisions for corporate relief.  If the Secretary were correct, Congress would have given some indication that Title V is not solely the section for governments.  Instead it did exactly the contrary.  It adopted titles for corporations and then expressly stated that Title V was only for governments, and it expressly stated that the small portion for tribes was for "recognized governing bodies of tribes."

Congress and tribes know what "recognition" means in Indian law.  It is a term of art.  It means the governing bodies of the 574 entities on the federally recognized tribes list.  The Secretary's attempt to give motion earmarked for those tribes to for-profit corporations must be rejected.

**V.    IF THE TRIBE IS CORRECT ON THE MERITS, THEN IT HAS, *AS A MATTER OF LAW*, ESTABLISHED IRREPARABLE INJURY.**

In its response to the other tribes, the United States asserted that those tribes did not establish irreparable injury.  The United States is wrong regarding those tribes, but putting that

issue aside, the Ute Tribe most unquestionably did establish irreparable injury. The United States does not even provide a response to that argument by the Ute Tribe.

In its opening brief, the Ute Tribe' argument on irreparable injury presents an issue of law. The United States cannot use a "burden of proof" argument to prevail on a legal issue. *Kraft, Inc. v. United States*, 30 Fed. Cl. 739, 757 (Fed.Cl.1994) ("How fair market value is defined is a legal question" on which there is no burden of proof."). The Tribe's argument is that any payment by the United States to for-profit corporations under Title V of the CARES Act is barred and that any such payment is irreparable injury under federal appellate court case law, because under that case law the injury is literally irreparable after the $8,000,000,000 is disbursed. In its response brief, the Tribe put primary emphasis on two related cases, *Modoc Lassen Indian Housing Authority, et al v. United States Department of Housing and Urban Development,* 881 F.3d 1181 (10th Cir. 2017) and *Lummi Tribe of the Lummi Reservation, Washington et al v. United States,* 870 F.3d 1313 (Fed. Cir. 2017). Those cases establish irreparable injury. The Secretary chose not to even respond to the Ute Tribe's discussion.

The Tribe is either right or wrong on that legal issue. It either would have a legal remedy in the future or it would not, and it therefore has either shown irreparable injury or it has not. The United States could have responded by arguing that the Tribe is wrong, that there is a path for the Tribe to bring suit against a federal officer or the United States after the full $8,000,000,000 is disbursed. But the United States, of course, does not make that argument, and in fact its response brief shows that if it can disburse the funds, it will then assert that the case is moot. In a single footnote in its response brief, the Secretary equivocates, attempting to have his cake and eat it too. He asserts that *City of Houston v. Department of Housing and Urban Development* is distinguishable, and therefore does not prove that there is no remedy later. But notably the

Secretary does not make the necessary concession that there *would* be a remedy later—he solely states that the other tribes did not prove there would be a remedy later.

That federal argument is not responsive to the Ute Tribe's argument, and is not responsive to the portion of the argument by the other tribes based upon the legal issue. *E.g., Kraft, Inc.*, 30 Fed. Cl. 739. In the present case, how "recognized governing body of an Indian tribe" is defined is a legal question, on which there is no burden of proof. If the $8,000,000,000 were to be disbursed before that legal question is resolved, the Tribe would be irreparable injured.

## CONCLUSION

The parties have briefed and argued the legal issue regarding the meaning of "recognized governing body of an Indian Tribe. This Court must decide that legal issue before the funds are disbursed.

Consistent with tribal self-determination and the overarching structure of Title V of the CARES Act, the ANCS are not "recognized governing body of an Indian Tribe." There are 574 such recognized governing bodies. All of the $8,000,000,000 must be disbursed to those 574 recognized governing bodies.

Respectfully submitted, April 25, 2020

                **FREDERICKS PEEBLES & PATTERSON LLP**

                *s/ Rollie E. Wilson*
                Rollie E. Wilson (D.C. Bar No. 1008022)
                401 9th Street, N.W., Suite 700
                Washington, D.C. 20004
                Telephone: (202) 450-4887
                Facsimile: (202) 450-5106
                Email: rwilson@ndnlaw.com

                *s/ Jeffrey S. Rasmussen*
                Frances C. Bassett, *Pro Hac Vice Admission*

Jeremy J. Patterson, *Pro Hac Vice Admission*
Jeffrey S. Rasmussen, *Pro Hac Vice Admission*
1900 Plaza Drive
Louisville, Colorado 80027
Telephone: (303) 673-9600
Facsimile: (303) 673-9155/9839
Email: fbassett@ndnlaw.com
Email: jpatterson@ndnlaw.com
Email: jrasmussen@ndnlaw.com

*Counsel for Plaintiff Ute Indian Tribe of the Uintah and Ouray Reservation*