## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

CONFEDERATED TRIBES OF THE
CHEHALIS RESERVATION *et al*.,

 Plaintiffs,

v.

STEVEN MNUCHIN, SECRETARY,
UNITED STATES DEPARTMENT OF
THE TREASURY,

 Defendant.

Consolidated Civil Action No:
 1:20-cv-01002-APM

## MOTION OF AHTNA, INC. TO INTERVENE AS DEFENDANT AND INCORPORATED MEMORANDUM OF LAW[1]

Pursuant to Federal Rule of Civil Procedure 24 and Local Civil Rule 7(j), Ahtna, Inc. ("Ahtna") moves to intervene as of right as a defendant in this action. Ahtna has a significant protectable "interest related to the property or transactions that is the subject of the action"— specifically, the distribution of funds by the U.S. Department of the Treasury under Title V of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, H.R. 748 for which Ahtna is eligible—and "disposing of th[is] action may as a practical matter impair or impede" Ahtna's "ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Here, Ahtna's interests are not adequately represented by any of the existing parties.

The Government's obligation is to represent the interests of the general public. This

---

[1] There are three groups of Plaintiffs in this consolidated action: (1) eleven tribes in the original action, *Confederated Tribes of the Chehalis Reservation et al., v. Mnuchin*, No. 1:20-cv-01002-APM (D.D.C.) ("Chehalis Plaintiffs"); (2) six additional tribes in the second filed action, *Cheyenne River Sioux Tribe et al., v. Mnuchin*, No. 1:20-cv-01002-APM (D.D.C.) ("Sioux Plaintiffs"); and (3) an additional tribe in the last action, *Ute Indian Tribe of the Uintah and Ouray Indian Reservation v. Mnuchin*, No. 1:20-cv-010170-APM (D.D.C.) ("Ute Plaintiff"). Pursuant to Local Civil Rule 7(m), on April 28 and 29, undersigned counsel conferred with counsel for all three groups of Plaintiffs and counsel for the Government. All three groups of Plaintiffs oppose Ahtna's request to intervene. Defendant, the Secretary of the Treasury, takes no position with respect to this motion.

responsibility differs from that of Ahtna, which is obligated to represent and protect the economic and legal interests of the Ahtna people. Ahtna may wish to advance arguments or pursue strategies that would not be advanced or pursued by the Government, and Ahtna will be able to contribute factual information that may not be readily accessible to the Government. *See* Declaration of Ken Johns at ¶¶ 3-4, attached as Exhibit A ("Each of our Tribes is represented on the Ahtna Board to provide a voice for those living in our 8 Ahtna villages and they hold Ahtna, Incorporated accountable to fulfill our mission to those living today and the generations to come. Although Ahtna is a corporation, it is impossible to unravel the ties between Ahtna and its tribes. We are the same people. The same blood runs through our veins.").

Ahtna, like all ANCSA corporations, has a Congressional mandate to support Alaska Native shareholders economically, culturally, and socially. Ahtna fulfills this mandate by playing a foundational role in the socio-economic health and welfare of the Ahtna people. *Id.* at ¶¶ 6-17. Ahtna also has a direct interest in the resolution of legal issues raised by Plaintiffs that could potentially impact Ahtna's access to federal benefits and programs currently provided to Ahtna based on its status, including contracts issued under the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. § 5301 *et seq*. *See id.* at ¶ 17 (noting that Ahtna currently has a "638 contract").

Plaintiffs' claims threaten Ahtna's substantial interests by seeking an order from the court that would prohibit Ahtna from receiving federal aid to address the devastation caused by the COVID-19 pandemic. *Id.* at ¶ 5 ("Ahtna intends to use any money it receives from the Corona Virus Relief Fund directly for the benefit of our tribes. This money will be used to enhance services we currently provide to our tribes and help supplement protective measures they have already put in place."). Ahtna is currently mobilizing resources to help the Ahtna people confront these challenging times. It has, for example, issued a special dividend to its shareholders to offset the

loss of income and supplied its communities with 5,000 hand sanitizer units. *Id*. at ¶¶ 13-15 ("I personally heard from some our shareholders that this money was a 'life-saver' and 'lifted a huge burden' as they were not sure how they were going to pay rent next month or buy groceries due to lack of wages."). Working in coordination with its tribes, Ahtna plans to do much more to help the Ahtna people. *Id.* at ¶¶ 6-15. In short, if Plaintiffs prevail, Ahtna will be denied the critical funds necessary to help Alaska Natives effectively respond to this pandemic.

Finally, Ahtna's motion is timely filed. The first case filed in this consolidated action is less than two weeks old. Defendant has not yet filed responsive pleadings, and Ahtna's intervention will not delay or impede resolution of this matter. To the contrary, Ahtna's intervention will enable the Court to be more fully advised both on the legal and factual issues raised by the litigation.

Alternatively, the Court should exercise its discretion and grant Ahtna permissive intervention under Federal Rule 24(b). Ahtna's defenses and arguments have questions in common with the main action. In addition, Ahtna's intervention will not unduly delay or otherwise prejudice the adjudication of the rights of the original parties.

For the reasons outlined below and in the accompanying Supplemental Declaration of Ken Johns (Exhibit A), Ahtna respectfully requests the Court grant this motion. Pursuant to Federal Rule 27(c) and Local Civil Rule 7(j), a copy of Ahtna's proposed Answer to each of the three complaints in this consolidated action are attached as Exhibits B, C, & D.

## I.      BACKGROUND

Ahtna, Inc. is an Alaska Native Regional Corporation ("ANCSA corporation") created pursuant to the Alaska Native Claims Settlement Act ("ANCSA"), 43 U.S.C. §§ 1601-1629. Ahtna's mission is the "[w]ise stewardship of Ahtna lands and responsible economic growth, for

future generations of Ahtna people."[2] To this end, Ahtna represents the interests of its more than 2,000 Alaska Native shareholders and owns lands and resources located in eastern Alaska. Ahtna is charged with advancing the interests of the Ahtna people, many of whom have limited incomes and live in remote locations in rural Alaska. *See* Declaration of Ken Johns at ¶¶ 3-4.

In 1975, Congress passed the Indian Self-Determination and Education Assistance Act ("ISDEAA"), originally Public Law 93-638, which had the goal of transferring federal programs for Indian tribes out of federal control and into tribal control. In enacting the Act, Congress outlined their purpose:

> The Congress declares its commitment to the maintenance of the Federal Government's unique and continuing relationship with, and responsibility to, individual Indian tribes and to the Indian people as a whole through the establishment of a meaningful Indian self-determination policy which will permit an orderly transition from the Federal domination of programs for, and services to, Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services. In accordance with this policy, the United States is committed to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities.

25 U.S.C. § 5302(b).

Under ISDEEA, Indian tribes can obtain a contract—referred to as a "638" contract or agreement—"to help Indian tribes assume responsibility for aid programs that benefit their members." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 753 (2016); 25 U.S.C. § 5321(a)(1). The ISDEAA defines "Indian tribes" to "mean[] any Indian tribe, band, nation, or other organized group or community, **including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act (85 Stat. 688) [43 U.S.C. 1601 et seq.]**, which is recognized as eligible for the special

---

[2]   Mission, Vision, and Values, AHTNA, INC., https://www.ahtna.com/mission-vision-and-values/ (last accessed Apr. 22, 2020).

programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 5304(e) (emphasis added).

Ahtna, like other ANCSA corporations, is eligible to receive 638 Contracts from the U.S. Government and Ahtna, like other ANCSA corporations, currently holds a 638 Contract. *See* Declaration of Ken Johns at ¶17. Although whether or not an ANCSA corporation has a 638 contract is not material to the legal determination of whether ANCSA corporations fit within the definition of "Indian tribe" under Title V of the CARES Act, the existence of such contract awards to ANCSA corporations demonstrates that they are presently "recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." *See* 25 U.S.C. § 5304(e).[3]

Section 601(g)(1) of the CARES Act provides for the distribution of $8,000,000,000 in relief funding relating to the COVID-19 pandemic to state, local and tribal governments and defines "Indian tribe" to have the same meaning as provided in Section 4(e) of ISDEAA. The term "Tribal government," in turn, is broadly defined in the CARES Act as "the recognized governing body of an Indian Tribe.'' Section 601(g)(5). Accordingly, until April 17, 2020, Ahtna and other ANCSA corporations anticipated they were eligible for relief funding allocated to Tribal governments which was to be paid on or before April 26, 2020 consistent with the provisions of the Act.

Commencing on April 17 and April 20, the various Plaintiffs in this consolidated action— three separate groups of American Indian tribes from throughout the United States—filed complaints for declaratory and injunctive relief and motions for a temporary restraining order

---

[3] In *Cook Inlet Native Ass'n v. Bowen*, the Ninth Circuit recognized that because "[s]pecific reference to Alaska village and regional corporations was added by amendment" to the ISDEAA definition of "Indian tribe" this "eligibility clause" modified only the terms "any Indian tribe, band, nation, or other organized group or community," and not the specifically enumerated ANCSA corporations which were added later. 810 F.2d 1471, 1475 (9th Cir. 1987) (citing 120 Cong. Rec. 40242).

claiming that ANCSA corporations, including Ahtna, were ineligible to receive any portion of these relief funds.  Given the exigency and uncertainty arising from the U.S. Department of the Treasury's failure to provide details regarding its intentions for the allocation of the funding, Ahtna did not seek to intervene as a party.  Instead, it sought leave to file an amicus brief outlining for the Court the legal framework relating to ANCSA corporations and the statutory analysis supporting the conclusion that they were eligible to receive relief funding under the CARES Act. On April 27, 2020, this Court issued its Order and Memorandum Opinion granting in part and denying in part Plaintiffs' motions for a temporary restraining order.  Dkts 36-37.

In its Memorandum Opinion, this Court stated that based on the current record "the extent of actual 638 contracting with ANCs under ISDEAA is unclear" and the noted the counsel for the United States was unable to provide clarity on the issue.  Dkt. 36 at 5-6.  The Court further concluded that "[a]lthough BIA has long viewed ANCs as qualifying as 'Indian tribes' under ISDEAA . . . there is scant evidence on the present record—in fact, none—that BIA or any other federal agency has actually entered into a 'self-determination contract,' or 638 agreement, with an [ANCSA corporation]" and observed that the United States' "inability to identify any such current or past agreement between a federal agency and an ANC is telling . . . and suggests that such contracts are at least rare."  *Id*. at 29. In fact, such contracts are not rare in Alaska.  Plaintiffs Cheyenne River Sioux concede that ANCs satisfy the ISDEAA definition of an Indian tribe (according to these Plaintiffs for "a limited purpose") and that ANCs receive these contracts "to ensure critical services are provided to Alaska Natives in regions where there are no actual tribal governments[.]"  Cheyenne Plaintiffs' Reply in Support of Temporary Restraining Order and Preliminary Injunction, at 5 (Dkt. 15 Case 1:20-cv-01059-APM).  And Ahtna, as discussed above, currently has one such contract. Declaration of Ken Johns at ¶¶ 17.

Not only do ANCSA corporations have many 638 contracts, but Congress has also  enacted

other laws outside of ISDEAA where it has used the ISDEAA definition of "Indian tribe," or a very similar formulation, and specifically indicated its intention was to ensure that benefits under the statute were afforded to ANCSA corporations.   For example, in December 2018, Congress amended the Federal Power Act, 16 U.S.C. § 800(a), to define "Indian tribe" to have "the meaning given the term in section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 5304)," noting the "purpose of this section is to establish a biomass demonstration project for federally recognized Indian tribes *and Alaska Native corporations* to promote biomass energy production."  Public Law 115-325 (December 18, 2018) §§ 201-202 (emphasis added).   It is not unusual for Congress to define an "Indian tribe" to include ANCSA corporations so that ANCs can qualify for certain programs or benefits, even though ANCSA corporations are not sovereign governments included on the Secretary's list of federally recognized tribes.

Nevertheless, in rejecting the Government's argument that Congress intended to include ANCSA corporations in Title V of the CARES Act, the Court cited to deficiencies in the presentation of this factual and statutory information:

> **This real-world treatment of ANCs by federal agencies under ISDEAA is informative**. It tells the court, even if an ANC can be potentially treated as an 'Indian tribe' under ISDEAA, they rarely are. And that infrequent treatment prevents the court from concluding at this stage that, by using ISDEAA's definition of 'Indian tribe' in the CARES Act, Congress necessarily signaled its intent to treat ANCs and federally recognized tribes as equals for purposes of Title V funding eligibility.

Dkt. 36 at 29-30 (emphasis added).

Clearly, information relating to the real-world treatment of ANCSA corporations was material to the Court's resolution of the pending motions and its view of the significance of Congress' choice to choose a definition of Indian tribes that explicitly included ANCSA corporations—instead of the alternative definitions in the U.S. Code or sources such as the Federal Tribal Act list that do not.  As an ANCSA corporation, Ahtna is well positioned to present such

information and has an interest separate from the Government in doing so because it relates directly to its economic and legal interests.

But more importantly, the Ahtna region, like other Alaska Native communities, has also faced significant hardships during the current COVID-19 global pandemic.  *See* Declaration of Ken Johns at ¶¶ 6, 15. Section 601(d) was designed to allow "Tribal governments" to use relief funds to cover costs that: "(1) are necessary expenditures incurred due to the public health emergency with respect to the Coronavirus Disease 2019 (COVID–19); (2) were not accounted for in the budget most recently approved as of the date of enactment of this section for the State or government; and (3) were incurred during the period that begins on March 1, 2020, and ends on December 30, 2020."  In interpreting the scope of this provision, the U.S. Treasury Department has determined that ANCSA corporations like Ahtna are eligible to receive funds to cover needs within a number of different categories: (1)  "medical expenses"; (2) "public health expenses"; (3) "payroll expenses for public safety, public health, health care, humans services, and similar employees whose services are substantially dedicated to mitigating or responding to the COVID-19 public health emergency"; (4) "[e]xpenses to facilitate compliance with COVID-19-related public health measures"; and (5) "[e]xpenses associated with the provision of economic support in connection with the COVID-19 public health emergency."  U.S. Department of the Treasury, "Coronavirus Relief Fund Guidance for State, Territorial, Local, and Tribal Governments," April 22, 2020, available at https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Guidance-for-State-Territorial-Local-and-Tribal-Governments.pdf.

Ahtna has already provided economic relief and incurred costs to address public health and Ahtna intends to do much more with the funds provided by the federal government to help Alaska Natives recover from this pandemic.  *See* Declaration of Ken Johns at ¶¶ 6-17.  In short, the U.S. Treasury Department reasonably determined that Ahtna and other ANCSA corporations are

eligible to receive relief funding under Title V of the CARES Act based on Congress' clearly expressed intent.[4] Plaintiffs, unfortunately, filed this action to prevent Ahtna, and other ANCSA corporations, from receiving federal funds necessary to provide critical and essential services and aid to Alaska Natives.

## II.   ANALYSIS

### A.   Ahtna is Entitled to Intervene as a Matter of Right

Ahtna should be allowed to intervene as a matter of right to protect its interest in critically needed funds under Title V of the CARES Act.   Rule 24(a)(2) permits parties to intervene in a pending action if (1) the motion to intervene is timely; (2) the movant "claims an interest relating to the property or transaction that is the subject of the action"; (3) the movant "is so situated that disposition of the action may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) the movant's interest is not adequately represented by existing parties. Fed. R. Civ. P. 24(a); *accord Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (quoting *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998)).   Additionally, the proposed intervenor must demonstrate they have standing under Article III of the U.S. Constitution.   *Assoc. Dog Clubs of N.Y. State v. Vilsack*, 44 F. Supp. 3d 1, 3-4 (D.D.C. 2014). "[T]he D.C. Circuit has taken a liberal approach to intervention." *The Wilderness Soc. v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) (citing *NRDC v. Costle*, 561 F.2d 904, 910-11 (D.C. Cir. 1977)).

---

[4] *See* Defendant's Consolidated Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, Dkt. 21, at 7; Coronavirus Relief Fund Payments to Tribal Governments, April 23, 2020 ("After consultation with the Department of the Interior, Treasury has concluded that Alaska Native regional and village corporations as defined in or established pursuant to the Alaska Native Claims Settlement Act are eligible to receive payments from the Fund in the amounts to be determined by the Secretary of the Treasury."), *Coronavirus Relief Fund Payments to Tribal Governments*, April 23, 2020, available at https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Payments-to-Tribal-Governments.pdf.

### 1.    Ahtna Has Standing to Intervene in This Action

An intervenor must suffer an "injury in fact" to have standing under Article III: "'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Vilsack*, 44 F. Supp. 3d at 4 (quoting *Lujan v. Defenders of Wildlife*, 560 U.S. 555, 560-61 (1992)). "Harm caused to an organization's programs by the invalidation of a rule is no less concrete or demonstrable than the same harm caused by an agency's failure to enforce a rule." *Id*. at 5. Additionally, standing requires the injury to be traceable to action by a party before the court, and that a favorable decision is likely to redress the injury. *Id*. at 4.  Ahtna has already suffered injury from the Court's decision on the motion for a temporary restraining order because it will not receive any relief funds in the initial distribution of Title V relief funds.[5]  Because of the preliminary injunction, Ahtna will not be able to provide the services and economic response needed to alleviate the hardship the Ahtna people are currently experiencing as a result of this pandemic. And if Plaintiffs ultimately prevail in this action and invalidate the Treasury Department's determination with respect to Title V of the CARES Act, Ahtna will never receive these critical relief funds and will not be able to provide critical services and economic relief to Alaska Natives living within its region.  Thus, Ahtna, and the Alaska Natives that it represents, will clearly suffer concrete injury during this global pandemic.

### 2.    Ahtna's Motion Is Timely

Ahtna's request for intervention is timely—within two weeks of the first complaint filed in this consolidated action—and will not cause undue delay or disruption at this early stage of the proceeding. *See Vilsack*, 44 F. Supp. 3d at 5-6 (holding that intervention within fourteen days was "clearly timely"); *Karsner v. Lothian*, 532 F. 3d 876, 886 (D.C. Cir. 2008) (finding motion timely

---

[5] To the extent Plaintiffs oppose Ahtna's motion because the U.S. Department of the Treasury has not announced its allocations, such a claim is unavailing in the context of this action.  Plaintiffs, who similarly have not received an official allocation of funds, have an identical claim of standing based on their eligibility for such funds.

where petitioner sought intervention less than one month after intervenor's interest in the dispute ripened).[6] The "timeliness requirement was not designed to penalize prospective intervenors for failing to act promptly." *Ute Indian Tribe of Uintah and Ouray Reservation v. U.S. Dep't of the Interior*, No. 18-cv-00547, 2020 WL 1465886, at *1 (D.D.C. Feb. 5, 2020) (citing *City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 535 (7th Cir. 1987)). "Rather, the 'critical factor is whether any delay in moving for intervention will prejudice the existing parties to the case.'" *Id.* (citation omitted).

Ahtna seeks intervention now because of the possibility that the U.S. Government will not appeal the Court's April 27 Order or otherwise effectively litigate the merits of the request for a permanent injunction which directly impacts Ahtna's economic and legal interests. If intervention is granted, Ahtna will: (i) participate in the action on the schedule that will be established for the existing parties; and (ii) avoid unnecessary delays or duplication of efforts in areas satisfactorily addressed and represented by the Government, to the extent possible. Thus, Ahtna's intervention will cause no delay or impose any prejudice on any of the other parties.

### 3.      Ahtna Is an Interested Party

In the D.C. Circuit, demonstrating Article III standing also satisfies Rule 24(a)(2) requirement that a movant claim an interest in the property or transaction that is the subject of the lawsuit. *Vilsack*, 44 F. Supp. 3d at 6. The Treasury Department determined that all ANCSA corporations—including Ahtna—were eligible for relief funding under Title V of the CARES Act.

---

[6] Plaintiffs filed the first complaint in this action on April 17, 2020, and their motions for a temporary restraining order commenced on April 20. Briefing was initially scheduled for April 21-22 (before being delayed by a day) and the first hearing was held on April 24. Given the exigency and U.S. Treasury Department's delay in stating its agency determination publicly, Ahtna sought leave to file an amicus brief to assist the Court in resolving the claims raised by Plaintiffs instead of seeking to intervene. However, in light of the Court's decision and its reasoning including a clearly expressed need for additional information on the real-world treatment of ANCSA corporations under the ISDEA, Ahtna is appropriate at this time. Indeed, the D.C. Circuit has even recognized that intervention may be timely after judgment has been entered such as where "the legally relevant purpose of the[] motion was simply to enable [the intevenor] to prosecute an appeal." *Smoke v. Norton*, 252 F. 3d 468, 471 (D.C. Cir. 2001).

The Court's decision in this case will undoubtedly impact Ahtna's legal rights and economic interests. If a permanent injunction were to issue in this case, it would have direct, adverse effects on Ahtna's ability to meaningfully respond to this pandemic and to protect its people and region from economic devastation that COVID-19 is leaving in its wake. In addition, a permanent injunction would also mean that Ahtna's Alaska Native shareholders who are not members of a federally recognized tribe will not be entitled for the benefits established under the CARES Act. Finally, an order granting such injunction could also impact Ahtna's eligibility for dozens of federal programs and benefits.

In sum, Ahtna meets the test for Article III standing and satisfies the second prong of the test for intervention of right. *See Deutsche Bank Nat'l Trust. Co. v. Fed. Deposit Insurance Corp.*, 717 F.3d 189, 193 (D.C. Cir. 2013) ("[Would-be intervenors] point to their economic interest in the receivership funds as a legally protected interest. That much is clearly correct."); *see also Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 69 (D.D.C. 2006) (proposed intervenor needs only an interest in the litigation, not a cause of action).

### 4. The Disposition of This Action Could Impair Ahtna's Ability to Protect Its Interests

For all the reasons previously outlined, entering a declaratory judgment with respect to ANCSA corporations' eligibility for relief funds under Title V of the CARES Act and enjoining the Treasury Department's determination with respect to that eligibility would undoubtedly impede Ahtna's legal and economic interests with respect the current pandemic by denying it critical relief funding and potentially negatively impact it with respect to broader legal issues. Thus, the third prong of the test for intervention is met. *See Vilsack*, 44 F. Supp. 3d at 6.

### 5. Ahtna's Interests Are Not Adequately Represented by Other Parties

To show a movant's interests are not adequately represented or protected by other parties, an intervenor "need only show that representation of his interests 'may be inadequate' . . ." *Dimond*

*v. Dist. of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986).  The D.C. Circuit has described this bar as "low" and a movant "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation." *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) (citing *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980).  In this case, neither the Government nor the Plaintiffs represent the interests of Ahtna.  Ahtna has a direct legal and economic interest in the relief funds at issue.  "The D.C. Circuit has 'look[ed] skeptically on government entities serving as adequate advocates for private parties.'"  *Alphapointe v. Dep't of Veterans Affairs*, No. 19-cv-02465, 2019 WL 7290853, at *1 (D.D.C. Aug. 26. 2019) (quoting *Crossroads*, 788 F.3d at 321.  "That is particularly true when the private-party intervenor asserts a 'financial stake in the outcome' of the suit."  *Id.* (citing *Dimond*, 792 F.2d at 192.

Here, Ahtna has both economic and legal interests in the outcome of this action that the Government does not share. As a result, the Treasury Department may not adequately represent Ahtna's divergent economic and legal interests in defending the challenged agency action. *See Crossroads*, 788 F.3d at 321.

### B.     In the Alternative, Ahtna Seeks Permissive Intervention

Should the Court conclude that Ahtna does not have a right of intervention under Rule 24(a), it alternatively moves for permissive intervention under Rule 24(b) which allows the Court to grant intervention where the intervenor makes a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

 "[P]ermissive intervention is an inherently discretionary enterprise" for the Court. *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). However, the putative intervenor must ordinarily present: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the

main action." *Id*.  Like intervention of right, permissive intervention should be granted liberally. *Nat'l Children's Ctr., Inc*., 146 F.3d at 1045-46 (permissive intervention granted where intervenor has substantial interest at stake even if no common claim or defense claimed; "flexible interpretations" of rule appropriate in favor of intervention); *Nuesse v. Camp*, 385 F.2d 694, 704-05 (D.C. Cir. 1967) (D.C. Circuit eschews strict reading of rules to advance policy favoring liberal allowance of permissive intervention).The Court "must consider whether the [requested] intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Ahtna meets each of these requirements.  First, the Court has subject matter jurisdiction over Ahtna's defenses and arguments as they all arise under or relate to federal law under the Administrative Procedures Act or with respect to the interpretation of Title V of the CARES Act. Second, for the reasons set forth above, this motion is timely and will not unduly delay or prejudice any party.  Finally, Ahtna's anticipated  defenses and arguments are premised on the same issues of fact and law at issue in this proceeding—namely the U.S. Department of the Treasury's determination that ANCSA corporations were eligible to receive relief funds under Title because they are "Indian tribes" under the Act  *See In re Polar Bear Endangered Species Act Listing and 4(d) Rule Litigation*, 794 F. Supp. 2d 65, 78 (D.D.C. 2011) (observing that multiple oil companies were permitted to intervene as defendants in support of U.S. Fish and Wildlife Service's decision not to list polar bears as endangered).  Additionally, should the Court require Ahtna to demonstrate standing for purposes of permissive intervention, Ahtna meets that standard as well for the reasons set forth above and because any disposition of this action could impact its economic and legal rights.[7]

---

[7] "It remains . . . an open question in this [C]ircuit whether Article III standing is required for permissive intervention." *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir. 2013) (first alteration in original) (quoting *In re Endangered Species Act Section 4 Litig*., 704 F.3d 972, 980 (D.C. Cir. 2013)).

## **CONCLUSION**

For all the foregoing reasons, Ahtna respectfully requests that the Court grant its motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2), or alternatively, for permissive intervention under Rule 24(b).

Dated: April 30, 2020                                        Respectfully submitted,


                                                            /s/ *Michael J. O'Leary*
                                                            Michael J. O'Leary, DC Bar No. 1014610
                                                            HOLLAND & HART LLP
                                                            901 K Street NW, Suite 850
                                                            Washington, D.C., 20001
                                                            (202) 654-6922
                                                            mjoleary@hollandhart.com

                                                            Jonathan Katchen (admitted *pro hac vice*)
                                                            HOLLAND & HART LLP
                                                            1029 W.3rd Avenue, Suite 550
                                                            Anchorage, AK 99501
                                                            (907) 865-2606
                                                            jwkatchen@hollandhart.com


## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                            /s/ *Michael J. O'Leary*
                                                            Michael J. O'Leary