**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, et al., <br><br> Plaintiffs, <br><br>     v. <br><br> STEVEN MNUCHIN, in his official capacity as Secretary of the Treasury, <br><br> Defendant. | Case No. 1:20-cv-1002-APM |
| CHEYENNE RIVER SIOUX TRIBE et al., <br><br> Plaintiffs, <br><br>     v. <br><br> STEVEN MNUCHIN, in his official capacity as Secretary of the Treasury, <br><br> Defendant. | Case No. 1:20-cv-1059-APM |
| UTE TRIBE OF THE UINTAH AND OURAY RESERVATION, <br><br> Plaintiff, <br><br>     v. <br><br> STEVEN MNUCHIN, in his official capacity as Secretary of the Treasury, <br><br> Defendant. | Case No. 1:20-cv-1070-APM |

**MOTION OF ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC. AND ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC. TO INTERVENE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE**

Pursuant to Federal Rule of Civil Procedure 24 and Local Civil Rule 7(j), the Alaska Native Village Corporation Association, Inc. ("ANVCA") and Association of ANCSA Regional Corporation Presidents/CEO's, Inc. ("ARA")[1] (collectively, the "ANC Intervenor-Defendants") respectfully move to intervene as a defendant in the above-captioned consolidated cases to protect their interest in federal relief funding appropriated for "Tribal governments" under Title V of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Pub. L. No. 116-136, 134 Stat. 281 (2020). In these consolidated cases, Plaintiffs are challenging the Secretary of the Treasury's interpretation of the CARES Act, and they seek to block Alaska Native village and regional corporations (together, "ANCs") from receiving payments from the Coronavirus Relief Fund established by the CARES Act.

The ANC Intervenor-Defendants seek leave to intervene in this action as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2). This motion is timely; the ANC Intervenor-Defendants' members have a significant protectable interest in receiving coronavirus relief funds that are the subject of these consolidated cases; those interests may as a practical matter be impaired or impeded by the disposition of these cases in Plaintiffs' favor; and the ANC Intervenor-Defendants' interests are not adequately represented by existing parties. Alternatively, the ANC Intervenor-Defendants seek permissive intervention under Federal Rule of Civil Procedure 24(b). This Court has an independent ground for jurisdiction under 28 U.S.C. § 1367; this motion is timely; and the defenses the ANC Intervenor-Defendants seek to raise have questions of law and fact in common with Plaintiffs' claims.

Counsel for the ANC Intervenor-Defendants conferred with counsel for Plaintiffs and Defendant. Plaintiffs oppose this motion. Defendant takes no position on the motion.

---

[1] Association of ANCSA Regional Corporation Presidents/CEO's, Inc. is commonly referred to as ANCSA Regional Association or "ARA."

Accordingly, for the reasons set forth below, the ANC Intervenor-Defendants request that this Court grant them leave to intervene under Federal Rule of Civil Procedure 24.

## INTRODUCTION AND BACKGROUND

On March 27, 2020, Congress enacted the CARES Act, which appropriated $150 billion to "States, Tribal governments, and units of local government" to help those entities respond to the current public health emergency. Eight billion dollars of that amount was specifically reserved for payments to "Tribal governments," which the law defined as "the recognized governing body of an Indian Tribe," 42 U.S.C. § 801(g)(5), and which the ANC Intervenor-Defendants understood to include ANCs. The Secretary of the Treasury ("Secretary") confirmed this interpretation on April 23, 2020, after consultation with the Department of the Interior, thereby reaffirming that the ANCs were eligible for relief funding under the CARES Act. *See* U.S. TREASURY DEP'T, CORONAVIRUS RELIEF FUND PAYMENTS TO TRIBAL GOVERNMENTS (Apr. 23, 2020), *available at* https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Payments-to-Tribal-Governments.pdf (the "Treasury Guidance").

Plaintiffs are a consortium of federally recognized tribes which object to ANCs receiving relief funds under the CARES Act, ostensibly because it would reduce the amount of money to which Plaintiffs believe they would otherwise be entitled. Plaintiffs filed three lawsuits, which were consolidated into this action, alleging that the Secretary's interpretation of the CARES Act is arbitrary and capricious. They also sought a preliminary injunction enjoining the Secretary from disbursing relief funds to ANCs, which this Court granted in part on April 27, 2020.

The ANC Intervenor-Defendants are associations whose members include twelve Alaska Native regional corporations and nearly 200 Alaska Native village corporations that will be

2

adversely impacted should they be deemed ineligible for pandemic relief.[2] ARA members are the twelve land-based Alaska Native regional corporations that were created pursuant to the Alaska Native Claims Settlement Act of 1971 ("ANCSA"). ARA's member corporations represent over 130,000 Alaska Native shareholders. Since its inception in 1997, ARA has regularly engaged on various legislative and regulatory issues on behalf of its members and for the benefit of their members' Alaska Native shareholders and communities. Formed in 2008, ANVCA represents nearly 200 village corporations[3] and aims to continue the sustainment of village corporations, promote the success of its member village corporations, and protect their Native lands. ANVCA supports those goals by providing education and outreach to its members, as well as legislative and regulatory advocacy on behalf of its members.

The ANC Intervenor-Defendants seek to intervene in this proceeding to protect their member ANCs' interests in Coronavirus Relief Fund payments. Unlike in the lower 48 states, where tribal communities are oriented around, and services are provided by, federally recognized tribes, in settling the aboriginal land claims of Alaska Natives in ANCSA, Congress distributed Native lands in Alaska to Native-owned and Native-run corporations, known as ANCs. 43 U.S.C. § 1601 *et seq.* Owing to the decisions made by Congress in ANCSA, ANCs provide

---

[2] This motion to intervene is supported by declarations filed on behalf of seven Alaska regional corporations and fifteen Alaska Native village corporations. *See* Ex. 1(Decl. of Aaron M. Schutt); Ex. 2 (Decl. of Anthony Mallott); Ex. 3 (Decl. of Richard Glenn); Ex. 4 (Decl. of Shauna Z. Hegna); Ex. 5 (Decl. of Sheri Buretta); Ex. 6 (Decl. of Sophie Minich); Ex. 7 (Decl. of Wayne Westlake); Ex. 8 (Decl. of Nancy Andrew); Ex. 9 (Decl. of Alfred Thomas Harris); Ex. 10 (Decl. of Clifford Blair); Ex. 11 (Decl. of Dean Gould); Ex. 12 (Decl. of Ed Herndon); Ex. 13 (Decl. of Janine Avner); Ex. 14 (Decl. of Kenneth A. Hughes IV); Ex. 15 (Decl. of Leo Barlow); Ex. 16 (Decl. of Melissa M. Kookesh); Ex. 17 (Decl. of Michele Christiansen); Ex. 18 (Decl. of Patrick McCarty); Ex. 19 (Decl. of Robert D. Mills); Ex. 20 (Decl. of Ron Philemonoff); Ex. 21 (Decl. of Thomas Kirk); Ex. 22 (Decl. of Gail R. Schubert); Ex. 23 (Decl. of Thomas Mack); Ex. 24 (Decl. of George Sam).

[3] This number has changed over time because some villages have either merged with their respective Regional corporations or did not survive after the enactment of ANCSA.

much of the same services and community support that in the lower 48 states are provided only by federally recognized tribes. *See, e.g.,* Ex. 5 (Buretta Decl.) at ¶¶ 3-4 (describing how Chugach's eligibility to participate in federal programs allows communities to access federal funding to provide health and welfare services and housing support for Alaska Natives, including those who have no other tribal affiliation); Ex. 10 (Blair Decl.) at ¶¶ 3-4 (detailing how Cape Fox Corporation provides food, employment opportunities, and support for native cultural preservation and community events for Saxman Village); Ex. 6 (Minich Decl.) at ¶¶ 7-13 (explaining how Cook Inlet Region, Inc. ("CIRI"), through affiliated non-profit organizations, provides child and family services, substance abuse services, welfare assistance, job placement and training, primary care, emergency, and specialized health care services, pharmacy services, dental services, and housing assistance to close to 60,000 Alaska Native and American Indian residents); Ex. 8 (Andrew Decl.) at ¶ 3 (discussing how the St. Mary's Native Corporation "provide[s] scholarships; funeral benefits; donations to our village tribes for annual meeting and village clean up; Search and Rescue; traditional Yupik potlatches with neighboring villages; back-to-school potlatches with blessings from the elders, parents, and teachers for a good year" and many other benefits to its members); Ex. 3 (Glenn Decl.) at ¶ 5 (explaining that the Arctic Slope Regional Corporation ("ASRC") "provides substantial funds to assist North Slope Borough residents and ASRC shareholders with medical travel and funeral related costs . . . and related expenses as needed in cases of medical or funeral crises").

While the ANC Intervenor-Defendants are sympathetic to the Plaintiffs' desire to protect their own tribal members, the Alaska Natives that comprise and are serviced by the ANCs are no less deserving of relief. As described in more detail below, without coronavirus relief funds, they risk disproportionally bearing the brunt of this already-devastating pandemic. The ANC

Intervenor-Defendants' interests in obtaining such funding are thus critical to the ANC Intervenor-Defendants' Alaska Native shareholders, and those interests are not adequately represented by the Secretary or any other party to this proceeding.

Furthermore, the ANC Intervenor-Defendants have an interest in the Court's resolution of whether the Secretary properly interpreted "Tribal governments" and "Indian tribe" to include Alaska Native village and regional corporations, an issue with implications that extend far beyond this case. The term "Indian Tribe," as used in the CARES Act, comes from the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 5301 *et seq.*, and that term is used in scores of other statutes. The Court's decision may thus not only materially impact the ANC Intervenor-Defendants' rights under the CARES Act, but also under the scores of other statutes that use the same terminology. *See, e.g.*, 25 U.S.C. § 4103(13) (Native American Housing Assistance and Self-Determination Act of 1996).[4]

## ARGUMENT

## I.     The ANC Intervenor-Defendants Are Entitled To Intervene As Of Right.

The ANC Intervenor-Defendants' intervention is predicated on the D.C. Circuit's long-held principle that "the right to intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972). Rule 24 provides, in pertinent part:

> On timely motion the court must permit anyone to intervene who . . . claims an
> interest relating to the property or transaction that is the subject of the action, and

---

[4] Attached as Exhibits 25-27 to this motion to intervene are proposed answers corresponding with the First Amended Complaint filed in Case No. 1:20-cv-1002-APM, ECF No. 11 (Apr  21, 2020), the First Amended Complaint filed in Case No. 1:20-cv-1059-APM, ECF No. 14 (Apr. 24, 2020), and the Complaint filed in Case No. 1:20-cv-1070-APM, ECF No. 1 (Apr. 23, 2020).

> is so situated that disposing of the action may as a practical matter impair or
> impede the movant's ability to protect its interest, unless existing parties
> adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The Court grants intervention if four conditions are satisfied:

(i) timeliness; (ii) a cognizable interest; (iii) impairment of the interest; and (iv) lack of adequate

representation by existing parties. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C.

Cir. 2003) (citations omitted). Further, "a party seeking to intervene as of right must demonstrate

that it has standing under Article III of the Constitution." *Id.* at 731-32. The ANC Intervenor-

Defendants satisfy all four conditions for intervention as of right.

### A.      This Motion Is Timely.

Courts in this circuit consider four primary factors in assessing the timeliness of a motion

to intervene: the "time elapsed since the inception of the suit, the purpose for which intervention

is sought, the need for intervention as a means of preserving the intervenor[s]' rights, and the

probability of prejudice to those already parties in the case." *Smoke v. Norton*, 252 F.3d 468, 471

(D.C. Cir. 2001) (quoting *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)). Where

intervention is prompted by a concern that the government might not appeal an adverse decision,

intervention is timely "if filed within the time period for appeal." *Id.* at 471 (quoting *Dimond v.

District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986)).

The ANC Intervenor-Defendants' motion easily qualifies under the aforementioned

requirements. The ANC Intervenor-Defendants seek to intervene only two and a half weeks after

the original plaintiffs filed their Complaint (ECF No. 1) and before the Secretary has filed its

Answer. The only substantive proceeding was this Court's consideration of Plaintiffs' Motion for

Temporary Restraining Order and Preliminary Injunction on April 24, 2020, in which the ANC

Intervenor-Defendants participated as *amici*. This case has not otherwise meaningfully

progressed and the ANC Intervenor-Defendants' participation will not be disruptive or unfair.

*See 100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 275 (D.D.C. 2014) (motion timely where no substantive progress had occurred and intervention would not unduly disrupt litigation or pose an unfair detriment to the existing parties).

Furthermore, there is no risk of prejudice to the Parties. The ANC Intervenor-Defendants seek to "participate in an upcoming . . . phase of the litigation" and do not seek to delay or forestall consideration of the issues in this case; rather they have moved with haste to intervene to protect their interest in the Coronavirus Relief Fund. *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977). Given the short amount of time since the filing of this case, the fact that no responsive pleadings have been filed outside of the context of the injunction proceedings, and the significance of the ANC Intervenor-Defendants' interest in the outcome of this case, this motion "cannot be regarded as untimely." *Move Pharms. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998).

**B.     The ANC Intervenor-Defendants' Members Have Legally Protectable Interests.**

The ANC Intervenor-Defendants' participation is warranted by their legally protected interest in the outcome of this lawsuit. The ANC Intervenor-Defendants' members "claim to property that is the subject matter of th[is] suit" justifies their participation. *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981); *see also Deutsche Bank Nat'l Trust. Co. v. Fed. Deposit Insurance Corp.*, 717 F.3d 189, 193 (D.C. Cir. 2013) ("[Would-be intervenors] point to their economic interest in the receivership funds as a legally protected interest. That much is clearly correct."). As associations, the ANC Intervenor-Defendants share their members' legally protectable interests for purposes of intervention. *Cf. Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821–22 (9th Cir. 2001) (holding that a trade association had a sufficiently

protectable interest when several of its members had protectable interests in the challenged action).

The CARES Act created an $8 billion relief fund for disbursement to "Tribal governments." The Secretary "concluded that Alaska Native regional and village corporations as defined in or established pursuant to the Alaska Native Claims Settlement Act are eligible to receive payments from the Fund in the amounts to be determined by the Secretary of the Treasury." *See* Treasury Guidance (footnote omitted). The very fact that the ANC Intervenor-Defendants and Plaintiffs disagree with each other on whether the Secretary's interpretation entitling the ANCs to some portion of those funds is correct (ANC Intervenor-Defendants believe it is) makes it apparent that the ANC Intervenor-Defendants have the requisite interest in the outcome of this lawsuit such that this factor can be "readily dispatched." *Fund for Animals*, 322 F.3d at 735.

Lastly, proposed intervenors that would have standing to sue in their own right (which the ANC Intervenor-Defendants demonstrate below in Section II) automatically satisfy the requirement to show a protectable interest for purposes of Rule 24. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (quoting Fed. R. Civ. P. 24(a)(2)).

C.   **The ANC Intervenor-Defendants' Significantly Protectable Interests May Be Impaired By Disposition Of This Case.**

Rule 24(a) requires only that an adverse outcome of this case "may as a practical matter impair or impede" the ANC Intervenor-Defendants' ability to protect their interests. Fed. R. Civ. P. 24(a)(2). ANC Intervenor-Defendants' interests will be impaired by an adverse disposition holding that Alaska Native village and regional corporations are not entitled to relief funds necessary to combat coronavirus in Alaska Native communities. The D.C. Circuit has "look[ed] to the practical consequences of denying intervention, even where the possibility

of future challenge to the regulation remains available." *Fund for Animals*, 322 F.3d at 735 (quoting *Castle*, 561 F.2d at 909).

The practical consequences to the ANC Intervenor-Defendants if they are denied intervention are dire. Coronavirus Relief Fund payments are needed to react to the pandemic; prevent further spread throughout Alaska Native communities; fortify the local economy; and, in a worst case scenario, react to a potential reoccurrence of coronavirus in a State that in many communities lacks the basic infrastructure that is common in the lower 48 states. *E.g.*, Ex. 17 (Christiansen Decl.) at ¶¶ 3-8 & 11 (detailing how the four MTNT villages are ill-equipped to deal with the pandemic due to substandard infrastructure, shortage of medical resources, and lack of access to critical supply chains and discussing harm to shareholder members if funds from the Coronavirus Relief fund are withheld from ANCs); Ex. 19 (Mills Decl.) at ¶ 7 ("If [Kake Tribal Corporation] does not receive this CARE[S] Act funding, the impacts of the [COVID-19] will cause the reduction if not complete elimination of critical private sector services in Kake," thereby "further decreas[ing] the standard of living in Kake, Alaska and increas[ing] the rate of poverty in the community."); Ex. 3 (Glenn Decl.) at ¶¶ 4-9 & 12 (describing the broad range of services that Arctic Slope Regional Corporation provides to protect the health, welfare, and cultural needs of its nearly 13,000 Iñupiat and Alaska Native shareholders and explaining that ASRC has applied for CARES Act relief to combat the substantial impacts and hardships caused by COVID-19); Ex. 5 Buretta Decl. at ¶ 5 (describing how Chugach Alaska Corporation has supported Tribes and rural communities during the pandemic by providing masks, food, education, and other resources and noting that "[i]t would be unreasonable to think Chugach will not spend millions of dollars to assist with this crisis and recovery, that it did not budget for in 2020."); s*ee* Ex. 7 (Westlake Decl.) at ¶ 5("None of our villages are on a road system and must

rely on air or water transportation for basic amenities and services. These villages receive limited healthcare services from village clinics and a regional health center that has limited capacity to hospitalize patients with severe cases of COVID-19.").

As the effects of the global pandemic continue ravaging local Alaskan communities, time is of the essence. Denying the ANC Intervenor-Defendants' intervention would work two injustices, as critical time necessary to combat coronavirus will lapse if the ANC Intervenor-Defendants' are required to prepare and file a separate lawsuit and the funds appropriated to "Tribal governments" may be fully allocated to other Tribal governments in the interim, depriving the ANC Intervenor-Defendants of much-needed financial support even were a new lawsuit ultimately to be resolved in the ANC Intervenor-Defendants' favor. *See Harrington v. Sessions (In re Brewer)*, 863 F.3d 861, 873 (D.C. Cir. 2017)("[u]ndue delay or unnecessary litigation burdens have the 'practical consequence' of impairing third party interests in the efficient assertion of their rights.").

Furthermore, the ANCs also would suffer from a new interpretation of "Indian Tribe" that excludes the ANCs. The ANCs have participated for many years in numerous federal programs for Indian tribes. *See, e.g.,* Ex. 1 (Schutt Decl.) at ¶¶ 9-11 (explaining that Doyon, Limited, an ANC for Interior Alaska, has for many years participated in programs under the Native American Housing Assistance and Self Determination Act of 1996 and has benefited from the federal Indian Child Welfare Act); Ex. 4 (Hegna Decl.) at ¶ 4 (identifying Koniag or its subsidiaries as having participated in many federal programs, including under the Indian Self-Determination and Education Assistance Act, the Native American Housing Assistance and Self Determination Act of 1996, and the Buy Indian Act); Ex. 6 (Minich Decl.) at ¶¶ 13 (describing how CIRI's entitlement to participate as an "Indian tribe" under the Native American Housing

and Assistance and Self Determination Act allows an affiliated organization to provide critical housing services to underserved Alaska Native and American Indian peoples). The adverse precedent that could be established by this Court in interpreting these legislative terms of art to exclude ANCs could impair the interests of ANCs and the Alaska Natives they benefit in the long term, far beyond the subject of this litigation. This specter of adverse precedent surely is sufficient to support the ANC Intervenor-Defendants' intervention. *See Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 320 (recognizing that where an adverse ruling in the case "would impair [intervenor's] defense in a new proceeding because a judicial pronouncement that the [agency's decision] was contrary to law would make the task of reestablishing the status quo more difficult and burdensome").

Because the ANC Intervenor-Defendants have a "substantial interest, directly related to and threatened by" the relief sought by Plaintiffs in this case, the ANC Intervenor-Defendants are entitled to intervene as of right. *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d. Cir. 1998). Moreover, because the ANC Intervenor-Defendants' rights are so directly implicated in this lawsuit, its intervention "may lessen the need for future litigation to protect [its] interests" and avoid an inequitable outcome where the ANC may succeed on the merits of future litigation but fail to recover already-spent funds. *Castle*, 561 F.2d at 909.

D.     **The ANC Intervenor-Defendants Lack Adequate Representation.**

Under Rule 24, an applicant for intervention need merely show that representation of its interests by existing parties "may be" inadequate and "the burden of making that showing should be treated as minimal." *Fund for Animals*, 322 F.3d at 735 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). The ANC Intervenor-Defendants are not adequately represented by Plaintiffs, whose interests in this litigation are at odds with the ANC Intervenor-Defendants, or by Defendant.

11

As a general matter, the federal government's interests do not represent the interests of entities like the ANC Intervenor-Defendants. Courts have long recognized that while the mandate of federal agencies is to represent the public interest, individual entities naturally have a "more narrow and parochial financial interest." *Fund for Animals*, 322 F.3d at 737 (citation and internal quotation marks omitted); *accord, see Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255 (10th Cir 2001) (collecting cases from numerous federal appellate courts finding that the U.S. government's representation of the broad interests of the general public may compromise its representation of the narrower interests of would-be intervenors and concluding that "the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation").

The ANC Intervenor-Defendants represent the localized interests of Alaska Natives, including many who are not members of federally recognized tribes and receive no services delivered by federally recognized tribes. *E.g.*, Ex. 6 (Minich Decl.) at ¶ 6 ("It has long been established that, for the Alaska Native and American Indian peoples living in the Municipality of Anchorage and the Matanuska-Susitna Valley, [Cook Inlet Region, Inc.] acts as the Indian tribe providing services in those areas."); Ex. 22 (Schubert Decl.) at ¶ 9 (explaining that 1,330 out of 8,000 shareholders "are not members of any village corporation or associated with any tribe"). And, unlike the federal government, the ANC Intervenor-Defendants have a particularized and substantial interest in preserving their own rights and opportunities that will be affected by the outcome of this litigation. So while the federal government may be able to afford to negotiate

away the ANC Intervenor-Defendants' entitlement to relief funds or decide not to continue

defending its position in court, the ANC Intervenor-Defendants do not have that luxury.[5]

Furthermore, the ANC Intervenor-Defendants' participation will provide the Court with a

key perspective on this dispute. Intervention in similar circumstances has long been seen by

courts as serving a useful purpose. *See Nat'l Res. Def. Council, Inc. v. U.S. Nuclear Regulatory

Comm'n,* 578 F.2d 1341, 1345-46 (10th Cir. 1978). Here, the federal government is not as well-

suited as the ANC Intervenor-Defendants to articulate how ANCs operate and provide services

to Native people in Alaska because it lacks direct familiarity with those details. The ANC

Intervenor-Defendants can provide the Court with important context and help ensure the Court

has a full and accurate record from which to make its decision on the merits of this case.

For these reasons, the ANC Intervenor-Defendants easily meet the "not onerous" burden

of showing that their interests are not adequately represented by the existing parties to the

litigation. *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (citations

omitted).

## II.     The ANC Intervenor-Defendants Have Standing To Intervene In This Case.

In the D.C. Circuit, applicants for intervention as of right must demonstrate standing

under Article III of the Constitution. *See United States v. Phillip Morris USA, Inc.*, 566 F.3d

1095, 1146 (D.C. Cir. 2009).[6] Article III standing requires a showing of "(1) injury-in-fact,

---

[5] Neither would the ANC Intervenor-Defendants' interests be adequately represented by proposed intervenor-defendant Ahtna, Inc. ("Ahtna"). Although Ahtna can address its own interests and concerns, it cannot adequately represent the interests of the ANC Intervenor-Defendants' associations, whose members provide services to a far broader range of communities, villages, and Native shareholders than those served by Ahtna alone.

[6] However, this Court has also stated that "[t]he standing inquiry is repetitive in the case of intervention as of right because an intervenor who satisfies Rule 24(a) will also have Article III standing." *Akiachak Native Cmty. v. U.S. Dep't of the Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008) (citing *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003)).

(2) causation, and (3) redressability." *Fund for Animals*, 322 F.3d at 733 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Standing "is not a high hurdle . . . to clear" and the ANC Intervenor-Defendants satisfy these criteria by demonstrating associational standing. *Hardin v. Jackson*, 600 F. Supp. 2d 13, 15 (D.D.C. 2009).

To establish associational standing, an organization "must demonstrate: (1) that at least one member would have Article III standing in his or her own right; (2) 'that the interests it seeks to protect are germane to its purposes'; and (3) 'neither the claim asserted nor the relief requested requires an individual member participate in the lawsuit.'" *Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 323 F.R.D. 54, 64 (D.D.C. 2017) (quoting *Nat. Res. Def. Council v. EPA*, 489 F.3d 1364, 1370 (D.C. Cir. 2007)). The ANC Intervenor-Defendants satisfy all three requirements.

*First*, the standing of ANC Intervenor-Defendants' members, as with the plaintiffs themselves, is self-evident: the Secretary determined that ANCs are eligible for payments from the Coronavirus Relief Fund, and the ANC Intervenor-Defendants' members will be deprived of such funding if Plaintiffs prevail in invalidating that determination. The specter of such harm is sufficient to establish injury-in fact for each of the ANCs who comprise the ANC Intervenor-Defendants. *See Crossroads*, 788 F.3d at 317 ("Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and then an unfavorable decision would remove the party's benefit."). Given the nature of these threatened harms, it bears emphasis that "economic injuries have long been recognized as sufficient to lay the basis for standing." *Sierra Club v. Morton*, 405 U.S. 727, 733–34 (1972). Such injuries, in any amount, are sufficient to demonstrate standing. *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973)

("We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than . . . a $5 fine and costs . . . and a $1.50 poll tax[.]").

Regarding causation and redressability, because the ANC Intervenor-Defendants' members "can prove injury, then [they] can establish causation and redressability," as their injuries would be directly traceable to the Court's decision in this case and the ANC Intervenor-Defendants can prevent the injuries to their members by prevailing in this case. *Crossroads*, 788 F.3d at 312; *see also Fund for Animals*, 322 F.3d at 728 (finding associational standing where an unfavorable agency determination would cause intervenor to lose tourism revenue). If the Plaintiffs ultimately succeed in invalidating the Secretary's determination regarding eligibility for funding under Title V of the CARES Act, the ANC Intervenor-Defendants' members will not receive any funds from the Coronavirus Relief Fund, which would greatly hinder their interests, including their efforts to provide critical services to Alaska Native communities. *See* Ex. 22 (Schubert Decl.) at ¶¶ 7-9 (detailing efforts by Bering Straits Native Corporation ("BSNC") to combat the significant impacts of the COVID-19 pandemic on the Bering Straits region and noting that BSNC's shareholders, including over 1,000 who are not associated with any tribe, would receive "no benefits of any kind to assist with the impacts of COVID-19" if Coronavirus Relief Fund payments are withheld from ANCs).

*Second*, the interests that the ANC Intervenor-Defendants seek to protect in this case are core to their organizations' purposes. "Germaneness is satisfied by a 'mere pertinence' between litigation subject and an organization's purpose." *Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107, 111 (D.C. Cir. 1990). Here, ANC Intervenor-Defendants' primary purposes are to advance and promote the interests of their member ANCs and thus, they have an interest in ensuring that their members receive coronavirus relief funds. *See* ANCSA

Regional Association, "Our Purpose," *available at* https://ancsaregional.com/about-ara/

(describing the association's purpose "[t]o promote and foster continued growth and economic

strength of the Alaska Native regional corporations for the benefit of their Alaska Native

shareholders and communities"); *see also* ANVCA, "Mission and Vision," *available*

*at* https://anvca.biz/ ("ANVCA promotes the success of our Village Corporations and protection

of our Native lands.").

Like so many states, tribes, and local governments, the continued growth and economic

strength of the ANCs and Alaska Native shareholders and their communities during this

pandemic is contingent on their ability to obtain funds from the Coronavirus Relief Fund.

Without that funding, many Alaska Natives and their communities will be left without the

support Congress intended to provide. *See* Ex. 10 (Blair Decl.) at ¶ 6 ("Funds are critical to

ensuring food stability and stability for the community throughout the winter. The majority of

our local residents will have little or no season income to rely upon food for this winter. In

addition, most will not be able to afford the safety equipment necessary to protect themselves

and their families through an extended virus outbreak."). Participation in this proceeding is

necessary to ensure that does not happen. *Int'l Union, United Auto., Aerospace & Agr.*

*Implement Workers of Am. v. Brock*, 477 U.S. 274, 286 (1986) ("little question" that interests in a

lawsuit are germane to an organization's purpose when success in the lawsuit would further the

stated goals of the organization).

Finally, neither the ANC Intervenor-Defendants' claims nor relief requested require the

participation of the individual ANCs. Plaintiffs are challenging the ANCs' entitlement to

payments from the Coronavirus Relief Fund on the theory that the ANCs are not "Tribal

governments" or "Indian Tribes" as such terms are used in Title V of the CARES Act. Plaintiffs'

claims do not disambiguate between individual ANCs; under Plaintiffs' theory, if one loses funding, all lose funding. Thus, the participation of *each* individual ANC is not required.

Because the ANC Intervenor-Defendants can demonstrate associational standing, they have Article III standing to intervene in this action.

### III.    Alternatively, ANC Intervenor-Defendants Should Be Granted Permissive Intervention.

In the alternative, the ANC Intervenor-Defendants seek this Court's permission to intervene under Rule 24(b)(1)(B). In relevant part, the Rule provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(l)(B). To qualify for permissive intervention, an applicant must provide the following: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Although an exercise of discretion, courts must consider whether intervention will cause undue delay or prejudice to the original parties. *Id.* at 1045.

The ANC Intervenor-Defendants meet the standard for permissive intervention under Rule 24(b), for many of the same reasons they meet the standard for intervention as of right:

*First*, because the ANC Intervenor-Defendants seek to defend the same claims Plaintiffs brought against the Secretary, this Court has an independent ground for jurisdiction under 28 U.S.C. § 1367. *See Butte County, Cal. v. Hogen*, No. 08-519, 2008 WL 2410407, at *2 (D.D.C. June 16, 2018) (finding independent ground for subject matter jurisdiction where proposed intervenor sought to defend against same allegation plaintiff raised against defendant, and therefore jurisdiction existed under federal supplemental jurisdiction statute). Further,

because the ANC Intervenor-Defendants have Article III standing, *see supra* Section II, this Court has jurisdiction.[7]

*Second*, as discussed above, this motion is timely and does not prejudice Plaintiffs' interests in the case.

*Third*, it is plain that there are common issues of law and fact between the ANC Intervenor-Defendants' defense and the main action. Plaintiffs have challenged, and seek to invalidate, the Secretary's determination that ANCs are eligible to receive relief funds under Title V of the CARES Act because they meet the definitions of "Tribal government" and "Indian Tribe" under that statute. Disposition of this case in Plaintiffs' favor also would mean that the ANC Intervenor-Defendants' members would not receive *any* such relief funds. As a result, the ANC Intervenor-Defendants' members, and by extension the ANC Intervenor-Defendants themselves, have a significant interest in affirming the Secretary's determination of eligibility for relief funds, warranting permission to intervene in this case.

## CONCLUSION

This Court should grant the ANC Intervenor-Defendants intervention as of right under Federal Rule of Civil Procedure 24(a)(2) because this motion is timely, it has an interest relating to the subject of this action, its interest may be impaired or impeded, and its interest is inadequately represented by the existing parties. Alternatively, the Court should grant ANC Intervenor-Defendants permissive intervention under Rule 24(b)(1)(B).

---

[7] Whether Article III standing is required for permissive intervention remains "an open question" in the D.C. Circuit. *In re Endangered Species Act Section 4 Deadline*, 704 F.3d 972, 980 (D.C. Cir. 2013).

Dated: May 5, 2020                          Respectfully submitted,

/s/ Daniel W. Wolff
Daniel W. Wolff (D.C. Bar #486733)
David Chung (D.C. Bar #500420)
Kirsten L. Nathanson (D.C. Bar #463992)
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 624-2500
dwolff@crowell.com
dchung@crowell.com
knathanson@crowell.com


Christine V. Williams
J. Harrison Powell, II
Outlook Law, LLC
1016 West 6th Avenue, Suite 306
Anchorage, Alaska 99501
(907) 258-2200
christinewilliams@outlooklaw.com
harrisonpowell@outlooklaw.com

*Attorneys for Proposed Intervenor-Defendants*
*Alaska Native Village Corporation Association, Inc.*
*and Association of ANCSA Regional Corporation*
*Presidents/CEO's, Inc.*