**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STEPHEN MNUCHIN, Secretary, United States Department of the Treasury, <br><br> Defendant. | Consolidated Civil Case No. <br> 1:20-cv-01002-APM |
| CHEYENNE RIVER SIOUX TRIBE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STEPHEN MNUCHIN, Secretary, United States Department of the Treasury, <br><br> Defendant. | Consolidated Civil Case No. <br> 1:20-cv-01059-APM |
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION, <br><br> Plaintiff, <br><br> v. <br><br> STEPHEN MNUCHIN, Secretary, United States Department of the Treasury, <br><br> Defendant. | Consolidated Civil Case No. <br> 1:20-cv-01070-APM |

**UTE INDIAN TRIBE OPPOSITION TO MOTIONS TO INTERVENE**

## I.  DEFENDANTS HAVE NOT ESTABLISHED STANDING.

Under D.C. Circuit precedent, all applicants for intervention under Fed. R. Civ. P. 24(a)(2) and (b) must prove standing in order to intervene.  *Fund for Animals v. Norton*, 322 F.3d 728 (D.C. Cir. 2003); *Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013).  The "irreducible constitutional minimum" of standing comprises three elements.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  First, the party must have suffered an "injury in fact," *i.e.*, "an invasion of a legally protected interest" that is: "(a) concrete and particularized [;]" and "(b) actual or imminent, not conjectural or hypothetical[.]" *Id.* (quotations omitted).  Second, "there must be a causal connection between the injury and the conduct complained of [,]" *i.e.*, "the injury has to be fairly traceable to the challenged action" and "not the result of the independent action of some third party not before the court." *Id.* (quotations, alterations, and ellipses omitted).  Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561.

The proposed intervenors' motions do not establish standing.  Instead those motions were based primarily on claims that they have "638 contracts" to survey land that they own.  Those allegations would not have been sufficient, standing alone, but the Tribe recognizes that the proposed intervenors ill now switch to an assertion that they have standing because they assert that they have money at stake in this case, based upon their interpretation of Title V of the CARES Act.

This presents an unusual fact-scenario, because this Court has already reviewed their interpretation of the CARES Act and, correctly, found that interpretation wanting.  In most cases, the Court cannot prejudge the movant's claimed interest, and it accepts their claim of interest; but the facts in this matter are reversed.  The Court has reviewed their claim of interest already.

This case is therefore similar to *Cobell v. Jewell*, 2016 WL 10704595 at *1 (D.D.C. 2016), where the Court had previously considered the interests that the proposed Intervenor sought to rely upon, and the Court denied intervention.  It stated.

> As a threshold matter, ILTF fails to demonstrate that it has a sufficiently concrete legally protected interest to establish Article III standing. ILTF, who is not a party to the Settlement Agreement, asserts that it has a legally protected interest in an award of expenses to class representatives under the Settlement Agreement. However, any prospective recovery by ILTF would hinge on the Court's determination whether third-party expenses can and should be reimbursed under the terms of the Settlement Agreement. See Cobell v. Jewell, 802 F.3d 12, 25-27 (D.C. Cir. 2015) (vacating this Court's denial of class representatives' petition for third-party expenses and remanding the matter for this Court to consider whether third-party expenses can and should be reimbursed under the Settlement Agreement). ILTF's asserted interest is, therefore, too conjectural to demonstrate Article III standing. See  Deutsche Bank, 717 F.3d at 193 (D.C. Cir. 2013) (finding no legally protected interest for Article III standing purposes where, inter alia, intervenor's interest would crystalize only if the Court resolved a threshold legal interpretation in a specific way).

Similarly in the present matter, the Court should hold, based upon its own prior decision on preliminary injunction, that the movant's claims are too conjectural.  It should not apply the analysis which is solely based upon the Movant's claims.

## II.   APPLICANT SHOULD BE DENIED PERMISSIVE INTERVENTION.

The three proposed intervenors and the Tribe all agree on the law applicable to permissive intervention.  Each of the three proposed intervenors admits that there is a three element test for permission intervention.  An applicant for permissive intervention must first establish each of these elements: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and, (3) a claim or defense that has a question of law or fact in common with the main action." *Aristotle Int'l v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010) (quoting *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)).  Dkt 43 at 13(quoting *EEOC*); Dkt. 45 at 17 (same); Dkt. 46 at 15 (same). *See also* Fed. R. Civ. Proc. 24(b)(1)B).

The proposed intervenors also acknowledge that even if they establish each of the requisite elements, that is not the end of the inquiry.  Instead, the Court would then exercise its discretion, to determine whether or not it should grant intervention.  Dkt. 43 at 13; Dkt. 45 at 17; Dkt. 46 at 15; *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998); Cigar Assoc. of American v. U.S. Food & Drug Admin., 323 F.R.D. 54 (D.D.C. 2020).

### A.      THE PROPOSED INTERVENORS DID NOT MEET THEIR BURDEN TO PLEAD AND PROVE THAT THIS COURT HAS JURISDICTION OVER THEIR DEFENSES.

Because "[f][ederal courts are courts of limited jurisdiction, . . . [i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, (1994) (quotes and cite omitted).  When an applicant seeks to intervene in a case without adding new claims, he still must show that he has an independent ground for subject matter jurisdiction. *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5 (D.D.C. 2007).  In this matter, the proposed intervenors plainly did not meet their burden.  They did not even make an effort to meet their burden.  Instead, after acknowledging that they are required to establish an independent ground for subject matter jurisdiction, each proposed Intervenor stated, in a cursory and conclusory sentence, that this Court has jurisdiction over their "defenses," or their "defenses and arguments."  Dkts. 43-4; 46-9; 47-27.

Courts do not have federal question jurisdiction based upon allegations of defenses.  In fact, allegations regarding defenses are wholly ignored when deciding whether a federal court has jurisdiction.  *E.g., Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987).  Courts also, of course, do not have jurisdiction over "arguments."

The Tribe's view is that the proposed intervenors could not have met their burden, but the issue raised by their current motion is much simpler—applicants did not meet their burden in their

motions.  *Cf. Morten*, 730 F. Supp. 2d at 15 ("[applicant] has not even attempted to explain why this Court would have subject matter jurisdiction over its contract claims against the District of Columbia.  Consequently, its motion to intervene will be denied.").

Presumably, the proposed intervenors will now, in their reply brief, seek to provide an argument to attempt to show an independent ground for subject matter jurisdiction, but this Court should ignore any arguments asserted in reply.  Movants were required to make an argument in their motion.  The proposed intervenors are represented by experienced attorneys, and they presumably know that their briefs needed to provide more than a conclusory sentence asserting that they have some unexplained independent ground for subject matter jurisdiction.  Instead they only asserting, but did not try to show and did not show, that the Court had jurisdiction over their defenses.  Their motion therefore must be denied because they each failed to meet their burden.

## B.    THE PROPOSED INTERVENORS WOULD NOT HAVE BEEN ABLE TO SHOW AN INDEPENDENT BASIS FOR SUBJECT MATTER JURISDICTION EVEN IF THEY HAD TRIED.

For the reasons discussed above, this Court should not need to proceed to the remaining arguments in this subsection.  But if this Court were to proceed further, it would find the Court does not have an independent ground for subject matter jurisdiction over the proposed intervenors' claims or defenses.

As the plaintiff in this case, the Ute Tribe is the master of its own complaint.  *E.g., Caterpillar, Inc.*, 482 U.S. 386, 398-99.  It, and it alone, gets to decide what claims it wants to bring.  *Id.*  It chose to bring claims against Secretary Mnuchin.  It did not bring any claims against the for-profit corporations that are pretending that they are tribes.[1]

---

[1] In their motions to intervene, the proposed intervenors submit numerous documents in which they refer to themselves as tribes, and adopt other language and processes used by actual tribes. The Court should not be fooled by their pretense.  Many people and entities in the Lower 48 do exactly the same—claim to be tribes in order to try to take the benefits or usurp the rights that are

As discussed above, where, as here, a party is not asserting a claim, it must still show an independent ground for subject matter jurisdiction. *Sierra Club*, 523 F. Supp. 2d 5. In *Sierra Club*, the plaintiff brought case against the United States, and several companies sought to intervene as defendants. The court discussed that the intervenors were required to show an independent ground for subject matter jurisdiction, and the Court then held that the applicants satisfied that requirement because "[a]s defendants, Intervenors would be subject to claims-- namely violations of several federal statutes . . . " because the court had jurisdiction over "citizen suits against 'any person' who is alleged to be in violation of the Endangered Species Act." *Id. at 10.* In contrast in the present case, no proposed Intervenor has even alleged, let alone shown, that it is subject to any of the claim raised by the Tribe. In fact, no proposed Intervenor would be subject to any claim raised by the Tribe. Further, no proposed Intervenor has shown that that it would or could be subject to any claim it is violating a federal statute. In fact, there is no possible basis for asserting that any of the proposed intervenors is violating a federal statute as related to this case. The only person or entity that is alleged to be violating a federal statute in this case is Defendant Secretary Mnuchin.

Here, the proposed intervenors want to submit briefs in which they assert that Secretary Mnuchin and the Department of Interior officers who decided that the intervenors were tribes were correct. There is a procedure for submitting those types of briefs. It is a motion to submit an

---

only accorded to the federally recognized tribes. The Ute Tribe is particularly sensitive to this issue. It has repeatedly had to combat entities like the for-profit corporations here, that seek to bastardize what it means to be a tribe. *E.g.*, *United States v. Uintah Valley Shoshone Tribe*, 946 F.3d 1216, 1219 (10th Cir. 2020) (United States brought suit against individuals who wrongly claimed to be a tribe and who attempted to exercise sovereign authority on the Ute Reservation). *See also Hopi v. Trump*, D.D.C case 1:17-cv-02590-TSC, Dkt. 58,at 3, n.1 (Ute Tribe lists 22 names of entities that have falsely claimed they are Indian tribes that exercise governmental power on the Ute Reservation). Like the pretend tribe in *Uintah Valley Shoshone Tribe*, the for-profit corporations' pretense that they are tribes harm all of the federally recognized tribes.

amicus brief supporting an existing party.  It is not to submit briefs as a "defendant" against whom there are no claims.  Proposed intervenors are simply not defendants.  The Tribe did not name them as defendants, and it did not bring any claims through which they have the interests of a defendant.

**C.     THE PROPOSED INTERVENORS CANNOT ESTABLISH AN INDEPENDENT GROUND FOR SUBJECT MATTER JURISDICTION BECAUSE THE UTE TRIBE HAS SOVEREIGN IMMUNITY FROM SUIT.**

The doctrine of sovereign immunity of federally recognized Indian Tribes is definitively established.  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978).  As a matter of federal law, absent a clear and unequivocally expressed waiver of sovereign immunity, Indian tribes are not subject to civil suit in any tribunal.  *C & L Enter., Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 418 (2001); *Santa Clara Pueblo*, 436 U.S. at 58-59.

Tribal sovereign immunity is a threshold issue, *Timpanogos Tribe v. Conway*, 286 F.3d 1195 (10th Cir. 2002) (citing *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83 (1998).  It therefore must be resolved at this point.  *Id.*  In fact, if this Court were to grant intervention over the Tribe's objection, the Tribe could immediately appeal this Court's order.  *Id.  See also Prescott v. Little Six, Inc.*, 387 F.3d 753 (8th Cir. 2004).  Where, as here, a Tribe asserts sovereign immunity, that immunity must be resolved before any action is taken which would be contrary to the claimed immunity.  Therefore, this Court is required to resolve this issue at this stage, and cannot postpone the decision.

By bringing suit against the Secretary, the Tribe waived sovereign immunity as to the Secretary and the United States, but only as to the Secretary and the United States.  Okla. Tax Comm'n v. Potawatomie Indian Tribe, 498 U.S. 505 (1991); Ute Indian Tribe v. Utah, 790 F.3d 1000 (10th Cir. 2015). In Ute Indian Tribe, the Tribe had filed suit, and the State of Utah claimed that the Tribe's filing of suit opened it up to counterclaims that they characterized as being simply

the other side of the coin from the Tribe's claims.  Then Judge Gorsuch, writing for the Court, rejected that argument.  He wrote, "Supreme Court precedent couldn't be clearer on this point: a tribe's decision to go to court doesn't automatically open it up to counterclaims—even compulsory ones."

This rule is based upon the more general rule that a sovereign, including a tribe, can imposed any limitation or waiver on its own immunity, and the limits that it chooses to impose must be strictly interpreted against waiver.  *C & L Enter., Inc.,* 532 U.S. at 418; *Santa Clara Pueblo*, 436 U.S. at 58-59.  The Tribe is the master of its own sovereignty, and when it brings a complaint, it waives immunity only to the extent that it chooses.  Here the Tribe chose to bring a claim against the Secretary in his official capacity.  That defines the limits of the Tribe's waiver.

While the proposed intervenors can note that they did not file counterclaims that would, at most, only take them out of the frying pan and into the fire.  Because this case is limited by the Tribe's waiver of immunity, the proposed intervenors are not able to add anything to this case which would provide an independent basis for subject matter jurisdiction.  No matter which way the proposed intervenors choose to jump, they cannot meet their burden to show an independent basis for subject matter jurisdiction.

**D.      EVEN IF THE PROPOSED INTERVENORS MET ALL THREE ELEMENTS, THIS COURT SHOULD DENY INTERVENTION UNDER ITS DISCRETIONARY AUTHORITY.**

Even if Applicant had established all three requirements, the court still has the discretion to determine whether intervention is warranted.  "[A]s its name would suggest, permissive intervention is an inherently discretionary enterprise." *Aristotle Int'l v. NGP Software, Inc*., 714 F. Supp. 2d at 18 (quoting *Nat'l Children's Ctr.*, 146 F.3d at 1048).  "To that end, Rule 24(b) further provides that 'in exercising its discretion the court shall consider whether the intervention

will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Tripp v. Exec.*

*Office of the President*, 194 FORD. 344, 347-48 (D.D.C. 2000) (quoting Fed. R. Civ. P. 24(b)).

> The 'delay or prejudice' standard presumably captures all the possible drawbacks
> of piling on parties; the concomitant issue proliferation and confusion will result in
> delay as parties and court expend resources trying to overcome the centrifugal
> forces springing from intervention, and prejudice will take the form not only of the
> extra cost but also of an increased risk of error.

*Mass. School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997).  Put

simply, intervention can cause undue delay and prejudice when it adds additional complication,

confusion, cost, and delay to the matter.

Courts may also consider "whether parties seeking intervention will significantly

contribute to . . . the just and equitable adjudication of the legal question presented." *Aristotle Int'l*

*v. NGP Software, Inc.*, 714 F. Supp. 2d at 18.  Courts may deny intervention if intervention would

not assist in the development of the issues presented.  *Ctr. For Biological Diversity v. U.S.*

*Environmental Protection Agency*, 274 F.R.D. 305, 312 (D.D.C. 2011) (quoting *Humane Soc'y v.*

*Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985)).

> Movants argue persuasively that they have substantial expertise and a unique
> perspective regarding the manufacture and operation of aircraft and the engines
> thereof. Contrary to movants' assertions, however, aircraft and their engines are not
> at issue in this case.  Rather, the Court has been asked to determine whether EPA
> has an enforceable obligation to make the findings sought by plaintiffs and, if so,
> whether it has breached that obligation. With regard to *these* questions, movants
> offer no more than conclusory assertions that their participation will be helpful, and
> fail to demonstrate an "ability to contribute to the full development of the factual
> and legal issues presented."

*Id*.

Applying this law to the current case, the proposed intervenors would not add anything to

this case, and in any event they can continue to participate as amicus through their association.

This is a case concerning a dispute between the federal government and tribal governments,

regarding a decision of a federal officer.  That federal officer will try to defend his and the

Department of Interior's decision to treat for profit corporations as tribal governments.  Even if the movants could satisfy the three mandatory elements, their motion should be denied based upon the Court's discretionary authority.

## III.   THE PROPOSED INTERVENORS HAVE NOT ESTABLISHED A BASIS FOR INTERVENTION OF RIGHT.

To satisfy the requirements of Fed. R. Civ. P. 24(a)(2), an applicant must demonstrate four distinct requirements to be entitled to intervene as of right:

> (1) timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties.

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (quotations omitted).  As shown below, Applicant has not carried its burden of demonstrating that all four requirements are satisfied.

### A.   THE PROPOSED INTERVENORS ARE ADEQUATELY REPRESENTED BY THE EXISTING PARTIES

Under the express terms of Rule 24, intervention of right is not available when the "existing parties adequately represent" the proposed intervenor's interest.  Fed. R. Civ. Proc. 24(a)(2). Although the movant's burden of showing inadequacy of representation is minimal, *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972), a presumption of adequate representation exists when both the movant and an existing party have the same ultimate objectives. *Illinois v. Bristol-Myers Co.*, 470 F.2d 1276, 1278 (D.C. Cir. 1972) (holding the State of Illinois adequately represented the interests of private individuals and entities); *see also Atlantic Refinishing & Restoration Inc. v. Travelers Cas. & Surety Co. of Am.*, 272 F.R.D. 26, 30 (D.D.C. 2010) (recognizing the "same ultimate objectives" presumption).

Here, the pleadings before the Court establish unequivocally that the movants and the Secretary of the Treasury share the same ultimate objectives and seek identical relief.  Both the Secretary and the movants are asking the Court to:

- Deny the Plaintiff Tribes' requests for declaratory judgment by

  --declaring the amounts and manner of payment under the CARES Act to be committed to the Secretary's discretion by law and thus unreviewable;

  --declaring that ANCs qualify as Tribal governments under the Cares Act and the Indian Self-Determination and Education Assistance Act or ISDEAA;

- Denying the Plaintiff Tribes' motion for injunctive relief.[2]

A movant may overcome the presumption of adequate representation by showing the existence of "special circumstances" that make the existing party's representation inadequate. *Schoenborn v. Wash. Metro. Area Transit Auth.*, 247 F.R.D. 5, 9 (D.D.C. 2007) (holding that a special circumstance existed because of potentially conflicting claims to a wrongful death award).

A movant may also overcome the presumption of adequate representation by showing that the movant intends to raise claims or arguments that would not otherwise be raised. *Atlantic*, 272 F.R.D. at 30 (citing *Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1010-20 (D.C. Cir. 2003)).

Here, however, none of the proposed intervenors has shown the existence of "special circumstances" that overcome the presumption of adequate representation—at least not at this

---

[2] Secretary's Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, Dkt. No. 21; Movants' proposed answers to Plaintiffs' complaints, Dkt. Nos. 43-2, 43-3 and 43-4 (for Ahtna, Inc.); Dkt. Nos. 45-25, 45-26 and 45-27 (for the ANC Associations); and Dkt. Nos. 46-7, 46-8 and 46-9 (for Calista et al.).

stage of the proceedings.  *See Illinois*, 470 F.2d at 1278 (the court did not grant intervention but stated it would "leave open" the possibility of "mandatory intervention" at a later stage in the proceedings).

Here, the movants have not identified any claims, nor any legal arguments, that are independent of the legal arguments that are being advanced by the Secretary of the Treasury. Indeed, the "Joint Notice Regarding Motions to Intervene" filed by Plaintiffs in case numbers 1:20-cv-01002 and 1:20-cv-01059, Dkt. No. 57, informs the Court of discussions between Plaintiffs and movants, and informs the Court that, if allowed to intervene, movants plan to participate in the existing parties' plan to litigate this case expeditiously based on cross-motions for summary judgement.  ("Plaintiffs and the ANC Intervenors propose the following expedited case schedule." Dkt. 57 at 3).

Movants have not alleged any collusion, nonfeasance, or adversity of interest between movants and the Secretary that would lead to inadequate representation.  Although movants "may have different reasons than the government" for seeking to defeat Plaintiffs' claims, the interests of the movants and the Secretary in this case are aligned.  *North Dakota v. United States*, 787 F.3d 918, 921-22 (8th Cir. 2015) (denying prospective defendant intervention on the side of the federal government).  *See generally Cobell v. Jewell*, No. 96-01285, 2016 WL 10704595, at *2  (D.D.C. March 30, 2016), and cases cited therein.

Even if the government "theoretically may offer a limiting construction of a statute that is narrower than that of a party proposing intervention," it does not mean that the prospective Intervenor "has overcome the presumption of adequacy of representation."  *Freedom From Religion Found., Inc. v. Geithner*, 644 F.3d 836, 842 (9th Cir. 2011) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006) (denying prospective defendant intervention on the side of the federal government)).  *See also Wisc. Educ. Ass'n v. Walker*, 705

F.3d 640, 658-59 (7th Cir. 2013 (denying prospective defendant intervention on the side of the State of Wisconsin); *San Juan Cnty. v. United States*, 503 F.3d 1163, 1203-07 (10th Cir. 2007) (en banc) (denying prospective defendant intervention on the side of the federal government); *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 909-11 (11th Cir. 2007) (denying prospective defendant intervention on the side of the federal government); *United States v. Michigan*, 424 F.3d 438, 443-45 (6th Cir. 2005 (denying prospective defendant intervention on the side of State of Michigan).

In opposing intervention, the Ute Tribe is mindful of this Circuit's precedents, noting a skepticism of "government entities serving as adequate advocates for private parties," *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015), particularly when the private-party Intervenor asserts a "financial stake in the outcome" of the suit. *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986).

The Tribe, however, notes that *Crossroads* was reversed because the district court in that case applied the wrong legal standard in ruling on intervention. Additionally, the Tribe notes that the ANCs are not petitioning this Court as "private parties," rather, the ANCs seek intervention as self-professed "tribal governments." As such, they are not claiming a *private* financial stake in the outcome of the suit as there was in *Dimond*. Under the circumstances, the Tribe believes this case to be more akin to *Bruch v. Griffith Energy Services, Inc.* than to *Dimond*. Here, as in *Bruch*, Nos. 11-983, 11-1101, 2014 WL 12799159, at *4 (D.D.C. March 24, 2014), there is a specific amount of money that will be distributed. And like the defendant in *Bruch*, the Secretary has indicated he will distribute the money at issue in this case consistent with court guidance and approval. Under these facts, there can be no dispute that the Secretary is adequately representing the movants' interest.

CONCLUSION

For all of the reasons stated above, the Court should deny the motions by the proposed

intervenors.

Respectfully submitted this 14th day of May, 2020.

**FREDERICKS PEEBLES & PATTERSON LLP**

*s/ Jeffrey S. Rasmussen*
Frances C. Bassett, (CO Bar No. 11970),
*Pro Hac Vice Admission*
Jeffrey S. Rasmussen, (WA Bar No. 21121),
*Pro Hac Vice Admission*
Jeremy J. Patterson, (CO Bar No. 38192),
*Pro Hac Vice Admission*
1900 Plaza Drive
Louisville, Colorado 80027
Telephone: (303) 673-9600
Facsimile: (303) 673-9155/9839
Email: fbassett@ndnlaw.com
Email: jrasmussen@ndnlaw.com
Email: jpatterson@ndnlaw.com

and

Rollie E. Wilson (D.C. Bar No. 1008022)
401 9th Street, N.W., Suite 700
Washington, D.C. 20004
Telephone: (202) 450-4887
Facsimile: (202) 450-5106
Email: rwilson@ndnlaw.com

*Counsel for Plaintiff Ute Indian Tribe of the Uintah
and Ouray Reservation*