**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN MNUCHIN, in his official capacity as Secretary of the Treasury, <br><br> Defendant. | Case No. 1:20-cv-1002-APM |
| CHEYENNE RIVER SIOUX TRIBE et al., <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN MNUCHIN, in his official capacity as Secretary of the Treasury, <br><br> Defendant. | Case No. 1:20-cv-1059-APM |
| UTE TRIBE OF THE UINTAH AND OURAY RESERVATION, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN MNUCHIN, in his official capacity as Secretary of the Treasury, <br><br> Defendant. | Case No. 1:20-cv-1070-APM |

**REPLY IN SUPPORT OF ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC. AND ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC. MOTION TO INTERVENE**

**INTRODUCTION**

Proposed Intervenor-Defendants, the Alaska Native Village Corporation Association, Inc. ("ANVCA") and Association of ANCSA Regional Corporation Presidents/CEO's, Inc. ("ARA") (collectively, the "ANC Association Intervenor-Defendants") hereby submit this reply in support of their motion to intervene under Federal Rule of Civil Procedure 24. There is no credible basis to deny the ANC Association Intervenor-Defendants intervention in this case. The Court has already granted their intervention in the two consolidated cases, Nos. 1:20-cv-01002-APM and 1:20-cv-01059-APM. *See* Minute Order (May 13, 2020). Furthermore, the Court has not only recognized that the ANC Association Intervenor-Defendants have an interest in this case, but also that they have an interest in moving swiftly given the significant injuries their members *are suffering now*. *See* (Conf. Hr'g Tr. at 7:20-25) ("Now, I think the ANCs would take the view that no matter what the amount is, the schedule ought to move quickly, because whether it's a small amount or a large amount, that amount is being withheld until this matter gets to a final judgment or there's an appeal and the Court of Appeals says otherwise.").

Rather than confront the ANC Association Intervenor-Defendants' arguments regarding Article III standing and permissive intervention head on, Plaintiff Ute Tribe of the Uintah and Ouray Reservation mischaracterizes those arguments and misapprehends relevant legal concepts in its opposition. In particular, the Ute Tribe appears to argue that ANC Association Intervenor-Defendants lack standing because the Court has already resolved the merits against them. But if that were true, there would be no point in entertaining cross-motions for summary judgment. In reality, the Court has merely offered its *preliminary* view of the law, and the ANC Association Intervenor-Defendants' members are being injured with each passing day that coronavirus relief funds continue to be withheld. In essence, the ANC Association Intervenor-Defendants' standing

to intervene is self-evident, and nothing in the Ute Tribe's opposition credibly suggests otherwise.

Elsewhere in its opposition, the Ute Tribe goes so far as asserting that because of its sovereign immunity, no one belongs in this case other than the Plaintiffs and the Secretary of the Treasury. This unsupported view of sovereign immunity would render Rule 24 a nullity in any case brought by a sovereign entity. Not surprisingly, the Ute Tribe cites no authority to justify doing away with Rule 24 in such circumstances. Finally, in opposing intervention as of right, the Ute Tribe effectively converts the minimal burden of showing inadequate representation into a presumption against intervention that can only be overcome by showing some sort of special circumstances. There is no support in this Circuit's precedents for this overly restrictive view of the inadequate representation requirement.

Accordingly, and for the reasons set forth below, the Court should grant ANC Association Intervenor-Defendants' motion to intervene in Case No. 1:20-cv-1070-APM, as it already has in the other two consolidated cases.

# ARGUMENT

I.  **The ANC Association Intervenor-Defendants Have Standing to Intervene.**[1]

The Ute Tribe does not contest two of the three elements for establishing associational standing. *See* ANC Association Intervenor-Defendants Mot. to Intervene at 15-17. Its opposition focuses only on the first element, whether "at least one member would have Article III standing in his or her own right." *Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 323 F.R.D. 54, 64 (D.D.C. 2017). The Ute Tribe's standing arguments fail because they rest on a mischaracterization of the ANC Association Intervenor-Defendants' motion and a misreading of the law.

The Ute Tribe claims the motions to intervene are based "primarily on claims that they have '638 contracts' to survey land that they own." Ute Tribe Opp. at 2. But the ANC Association Intervenor-Defendants' motion does not even mention 638 contracts in explaining that the ANC Association Intervenor-Defendants have standing to intervene because the standing of their members, like with the Ute Tribe itself, is self-evident. *See* ANC Association Intervenor-Defendants' Mot. to Intervene at 14-15. The Ute Tribe seeks to nullify the Secretary of Treasury's determination that the ANC Association Intervenor-Defendants' members are eligible for relief funds under Title V of the CARES Act. The economic harm that would result from

---

[1] Notably, in opposing the ANC Association Intervenor-Defendants' motion to intervene as of right under Rule 24(a), the Ute Tribe does not dispute any of the ANC Association Intervenor-Defendants' arguments explaining why they have legally protectable interests that would be impaired by the disposition of this case. *See* ANC Association Intervenor-Defendants' Mot. to Intervene at 7-11. That the Ute Tribe effectively concedes the ANC Association Intervenor-Defendants meet the interests prongs under Rule 24(a) shows that its challenge to the ANC Association Intervenor-Defendants' standing is meritless. *Akiachak Native Cmty. v. U.S. Dep"t of the Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008) ("The standing inquiry is repetitive in the case of intervention as of right because an intervenor who satisfies Rule 24(a) will also have Article III standing.") (citing *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003)).

such nullification is sufficient to establish injury-in-fact for each of the ANCs that comprise the ANC Association Intervenor-Defendants. *See id.* (quoting *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n,* 788 F.3d 312, 317 (D.C. Cir. 2015), for its holding that "[o]ur cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and then an unfavorable decision would remove the party's benefit"). Contrary to the Ute Tribe's inexplicable allegation (at 2), there is no need for the ANC Association Intervenor-Defendants to "now switch to an assertion that they have standing because they have money at stake in this case, based upon their interpretation of Title V of the CARES Act." This has been the ANC Association Intervenor-Defendants' argument all along.

Tellingly, the Ute Tribe does not even acknowledge the holding in *Crossroads* on which the ANC Association Intervenor-Defendants' standing argument is based. Instead, it argues that this case presents an "unusual fact scenario" because the "Court has reviewed [the proposed intervenors'] claim of interest already." Ute Tribe Opp. at 2. To state the obvious, the Ute Tribe fundamentally misapprehends the nature of the Court's findings on likelihood of success on the merits during the *preliminary* injunction stage. The initial review conducted for a preliminary injunction hardly amounts to a final decision on the merits of a claim, as this Court itself has indicated. *See* (May 7 Tr. at 18:25-19:11) ("I haven't prejudged the issue. . . Frankly, it doesn't make any sense to move directly to summary judgment briefing until I make a decision on the intervention.").

Apart from its erroneous understanding of the legal effect of the Court's findings during the preliminary injunction stage, the Ute Tribe's assertion that the ANC Association Intervenor-Defendants lack standing because they already lost on the merits would wrongly collapse the

standing inquiry into the merits. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015) ("[S]tanding 'often turns on the nature and source of the claim asserted,' but it 'in no way depends on the merits' of the claim."); *Grocery Mfrs. Ass'n v. E.P.A.*, 693 F.3d 169, 179 (D.C. Cir. 2012) ("[W]e must find Article III standing before addressing the merits of a case[.]"). Indeed, "[w]hether a plaintiff has a legally protected interest that supports standing does not require that he show he will succeed on the merits; if it did, every merits loss would amount to a lack of standing." *Estate of Boyland v. United States Dep't of Agric.*, 913 F.3d 117, 123 (D.C. Cir. 2019).

Finally, the Ute Tribe's reliance on *Cobell v. Jewell* falls flat, as *Cobell* and the cases cited therein are inapposite. In each of those cases, the prospective intervenors' interests in reimbursements were "too conjectural" and "would crystalize only if the Court resolved a threshold legal interpretation in a specific way." *Cobell v. Jewell*, 2016 WL 10704595 at *1 (D.D.C. Mar. 30, 2016). Here, in sharp contrast, the Secretary has already determined that the ANC Association Intervenor-Defendants' members are eligible for relief funds under Title V of the CARES Act, and those members are suffering injury each day that those funds are withheld by operation of this Court's preliminary injunction ruling.[2] Alaska Natives live in some of the most impoverished regions in the country; some communities still do not have running water or toilets. *See* Decl. of Michele Christiansen (ECF No. 45-17) ¶ 3; Decl. of Patrick McCarty ¶ 3 (ECF No. 45-18). And many Alaska Natives are either not enrolled to a federally recognized tribe or live outside of their enrolled village. *See* Decl. of Aaron M. Schutt (ECF No. 45-1) ¶ 12;

---

[2] Indeed, as confirmed by government counsel at the May 8, 2020 preliminary injunction hearing in *Agua Caliente* , No. 1:20-cv-01136-APM, the Secretary has announced that each ANC will, at minimum, receive $100,000. *See* U.S. DEP'T OF TREASURY, Coronavirus Relief Fund Allocations to Tribal Governments (May 5, 2020), at 3, available at https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Tribal-Allocation-Methodology.pdf.

5

Decl. of Sophie Minich (ECF No. 45-6) ¶ 6) *see* Decl. of Sheri Buretta (ECF No. 45-5) ¶ 3. As such, they do not receive health care or social services from such entities. *See* Schutt Decl. (ECF No. 45-1) ¶ 13); Minich Decl. (ECF No., 45-6) ¶ 6-7.

In Alaska, a considerable number of Alaska Natives rely on ANCs to provide numerous social services and community support more traditionally provided in the lower 48 states by tribes, including assistance with housing, food, and health care. *See, e.g.*, Decl. of Clifford Blair (ECF No. 45-10) ¶¶ 3-4; Minich Decl. (ECF No. 45-6) ¶¶ 7-13; Decl. of Nancy Andrew (ECF No. 45-8) ¶ 3; Decl. of Richard Glenn (ECF No. 45-3) ¶ 5. Without access to the coronavirus relief funds under Title V of the CARES Act, many of the ANC Association Intervenor-Defendants' members will be severely limited in their ability to provide these services, which are desperately needed by their members in the wake of the COVID-19 pandemic. *See*, *e.g.*, Christiansen Decl. (ECF No., 45-17) ¶¶ 3-8 & 11; Decl. of Robert Mills (ECF No. 45-19) ¶ 7; Glenn Decl. (ECF No. 45-3) ¶¶ 4-9 & 12; Buretta Decl. (ECF No. 45-5) ¶ 5; Decl. of Wayne Westlake (ECF No. 45-7) ¶ 5; Blair Decl. (ECF No. 45-10) ¶ 6. Fisheries in many Alaska villages also stand to be negatively impacted, leaving the local populations that depend on them for subsistence in need of assistance, which again will be lacking if their ANCs do not receive Title V funds. *See, e.g.*, Barlow Decl. (ECF No. 45-15) ¶ 3; Herndon Decl. (ECF No. 45-12) ¶ 5.

As their declarations illustrate, the ANC Association Intervenor-Defendants' members' interests in coronavirus relief funding have already crystallized and the injuries they are suffering are not conjectural in the least. The Court's preliminary injunction has necessarily worked to *enhance* those injuries because it prevents the immediate disbursement of much-needed relief for many Alaska Natives.

**II.     Permissive Intervention is Appropriate.**

The Court has already allowed the ANC Association Intervenor-Defendants to intervene in the two consolidated cases. There can be no serious doubt that the ANC Association Intervenor-Defendants satisfy the requirements for permissive intervention, and each of the Ute Tribe's arguments to the contrary are unpersuasive.

At the outset, the Ute Tribe completely ignores the ANC Association Intervenor-Defendants' argument regarding the Court's independent ground for subject matter jurisdiction. *See* ANC Association Intervenor-Defendants' Mot. to Intervene at 17 (citing 28 U.S.C. § 1367 and *Butte County, Cal. v. Hogen*, No. 08-519, 2008 WL 2410407, at *2 (D.D.C. June 16, 2008) (discussing federal supplemental jurisdiction statute)). Jurisdiction exists by virtue of the ANC Association Intervenor-Defendants defending against *the APA claim brought by plaintiffs*, and *Butte County* confirms that this satisfies the requirement that there be an independent ground for subject matter jurisdiction. Thus, the Ute Tribe's claim that each proposed intervenor provided only a "cursory and conclusory sentence that this Court has jurisdiction over their 'defenses' or their 'defenses and arguments'" to establish that the Court has an independent ground for subject matter jurisdiction is inapt.

The Ute Tribe's argument boils down to the notion that it has alleged that only the *Secretary* has violated a statute and that the ANC Association Intervenor-Defendants have not shown that they could be subject to a claim that they (or any of their members) are violating a federal statute. The D.C. Circuit, however, has "eschewed strict readings of the phrase 'claim or defense,' allowing intervention even in 'situations where the existence of any nominate claim or defense is difficult to find.'" *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Consequently, courts in this Circuit routinely allow entities to intervene, both as of right and permissively, to help defend governmental action despite the lack of any claim that the

proposed intervenors are themselves violating a statute. *See, e.g.*, *Washington All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 395 F. Supp. 3d 1, 15 (D.D.C. 2019) (allowing business organizations to intervene and defend a challenge to Department of Homeland Security's authority to implement certain employment regulations); *Safari Club Int'l v. Jewell*, No. CV 14-0670 (ABJ), 2015 WL 13651265, at *5 (D.D.C. Mar. 12, 2015) (allowing conservation groups to intervene and defend regulatory action taken by Fish and Wildlife Service); *Associated Dog Clubs of N.Y. State v. Vilsack*, 44 F. Supp. 3d 1, 2 (D.D.C. 2014) (allowing Humane Society to intervene and defend a challenge to Department of Agriculture rule regarding animal licensing requirements).

The Ute Tribe's sovereign immunity argument likewise misses the mark entirely. No counterclaim has been raised by any of the proposed intervenors, so any case addressing whether sovereign immunity shields a plaintiff from an intervenor's counterclaims is irrelevant. More to the point, the Ute Tribe cites nothing to support its peculiar assertion that it has only chosen to waive that immunity to litigate against the Secretary alone. To agree with the Ute Tribe would require this Court to find that sovereign immunity somehow precludes any entities from intervening under Rule 24 altogether in any case brought by a sovereign entity. There is no such restriction either in Rule 24 or case law interpreting it, and this Court should reject the Ute Tribe's attempts to rewrite the rule to its liking.

Finally, granting the ANC Association Intervenor-Defendants permissive intervention would not unduly delay or prejudice the Ute Tribe. Unsurprisingly, the Ute Tribe never actually states that the burden of responding to one additional brief on the merits—on the very timeline it previously asked this Court for, *see* Joint Status Report 3-4, ECF No. 44—would unduly delay or prejudice this case. It would not. For one thing, the Court has already directed all proposed

intervenors to file a single motion for summary judgment. Minute Order (May 13, 2020). And, in any event, *Center For Biological Diversity v. United States Environmental Protection Agency*, 274 F.R.D. 305, 305 (D.D.C. 2011), on which the Ute Tribe relies to try to show that the ANC Association Intervenor-Defendants' participation in this case would not be helpful, does not help the Ute Tribe. There, the putative intervenor sought to introduce matters that were not even at issue in the case. *Id.* at 312. Here, by contrast, the ANC Association Intervenor-Defendants seek to defend and bolster the Secretary's interpretation of the CARES Act. The ANC Association Intervenor-Defendants do not seek to introduce issues outside the scope of Plaintiffs' complaints, and nothing in the Ute Tribe's opposition suggests otherwise. And although the Ute Tribe baldly asserts (at 9) that the ANC Association Intervenor-Defendants would not add anything to the case, the fact that the Ute Tribe invites the ANC Association Intervenor-Defendants' participation as *amicus* as an alternative to intervention just confirms that the ANC Association Intervenor-Defendants would aid the Court's understanding in this case. *See* Ute Tribe Opp. at 9; *see also* ANC Association Intervenor-Defendants' Mot. to Intervene at 13 (explaining how the ANC Association Intervenor-Defendants' participation would provide this Court with an important perspective in this dispute).

### III. The ANC Association Intervenor-Defendants Meet the Requirements for Intervention as of Right.

As noted above, the only requirement for intervention as of right that the Ute Tribe disputes is whether the Secretary would adequately represent the ANC Association Intervenor-Defendants' interests in this case. The Ute Tribe's arguments depend on the false premise that there is a "same ultimate objectives" presumption of adequate representation in this case that can only be overcome by a showing of "special circumstances." Ute Tribe Opp. at 10-11. The Ute Tribe does not cite any authority from this Circuit recognizing that there is a "same ultimate

objectives" presumption in a case such as this where the proposed intervenors seek to defend a federal governmental action. Far from a presumption of adequate representation, the D.C. Circuit "ha[s] often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *see also Crossroads*, 788 F.3d at 321. This Court recognized as much, having noted that "our Circuit law is clear that . . . the private interests of private parties is a distinct interest that the government may not adequately be able to represent." Conf. Hr'g Tr. 23:5-13.[3]

Despite attempting to persuade this Court to recognize a "same ultimate objectives" presumption, the Ute Tribe inexplicably highlights a D.C. Circuit decision that directly refutes its claim that the Secretary adequately represents the ANC-Intervenor Defendants' interests based on the fact that they have the same ultimate objective in this case, *i.e.*, an order affirming the Secretary's legal interpretation. Ute Tribe Opp. at 13 (attempting to distinguish *Crossroads*, 788 F.3d at 321). In *Crossroads*, the D.C. Circuit reversed the district court's denial of intervention, where the denial was premised solely on a finding that "the [Federal Election] Commission could adequately represent Crossroads' interests because their interests were aligned in defending the legality of the dismissal order." *Crossroads*, 788 F.3d at 321. The D.C. Circuit criticized the district court for "treating general alignment as dispositive" and underscored that "the district court went against the weight of authority in this Circuit." *Id.*

As *Crossroads* and the cases discussed therein illustrate, the Ute Tribe seeks to turn the inadequate representation prong on its head. Courts in the D.C. Circuit and elsewhere have

---

[3] Indeed, among other things, the participation of the ANCs in this case will better inform the Court on matters the Secretary to date has not been in a position to articulate. *Compare* Mem. and Op. (ECF 36) (discussing the Secretary's inability to identify a 638 contract) (ECF 36) *with* Mallott Decl. (ECF 45-2) ¶ 7 (noting existence of 638 contract); Hegna Decl. (ECF 45-4) ¶ 4 (same); Buretta Decl. (ECF 45-5) ¶ 11 (same); Westlake Decl. (ECF 45-7) ¶ 15 (same); Minich Decl. (ECF 45-6) ¶¶ 6-10 (same); Schubert Decl. (ECF 45-23) ¶ 10 (same).

commonly found that the federal Government's interest generally is too broad to support a finding of adequate representation. For example, in *Trbovich*, there was a statute expressly obligating the defendant agency to serve the interests of the putative intervenor, and even that was not enough to show adequate representation. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538-39 (1972). The Supreme Court held that "even if the Secretary is performing his duties, broadly conceived, as well as can be expected," the proposed intervenor "may have a valid complaint about the performance of his lawyer," *i.e.*, the Secretary, with respect to protecting proposed-intervenor's narrower interests. *Id.* at 539. Numerous other courts have found inadequate representation on behalf of the government due to potential differences in litigation strategy or points of emphasis. *See, e.g.*, *Safari Club*, 2015 WL 13651265, at *5 ("While both defendants and movants support the Zimbabwe determination, their differing views on the role of sport-hunting in protecting wildlife may cause their interest to diverge during the course of this litigation such that defendants will not adequately represent movants' interests."); *Connecticut v. United States Dep't of the Interior*, 344 F. Supp. 3d 279, 305 (D.D.C. 2018) ("The fact that MGM and Federal Defendants presently agree on a litigation posture does not mean that Federal Defendants necessarily will adequately represent MGM's interests throughout this action, as Federal Defendants remain free to change their strategy during the course of litigation.") (internal brackets omitted).

      Finally, contrary to what the Ute Tribe appears to allege (at 12), there is no requirement that a proposed intervenor demonstrate an intent to raise claims or arguments that would not otherwise be raised, nor is there any requirement to show "collusion, nonfeasance, or adversity of interest." There is no requirement for the ANC Association Intervenor-Defendants to make any of these showings to demonstrate that the existing parties in this case do not adequately represent

their interests. The ANC Association Intervenor-Defendants have clearly made the showings necessary to satisfy the inadequate representation prong of the test for intervention as of right.

## CONCLUSION

For the foregoing reasons, this Court should grant the ANC Association Intervenor-Defendants intervention as of right under Federal Rule of Civil Procedure 24(a)(2), or alternatively, permissive intervention under Rule 24(b)(1)(B).

/s/ DRAFT
Daniel W. Wolff (D.C. Bar #486733)
David Y. Chung (D.C. Bar #500420)
Kirsten L. Nathanson (D.C. Bar #463992)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 624-2500
dwolff@crowell.com
dchung@crowell.com
knathanson@crowell.com

Christine V. Williams
J. Harrison Powell, II
OUTLOOK LAW, LLC
1016 West 6th Avenue, Suite 306
Anchorage, Alaska 99501
(907) 258-2200
christinewilliams@outlooklaw.com
harrisonpowell@outlooklaw.com

*Attorneys for Proposed Intervenor-Defendants Alaska Native Village Corporation Association, Inc. and Association of ANCSA Regional Corporation Presidents/CEO's, Inc.*