UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION<br>420 Howanut Road<br>P.O. Box 536<br>Oakville, WA  98568<br><br>TULALIP TRIBES<br>6406 Marine Drive<br>Tulalip, WA  98271<br><br>HOULTON BAND OF MALISEET INDIANS<br>88 Bell Road<br>Littleton, ME  04730<br><br>AKIAK NATIVE COMMUNITY<br>P.O. Box 52127<br>Akiak, AK  99552<br><br>ASA'CARSARMIUT TRIBE<br>P.O. Box 32249<br>Mountain Village, AK  99632<br><br>ALEUT COMMUNITY OF ST. PAUL ISLAND<br>2050 Venia Minor Road<br>P.O. Box 86<br>St. Paul Island, AK  99660<br><br>THE NAVAJO NATION<br>P.O. Box 9000<br>Window Rock, AZ 86515 | Case No.: 1:20-cv-01002-APM<br><br><br>[PROPOSED] SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1  QUINAULT INDIAN NATION
   1214 Aalis Drive
2  Taholah, WA 98587

3  PUEBLO OF PICURIS
   P.O. Box 127
4  Peñaso, NM 87533

5  ELK VALLEY RANCHERIA, CALIFORNIA
6  2332 Howland Hill Road
   Crescent City, CA 95531

7  SAN CARLOS APACHE TRIBE
8  P.O. Box 40
   16 San Carlos Avenue
9  San Carlos, AZ 85550

10              Plaintiffs,

11      v.

12  STEVEN MNUCHIN, SECRETARY, UNITED
    STATES DEPARTMENT OF THE TREASURY
13  1500 Pennsylvania Ave., N.W.
    Washington, D.C.  20220
14
              Defendant.
15

16      Plaintiffs Confederated Tribes of the Chehalis Reservation ("Chehalis"), Tulalip Tribes

17  ("Tulalip"), Houlton Band of Maliseet Indians ("Houlton Band"), Akiak Native Community

18  ("Akiak"), Asa'carsarmiut Tribe ("Asa'carsarmiut"), Aleut Community of St. Paul Island

19  ("ACSPI"), Navajo Nation ("Navajo Nation"), Quinault Indian Nation ("Quinault"), Pueblo of

20  Picuris ("Picuris"), Elk Valley Rancheria, California ("Elk Valley"), and San Carlos Apache

21  Tribe ("San Carlos Apache"), federally recognized Indian Tribal governments that provide

22  essential governmental services to their citizens, by and through counsel, state and allege as

23  follows:

24

25

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

**INTRODUCTION**

1.      Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), H.R. 748, 116th Cong. (2020), which President Trump signed into law on March 27, 2020, to respond to the devastating impacts of the COVID-19 pandemic.  Title V of the CARES Act, Section 5001, amends the Social Security Act by creating the Coronavirus Relief Fund ("Section 601") and appropriating $150,000,000,000 for fiscal year 2020 "payments to States, Tribal governments, and units of local government."  Section 601(a)(1).  Title V mandates that the Secretary of the United States Department of the Treasury "shall reserve . . . $8,000,000,000 of such amount for making payments to Tribal governments."  Section 601(a)(2)(B).

2.      There are 574 federally recognized Tribal governments that maintain a government-to-government relationship with the United States.  These include Indian tribes and nations in the lower-48 states, such as Chehalis, Tulalip, the Houlton Band, the Navajo Nation, Quinault, Picuris, Elk Valley, and San Carlos Apache, as well as native villages in Alaska, such as Akiak, Asa'carsarmiut and ACSPI.  Defendant Steven Mnuchin, Secretary of the U.S. Department of the Treasury ("Defendant" or "Secretary"), threatens to defy Congress's mandate by diverting Title V relief funds away from these sovereign Tribal governments to more than 230 for-profit corporations incorporated under the laws of the State of Alaska and their shareholders. These "state-chartered and state-regulated private business corporations," *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520, 534 (1998), which conduct business worldwide through dozens of subsidiaries, are not "Tribal governments" and are not eligible to receive Title V funds under the plain language of the CARES Act.

3.      The Secretary's designation and treatment of these private corporations as Tribal governments reduces the funds available for allocation and distribution to Plaintiffs, who are in

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 3

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

dire need of the funds to support the necessary and increased expenditures caused by the COVID-19 pandemic.  The Secretary is required to disburse all $8,000,000,000 by April 26, 2020, and Plaintiffs' injury is imminent.  Plaintiffs accordingly request that the Court preliminarily and permanently enjoin the Secretary to allocate and disburse all $8,000,000,000 reserved by Congress to federally recognized Tribal governments, exclusive of Alaska Native regional corporations and village corporations ("ANCs"), according to a reasonable formula consistent with the CARES Act.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1362.  Chehalis, Tulalip, the Houlton Band, Akiak, Asa'carsarmiut, ACSPI, Navajo Nation, Quinault, Picuris, Elk Valley, and San Carlos Apache maintain government-to-government relations with the United States and have governing bodies duly recognized by the Secretary of the U.S. Department of the Interior.  Plaintiffs assert claims arising under the Constitution and laws of the United States, including the Administrative Procedure Act, 5 U.S.C. §§ 701-706. The allegations of the Complaint give rise to an actual controversy within the meaning of 28 U.S.C. § 2201.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because the Defendant, the Secretary of the U.S. Department of the Treasury, is an officer of the United States and because a substantial part of the actions or omissions giving rise to the claims occurred in this District, a substantial part of the property that is the subject of the action is situated in this District, and the Secretary maintains his principal place of business in this District.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 4

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

**PLAINTIFFS**

6.     Plaintiff Confederated Tribes of the Chehalis Reservation is a federally recognized Indian tribal government whose governing body is recognized by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5463 (Jan. 30, 2020).  Chehalis exercises sovereign powers of self-governance and jurisdiction over the Chehalis Reservation, which was set aside by Executive Order in 1864 at the confluence of the Chehalis and Black Rivers and is located within the exterior boundaries of the State of Washington.  Chehalis brings this action on its own behalf and on behalf of its members.

7.     Plaintiff Tulalip Tribes is a federally recognized Indian tribal government organized pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 5123, whose governing body is recognized by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5465 (Jan. 30, 2020).  Tulalip exercises sovereign powers of self-governance and jurisdiction over the Tulalip Reservation, which was reserved in the 1855 Treaty of Point Elliot and is located within the exterior boundaries of the State of Washington.  Tulalip brings this action on its own behalf and on behalf of its members.

8.     Plaintiff Houlton Band of Maliseet Indians is a federally recognized Indian tribal government whose governing body is recognized by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5463 (Jan. 30, 2020).  The Houlton Band exercises sovereign powers of self-governance and jurisdiction over its trust lands located within the exterior boundaries of the State of Maine, lands which were purchased and taken into trust for

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 5

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1    the benefit of the Band following enactment of the Maine Indian Claims Settlement Act of 1980.

2    The Houlton Band brings this action on its own behalf and on behalf of its members.

3         9.      Plaintiff Akiak Native Community is a federally recognized Indian tribal

4    government located along the Kuskokwim River in Alaska whose governing body is recognized

5    by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To Receive

6    Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5466 (Jan. 30,

7    2020).  Akiak brings this action on its own behalf and on behalf of its members.

8         10.     Plaintiff Asa'carsarmiut Tribe is a federally recognized Indian tribal government

9    located along the Yukon River in Alaska whose governing body is recognized by the Secretary

10   of the Interior.  *See* Indian Entities Recognized by and Eligible To Receive Services From the

11   United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5466 (Jan. 30, 2020).

12   Asa'carsarmiut brings this action on its own behalf and on behalf of its members.

13        11.     Plaintiff Aleut Community of St. Paul Island is a federally recognized Indian

14   tribal government located on St. Paul Island in the Bering Sea in Alaska whose governing body

15   is recognized by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To

16   Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5467

17   (Jan. 30, 2020).  ACSPI brings this action on its own behalf and on behalf of its members.

18        12.     Plaintiff Navajo Nation is a federally recognized Indian tribal government with a

19   government-to-government relationship with the United States affirmed by the ratified Treaties

20   of 1849 and 1868, whose governing body is recognized by the Secretary of the Interior.  *See*

21   Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau

22   of Indian Affairs, 85 Fed. Reg. 5462-01, 5464 (Jan. 30, 2020).  The Treaty of 1868 created the

23   original Navajo Reservation, which through Executive Orders and acts of Congress expanded to

24

25

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 6

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

the current Navajo Reservation, several satellite bands, and numerous off-reservation trust parcels and allotments.  Navajo exercises sovereign powers of self-governance and jurisdiction over the Navajo Reservation.  Navajo Nation brings this action on its own behalf and on behalf of its members.

13.     Plaintiff Quinault Indian Nation is a federally recognized Indian tribal government whose governing body is recognized by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5465 (Jan. 30, 2020).  Quinault exercises sovereign powers of self-governance and jurisdiction over the Quinault Indian Reservation, which was reserved in the 1856 Treaty of Olympia and is located within the exterior boundaries of the State of Washington.  Quinault brings this action on its own behalf and on behalf of its members.

14.     Plaintiff Picuris is a federally recognized Indian tribal government whose governing body is recognized by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5465 (Jan. 30, 2020).  Picuris, through its Tribal Council, exercises sovereign powers of self-governance and jurisdiction over its pueblo grant lands ("restricted fee lands"), which were recognized by the Spanish government and were confirmed by Congress in 1858.  The Pueblo is located in a remote area entirely within the State of New Mexico, in Taos County. Picuris brings this action on its own behalf and on behalf of its members.

15.     Plaintiff Elk Valley Rancheria, California, is a federally recognized Indian tribal government whose governing body is recognized by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To Receive Services from the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462, 5463 (Jan. 30, 2020).  Elk Valley exercises sovereign powers

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 7

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

or self-governance and jurisdiction over the Elk Valley Rancheria (reservation), which was created pursuant to the Indian Office Appropriation Act of 1906 (34 Stat. 325, 333 (1906)), illegally terminated by the federal government pursuant to the California Rancheria Act, and restored through the *Hardwick v. United States* litigation.  Elk Valley brings this action on its own behalf and on behalf of its members.

16.     Plaintiff San Carlos Apache is a federally recognized Indian tribal government organized pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 476, whose governing body is recognized by the Secretary of the Interior.  *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-01, 5465 (Jan. 30, 2020).  San Carlos Apache exercises sovereign powers of self-governance and jurisdiction over the San Carlos Apache Reservation, which was created by the Act of June 7, 1897, ch. 2, 30 Stat. 62, 64, and Executive Orders of 1871 and 1872, and is located within the exterior boundaries of the State of Arizona.  San Carlos Apache brings this action on its own behalf and on behalf of its members.

## DEFENDANT

17.     Defendant Steven Mnuchin, the Secretary of the U.S. Department of the Treasury ("Treasury"), is charged by Congress with allocating and distributing relief funds to Tribal governments under Title V of the CARES Act and is sued in his official capacity.  The Secretary's actions violate the plain language of the Act and threaten Plaintiffs with imminent irreparable injury, as set forth below.

## THE CORONAVIRUS AND COVID-19 PANDEMIC

18.     In December 2019, a new coronavirus known as SARS-CoV-2 was detected in Wuhan, Hubei Province, People's Republic of China, causing outbreaks of the coronavirus disease COVID-19.  On March 11, 2020, the World Health Organization declared that the

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 8

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

COVID-19 outbreak can be characterized as a pandemic, stating its deep concern over both the alarming levels of spread and severity, and the alarming levels of inaction as the rates of infection continued to rise across the world.[1]

19.     On March 13, 2020, President Trump issued a Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, recognizing the preventative and proactive measures taken by all levels of government to slow the spread of the virus and treat those affected.[2]

20.     According to the Centers for Disease Control and Prevention (CDC), as of April 15, 2020, the United States has experienced 632,548 confirmed cases of COVID-19, and suffered 31,071 deaths.[3]  The CDC reports that "[t]he federal government is working closely with state, local, tribal, and territorial partners, as well as public health partners, to respond to this situation."[4]

21.     COVID-19 is causing devastating harm in Indian country.  By way of just a few examples, as of April 21, 2020, the Navajo Nation alone has reported 1,321 cases and nearly 50 deaths related to COVID-19.[5]  As of April 15, 2020, the Pueblo of Zuni has reported 33 cases.[6]

---

[1]  Tedros Adhanom Ghebreyesus, *WHO Director-General's opening remarks at the media briefing on COVID-19*, World Health Org. (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.
[2]  Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, The White House (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.
[3]  Ctrs. for Disease Control and Prevention, *Cases in U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited Apr. 16, 2020).
[4]  Ctrs. for Disease Control and Prevention, *Situation Summary*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html (last updated Apr. 7, 2020).
[5]  Navajo Epidemiology Center Coronavirus Response, *Navajo Nation COVID-19 Cases*, https://navajo-nation-coronavirus-response-ndoh-nec.hub.arcgis.com (last visited Apr. 21, 2020); Press Release, Office of the President and Vice President, The Navajo Nation, *124 New COVID-19 Cases Since Saturday, 4,579 Negative Results Reported* (Apr. 20, 2020), https://tinyurl.com/ya8swa9s.
[6]  Press Release, Pueblo of Zuni, *Public Notice to the Zuni Community* (Apr. 15, 2020), http://www.ashiwi.org/COVID19/DailyPSAUpdate4-15-20.pdf.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 9

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

And the Cherokee Nation has reported 28 cases with one fatality as of April 9.[7]  Native Americans suffer from disproportionately high rates of diabetes, cancer, heart disease, and asthma, which subject them to greater risk of fatal complications from COVID-19.

### THE IMPACT OF COVID-19 ON PLAINTIFFS' GOVERNMENTS AND CITIZENS

22.     In creating the Title V Tribal government stabilization fund, numerous members of Congress spoke directly to the tremendous hardships that COVID-19 has inflicted on federally recognized Tribal governments.  These governments have needed to engage in robust public health activities and to provide enhanced health care and other essential public services in response to the pandemic.  Simultaneously, the revenues from tribally-owned businesses that would normally support those governmental activities have evaporated overnight because Tribal governments have closed those businesses to help fight the virus and protect their communities, especially their elders and other high risk populations.

Chehalis

23.     The Chehalis Reservation comprises 5,420 acres of trust and fee lands located in southwest Washington State.  Chehalis has 979 members.

24.     Chehalis provides government services throughout the Chehalis Reservation, including, inter alia, public safety and police services; jail services; a civil and criminal court system; critical infrastructure, such as water treatment plants; maintenance services for government and community facilities; a health clinic; behavioral health and social services; natural resource protection and enforcement; planning and licensing; elder care programs; Early Head Start and Head Start programs; and community programs for youth and adults.

---

[7] Chris Polansky, *Following First Death, Cherokee Nation Braces for Increase in Coronavirus Cases*, Pub. Radio Tulsa (Apr. 9, 2020), https://www.publicradiotulsa.org/post/following-first-death-cherokee-nation-braces-increase-

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 10

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

25.     Chehalis business enterprises on the Chehalis Reservation include a casino, two hotels, the Great Wolf Lodge (an indoor water park), fast food franchises, and three gas stations with convenience stores.

26.     In response to the COVID-19 crisis, Chehalis has declared a State of Emergency and issued a shelter in place order.  Chehalis has placed non-essential employees on administrative leave and closed all of its enterprises, except the gas stations.  The closure of these enterprises has nearly eliminated Chehalis's tax base and other revenue streams, which fund essential government services and employee salaries.

27.     Chehalis has incurred substantial additional expenses to address the COVID-19 crisis.  Chehalis created an Incident Operation Center, which is tasked with providing assistance to Reservation residents and maintaining basic services such as, inter alia, clinic operations, meals for elders and children who normally eat at school, garbage and sanitation services, policing, and other basic services.  The emergency services provided by Chehalis during the State of Emergency are unbudgeted expenses.

28.     As of April 16, 2020, Chehalis's emergency efforts have prevented any COVID-19 cases on the Chehalis Reservation.

<u>Tulalip</u>

29.     The Tulalip Indian Reservation comprises 22,000 acres of trust and fee lands located north of Everett in Snohomish County, Washington.  Tulalip has 4,977 members, with 2,700 of those members residing on the Reservation.  The Reservation has approximately 15,000 residents in total, of which approximately 12,000 are non-Indians.

coronavirus-cases.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 11

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  

30.      Tulalip provides government services throughout the Tulalip Indian Reservation, including public safety and police services; a fire department; jail services through a contract with Snohomish County; a civil and criminal court system; critical infrastructure, such as water treatment plants; maintenance services for government and community facilities; a health clinic and various treatment programs; behavioral health and social services; natural resource protection and enforcement; planning and licensing; elder support programs; child care services; early childhood and other educational programs; child welfare services; tribal employment programs; housing services; emergency management; a domestic violence safe house; and licensing, permitting, and other regulatory services.

31.      Tulalip business enterprises on the Reservation include the Tulalip Resort Casino and Resort Hotel, Tulalip Amphitheatre, Quil Ceda Creek Casino, Tulalip Bingo, Tulalip Broadband, Salish Networks, the Tulalip Liquor & Smoke Shop, and two gas stations with associated convenience stores.  Tulalip also engages in extensive commercial leasing on the Reservation, including to national retailers such as Seattle Premium Outlets (Simon Property Group), Walmart, Home Depot, Cabela's, and numerous restaurants.

32.      Snohomish County had the first confirmed case of COVID-19 in the United States, just miles down Interstate-5 from the Tulalip Reservation.  In response to the COVID-19 crisis, Tulalip issued a Stay at Home Emergency Order, closed its government offices, and closed all of its enterprises, except Salish Networks and the gas stations.  The closure of these enterprises has almost entirely eliminated Tulalip's tax base and other revenue streams, which fund essential government services and employee salaries.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 12

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

33.     Tulalip has incurred substantial additional expenses to address the COVID-19 crisis. Tulalip has mobilized its emergency management team, increased COVID-19 testing capabilities, procured additional personal protective equipment (PPE), repurposed its health clinic for acute care, established a telemedicine service, converted tribal community buildings for quarantine of exposed individuals, purchased an additional ambulance, and increased spending on services like tribal elder checks and food distribution programs.  The emergency services provided by Tulalip during the COVID-19 crisis are unbudgeted expenses.

34.     On March 17, 2020, Tulalip had its first positive case of coronavirus.  As of April 16, 2020, Tulalip has had ten confirmed COVID-19 cases, eight of whom have recovered. Tulalip has suffered one COVID-19-related death thus far.

Houlton Band

35.     The Houlton Band has 1,835 tribal citizens and 1,444 acres of trust and fee lands located in Aroostook County in northeastern Maine.

36.     As of March 16, 2020, the Tribal Chief declared a Public Health Emergency on behalf of the Houlton Band of Maliseet Indians, which included a work-from-home order.  Since that time, the Houlton Band has been working to build its staff's capacity to effectively and efficiently work from home.  On March 16, 2020, the Band also closed two of its businesses, a campground and a roller-skating rink, which frequently host parties and weddings.  The Band does not have any large businesses (and has no gaming enterprise) that produce substantial revenue.

37.     The Houlton Band is located in a rural area, where its citizens already experience significant health disparities.  As a result of COVID-19, the Band has opened an emergency food

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 13

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

pantry to assist with food security needs, and has been helping to support citizens who have lost their jobs.  While experiencing revenue losses, the Band has also had to incur overtime costs for essential and Emergency Operation Center staff.  The COVID-19 pandemic has imposed substantial financial needs and hardships on the Houlton Band.

Akiak

38.     The Akiak Native Community has 535 enrolled tribal members and 29.16 acres of fee lands located in Akiak, Alaska.  Akiak is located along the Kuskokwim River and is only accessible by air and water.  On March 26, 2020, the Akiak Council declared a Public Health Emergency on behalf of tribal members, which included the closure of Akiak's small gaming operation and recreational activities.  This Public Health Emergency also closed the community to non-essential travel.

39.     The closest hospital with physicians, respiratory relief, and testing supplies is in Bethel, Alaska, which is approximately 30 air miles and 60 land miles away.  It is only accessible by air at this time.  While the community of Akiak has a local health clinic, the tribal community has gone for days at a time without any health care services due to the unavailability of the one trained health aide.

40.     As a result of the COVID-19 pandemic, Akiak has started a food bank to provide for families in need, has distributed cleaning supplies, is providing water and sewer service to those with disconnected service due to non-payment, and has identified sites to quarantine families.  Akiak depends on its small gaming operation for community funding, and its closure has created financial hardship for tribal government.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 14

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

Asa'carsarmiut

41.     The COVID-19 pandemic has increased the significant challenges facing the Asa'carsarmiut Tribe.  The Tribe must address the needs of its homeless families as well as of the many intergenerational families who live in overcrowded substandard housing, lacking water and sewer services.  These conditions create a danger to the entire community, and the Tribe is unable to obtain necessary sanitary products because there is no airline service currently.  Prior to the pandemic, the Tribe was working to construct a new tribal government office building, but those efforts have been halted, and the current building does not support proper social distancing work areas and is very difficult to sanitize.  While the Tribe has a small gaming office, it has been closed due to COVID-19 and the Tribe is unable to raise critical funds to meet its needs.

ACSPI

42.     The Aleut Community of Saint Paul Island is an isolated fishing community located in the middle of the Bering Sea. ACSPI has a total of 1,554 tribal members, with 95% of St. Paul's population being ACSPI tribal members.  The ACSPI, including its representative sovereign governing body the Tribal Government of St. Paul, its tribal businesses, and its tribal fishermen represent approximately two-thirds of St. Paul's local economy and jobs.  The ACSPI employs between 80-100 year-round staff.  Tribal fishermen employ an additional 75 residents.

43.     In the past four weeks, due to COVID-19 the community has lost its only passenger airline to bankruptcy, leaving ACSPI isolated and without any means of reaching the 800-mile distant Alaska mainland for necessary health care and other critical needs.  While the fishing market has collapsed, ACSPI has devoted almost every available Tribal government resource to responding to the pandemic threat.  The financial impacts on ACSPI and its tribal

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 15

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

members are immense, as it seeks to charter planes, establish quarantine facilities, and deal with

the sudden and severe economic dislocations from the COVID-19 pandemic.  On April 2, 2020,

the President of the Tribal Government declared a COVID-19 Public Health Disaster.

Navajo Nation

44.     The Navajo Nation has over 309,000 enrolled members, with over 154,000

residing within the Navajo Nation's sovereign territory.  The Navajo Nation's sovereign territory

extends over 15,958,151 acres of land over three states, and a total of 11 counties in Arizona,

New Mexico, and Utah.

45.     The Navajo Nation's government employs 5,403 employees in three branches,

Executive, Legislative, and Judicial.  The Navajo Nation has a police force, jails, eleven district

courts, a Supreme Court, the Navajo Environmental Protection Agency, and several Divisions,

including the Divisions of Community Development, Economic Development, Finance, General

Services, Human Resources, Public Safety, and Social Services, and the Departments of Dine

Education, Health, Justice, and Transportation.

46.     The Navajo Nation's 110 Chapters, local governing political subdivisions of the

Navajo Nation, independently employ 2,427 people at the local level.

47.     The Navajo Nation operates a number of wholly-owned enterprises, which

employ 5,341 employees, including Navajo Agricultural Products Industry, Navajo Arts and

Crafts Enterprise, Navajo Broadcast Enterprise, Navajo Engineering and Construction Authority,

Navajo Gaming Enterprise, and Navajo Hospitality Enterprise.

48.     Tribally-controlled schools and hospitals employ an additional 4,375 employees.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 16

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

49.     The Navajo Nation's Commission on Emergency Management, with the concurrence of Navajo Nation President Jonathan Nez, issued a Declaration of Emergency for COVID-19 on March 11, 2020.  President Nez issued two (2) Executive Orders closing the government and schools, and putting most government employees on paid administrative leave, on March 13, 2020, and March 31, 2020.  The Navajo Nation's Health Command Center has issued seven (7) Public Health Emergency Orders, between March 18 and April 17, 2020.  Those Emergency Orders require all Navajo Nation residents, including non-member residents, to stay at home, not congregate in groups, and only engage in essential activities, and further closed all non-essential businesses.  Those orders also required all visitors to leave the Navajo Nation and set weekly and weekend curfews.  The Navajo Nation Council further passed a Resolution barring all visitors and tourists from Navajo Nation-owned roads, and another Resolution appropriating four million dollars in emergency funds to the Department of Health for the COVID-19 response, which President Nez signed into law.

50.     To enforce these actions, the Navajo Nation has mobilized police officers, natural resource officers, health workers, epidemiologists, and other employees to set up a Health Command Center, checkpoints at entry points, and mobile health units to respond to outbreaks of COVID-19.  Government employees participated in mandatory FEMA Incident Command training, and have also assisted elderly and vulnerable residents to distribute masks, groceries, water, and other supplies.  Through these activities, the Navajo Nation has expended substantial resources.

51.     Despite these measures, the Navajo Nation has been ravaged by COVID-19, with 1,321 confirmed cases and nearly 50 deaths as of April 21, 2020.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 17

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

52.     While the Navajo Nation's government responds to the expanding COVID-19 crisis, its courts and jails must continue to function, and essential employees in various Divisions and Departments continue to go physically to work or to work from home to keep the government operating.

53.     The Navajo Nation submitted its Certification for Requested Tribal Data with the Department of the Treasury on April 17, 2020.

Quinault

54.     The Quinault Indian Reservation comprises over 207,000 acres of trust and fee lands located on the west coast of Washington in Grays Harbor and Jefferson Counties, Washington. Quinault has 3,227 members.  Quinault is located in a rural area, where its citizens already experience significant health disparities.

55.     Quinault provides government services throughout the Quinault Indian Reservation, including public safety and police services; a fire department; jail services; a civil and criminal court system; critical infrastructure, such as water treatment plants; maintenance services for government and community facilities; a health clinic and various treatment programs; behavioral health and social services; natural resource protection and enforcement; planning, permitting and licensing; elder support programs; early childhood and other educational programs; child welfare services; housing services; and licensing, permitting, and other regulatory services.

56.     Quinault business enterprises, both on and off the Reservation, include a casino, two hotels, a timber management company, two seafood companies, a grocery store/deli with a

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 18

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

gas station, two gas stations with associated convenience stores, a custom woodworking shop, a wholesale paper company, and two drive-through smoke shops.

57.    As of April 20, 2020, Grays Harbor County had 12 confirmed cases of COVID-19 and Jefferson County had 28 confirmed cases.  In response to the COVID-19 crisis, on March 13, 2020, Quinault declared a public health emergency and, on March 24, 2020, issued a stay-at-home emergency order, closed its government offices, furloughed approximately 40% of its work force and reduced the work week to 32 hours for the remaining essential employees, restricted access to the Reservation, and closed the Quinault Beach Resort & Casino and the Sweet Grass Hotel.  The closure of these enterprises has almost entirely eliminated Quinault's tax base and other revenue streams, which fund essential government services and employee salaries.

58.    Quinault has incurred substantial additional expenses to address the COVID-19 crisis. Quinault has mobilized its Incident Command Team, established a drive-through COVID-19 testing site and increased testing capabilities, established various communication platforms to keep the community informed, procured additional personal protective equipment (PPE), and increased spending on services like food distribution programs, cleaning, and supplies.  Quinault is in the process of converting the Sweet Grass Hotel into a non-congregate quarantine/isolation site.  The emergency services provided by Quinault during the COVID-19 crisis are unbudgeted expenses.

59.    As of April 21, 2020, Quinault's emergency efforts have prevented any COVID-19 cases on the Quinault Indian Reservation.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 19

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

60.     Quinault submitted the Certification for Requested Tribal Data through the Department of Treasury website necessary to participate in the disbursement of CARES Act Title V funding on April 17, 2020.

Picuris

61.     The Pueblo of Picuris has approximately 350 members. Picuris's lands comprise approximately 15,000 acres of restricted fee lands, plus another 200 acres of fee lands that the Pueblo is in the process of transferring into trust.

62.     Picuris is an extremely poor Pueblo, being situated in a remote, sparsely populated and mountainous area of Northern New Mexico.  It operates several programs through which it provides governmental services to its members, including a community health representative ("CHR") program, a senior center program, a diabetes program, and an Indian Child Welfare Act program.  The CHR program provides emergency and non-emergency transport to health care facilities.  There are no health care providers on site, and the nearest doctor or hospital is the Taos-Picuris Indian Health Services Service Unit, about 30 miles away.  The Service Unit provides only non-emergency outpatient services.  There is a small non-IHS hospital in Taos, and one in Espanola, about 35 miles away, but the closest major health care facility is in Santa Fe, approximately 70 miles away.  Thus, if Picuris is hit by COVID-19 cases, it will be hard-pressed to get infected persons to appropriate care.

63.     As with health care services, Picuris members must leave the Pueblo and travel 30 to 35 miles to shop for food, because there are no grocery stores in the community.  The Pueblo, through its senior center program continues to provide meals – for home delivery or pickup – to 52 elders.  Persons who must self-quarantine in their homes in the Pueblo will have extremely limited access to fresh food, and the Pueblo will likely need to step in to fill the gap in order to prevent the spread of the virus.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 20

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

64.     A significant portion of Picuris's population has underlying medical conditions that make them vulnerable to complications from COVID-19.  Chief among those conditions is diabetes.  It is estimated that 50-70% of Picuris members over 30 years old have diabetes.  The diabetes program provides much needed services to help members manage their diabetes; it offers exercise programs and cooking classes and operates a community garden.  Right now, however, the staff has been diverted from their regular functions to focus almost exclusively on seeking funding and supplies to prepare the Pueblo to respond to COVID-19.

65.     Other programs at the Pueblo that generally do not provide direct services to tribal members have also been diverted to responding to the needs of tribal members at this time.  For example, the Indian Child Welfare Act program has been diverted from normal operations and is providing formula, diapers, and wipes to families with small children.  The Forestry Department is providing wood to tribal members to heat their homes, as spring comes late to the mountainous region.

66.     Picuris business enterprises include a smoke shop/small liquor store, and a small class II gaming enterprise.  None of these businesses generates much revenue, but what little revenue they do provide helps fund essential governmental services and employee salaries.  The Pueblo is in the process of constructing a gas station and convenience store, that it hopes will improve its financial situation.  Unemployment among the Pueblo's members is estimated to be more than 20%.

67.     Picuris's federally chartered corporation, White Buffalo, Inc., is a general partner in a partnership that owns a small hotel in Santa Fe. Although Picuris members are extremely proud of this affiliation, this endeavor has not been a significant source of revenue or employment.  Now, with the hotel closed, this revenue stream is completely gone and is unlikely to return any time soon.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 21

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

68.     In response to the COVID-19 crisis, on March 17, 2020, Picuris declared a State of Emergency and imposed a stay-at-home order.  On April 4, 2020, Picuris declared a State of Major Disaster.  Picuris has closed the pueblo.  Its government offices remain open, as working remotely is not possible due to a lack of access to broadband Internet.  The Pueblo closed its gaming enterprise, and no longer receives any revenue from it.  The smoke shop remains open and now also offers basic foodstuff – milk, eggs, and bread, but the Pueblo's revenue from it has declined.

69.     As of April 21, 2020, Picuris's emergency efforts have prevented any COVID-19 cases on the pueblo.

70.     Picuris submitted its Certification for Requested Tribal Data with the Department of the Treasury on April 17, 2020.

Elk Valley

71.     Elk Valley has 85 enrolled members and approximately 425 acres of trust land located in Del Norte County, California in northwestern California, on the remote Pacific Coast in Northern California along the California-Oregon border approximately a seven-hour drive north of San Francisco.  The County is a land of wild beauty, where towering redwoods meet quiet, foggy beaches.  It's also a place of economic despair where nearly one-third of residents live below the poverty line.

72.     Elk Valley provides government services including, inter alia, civil court system; housing services; emergency management; domestic violence services; education services and scholarships; health insurance and funding for health services; Head Start pre-school; natural resource protection; planning and licensing; transportation services; elder care programs; and community programs for youth and elders.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 22

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

73.     Elk Valley's businesses include an off-reservation bowling alley and an on-reservation gaming operation.  In addition, Elk Valley owns and operates a Section 17 corporation for operation of a rock quarry and various agricultural and property leases.

74.     On March 17, 2020, the Elk Valley Tribal Council adopted Resolution 2020-13 entitled "Elk Valley Rancheria, California, Emergency Declaration for COVID-19" thereby declaring an emergency, requesting federal financial assistance, and instituting a work from home program for essential employees.  Concurrently, Elk Valley closed its off-reservation bowling alley and its on-reservation tribal government gaming operation, thereby effectively stopping its major source of revenue to provide governmental services.

75.     Elk Valley has approximately 180 employees and has continued to employ its team members based upon the promise of relief in the CARES Act and emergency assistance from FEMA.  While experiencing a cessation of revenue, Elk Valley has had to incur payroll and overtime costs related to mobilization of its emergency management team, continued employment of team members providing services, working remotely, or effectively placed on administrative leave with pay resulting in substantial financial burdens on Elk Valley.

76.     As of April 21, 2020, Elk Valley's emergency efforts have prevented any COVID-19 cases on the Elk Valley Rancheria.

77.     Elk Valley submitted the Certification for Requested Tribal Data through the Department of Treasury website portal necessary to participate in the disbursement of CARES Act Title V funding on April 13, 2020.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 23

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

San Carlos Apache

78.     The San Carlos Apache Indian Reservation comprises approximately 1.8 million acres of trust land located in eastern Arizona.  The San Carlos Apache has approximately 17,000 members.

79.     San Carlos Apache provides government services throughout the San Carlos Apache Indian Reservation, including, inter alia, public safety and police services; jail services; a civil and criminal court system; critical infrastructure, such as water treatment plants and distribution; maintenance services for government and community facilities; public health services; behavioral health and social services; forest and natural resource protection and enforcement; planning and licensing; elder care programs; Early Head Start and Head Start programs; and community programs for youth and adults.

80.     The Tribe has subsidiary economic development enterprises, including a College, a non-profit healthcare corporation that provides hospital-based services; fast food, gas stations, and convenience stores; a hardware store; a lumber mill; two casinos, a resort hotel and golf course; livestock associations; a sand and gravel company; and a telephone company.  San Carlos Apache's businesses fund its government services.

81.     In response to the COVID-19 crisis, San Carlos Apache declared a State of Emergency and took numerous mitigation measures to prevent the spread of the disease. San Carlos closed hunting and fishing on the reservation, its two casinos, hotel, golf course and restaurants, all of which eliminated revenues that provide the revenue stream for essential governmental services to the membership.  Essential businesses remain open on a reduced

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 24

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

schedule and with minimal staff.  All non-essential employees are on paid administrative leave

until May 1, 2020, at which time they will be furloughed.

82.     San Carlos Apache has taken numerous mitigation measures to prevent the spread

of COVID-19, including but not limited to putting curfews in place; banning large gatherings,

funerals, and wakes; closing roads; requiring commuter stickers for those who live off the

reservation and work on the Reservation; erecting tolling stations to assess the health of

commuters; banning travel; implementing temperature and health checks of essential workers

pre-work shift.  In the event of an outbreak, San Carlos Apache has identified alternate care sites

on the Reservation and applied for FEMA monies to provide on-going necessary emergency

services.

83.     San Carlos Apache has incurred substantial additional expenses in implementing

its mitigation measures and providing assistance to its Reservation residents, which includes, for

example, meals to elders and families with young children, community care packages, and

additional police safety checks on elders.

84.     As of April 20, 2020, San Carlos Apache's mitigation measures have prevented

any COVID-19 cases on the San Carlos Apache Reservation.

85.     The San Carlos Apache Tribe submitted the Certification for Requested Tribal

Data through the Department of Treasury website necessary to participate in the disbursement of

CARES Act Title V funding on April 17, 2020.

## CONGRESS APPROPRIATED CORONAVIRUS RELIEF FUNDS FOR TRIBAL GOVERNMENTS, WHICH DO NOT INCLUDE ALASKA NATIVE CORPORATIONS

86.     Title V of the CARES Act, Section 5001, amends the Social Security Act by

creating the Coronavirus Relief Fund ("Section 601") and appropriating $150,000,000,000 for

fiscal year 2020 "payments to States, Tribal governments, and units of local government."

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 25

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

Section 601(a)(1).  Title V mandates that the Secretary of the U.S. Department of the Treasury "shall reserve . . . $8,000,000,000 of such amount for making payments to Tribal governments." Section 601(a)(2)(B).  The Secretary is required to disburse these stabilization funds to Tribal governments "not later than 30 days after the date of enactment of this section," Section 601(b)(1), that is by April 26, 2020.

87.     States, Tribal governments, and units of local government must use Title V funds "to cover only those costs of the State, Tribal government, or unit of local government that— (1) are necessary expenditures incurred due to the public health emergency with respect to the Coronavirus Disease 2019 (COVID–19); (2) were not accounted for in the budget most recently approved as of the date of enactment of this section for the State or government; and (3) were incurred during the period that begins on March 1, 2020, and ends on December 30, 2020." Section 601(d).

88.     The portion of the $8,000,000,000 paid "to a Tribal government shall be the amount the Secretary shall determine, in consultation with the Secretary of the Interior and Indian Tribes, that is based on increased expenditures of each such Tribal government (or a tribally-owned entity of such Tribal government) relative to aggregate expenditures in fiscal year 2019 by the Tribal government (or tribally-owned entity) and determined in such manner as the Secretary determines appropriate to ensure that all amounts available under subsection (a)(2)(B) for fiscal year 2020 are distributed to Tribal governments."  Section 601(c)(7).

89.     Congress defined the three types of governments to whom the Secretary may pay relief funds.  "The term 'State' means the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, the Commonwealth of the Northern Mariana Islands, and American Samoa."  Section 601(g)(4).  "The term 'unit of

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 26

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

local government' means a county, municipality, town, township, village, parish, borough, or other unit of general government below the State level with a population that exceeds 500,000." Section 601(g)(2).

90.    Under Title V, "[t]he term 'Tribal government' means the *recognized governing body* of an Indian Tribe." Section 601(g)(5) (emphasis added). Title V further provides that "[t]he term 'Indian Tribe' has the meaning given that term in section 4(e) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 5304(e))." Section 601(g)(1).

91.    The Indian Self-Determination and Education Assistance Act (ISDEAA) defines "Indian tribe" as "any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act (85 Stat. 688) [43 U.S.C. § 1601 et seq.], *which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians*." 25 U.S.C. § 5304(e) (emphasis added). This definition includes "any Alaska Native village or regional or village corporation" *but only if* it "is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." *Id.*

92.    In the Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454 (108 Stat. 4791, 4792) ("Tribe List Act"), Congress required the Secretary of the U.S. Department of the Interior ("Interior") to prepare a list of exactly those entities: "The Secretary [of the Interior] shall publish in the Federal Register a list of all Indian tribes which the Secretary *recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians*." 25 U.S.C. § 5131(a) (emphasis added).

93.    As it does each year, on January 30, 2020, acting pursuant to the Tribe List Act, Interior published its list of 574 "Indian Entities Recognized by and Eligible To Receive Services

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 27

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

From the United States Bureau of Indian Affairs." 85 Fed. Reg. 5462-01 (Jan. 30, 2020) ("This notice is published pursuant to Section 104 of the Act of November 2, 1994 (Pub. L. 103-454; 108 Stat. 4791, 4792) . . . ."). These *recognized* entities include "Indian Tribal Entities Within The Contiguous 48 States Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs" as well as "Native Entities Within the State of Alaska Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs." *Id.* at 5462, 5466 (noting "We have continued the practice of listing the Alaska Native entities separately for the purpose of facilitating identification of them.").

94.     While this list of 574 federally recognized Indian tribes includes more than 200 Alaska Native villages, including Akiak, Asa'carsarmiut and ACSPI – who, like Chehalis, Tulalip, the Houlton Band, Navajo Nation, Quinault, Picuris, Elk Valley, and San Carlos Apache, maintain a government-to-government relationship with the United States – *it does not include* any Alaskan Native regional or village *corporations* ("ANCs"). Because ANCs are not "recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians," they are not "Indian Tribes" for purposes of Title V of the CARES Act. And because ANCs are not "Indian Tribes," they are not "Tribal governments," which Title V defines as "the recognized governing body of an Indian Tribe." Section 601(g)(5).

95.     ANCs thus are not eligible to receive any Coronavirus Relief Fund payments under Title V of the CARES Act. The statutory language is unambiguous, and the Secretary must carry out the intent of Congress by disbursing relief funds to federally recognized Tribal governments, exclusive of ANCs. The Secretary does not have discretion to disregard Congress's mandate by designating and treating ANCs as "Tribal governments."

96.     This makes perfect sense. ANCs are not governments, they are for-profit corporations incorporated under the laws of the State of Alaska, created pursuant to the Alaska

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 28

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1   Native Claims Settlement Act (ANCSA).  *See* 43 U.S.C. § 1602(g), (j) (defining Alaska Native

2   regional corporations and village corporations).  These private corporations, like other

3   corporations, are owned by their shareholders, including non-Indian shareholders.  And ANCs,

4   like other corporations, have access to funding opportunities under other sections of the CARES

5   Act, whereas Tribal governments are not eligible for all of those funding sources.  Congress is

6   clear that Title V relief funds are to supplement "*government*" budgets, not corporate coffers.

7   Section 601(d)(2).

8       97.    There are more than 230 separate ANCs, including 12 regional corporations and

9   approximately 225 village corporations.[8]  The 12 regional corporations alone have over 138,000

10  shareholders,[9] and own scores of corporate subsidiaries, operating in all 50 states and countries

11  across the globe.[10]  Their business holdings include everything from construction to pipeline

12  maintenance to real estate management to telecommunications to government and military

13  contracting to environmental remediation to facilities maintenance to catering and camp services

14  to venture capital and financial management to aerospace engineering.[11]

15      98.    Nor do ANCs have "recognized governing bodies."  A "recognized governing

16  body" pertains to a political body that serves the interests of "citizens," the "body politic," not

17  corporate shareholders.  ANCs are not governments, they do not govern, and they do not provide

---

[8]  Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited Apr. 15, 2020).  A 13th Regional Corporation was also formed for non-resident Alaska Natives, but the current status of the 13th Regional Corporation is unclear.  *See, e.g.*, ANCSA Reg'l Ass'n, *About the Alaska Native Claims Settlement Act*, https://ancsaregional.com/about-ancsa/ (last visited Apr. 15, 2020) (noting that the 13th Regional Corporation was involuntarily dissolved by the State of Alaska in 2013).
[9]  ANCSA Reg'l Ass'n, *Economic Impacts*, https://ancsaregional.com/economic-impacts/ (last visited Apr. 15, 2020).
[10]  Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited Apr. 15, 2020); NANA Reg'l Corp. Inc., *Overview* (May 17, 2017), https://www.nana.com/regional/shareholder-relations/Shareholder-Preference/files/2017_NRC_One_Sheet_OVR_0256_1024_Part1.pdf.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 29

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1   government services.  Instead, ANCs have corporate boards of directors and are owned by

2   private individuals.  *See* 43 U.S.C. § 1606(f) (providing that the management of regional

3   corporations "shall be vested in a board of directors"). Because ANCs do not have "recognized

4   governing bodies," they do not qualify as "Tribal governments" under Title V and are not

5   eligible for relief funds.

6        99.    Even if such boards could be characterized as "governing bodies," which they

7   cannot, these boards are not "recognized."  "Recognition" is an Indian law term of art that refers

8   to entities with a government-to-government relationship with the United States, which ANCs

9   simply do not have.  While the Secretary of the Interior recognizes Tribal governments, they do

10  not recognize as authoritative the so-called governing bodies of ANCs.  *See*, *e.g.*, Indian Entities

11  Recognized by and Eligible To Receive Services From the United States Bureau of Indian

12  Affairs, 85 Fed. Reg. 5462-01, 5462 (Jan. 30, 2020) (Interior stating that "The listed Indian

13  entities are acknowledged to have the immunities and privileges available to federally recognized

14  Indian Tribes by virtue of their government-to-government relationship with the United States as

15  well as the responsibilities, powers, limitations, and obligations of such Tribes.").  ANCs openly

16  represent in their own public-facing materials that they do not maintain a government-to-

17  government relationship with the United States.[12]

18

19

20

21

---

22  [11]  *See* Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last
    visited Apr. 15, 2020); Alaska Bus., *The 2019 Top 49ers*, https://digital.akbizmag.com/issue/october-2019/the-2019-
23  top-49ers/ (last visited Apr. 15, 2020).
    [12]  *See, e.g.*, ANCSA Reg'l Ass'n, *Overview of Entities Operating in the Twelve Regions*,
24  https://ancsaregional.com/overview-of-entities/ (last visited Apr. 15, 2020) (stating that both regional corporations
    and village corporations "do not possess a government-to-government relationship with the federal government").

25

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 30

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

## THE SECRETARY'S DESIGNATION OF ALASKA NATIVE CORPORATIONS AS TRIBAL GOVERNMENTS VIOLATES THE CARES ACT

100.    Congress mandated that the Secretary only allocate and distribute Title V relief funds to federally recognized Tribal governments.  Nevertheless, the Secretary has determined to treat ANCs as "Tribal governments" for purposes of making these payments.  The Secretary's action is in violation of the CARES Act.

101.    In order to determine the amounts that would be paid to each Tribal government under Title V, and as a condition of funding, the Secretary requested certain data from Tribal governments on or about Monday, April 13, 2020, publishing a Certification for Requested Tribal Data ("Certification") form on the Treasury website.[13]

102.    The Certification form is clear that the Secretary has determined to treat ANCs as Tribal governments for purposes of allocating and disbursing Title V Coronavirus Relief Funds. The Certification asks each funding applicant to state its "**Population:** Total number of *Indian Tribe* Citizens/Members/*Shareholders*, as of January 1, 2020" (italics added) and includes a Note defining "Indian Tribe" as "any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act (85 Stat. 688, 43 U.S.C. 1601 et seq.), which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians."

103.    The Certification also asks for "**Land Base:** Total number of land acres held by the Indian Tribe and any tribally-owned entity (to include entities in which the Indian Tribe maintains at least 51% ownership) as of January 1, 2020 (to include lands held in trust by the

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 31

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

United States, owned in restricted fee status, owned in fee, or selected pursuant to the Alaska

Native Claims Settlement Act)."  Lands "selected pursuant to the Alaska Native Claims

Settlement Act" are ANC-owned lands.  In *Alaska v. Native Village of Venetie Tribal*

*Government*, 522 U.S. 520 (1998), the Supreme Court explained that through ANCSA "Congress

authorized the transfer of . . . approximately 44 million acres of Alaska land to state-chartered

private business corporations," *id.* at 524, "without any restraints on alienation or significant use

restrictions, and with the goal of avoiding 'any permanent racially defined institutions, rights,

privileges, or obligations,'" *id.* at 532-33 (citations omitted).[14]  ANC-owned lands are *not* Indian

country.  *Id.*

104.    The Treasury website provides that "Governments eligible for payments must

provide payment information and required supporting documentation through the electronic

[Certification] form accessible below.  To ensure payments are made within the 30 day period

specified by the CARES Act, governments must submit completed payment materials not later

than 11:59 p.m. EDT on April 17, 2020.  Eligible local and Tribal governments that do not

provide required information—and in the case of a local government, the required certification—

by 11:59 p.m. EDT on April 17, 2020, may not receive any payment from the Fund."[15]

According to the website of the U.S. Department of the Interior, Indian Affairs, payments will be

paid no later than April 24, 2020, once the recipient has registered through the web portal.[16]

---

[13]  U.S. Dep't of the Treasury, *Submission Required for Receipt of Coronavirus Relief Fund Payments* (Apr. 13, 2020), https://forms.treasury.gov/caresact/stateandlocal.

[14]  *See also* ANCSA Reg'l Ass'n, *Overview of Entities Operating in the Twelve Regions*, https://ancsaregional.com/overview-of-entities/ (last visited Apr. 15, 2020) ("Through ANCSA, Alaska Native corporations hold title to roughly 44 million acres of land held in private corporate ownership.").

[15]  U.S. Dep't of the Treasury, *The CARES Act Provides Assistance for State and Local Governments*, https://home.treasury.gov/policy-issues/cares/state-and-local-governments (last visited Apr. 16, 2020).

[16]  Indian Affairs, U.S. Dep't of the Interior, *Indian Affairs to Assist Tribes Eligible to Receive Funding from Treasury Under the Coronavirus Relief Fund* (Apr. 14, 2020), https://www.bia.gov/as-ia/opa/online-press-release/indian-affairs-assist-tribes-eligible-receive-funding-treasury-under.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 32

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

105.     On April 23, 2020, Treasury posted a document to its website, titled "Coronavirus Relief Fund Payments to Tribal Governments April 23, 2020," confirming its decision to allocate and pay Title V funds to ANCs as Tribal Governments.  The document states "After consultation with the Department of the Interior, Treasury has concluded that Alaska Native regional and village corporations as defined in or established pursuant to the Alaska Native Claims Settlement Act are eligible to receive payments from the Fund in the amounts to be determined by the Secretary of the Treasury."  https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Payments-to-Tribal-Governments.pdf (footnote citing ANCSA omitted).

106.     The Secretary's designation of ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds is a final agency action for purposes of judicial review under 5 U.S.C. § 704.

## PLAINTIFFS HAVE STANDING TO PURSUE THIS ACTION

107.     The Secretary's action threatens Plaintiffs with imminent, irreparable injury. Each of the Plaintiffs has submitted its Certification with all required information to the Secretary to receive funds under Title V.  The Secretary must distribute these funds by April 26, 2020.

108.     Once the Secretary allocates and distributes the defined, limited pool of Title V Coronavirus Relief Funds to Tribal governments, inclusive of ANCs, Plaintiffs will lose any access or ability to receive the portion of that limited pool illegally appropriated to the ANCs. Plaintiffs are in dire need of these funds to cover the governmental costs resulting from the increased and necessary expenditures associated with the COVID-19 pandemic.  Plaintiffs' most recent budgets did not account for the tremendous financial strain that the pandemic would place on their governmental operations.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 33

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

109.    The Chehalis Tribe is providing a broad array of unbudgeted emergency services, including, for example, daily operation of its Incident Operation Center, COVID-19 clinical work, delivering meals to elders and children no longer able to attend school as a result of the State of Washington's school closure, increased cleaning and sanitation supplies, accounting services associated with tracking expenditures above normal budgeted activity, and planning for reopening of tribal government.  Chehalis has been forced to maintain all essential services for its citizens despite a reservation-wide shelter-in-place State of Emergency order and the closure of its tribal government and virtually all of its tribal enterprises.

110.    The Tulalip Tribes likewise face daunting governmental challenges as a result of the COVID-19 pandemic.  Tulalip has appointed a new Tulalip Health Officer, passed a Communicable Disease Ordinance and instituted isolation protocol, increased its COVID-19 testing capabilities so that tribal members can be tested at the Tulalip Health Clinic, transformed the Clinic into an acute health care clinic, directed the Clinic to obtain additional PPE, and purchased an additional ambulance for the Tulalip Fire District to meet emergency health needs. Tulalip has also borne increased costs for food distribution programs for children, elders and general welfare payments to assist tribal members in preparing to shelter-in-place by purchasing food and cleaning supplies, the payment of administrative leave and emergency leave for all employees.

111.    The Navajo Nation has expended significant amounts of money to provide resources to fight COVID-19, including appropriating four million dollars of previously unbudgeted funds to the Department of Health.  The Nation also has funded a Health Command Center and brought additional police and other law enforcement officers to work overtime to provide 24-7 coverage to enforce the Nation's stay-at-home and curfew orders.  The Nation also

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 34

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1    has approved Special Duty Pay for front-line responders to keep the Nation's government

2    functioning through the COVID-19 crisis.

3         112.    The Houlton Band, Akiak, Asa'carsarmiut, ACSPI, Quinault, Picuris, Elk Valley,

4    and San Carlos Apache have also incurred unbudgeted expenses as they respond to the COVID-

5    19 pandemic and protect the health and safety of their citizens.

6         113.    The increased and necessary expenditures by Plaintiffs and other federally

7    recognized Tribal governments resulting from the devastating impacts of the COVID-19

8    pandemic are exactly the costs that Congress intended the Coronavirus Relief Funds to cover.

9    Congress did not intend for these funds to be paid to private, for-profit corporations, who seek to

10   maximize financial return for their tens of thousands of individual shareholders.

11        114.    Two scenarios illustrate the injury caused by the Secretary's designation of ANCs

12   as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief

13   Funds.  Under the first scenario, if the Secretary allocates the $8,000,000,000 equally among all

14   574 federally recognized Tribal governments, each Tribal government would receive just under

15   $14,000,000.  If the Secretary includes the 237 ANCs, however, an equal allocation among all

16   811 entities would reduce that amount to less than $10,000,000, a difference of more than

17   $4,000,000 for each of the 574 federally recognized Tribal governments.  Plaintiffs would thus

18   lose approximately 30% of their properly allocated share of Title V funds through the illegal

19   appropriation of those funds to ANCs.

20        115.    Under the second scenario, the Secretary may allocate the $8,000,000,000

21   considering the population, land base, employees, and expenditures of each Tribal government.

22   The data requested by the Certification form indicates that the Secretary is considering this

23   approach.  Under this approach, the ANCs will have an outsized impact.  Together, the ANCs

24

25

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 35

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

own approximately 44 million acres of land.[17]  These landholdings are equivalent to the total

trust land base of *all federally recognized Tribal governments* in the lower-48 states combined.[18]

The 12 regional ANCs alone have over 138,000 shareholders, employ more than 43,000 people

worldwide, and generated more than $10.5 billion in revenues in 2018.[19]  Under any formula that

considers ANCs' corporate shareholders, land base, employees, and expenditures, the relief

funds available to federally recognized Tribal governments, including Chehalis, Tulalip, the

Houlton Band, Akiak, Asa'carsarmiut, ACSPI, Navajo Nation, Quinault, Picuris, Elk Valley, and

San Carlos Apache, will be vastly reduced, given their more modest population, land base, and

economic size.

116.    Under either scenario, because some ANCs are closely affiliated with federally

recognized Alaska Native villages, and many corporate shareholders are tribal members, some

entities in Alaska would effectively "double dip" (in some cases "triple dip") from the limited

pool of funds, with the same community receiving duplicative funding – one allotted to the

corporation(s), and the other directly to the federally recognized Tribal government.  On the

other hand, if the Secretary properly allocates and distributes Title V funds directly to federally

recognized Tribal governments only, Alaska Native villages may use their funds in partnership

with ANCs if they determine that is the most effective way to meet the needs of their

communities, consistent with the other requirements of the Act.

---

[17]  Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited Apr. 15, 2020).
[18]  Office of the Special Tr. for American Indians, U.S. Dep't of the Interior, *OST Statistics and Facts*, https://www.doi.gov/ost/about_us/Statistics-and-Facts (last visited Apr. 15, 2020) ("The Indian trust consists of 55 million surface acres and 57 million acres of subsurface minerals estates held in trust by the United States for American Indians, Indian tribes and Alaska Natives. Over 11 million acres belong to individual Indians and nearly 44 million acres are held in trust for Indian tribes.").
[19]  *See* Res. Dev. Council, *Alaska Native Corporations*, https://www.akrdc.org/alaska-native-corporations (last visited Apr. 15, 2020).

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 36

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

117.     This Court can redress Plaintiffs' injury caused by the Secretary by awarding declaratory and injunctive relief enjoining the Secretary not to treat ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds, and enjoining the Secretary to allocate and disburse all $8,000,000,000 reserved by Congress under Title V to federally recognized Tribal governments, exclusive of ANCs, according to a reasonable formula consistent with the CARES Act.

## COUNT I
### (Declaratory and Injunctive Relief under 5 U.S.C. § 706 and 28 U.S.C. §§ 2201-2202)

118.     Plaintiffs restate, reallege, and incorporate by reference all preceding paragraphs and allegations.

119.     The APA authorizes judicial review of federal agency actions.  5 U.S.C. § 702.

120.     The APA provides that the reviewing Court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).  It further provides that a reviewing Court shall hold unlawful and set aside agency action, findings, and conclusions found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2)(C).

121.     Under Title V of the CARES Act, Alaska Native regional corporations and village corporations do not meet the statutory definition of "Tribal government," do not meet the statutory definition of "Indian Tribe," and do not have a "recognized governing body."

122.     By designating ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds, the Secretary has acted in a manner that is arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of the

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 37

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

CARES Act and the APA, 5 U.S.C. §§ 701-706.  Plaintiffs are entitled to an order declaring the same.

123.    By designating ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds, the Secretary has acted in a manner that is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the CARES Act and the APA, 5 U.S.C. §§ 701-706.  Plaintiffs are entitled to an order declaring the same.

124.    Plaintiffs are entitled to a preliminary and permanent injunction enjoining the Secretary not to designate or otherwise treat ANCs as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds, and enjoining the Secretary to allocate and disburse all $8,000,000,000 reserved by Congress to federally recognized Tribal governments, exclusive of ANCs, according to a reasonable formula consistent with the CARES Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

125.    Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of Plaintiffs that the Secretary's designation of Alaska Native regional corporations and village corporations as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

126.    Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of Plaintiffs that the Secretary's designation of Alaska Native regional corporations and village corporations as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 38

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

Funds is in excess of the Secretary's statutory jurisdiction, authority, limitations, or short of statutory right.

127.    Preliminarily and permanently enjoin the Secretary not to designate or otherwise treat Alaska Native regional corporations and village corporations as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds, and enjoining the Secretary to allocate and disburse all $8,000,000,000 reserved by Congress to federally recognized Tribal governments, exclusive of Alaska Native regional corporations and village corporations, according to a reasonable formula consistent with the CARES Act.

128.    Vacate the Secretary's decision designating Alaska Native regional corporations and village corporations as Tribal governments for purposes of allocating and distributing Title V Coronavirus Relief Funds, and remand to Treasury to determine in an expedited manner an appropriate allocation to federally recognized Indian Tribes of all remaining Title V funds (i.e., those funds previously allocated to Alaska Native regional corporations and village corporations) that, as of the date of the Court's order, have not been paid to federally recognized Tribal governments.

129.    Award Plaintiffs their reasonable attorney's fees, costs and such other relief as the Court deems just and appropriate.

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 39

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1

Dated this 16th day of June, 2020.

2

3
                                            KANJI & KATZEN, P.L.L.C.

4
                                            /s/ Riyaz A. Kanji
                                            Riyaz A. Kanji, D.C. Bar # 455165
5                                           303 Detroit Street, Suite 400
                                            Ann Arbor, MI 48104
6                                           Telephone:  734-769-5400
                                            Email:  rkanji@kanjikatzen.com
7

8                                           /s/ Cory J. Albright
                                            Cory J. Albright, D.C. Bar Application Pending
9                                           WSBA # 31493
                                            811 1st Avenue, Suite 630
10                                          Seattle, WA  98104
                                            Telephone:  206-344-8100
11                                          Email:  calbright@kanjikatzen.com

12                                          *Co-Counsel for the Confederated Tribes of the
                                            Chehalis Reservation and the Tulalip Tribes*
13
                                            *Counsel for the Houlton Band of Maliseet Indians,
14                                          Akiak Native Community, Asa'carsarmiut Tribe
                                            and Aleut Community of St. Paul Island*
15

16                                          CONFEDERATED TRIBES OF THE CHEHALIS
                                            RESERVATION
17

18                                          /s/ Harold Chesnin
                                            Harold Chesnin, WSBA # 398
19                                          Lead Counsel for the Tribe
                                            420 Howanut Road
20                                          Oakville, WA  98568
                                            Telephone:  360-529-7465
21                                          Email:  hchesnin@chehalistribe.org

22
                                            TULALIP TRIBES
23

24                                          /s/ Lisa Koop Gunn
                                            Lisa Koop Gunn, WSBA # 37115
25

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 40

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

Tulalip Tribes, Office of the Reservation Attorney
6406 Marine Drive
Tulalip, WA  98271
Telephone:  360-716-4550
Email:  lkoop@tulaliptribes-nsn.gov


THE NAVAJO NATION

/s/ Paul Spruhan
Doreen McPaul, AZ Bar No. 021136
Attorney General
Paul Spruhan, D.C. Bar No. AZ0017
Assistant Attorney General
P.O. Box 2010
Window Rock, AZ 86515
Telephone:  (928) 871-6345
Email: dmcpaul@nndoj.org
Email: pspruhan@nndoj.org

ROTHSTEIN DONATELLI LLP

/s/ Eric Dahlstrom
Eric Dahlstrom, AZ Bar No. 004680
April E. Olson, AZ Bar No. 025281
1501 West Fountainhead, Suite 360
Tempe, AZ 85282
Telephone:  (480) 921-9296
Email: edahlstrom@rothsteinlaw.com
Email: aeolson@rothsteinlaw.com

Richard W. Hughes, NM Bar No. 1230
Donna M. Connolly, NM Bar No. 9202
Reed C. Bienvenu, NM Bar No. 147363
1215 Paseo de Peralta
Santa Fe, NM 87505
Telephone:  (505) 988-8004
Email:  rwhughes@rothsteinlaw.com
Email:  dconnolly@rothsteinlaw.com
Email:  rbienvenu@rothsteinlaw.com

*Counsel for Pueblo of Picuris*

*Co-Counsel for the Navajo Nation*

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 41

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

QUINAULT INDIAN NATION

/s/ Derril B. Jordan
Derril B. Jordan, D.C. Bar #470591
Quinault Office of the Attorney General
136 Cuitan Street
Taholah, WA  98587
Telephone:  360.276-8215, Ext. 1406
Email:  derril.jordan@quinault.org


ELK VALLEY RANCHERIA, CALIFORNIA

/s/ Bradley G. Bledsoe Downes
Bradley G. Bledsoe Downes, CA Bar No. 176291
General Counsel
2332 Howland Hill Road
Crescent City, CA 95531
Telephone: 707.465.2610
Email: bdownes@elk-valley.com


SAN CARLOS APACHE TRIBE

/s/ Alexander B. Ritchie
Alexander B. Ritchie, AZ Bar # 019579
Attorney General
San Carlos Apache Tribe
Post Office Box 40
16 San Carlos Avenue
San Carlos, AZ 85550
Telephone:  (928) 475-3344
Email:  alex.ritchie@scat-nsn.gov

[PROPOSED] SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
– Page 42

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100