UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, et al.<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN MNUCHIN, SECRETARY, UNITED STATES DEPARTMENT OF THE TREASURY<br><br>Defendant. | Case No.: 1:20-cv-01002-APM |
| CHEYENNE RIVER SIOUX TRIBE, et al.<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN MNUCHIN, SECRETARY, UNITED STATES DEPARTMENT OF THE TREASURY<br><br>Defendant. | Case No. 1:20-cv-01059-APM |
| UTE TRIBE OF THE UINTAH AND OURAY RESERVATION<br><br>Plaintiff,<br><br>v.<br><br>STEVEN MNUCHIN, SECRETARY, UNITED STATES DEPARTMENT OF THE TREASURY<br><br>Defendant. | Case No. 1:20-cv-01070-APM |

**CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL AND MEMORANDUM OF POINTS AND AUTHORITIES**

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 1

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MOTION**

Pursuant to Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1), Plaintiffs Confederated Tribes of the Chehalis Reservation, Tulalip Tribes, Houlton Band of Maliseet Indians, Akiak Native Community, Asa'carsarmiut Tribe, Aleut Community of St. Paul Island, Navajo Nation, Quinault Indian Nation, Pueblo of Picuris, Elk Valley Rancheria, California, and San Carlos Apache Tribe (collectively, "Confederated Tribes Plaintiffs" or "Plaintiffs"), move for an injunction pending appeal enjoining Defendant Steven Mnuchin, Secretary of the United States Department of the Treasury (the "Secretary") to withhold and not to disburse the Title V funds that the Secretary has presently allocated to Alaska Native regional corporations and village corporations ("ANCs").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The Court is well familiar with the factual background, statutes at issue, and history of the proceedings, *see* ECF Nos. 36, 97, and Plaintiffs will not burden it with duplicative discussion of those subjects here.  On June 26, 2020, the Court granted the Secretary's and Defendant-Intervenors' Motions for Summary Judgment.  ECF Nos. 97, 98.  In doing so, it dissolved the preliminary injunction it had entered in favor of Plaintiffs on April 27, 2020.  ECF No. 98.  As a result, the Court left the Secretary legally unconstrained to disburse Title V funds to ANCs at any time.  To preserve the status quo and prevent irreparable harm, the Confederated Tribes Plaintiffs respectfully request that the Court issue an injunction pending appeal.[1]

---

[1] Pursuant to Local Civil Rule 7(m), undersigned counsel has contacted opposing counsel in a good faith effort to determine whether there is any opposition to this motion.  Plaintiffs have also

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 62(d), Plaintiffs request an injunction

pending a forthcoming appeal of the Court's decision.  *See Loving v. IRS*, 920 F. Supp. 2d 108,

110 (D.D.C. 2013) (observing that the filing of a notice of appeal "is not a prerequisite for relief

under this Rule so long as there is reason to believe an appeal will be taken"); *Community Cause*

*v. Judicial Ethics Committee*, 473 F. Supp. 1251, 1254 (D.D.C. 1979) ("As Professors Wright

and Miller explain, [Rule 62] permits the issuance of an injunction whenever there is reason to

believe that an appeal will be taken, even before the actual notice of appeal has been filed.").[2]

To obtain injunctive relief pending appeal, Plaintiffs must show "the same four criteria as a

motion for preliminary injunction": (1) that they are "likely to succeed on the merits," (2) that

they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the

balance of equities tips in [their] favor," and (4) "that an injunction is in the public interest."

*Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 317 F. Supp. 3d 555, 560 (D.D.C. 2018)

(Mehta, J.) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

"Courts in this Circuit traditionally have analyzed these four factors on a 'sliding scale,'

whereby 'a strong showing on one factor could make up for a weaker showing on another.'"  *Id.*

---

requested that the Secretary voluntarily refrain from disbursing Title V funds to ANCs while
Plaintiffs pursue an expedited appeal.  In response, the Secretary has represented that the
Secretary is still in the process of determining his position regarding disbursements, and that no
payments will be disbursed to ANCs today (June 29, 2020).  The Secretary did not otherwise
state a position on this motion.  As of this filing, the Defendant-Intervenors have Plaintiffs'
request for a position under consideration.  Given the time exigencies involved, Plaintiffs are
filing these papers and will keep the Court apprised of any further developments in the parties'
respective positions.

[2] While the Court in *Loving* referred to Rule 62(c), that rule is now found in subsection (d).

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 3

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1   (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). "When considering a motion

2   under Rule 62[(d)], the 'sliding scale' framework allows a movant to remedy a lesser showing of

3   likelihood of success on the merits with a strong showing as to the other three factors, provided

4   that the issue on appeal presents a 'serious legal question' on the merits."  *Id.* (quoting *Wash.*

5   *Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)); *see*

6   *also Al–Anazi v. Bush*, 370 F. Supp. 2d 188, 193 n.5 (D.D.C. 2005) (noting that when evaluating

7   a request for an injunction pending appeal, "courts often recast the likelihood of success factor as

8   requiring only that the movant demonstrate a serious legal question on appeal where the balance

9   of harms strongly favors a stay").  "Thus, the court may grant Plaintiffs' motion and issue

10  an injunction pending appeal if a 'serious legal question is presented, ... little if any harm will

11  befall other interested persons or the public, and ... denial of the order would inflict irreparable

12  injury on [Plaintiffs]."  *Cigar Ass'n of Am.*, 317 F. Supp. 3d at 560-61 (quoting *Holiday*

13  *Tours,* 559 F.2d at 844).

14  **III.    ARGUMENT**

15          All four factors strongly favor the issuance of injunctive relief here.  While Plaintiffs do

16  not expect this Court to conclude that they are likely to succeed on the merits given that it has

17  just entered summary judgment against them, it is clear from the Court's own ruling that

18  Plaintiffs' arguments at the very least raise a serious legal question.  In addition, as the Court

19  previously concluded, ECF No. 36, Plaintiffs will suffer irreparable harm absent injunctive

20  relief:  they will forever be denied the opportunity to share in hundreds of millions of dollars that

21  Congress set aside for federally recognized Indian tribes to support their governments' ongoing

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 4

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1   efforts to protect and serve their citizens during the COVID-19 pandemic.  Finally, both the

2   balance of equities and the public interest favor an injunction pending appeal.

### A.  Plaintiffs Have at the Very Least Raised a Serious Legal Question, One on Which They Might Well Prevail in the D.C. Circuit

4       In entering its preliminary injunction in this case, this Court concluded that Plaintiffs had

5   shown a likelihood of success on their argument that ANCs are not tribal governments because

6   they are neither Indian tribes nor the recognized governing bodies of the same.  ECF No. 36 at

7   19-31.  At the summary judgment stage, the Court changed its view.  In doing so, the Court made

8   clear that "this case does not present easy, straightforward questions of statutory interpretation.

9   The court has wrestled with them."  ECF No. 97 at 14.  The Court went on to add that the

10  question whether ANCs qualify as "Indian Tribes" who are eligible for CARES Act funding is "a

11  close question."  *Id.* at 15.  By the Court's own telling, then, Plaintiffs have presented a serious

12  legal question that is a predicate for an injunction pending appeal.  *See Cigar Ass'n of Am.*, 317

13  F. Supp. 3d at 561 (granting injunction pending appeal where case presents "serious legal

14  questions going to the merits, so serious, substantial, difficult as to make them a fair ground of

15  litigation and thus for more deliberative investigation" (quoting *Population Inst. v. McPherson*,

16  797 F.2d 1062, 1078 (D.C. Cir. 1986)).

17      And if more is required, Plaintiffs respectfully submit that the Court had it right the first

18  time, and that there exists a substantial possibility that the "the D.C. Circuit might well disagree"

19  with this Court's ultimate resolution of the legal questions presented.  *Id.*  None of the reasons

20  advanced by the Court in its summary judgment opinion warrant its change in position.

21      *First*, the Court agreed with the Confederated Tribe Plaintiffs that "as a matter of pure

22  grammar, the eligibility clause contained in the definition of 'Indian Tribe' in ISDEAA and the

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 5

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

CARES Act applies to ANCs." ECF No. 97 at 14. Yet based on one canon alone—the rule against superfluity—the Court disregarded this "pure grammar"—and the series-qualifier canon, the last-antecedent rule, and the disjunctive canon that confirm it—to hold that the eligibility clause does *not* apply to ANCs. This approach is highly vulnerable on appeal. *Cf.* ECF No. 36 at 24 ("To be sure, courts must 'interpret a statute to give meaning to every clause and word.' But the court cannot ignore the clear grammatical construct of the ISDEAA definition, which applies the eligibility clause to every entity and group listed in the statute. The possibility that ANCs might not qualify under the eligibility clause is hardly fatal to carrying out Congress's purpose under ISDEAA" because "'Alaska Native village[s]' are also in the statute" and there are "229 federally recognized Alaska Native villages" that satisfy the eligibility clause. (internal citation omitted)).

In reaching its new conclusion, the Court suggested that Plaintiffs' position rests on the series-qualifier canon and asserted that the canon "can be overcome by other indicia of meaning" and "is subject to defeasance by other canons." ECF No. 97 at 16 (citing *Lockhart v. United States*, 136 S. Ct. 958, 963, 965 (2016) and *Jordan v. Maxim Healthcare Servs., Inc.*, 950 F.3d 724, 745 (10th Cir. 2020)). But Plaintiffs' position cannot be so readily cabined. It rests at bottom on what the Secretary, the Plaintiffs and the Court all agree is the ordinary grammatical construction of the Indian tribe definition. The series qualifier canon simply confirms the meaning that plainly inheres in the text.

Moreover, the Court failed to note that in *Lockhart* and *Jordan* the courts were debating between two grammatical constructs: one suggested by the series-qualifier canon and the other consistent with the last-antecedent canon. *See Lockhart*, 136 S. Ct. at 963, 965 (also discussing

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 6

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

other Supreme Court cases debating between a series-qualifier construction and a last-antecedent construction); *Jordan*, 950 F.3d at 745-48.[3] *See also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 150-151 (2012) (discussing how the series-qualifier canon is "subject to defeasance by other canons" by contrasting it to a last-antecedent construction).  The courts used other indicia of meaning, including the rule against superfluity, to indicate which of these two possible grammatical constructions—a series-qualifier construction or a last-antecedent construction—was intended.  *See Lockhart*, 136 S. Ct. at 963, 965; *Jordan*, 950 F.3d at 745-48 (also discussing *Lockhart* and stating that "at bottom, the Court reminded the parties that whether a modifier applies to each word in a list or only to the last word is a 'fundamentally contextual question[ ].'" (quoting *Lockhart*, 136 S. Ct. at 965)).

But in neither case did the courts *completely ignore* all grammatical constructions in favor of the rule against superfluity alone.  Indeed, the last-antecedent construction the Court adopted in *Lockhart* still resulted in superfluity.  *See Lockhart*, 136 S. Ct. at 966 ("We recognize that this interpretation does not eliminate all superfluity ….  *See United States v. Atlantic Research Corp.*, 551 U.S. 128, 137 (2007) ('[O]ur hesitancy to construe statutes to render language superfluous does not require us to avoid surplusage at all costs.  It is appropriate to tolerate a degree of surplusage').").  Plaintiffs simply are not aware of any case where a court has done what the Court did here:  rely on the rule against superfluity to disregard both possible grammatical constructions of a restricting clause.

---

[3] Due to a Colorado statute declaring that the Colorado General Assembly does not use the last-antecedent canon, the court in *Jordan* did not rely on the last-antecedent canon by name when reaching its holding, but it did adopt a reading consistent with the last-antecedent canon over the series-qualifier canon.  *See Jordan*, 950 F.3d at 747-48.

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 7

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

By the Court's own admission, its new approach "gives rise to an odd grammatical result…. [This] reading … creates the strange result that the eligibility clause modifies the first in the series of three nouns that comprises the Alaska clause [Alaska Native villages], but not the last two [regional and village ANCs]. This is an unnatural reading to be sure." ECF No. 97 at 20. But an unnatural reading is precisely what the courts are meant to avoid when engaged in textual construction. Even leaving aside Plaintiffs' arguments as to why their position does not produce superfluity, the rule against surplusage simply cannot "bear the weight," *Lockhart*, 136 S. Ct. at 965, the Court has placed on it, and Plaintiffs respectfully suggest that serious doubt exists as to whether the D.C. Circuit will sustain that reliance on appeal.

**Second**, the Court's holding that the rule against superfluities outweighs the grammatical construction (and all other canons of construction) rests on a faulty assumption: that the 1975 Congress understood at the time it enacted ISDEAA that no ANC then satisfied the clause and that no ANC would ever be able to satisfy that clause. *See* ECF No. 97 at 22. The Court cites no evidence to support this assumption. And it is one that necessarily implies that the submissions made by ANCs to the Interior Department in 1977 that they *did* satisfy the eligibility clause, ECF No. 87 at 21, and the Interior Department's statement to the same effect in 1988, *id.* at 24; ECF No. 77 at 39, were disingenuous.

**Third**, the Secretary's position is not entitled to *Skidmore* deference. "[T]he weight a court affords to an agency interpretation . . . 'depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" ECF No. 97 at 23-24 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The Court does not point

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 8

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

to any interpretation by the Treasury Department, which is the administering agency here. Rather, the Court cites the 1976 memorandum by Assistant Solicitor for Indian Affairs, Charles M. Soller ("Soller memorandum") regarding the ISDEAA definition.  ECF No. 97 at 24-25 (citing Soller memorandum at ECF No. 90-1, at 610-13).  But, as the Confederated Tribes Plaintiffs have explained, not only is the single-paragraph discussion contained in the Soller memorandum bereft of any citation to authority, it also rests on factual considerations that are no longer relevant.  ECF No. 87 at 18-19.  Further, the Soller memorandum adopted an interpretation—that the eligibility clause also does not apply to "Alaska Native villages"—that the Secretary rejects today.   *See* ECF No. 97 at 25 n.10 (discussing but disregarding the same). The memorandum, in short, hardly qualifies as the type of "thorough," valid, consistent or persuasive interpretation entitled to *Skidmore* deference.[4]

**Fourth**, ANCs are not "Tribal governments," and they do not have "recognized governing bodies."  Citing the wide body of case law holding that the term "recognized" as used in Indian law statutes is a legal term of art indicating that a government-to-government relationship has been established between a tribal government and the federal government, the Court previously held that the term "recognized" as used in the CARES Act definition of "Tribal government" matches this term of art status.  ECF No. 36 at 21-22, 30-31 ("[G]iven the history and significance of the term 'recognition' in Indian law, the court doubts that Congress would have used the term if it did not mean to equate it with federal recognition.").

---

[4] The 1977 Commission Report cited by the Secretary and the Court, ECF No. 97 at 26 n.11, also contains obvious legal errors.  *See* ECF No. 87 at 19-20 (discussing same).  None of these materials can substitute for or override the clear grammatical construct of the Indian tribe definition.

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 9

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

Setting aside this wide body of case law, the Court backed its way into the opposite conclusion by pointing to the fact that the phrase "recognized governing body" *also* appears in the ISDEAA definition of "tribal organization," which defines the universe of entities eligible to enter 638 contracts.  The Court noted, correctly, that ISDEAA defines tribal organizations in two ways, ECF No. 97 at 29, but erroneously concluded that ANCs cannot fall under the second definition.[5]  The Court reasoned that as a corporate entity, an ANC cannot be a "legally established organization of Indians which is controlled, sanctioned, or chartered by [the] governing body," 25 U.S.C. § 5304(l), of an Indian tribe.  ECF No. 97 at 31.  But state-chartered corporations that are independent of tribes yet have a strong Indian character may be "sanctioned" by federally recognized Indian tribes to enter into ISDEAA contracts.  *See, e.g.*, *Redman v. St. Stephens Indian School Educational Association, Inc.*, Civil Action No. 05-CV-110J, 2006 WL 8433204, at *2-4 (D. Wyo. Jan. 13, 2006) (discussing how the recognized governing body of a federally recognized Indian tribe authorized a state-chartered corporation, whose shareholders comprised all reservation residents, including non-Indians, to contract with the Bureau of Indian Affairs under ISDEAA for operation of a school); *see also* 25 C.F.R. § 900.8(b).  Thus, there is nothing odd about the fact that ANCs are authorized to enter 638 contracts under the second ISDEAA definition of "tribal organization."

In addition, in the limited circumstances that the 1981 IHS Guidelines permit ANC Boards of Directors to qualify under the first ISDEAA definition of "tribal organization," it is as the governing body of an *Alaska Native village*.  46 FR 27178-02 (1981).  That is, the agency

---

[5] Based on this incorrect conclusion, the Court further concluded that, ANCs must fall under the first definition of "tribal organization," and thus must have "recognized governing bodies" for

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 10

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

treats the ANC's Board of Directors as the governing body of a specific federally recognized tribe. This treatment does not transform the ANC's Board of Directors itself into a "recognized governing body," rather, the ANC Board of Directors status rests on the *Alaska Native village's* underlying recognition. The term "recognized" thus still maintains its term of status.

Further, the Court placed undue weight on the ISDEAA definition of "tribal organization" and ignored the operative term at issue here: "Tribal *government*." "[T]he word being defined is the most significant element of the definition's context. The normal sense of that word and its associations bear significantly on the meaning of ambiguous words or phrases in the definition." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 232 (2012). The CARES Act Congress did not use the term "Tribal organization"; it used the term "Tribal *government*." As the Court previously stated, the term "'government' is commonly understood to refer to '[t]he sovereign power in a country or state' or 'organization through which a body of people exercises political authority; the machinery by which sovereign power is expressed.'" ECF No. 36 at 22-23 (discussing also how "Congress placed monies for 'Tribal governments' in the same title of the CARES Act as funding for other types of 'governments,'" including States and units of local government, *noscitur a sociis* and how "[t]he term 'Tribal government' must be read in this context" as well as the common understanding of the term "government"). Here, the common understanding of "government" militates heavily in favor of the same conclusion dictated by the term of art status of its definition. The purpose of the $8 billion in Title V is to provide Tribal governments emergency funding relief to enable them to provide the essential governmental services necessary to help their citizens survive a devastating

purposes of both ISDEAA and the CARES Act.

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 11

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

pandemic.  ANCs are not governments; they are not acting as governments in the face of this pandemic; and they do not act as Indian tribal "governments" under ISDEAA.

Taken individually and collectively, the identified vulnerabilities in the Court's summary judgment conclusion suggest that, at the very least, serious legal questions would exist on appeal, such that the Court should maintain the status quo pending the resolution of that appeal.

**B.  Absent Immediate Injunctive Relief, Plaintiffs Will Suffer Irreparable Harm**

If denied an injunction pending appeal, the Confederated Tribes Plaintiffs "will incur an injury that is 'certain' and 'imminent.'"  *Cigar Ass'n of Am. v. U.S. Food & Drug Admin*., 317 F. Supp. 3d at 562.  The Secretary has allocated $162.3 million in tranche-one Title V funds to ANCs.  *See* ECF No. 97 at 7.  The Secretary has refused multiple requests from Plaintiffs to disclose the amount of tranche-two funds he allocated to ANCs, but news reports indicate that ANCs can expect to receive approximately $533 million.  *CARES Act Litigation: Chehalis Confederated Tribes of the Chehalis Reservation v. Mnuchin*, Indianz.com (June 25, 2020), https://www.indianz.com/covid19/?p=6662.

If the Secretary is not enjoined pending appeal, no legal obstacle will preclude the Secretary from distributing these funds to ANCs, and Plaintiffs will have no ability to recoup them.  The case will likely be mooted, and Plaintiffs will have been denied the right to appellate review of the serious and important questions presented.  *See, e.g.*, *City of Houston, Tex. v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1424, 1426 (D.C. Cir. 1994) ("It is a well-settled matter of constitutional law that when an appropriation has lapsed or has been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation…. [O]nce the relevant funds have been obligated, a court cannot reach them in order to award relief.");

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 12

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

*Ambach v. Bell*, 686 F.2d 974, 986 (D.C. Cir. 1982) ("Once the chapter 1 funds are distributed to the States and obligated, they cannot be recouped.  It will be impossible in the absence of a preliminary injunction to award the plaintiffs the relief they request if they should eventually prevail on the merits.").  And they will have been denied access to a substantial portion of the funds that they and other tribal governments so desperately need in their ongoing efforts to combat the pandemic that continues to menace their communities.  ECF No. 36 at 15-18; *Agua Caliente Band of Cahuilla Indians v. Mnuchin*, Case No. 20-cv-01136-APM, 2020 WL 3250701, at *3 (D.D.C. June 15, 2020) (Mehta, J.) (finding that tribes would be irreparably harmed by Secretary's withholding of $679 million in Title V funds); *see also*, *e.g.*, ECF No. 3 at 29-35; ECF No. 30 at 21-24; ECF No. 77 at 5-7.

The Confederated Tribes Plaintiffs do not believe that this Court intended to fashion itself as the court of last resort in this case, and an injunction pending appeal would ward off the irreparable harm that would result were the Secretary to short-circuit the appellate process by releasing the funds in dispute absent appellate review.

### C.   **The Balance of Equities and Public Interest Favor an Injunction**

Where the Federal government is the opposing party, the remaining two factors of the injunctive relief test—balance of equities and public interest—merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016).  "The balance of the equities weighs the harm to [the Secretary] if there is no injunction against the harm to the [Plaintiffs] if there is."  *Pursuing Am's Greatness*, 831 F.3d at 511 (citing *Winter*, 555 U.S. at 25-26).  "And in this case, the [Secretary's] harm and the public interest are one and the same, because the government's interest *is* the public interest."  *Id.*

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 13

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

(citing *Nken*, 556 U.S. at 435).  "There is generally no public interest in the perpetuation of unlawful agency action.  To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters*, 838 F.3d at 12 (internal citations omitted).  While district courts ordinarily enjoy broad discretion to balance the equities and weigh the public interest, this discretion accordingly "is bounded" when the activity in question contravenes a statutory directive.  *Gordon v. Holder*, 721 F.3d 638, 652 (D.C. Cir. 2013).

An injunction preventing the unlawful disbursement of CARES Act funds to ANCs is in the public's interest—and therefore in the Secretary's interest— as it will ensure that Congress's public policy choices are properly enforced.  In responding to the havoc wrought by COVID-19 on every facet of American life, Congress made policy judgments regarding the most appropriate way to allocate the limited relief funding available.  Allowing the Secretary to disburse relief funds to unauthorized entities contravenes Congress's plan by reducing the amount of funding available to Tribal governments to respond to the severe health, safety, and financial crises currently afflicting their communities.  "Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is . . . for the courts to enforce them when enforcement is sought.  Courts of equity cannot, in their discretion, reject the balance that Congress has struck in a statute."  *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001) (quoting *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 194-95 (1978) (internal quotes omitted)).  Because Congress has not authorized the Secretary to disburse Title V funds to ANCs, the public's interest in requiring federal agencies to abide by the will of Congress and its statutory directives counsels heavily in favor of the issuance of injunctive relief.

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 14

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

Nor do these factors weigh differently as a result of the ANCs' involvement in this matter.  While the ANCs have alleged that they are undertaking certain corporate actions as a result of the COVID-19 pandemic, they are doing so as corporate actors, not governmental ones.  The ANCs do not dispute in this action that they are not governments, and thus do not provide government services to any citizenry.  Instead, they are for-profit corporations.  To the extent these corporations may be responding to the pandemic in their communities, they may draw upon the billions of dollars of corporate funds available to them in the same way that many private corporations are doing throughout the United States.  *See*, *e.g.*, ECF No. 36 at 5 (discussing economic size of ANCs).  A *delay* in the potential receipt of these funds by ANCs would not result in any irreparable harm.  In stark contrast, absent an injunction, the Plaintiff Tribes will *forever* lose the opportunity to receive and spend these funds on the governmental services that Congress intended.

## IV.  CONCLUSION

For the foregoing reasons, the Confederated Tribes Plaintiffs respectfully request that the Court grant their motion for an injunction pending appeal.

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 15

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1    Dated this 29th day of June, 2020.

2

3                                    KANJI & KATZEN, P.L.L.C.

4                                    /s/ Riyaz A. Kanji
                                     Riyaz A. Kanji, D.C. Bar # 455165
5                                    303 Detroit Street, Suite 400
                                     Ann Arbor, MI 48104
6                                    Telephone:  734-769-5400
                                     Email:  rkanji@kanjikatzen.com
7
                                     /s/ Cory J. Albright
8                                    Cory J. Albright, D.C. Bar # WA0013
                                     811 1st Avenue, Suite 630
9                                    Seattle, WA  98104
                                     Telephone:  206-344-8100
10                                   Email:  calbright@kanjikatzen.com

11                                   *Co-Counsel for the Confederated Tribes of the
                                     Chehalis Reservation and the Tulalip Tribes*
12
                                     *Counsel for the Houlton Band of Maliseet Indians,
13                                   Akiak Native Community, Asa'carsarmiut Tribe
                                     and Aleut Community of St. Paul Island*
14

15                                   CONFEDERATED TRIBES OF THE CHEHALIS
                                     RESERVATION
16
                                     /s/ Harold Chesnin
17                                   Harold Chesnin, WSBA # 398
                                     Lead Counsel for the Tribe
18                                   420 Howanut Road
                                     Oakville, WA  98568
19                                   Telephone:  360-529-7465
                                     Email:  hchesnin@chehalistribe.org
20

21                                   TULALIP TRIBES
22
                                     /s/ Lisa Koop Gunn
23                                   Lisa Koop Gunn, WSBA # 37115
                                     Tulalip Tribes, Office of the Reservation Attorney
24

25

6406 Marine Drive
Tulalip, WA  98271
Telephone:  360-716-4550
Email:  lkoop@tulaliptribes-nsn.gov


THE NAVAJO NATION

/s/ Paul Spruhan
Doreen McPaul, AZ Bar No. 021136
Attorney General
Paul Spruhan, D.C. Bar No. AZ0017
Assistant Attorney General
P.O. Box 2010
Window Rock, AZ 86515
Telephone:  (928) 871-6345
Email: dmcpaul@nndoj.org
Email: pspruhan@nndoj.org


ROTHSTEIN DONATELLI LLP

/s/ Eric Dahlstrom
Eric Dahlstrom, AZ Bar No. 004680
April E. Olson, AZ Bar No. 025281
1501 West Fountainhead, Suite 360
Tempe, AZ 85282
Telephone:  (480) 921-9296
Email: edahlstrom@rothsteinlaw.com
Email: aeolson@rothsteinlaw.com

Richard W. Hughes, NM Bar No. 1230
Donna M. Connolly, NM Bar No. 9202
Reed C. Bienvenu, NM Bar No. 147363
1215 Paseo de Peralta
Santa Fe, NM 87505
Telephone:  (505) 988-8004
Email:  rwhughes@rothsteinlaw.com
Email:  dconnolly@rothsteinlaw.com
Email:  rbienvenu@rothsteinlaw.com

*Counsel for Pueblo of Picuris*

*Co-Counsel for the Navajo Nation*

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 17

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

QUINAULT INDIAN NATION

/s/ Lori Bruner
Lori Bruner, WSBA # 26652
Quinault Office of the Attorney General
136 Cuitan Street
Taholah, WA  98587
Telephone:  360.276-8215, Ext. 1406
Email:  LBruner@quinault.org


ELK VALLEY RANCHERIA, CALIFORNIA

/s/ Bradley G. Bledsoe Downes
Bradley G. Bledsoe Downes, CA Bar No. 176291
General Counsel
2332 Howland Hill Road
Crescent City, CA 95531
Telephone: 707.465.2610
Email: bdownes@elk-valley.com


SAN CARLOS APACHE TRIBE

/s/ Alexander B. Ritchie
Alexander B. Ritchie, AZ Bar # 019579
Attorney General
San Carlos Apache Tribe
Post Office Box 40
16 San Carlos Avenue
San Carlos, AZ 85550
Telephone:  (928) 475-3344
Email:  alex.ritchie@scat-nsn.gov

CONFEDERATED TRIBES PLAINTIFFS' MOTION FOR
INJUNCTION PENDING APPEAL AND
MEMORANDUM OF POINTS AND AUTHORITIES
– Page 18

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100