# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN MNUCHIN, in his official capacity as Secretary of the Treasury, <br><br> Defendant. | Case No. 1:20-cv-1002-APM |
| CHEYENNE RIVER SIOUX TRIBE et al., <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN MNUCHIN, in his official capacity as Secretary of the Treasury, <br><br> Defendant. | Case No. 1:20-cv-1059-APM |
| UTE TRIBE OF THE UINTAH AND OURAY RESERVATION, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN MNUCHIN, in his official capacity as Secretary of the Treasury, <br><br> Defendant. | Case No. 1:20-cv-1070-APM |

**AHTNA, INC.'s OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL**

Intervenor-Defendant Ahtna, Inc. submits this opposition to Plaintiffs' Motion for Injunction Pending Appeal ("Motion") (Dkt. 99). For all the reasons set forth in the oppositions (Dkts. 102 & 104) filed by the other Alaska Native Corporation Intervenor-Defendants (collectively "ANCs") which Ahtna adopts and incorporates by reference, Plaintiffs' Motion should be denied. As outlined in those oppositions, Plaintiffs cannot satisfy the standards for granting the extraordinary remedy of an injunction pending appeal. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). Ahtna writes separately only to highlight the flawed premise underlying Plaintiffs' request.

Plaintiffs assert in their Motion that absent an injunction pending appeal "they will forever be denied the opportunity to share in hundreds of millions of dollars that Congress set aside for federally recognized Indian tribes to support their governments' ongoing efforts to protect and serve their citizens during the COVID-19 pandemic." Dkt. 99 at 4-5. But the Treasury Department set aside those remaining funds for ANCs and the Court's June 26, 2020 Memorandum Opinion (Dkt. 97) persuasively concluded that ANCs are eligible to receive those funds under the CARES Act.

Plaintiffs' Motion stresses the irreparable harm they will allegedly suffer from potentially losing a *pro rata* share of the relief funds allocated to ANCs, but completely ignores the harm the delay arising from Plaintiffs' lawsuit has already imposed and will continue to impose on ANCs and the Alaska Native communities they serve—a substantial portion of whom would receive little to no benefit from this relief program if it were limited to federally recognized tribes. Plaintiffs state, without any authority or acknowledgment of the record in this case, that "[a] delay in the potential receipt of these funds by ANCs would not result in any irreparable harm." Dkt. 99 at 15. That is an entirely unsupportable and counterfactual contention.

Not only have ANCs suffered irreparable harm and will continue to suffer irreparable harm, the balance of the equities leans heavily in their favor.  All of the Plaintiff tribes have already received substantial Title V relief funds and have been able to use those funds to address health and economic harms arising from the COVID-19 crisis in their communities for the better part of the last two months while this action has been pending.  In contrast, as a direct result of Plaintiffs' lawsuits in this consolidated action, *no* ANC has received *a single dollar* of the critical relief fund that Congress intended for them to receive and that the U.S. Department of the Treasury was prepared to distribute on or before April 26, 2020.  *See* 42 U.S.C. §801(b)(1).  Plaintiffs have now had a chance to fully litigate their challenge to ANCs' eligibility and the delay resulting from Plaintiffs' challenge has already deprived ANCs of critical funds, which has resulted in significant harm to the Alaska Natives communities that they serve.  Continued delay will only exacerbate that harm.

As outlined in the attached declaration of Ahtna's chairman, Ahtna—like the other ANCs—intends to use the funds to directly assist the Alaska Native communities it serves.  *See* Exhibit A, June 30, 2020 Declaration of Ken Johns.  That direct assistance includes building new storage facilities to stock essential supplies for the villages in the Ahtna region such as personal protective equipment, cleaning supplies, and food staples such as flour, yeast, and meat.  *Id*. at ¶ 4.  It also involves "provid[ing] emergency housing and sanitation in villages," repairs to single family homes "to provide a safe and sanitary places to quarantine," and "converting a multi-use facility into a shelter that will contain a washeteria, and showers, with temporary beds for emergency medical treatment."  *Id*. at ¶ 5.  Ahtna plans to use the Title V Funds—which it originally anticipated receiving in late April or early May—to fund these projects.  *Id*. at ¶ 6.  And

the need to start them has become even more urgent given the possibility of increased COVID-19 infections in the fall and winter.  *Id*. at ¶¶ 3-7.

Despite the record in this case, Plaintiffs suggest there is no harm to ANCs because they have business revenues and, thus, should not be entitled to any relief funds to support their Alaska Native communities.  Motion at 15 ("To the extent these corporations may be responding to the pandemic in their communities, they may draw upon the billions of dollars of corporate funds available to them in the same way that many private corporations are doing throughout the United States.").  But Plaintiff Tribes themselves also have billions of dollars in business revenues and no defendant has suggested that fact should impact their eligibility or need for relief funds.  For example, in 2018, Indian gaming generated over $33.7 billion in revenue for the lower-48 tribes.[1]  Tribes in the Pacific Northwest alone generated over $3.6 billion in revenue in 2018.[2]  Those significant gaming revenues have allowed Plaintiff Chehalis Tribe to spend approximately $40 million expanding a casino or Plaintiff Tulalip Tribes to spend $100 million.[3]  And unlike the lower-48 tribes, ANCs are required to share 70 percent of the net revenue from timber and mineral resources developed on their lands with Alaska Natives from other regions.  43 U.S.C.A. §1606(i).  That has resulted in over $2 billion being shared amongst the different Alaska Native regions by ANCs.  Aaron M. Schutt, ANCSA Section 7(I): $ 40 Million Per Word and Counting, 33 Alaska L. Rev. 229, 230 (2016).

---

[1] *See* National Indian Gaming Commission, "2018 Indian Gaming Revenues of $33.7 billion Show a 4.1% Increase," available at https://www.nigc.gov/news/detail/2018-indian-gaming-revenues-of-33.7-billion-show-a-4.1-increase (accessed July 1, 2020).
[2] *See* National Indian Gaming Commission, Chart of FY17-FY18 Gaming Revenues by Region, available at https://www.nigc.gov/images/uploads/2018GGRGamingRevenuesbyRegionFINAL_Charts_3.pdf (accessed July 1, 2020).
[3] *See* Indianz.com, "Chehalis Tribe to start work on $40M expansion of gaming facility," available at https://www.indianz.com/IndianGaming/2015/01/23/chehalis-tribe-to-start-work-o.asp (access July 1, 2020); Bizjournals.com, "Tulalip Tribes plan new $100 million casino," available at https://www.bizjournals.com/seattle/news/2017/09/15/tulalip-tribes-plan-new-100-million-casino.html

Although it should already be clear, the harm suffered by ANCs and their Alaska Native communities to date – and that will continue to be suffered as a result of a delay in Treasury's distribution of Title V funds allocated to ANCs – is substantial. That harm weighs against granting Plaintiffs' Motion. Moreover, as outlined in Calista's opposition, while this Court is empowered to grant an injunction pending appeal it cannot dictate any briefing schedule before the U.S. Court of Appeals. Thus, the Court should deny Plaintiffs' Motion and let the D.C. Circuit consider their request since it is best positioned to mitigate any further delay and minimize the additional harm to the ANCs.

## **CONCLUSION**

For all the foregoing reasons, Ahtna respectfully requests that the Court deny Plaintiffs' Motion.

Dated: July 1, 2020							Respectfully submitted,


/s/ *Michael J. O'Leary*
Michael J. O'Leary, DC Bar No. 1014610
HOLLAND & HART LLP
901 K Street NW, Suite 850
Washington, D.C., 20001
(202) 654-6922
mjoleary@hollandhart.com

Jonathan Katchen (admitted *pro hac vice*)
HOLLAND & HART LLP
1029 W.3rd Avenue, Suite 550
Anchorage, AK 99501
(907) 865-2606
jwkatchen@hollandhart.com

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                        /s/ *Michael J. O'Leary*
                                                        Michael J. O'Leary