1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, et al. | Case No.: 1:20-cv-01002-APM |
| Plaintiffs, | |
| v. | |
| STEVEN MNUCHIN, SECRETARY, UNITED STATES DEPARTMENT OF THE TREASURY | |
| Defendant. | |
| CHEYENNE RIVER SIOUX TRIBE, et al. | Case No. 1:20-cv-01059-APM |
| Plaintiffs, | |
| v. | |
| STEVEN MNUCHIN, SECRETARY, UNITED STATES DEPARTMENT OF THE TREASURY | |
| Defendant. | |
| UTE TRIBE OF THE UINTAH AND OURAY RESERVATION | Case No. 1:20-cv-01070-APM |
| Plaintiff, | |
| v. | |
| STEVEN MNUCHIN, SECRETARY, UNITED STATES DEPARTMENT OF THE TREASURY | |
| Defendant. | |

**CONFEDERATED TRIBES PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR INJUNCTION PENDING APPEAL**

1

**ARGUMENT**

2

**I.     This Case Presents "Serious Legal Questions" Amply Warranting Issuance of an
        Injunction So as to Allow for Circuit Court Consideration.**

3

4

**A.     The "Serious Legal Questions" Standard Governs the Merits Prong of the
        Injunction Pending Appeal Test.**

5

As this Court has stated, for an injunction pending appeal to issue, a case must present

6

"'serious legal questions going to the merits, so serious, substantial, difficult as to make them a

7

fair ground of litigation and thus for more deliberative investigation.' *Population Inst. v.*

8

*McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986)[.]" *Cigar Ass'n of Am. v. U.S. Food & Drug*

9

*Admin.*, 317 F. Supp. 3d 555, 561 (D.D.C. 2018) (Mehta, J.); *see also Comm. on the Judiciary of*

10

*the U.S. House of Representatives v. Miers*, 542 F.3d 909, 911-912 (D.C. Cir. 2008) (Tatel, J.,

11

concurring) (same); *NAACP v. Trump*, 321 F. Supp. 3d 143, 147 (D.D.C. 2018) (The movant

12

need only show a "substantial case on the merits[.]" (quotation marks omitted)).  And while the

13

Secretary suggests that the "likelihood of success" standard might govern, ECF No. 103 ("Sec.

14

Br.") 2-3, this approach makes eminent sense.  Otherwise, "a losing party would find itself in" a

15

"near impossible position … if it were required to convince a judge who had just ruled against it

16

that the party is likely to succeed on appeal.  In such circumstances, a court would need to

17

determine that it had erred in its ruling, 'an acknowledgement one would expect few courts to

18

make,' rendering a Rule 62[(d)] injunction extremely rare.  *See Loving v. IRS*, 920 F. Supp. 2d

19

108, 110 (D.D.C. 2013)."  *Cigar Ass'n*, 317 F. Supp. 3d at 561, n.4.

20

21

22

23

24

25

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 2

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**B.    This Case Presents Serious Legal Questions.**

    **1.    This Court Has Already Recognized the Seriousness of the Questions Presented.**

In arguing that no serious legal question exists here, the Secretary misstates Plaintiffs' position and ignores this Court's own words.  Plaintiffs do not argue that the questions presented are serious because there are two "conflicting" decisions on the issues, Sec. Br. 3-4.  Plaintiffs understand that this Court's summary judgment decision supersedes its prior preliminary injunction opinion.  But while the Secretary would disregard that injunction opinion as forged in haste, *id.* at 1, it instead evidences that this Court understood Plaintiffs' position to possess sufficient merit to warrant exercise of the Court's equitable authority, a step that this Court surely did not undertake lightly.  To their credit, the Calista ANCs acknowledge what the Secretary will not: "[T]his Court's earlier preliminary injunction ruling indicates that this Court found the statutory issues close and difficult[.]"  ECF No. 102 ("Calista Br.") 2.

Nothing in the Court's summary judgment opinion suggests that it subsequently concluded that it had gone badly awry in its initial decision, or that it had simply mailed that decision in given the exigencies of time.  To the contrary, this Court stated on summary judgment, in language that the Secretary nowhere addresses, that "this case does not present easy, straightforward questions of statutory interpretation," ECF No. 97 ("SJ Op.") 14, and characterized the determination as to whether ANCs qualify as "Indian Tribes" as "a close question," *id.* at 15.  The Secretary ignores these statements by the Court.  But Plaintiffs think the better course is to trust that the Court meant what it said, and to respect that it indeed continued to find the questions presented to be serious and challenging.

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 3

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

**2.      The Secretary and the ANC Associations Miss the Mark Badly in Suggesting that No Legal Support Exists for Plaintiffs' Position.**

Not only does the Secretary overlook the Court's own statements as to the difficulty of the questions presented, but he then takes the fact that he eked out a narrow victory on summary judgment as carte blanche to argue that those questions are in no way substantial.  As a primary facet of this argument, he makes the claim, as breathtaking as it is wrong, that "[a]t no point in this litigation have Plaintiffs cited *any* authority—no case, no legislation, no administrative pronouncement, no secondary source," in support of their position.  Sec. Br. 4.  The ANC Associations join him in arguing that there exists no persuasive legal authority for Plaintiffs' case.  ECF No. 104 ("ANC Br.") 3.

But throughout this litigation, the Plaintiffs have relied on the most probative authority there is in a statutory construction case—the text of the statute itself.  *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992).  And what is more, the Court (and while he now tries to disavow his own statements, the Secretary) has agreed that Plaintiffs have the better grammatical reading of that text.  SJ Op. 14 ("The parties agree that, as a matter of pure grammar, the eligibility clause contained in the definition of 'Indian Tribe' in ISDEAA and the CARES Act applies to ANCs.  *See* Hr'g Tr. at 54–55; Intervenors' Opp'n at 4–5; Confederated Tribes Mot. at 13–14.  The eligibility clause plainly modifies each of the nouns that precedes it, including ANCs.").  Indeed, the Court has acknowledged that the position it ultimately adopted required it to "look beyond the statute's grammatical structure." *Id.* at 15; *id.* at 21 ("That is an unnatural reading, to be sure.").  The Secretary can claim that there exists no authority in support of Plaintiffs' position only by ignoring entirely the statutory language at issue and this Court's own assessment as to the most natural construction of it.

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 4

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1

2

### 3.     The Surplusage Canon and ISDEAA's Legislative History Do Not Transform the Issues Here Into Ones Easily Resolved in the Secretary's Favor.

3

4

In granting summary judgment to the Defendants, this Court relied heavily on the

5

surplusage canon, accepting the argument made by the Secretary and Defendant-Intervenors that

6

to adopt the natural reading of the statute would impermissibly render the mention of ANCs in

7

the ISDEAA definition of an "Indian tribe" (and by incorporation in Title V's definition of the

8

same) without force or effect.  The Secretary now takes this argument a step further, contending

9

that the existence of the canon means that the resolution of this case was not even close.  But the

10

Secretary is far off base both in his characterization of the canon and of the role it plays in

11

statutory interpretation.

12

The Secretary begins with the astonishing suggestion that the rule against superfluity is

13

"not a canon" at all.  Sec. Br. 5.  According to the Secretary, "canons of construction are no more

14

than rules of thumb that help courts determine the meaning of legislation," *id.* at 6 (quoting SJ

15

Op. 15-16, which in turn quotes *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992)), and

16

those canons "readily give way" when necessary to avoid surplusage.  *Id.*  The rule against

17

superfluity, in other words, sits atop the canons of construction and trumps all else, including the

18

ordinary meaning of statutory language.

19

To begin with, the rule against superfluity is decidedly a canon.  The Scalia & Garner

20

treatise, which virtually every party, including the Secretary, has liberally referenced, calls it the

21

"surplusage canon" and includes it in the category of "contextual canons." Antonin Scalia &

22

Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174-79 (2012).  Indeed, even a

23

quick scan of the book's Table of Contents should have alerted the Secretary to his error.  And,

24

25

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 5

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

as is evident from the many passages quoted below, both the Supreme Court and the D.C. Circuit have repeatedly termed the avoidance of superfluity as a canon of construction.

But the Secretary's problems go far beyond nomenclature.  The Supreme Court's decision in *Germain*, far from supporting the Secretary's position, completely undercuts it. When the Court there referred to canons of construction as being "no more than rules of thumb," *it was specifically referencing the rule against surplusage*:

> While courts should disfavor interpretations of statutes that render language superfluous, in this case that canon does not apply.
>     In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation.

*Germain*, 503 U.S. at 253.  Even more damning to the Secretary, the Court then went on to explain the hierarchy of interpretive principles in a manner fully supportive of Plaintiffs' position in this case:

> [I]n interpreting a statute a court should always turn first to one, cardinal canon before all others.  We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.

*Id.* at 253-54 (quotation marks and citations omitted).

This Court departed from the Supreme Court's prescribed approach to statutory interpretation in this case.  In its summary judgment opinion, it stated clearly that "[t]he eligibility clause plainly modifies each of the nouns that precedes it, including ANCs."  SJ Op. 14.  That should have been the end of the matter: Congress said what it meant and meant what it said.  But rather than deeming its inquiry complete, this Court went on to adopt an "unnatural reading" with an "odd grammatical result" because of concerns about surplusage.  *Id.* at 20-21.

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 6

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

There at the very least exists a serious legal question as to whether this was the right approach, and the Secretary's misreading of *Germain* lessens the seriousness of that question not one whit.[1]

And it is not just *Germain*.  While this Court rejected Plaintiffs reliance on *Chickasaw Nation v. United States*, 534 U.S. 84 (2001), and *King v. Burwell*, 135 S. Ct. 2480 (2015), *see* SJ Op. 19-20, cabining those decisions to inartfully drafted statutes (a category that surely could be said to include a good deal of legislation), numerous other decisions of the Supreme Court and the D.C. Circuit declare that, contrary to the view of the Secretary and Defendant-Intervenors, avoiding surplusage or redundancy "is not a silver bullet."  *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) ("The canon against surplusage is not an absolute rule.").  Instead, like all canons, the rule can provide a "clue" in specific situations, such as when "one possible interpretation of a statute would cause some redundancy and another interpretation would avoid redundancy."  *Rimini St.*, 139 S. Ct. at 881.  "But only a clue."  *Id.*  A clue hints at the plain meaning of a text; it is not an invitation to construe a statute in a way that is contrary to its ordinary meaning.  *See Bostock v. Clayton Cty., Georgia*, No. 17-1618, 2020 WL 3146686, at *14 (U.S. June 15, 2020) ("The people are entitled to rely on the law as written."); *Amoco Prod. Co. v. Watson*, 410 F.3d 722, 733-34 (D.C. Cir.

---

[1] *Germain* (like numerous other cases from the Court) also supplies the answer to the undue reliance placed by the Secretary and the ANCs on ISDEAA's legislative history.  "Germain says that legislative history points to a different result.  But we think that judicial inquiry into the applicability of § 1292 begins and ends with [the statutory language]."  *Germain*, 503 U.S. at 254.  And the Secretary and Defendant-Intervenor arguments, adopted by this Court, make abundantly clear the risks of such reliance.  They have cited absolutely no evidence in the legislative history to suggest that Congress was mandating that ANCs be treated as Indian tribes, as opposed to leaving the door open to that possibility.  Speculation as to what Congress might or might not have intended is no basis for overriding its plain text.

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 7

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

2005) (Roberts, J.) ("[The] preference for avoiding surplusage constructions is not absolute.  No canon of construction justifies construing the actual statutory language beyond what the terms can reasonably bear." (citations and quotations marks omitted)).

Having invited the Court to commit legal error by relying on the surplusage canon to privilege an unnatural reading of Title V over its ordinary meaning, the Secretary now invites this Court to compound that error by concluding that the surplusage canon is in a hallowed category all to itself—such that arguments based on the ordinary meaning of statutory text not only fail to carry the day, but do not even present a serious question, instead shriveling into nothingness when confronted with the Secretary's all-powerful rule.  The contrast to then-Judge Roberts's opinion for the D.C. Circuit in *Watson* could not be clearer, as the Court there rebuffed the notion that it should depart from "the more natural reading" of a statute because of surplusage concerns.  410 F.3d at 733.  The Secretary is simply making up principles of statutory interpretation at this point, and this Court should reject his entreaty to travel that road with him.

### 4.    The Secretary Exaggerates the Force of Prior Judicial and Administrative History, and His Related Claim to Deference.

In arguing that no serious legal questions are presented here, the Secretary also relies on exaggerated claims about the strength of the prior judicial and administrative treatment of ANCs, claims which do a grave disservice to the seriousness with which the Court addressed the issues before it.  The Secretary asserts that "[t]he salient issues in this case have been settled administratively for more than 40 years, and judicially for more than 30 years."  Sec. Br. 1.  But the salient issues are not "settled."  The history the Secretary points to boils down to one judicial opinion and one memorandum from an Assistant Solicitor.  Neither are sufficient to "settle" the meaning of the ISDEAA definition.  With respect to the judicial opinion, the Court has stated

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 8

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

just the opposite.  SJ Op. 25-26 ("[A] single appellate decision cannot amount to a judicial consensus that the court can presume Congress knew of and endorsed when it incorporated the ISDEAA definition into the CARES Act, *see Confederated Tribes*, 2020 WL 1984297, at *12[.]"); *see also* ECF No. 77 at 32-34 (Plaintiffs' argument regarding the same).

The administrative opinion in question is the Soller memorandum.  Plaintiffs will not repeat all arguments about the infirmities in that memorandum, but will make just one point in response to the Secretary's briefing:  It is preposterous for the Secretary to claim that it has pronounced one consistent interpretation of the "Indian Tribe" definition for 40 years, when the Soller memorandum clearly states that the eligibility clause does not apply to *any* Alaska entities. The Secretary, unable to stomach the consequences of that position, now posits the unnatural reading that only the ANCs and not the Alaska Native villages are exempt from the eligibility clause, without any textual basis for drawing that distinction between them.  To argue that it has taken a consistent approach over 40 years, the Secretary claims that Mr. Soller did not mean what he said, and that he intended to carve out only the ANCs and not the Alaskan villages from the eligibility clause.  Sec. Br. 9-10.  But there is no basis whatsoever for this assertion, and the Secretary should not be in the business of representing to the courts that it has maintained a consistent administrative interpretation over time when the only way it can do so is to rewrite its past interpretation.  This Court was charitable to the Secretary in accepting the Department of the Interior's position as being consistent, SJ Op. 24-26, 31-32, but there exists a serious question as to whether the D.C. Circuit would be so forgiving.

The Secretary's argument that the issues here were settled long before the passage of the CARES Act and the advent of this litigation is further undercut by the facts of this case.  As of

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 9

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

April 23, 2020, one full week after the complaint in this case was filed, ECF No. 1, and a mere three days before the statutory deadline for disbursement, the Secretary advised the Court that he had not yet decided and was still evaluating whether ANCs were eligible for funds.  ECF Nos. 9 at 1, 21 at 5.  The Secretary's argument now that this answer is and has always been clear for the past forty years cannot be squared with his own indecision a mere two months ago.

### 5.     The Meaning of "Recognized Governing Body" Presents Another Serious Legal Question for Appeal.

Defendants have little to say in response to Plaintiffs' argument that the Court's reversal of course on the meaning of "recognized governing body" presents a serious legal question for appeal.  ECF No. 99 ("Conf. Tr. Br.") 9-12.  It is noteworthy that Defendant-Intervenors do not dispute that an ANC can qualify as a "legally established organization of Indians which is controlled, sanctioned, or chartered by [the] governing body" of an Indian tribe, 25 U.S.C. § 5304(l), for purposes of the ISDEAA definition of "tribal organization" and 638 contracting.  For his part, the Secretary erroneously claims that Plaintiffs made this argument for the first time at the summary judgment hearing.  Sec. Br. 11.  Not so.  Plaintiffs consistently made this argument, beginning with their motion for a preliminary injunction.  ECF No. 3 at 24.  And the case law— for which the Secretary has no answer and with which this Court's summary judgment opinion does not grapple at all—backs it up: state-chartered corporate entities separate from Indian tribes are eligible to enter ISDEAA contracts as tribal organizations when properly sanctioned to do so by a tribe.  *See* Conf. Tr. Br. 10; *see also, e.g.*, *Duke v. Absentee Shawnee Tribe of Okla. Hous. Auth.*, 199 F.3d 1123, 1125 (10th Cir. 1999) ("It is true that the Oklahoma statute under which ASHA was organized defines the housing authority as a state agency.  We have held, however, that *the mere organization of such an entity under state law does not preclude its*

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 10

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

*characterization as a tribal organization as well*." (citations omitted) (emphasis added)).  The

governing federal regulations recognize as much.  *See* 25 C.F.R. § 900.8(b).

<blockquote>

**6.      The Position Taken by Other Parties Cannot Defuse the Force of the Statutory Text.**

</blockquote>

Finally, the Secretary argues that because "Plaintiffs in two of these three cases have

never" presented arguments that ANCs do not meet the definition of "Indian tribe" in ISDEAA,

that alone "is enough to conclude that [this issue] is not a 'serious legal question.'" Sec. Br. 5.

That is a remarkable assertion, and it evidences again just how badly the Secretary wants this

Court to stray from accepted methods of statutory interpretation.  That other plaintiffs in other

cases (even consolidated ones) have chosen to focus their attention on different arguments has no

bearing on how Congress has defined an "Indian Tribe" in the CARES Act.  It is of course the

judiciary's obligation to independently assess the validity of the Confederated Tribes Plaintiffs'

arguments, and courts do not conduct such assessments by taking polls or counting up what

parties in other cases have said.  Plaintiffs' argument rests on Congress's text and accepted

methods of textual construction.  It would be an abdication of the judicial role to dispense with

those guideposts because other plaintiffs have chosen a different path.  Nothing about that fact

undermines the seriousness of the arguments that the Confederated Tribes Plaintiffs have

presented to this Court and would present to the Court of Appeals.

**II.      Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief.**

Defendants do not dispute the harm that Plaintiffs will suffer if this Court does not grant

an injunction pending appeal: complete denial of the ability to obtain appellate review of the

Court's decision on summary judgment.  They suggest that this should not matter, and posit this

Court's ruling as the definitive interpretation of Title V.  *See, e.g.*, ANC Br. 9-10.  But in ruling

in Defendants' favor, this Court did not fashion itself as a court of last resort, and to the contrary,

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 11

Kanji & Katzen, P.L.L.C.
811 1ˢᵗ Ave., Suite 630
Seattle, WA 98104
206-344-8100

expressly contemplated the possibility of appellate proceedings.  SJ Op. 10 n.6 ("Title V mandates payment of funds for 'fiscal year 2020,' which expires September 30, 2020.  42 U.S.C. § 801(b).  That leaves sufficient time to litigate this matter to its conclusion, including possible expedited appellate review.").  Indeed, it has consistently expressed that recognition throughout these proceedings.  Tr. of Apr. 24, 2020 at 46-47 ("And going to the issue of irreparable harm … say hypothetically I agreed with the government here and denied the motion for a preliminary injunction and TRO, the money, then, gets disbursed, including money to ANCs.  And then the matter goes up to the Circuit and the Circuit says that I'm wrong.  Is there any way to, then, remedy that harm?"); Tr. of May 7, 2020 at 7 ("Now, I think the ANCs would take the view that no matter what the amount is, the schedule ought to move quickly, because whether it's a small amount or a large amount, that amount is being withheld until this matter gets to a final judgment or there's an appeal and the Court of Appeals says otherwise.").

Neither the Secretary nor the Defendant-Intervenors dispute that if the Secretary, free of any constraint from this Court, were to disburse the disputed funds to the ANCs, those payments would moot the controversy between the parties, *see* ECF No. 36 ("PI Op.") 15-16; Conf. Tribes Br. 12-13, and deprive Plaintiffs of the ability to obtain the expedited appellate review that this Court has contemplated might follow its decision.  And neither the Secretary nor the Defendant-Intervenors have any answer to Plaintiffs' point that this denial of appellate review would cause them irreparable harm.  The "*de facto* deprivation of the basic right to appeal" constitutes a "strong showing of irreparable harm" that supports an injunction pending appeal.  *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Rep.*, 240 F. Supp. 2d 21, 22-23 (D.D.C. 2003) (staying order requiring disclosure under FOIA and stating that "defendants have made a strong showing of

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 12

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

irreparable harm because disclosure of the documents in question will render any appeal moot");
*see also*, *e.g.*, *District of Columbia v. Masucci*, 13 F. Supp. 3d 33, 41 (D.D.C. 2014) (granting
stay pending appeal where plaintiff public school system would otherwise be required to pay
tuition and related costs for special-needs student at a private school, payments would not be
recoverable on appeal, and thus plaintiff's "claim on appeal may become moot if a stay is not
granted"); *SEC v. Am. Int'l Group, Inc.*, Civil Action No. 04-2070 (GK), 2012 WL 13069993, at
*2 (D.D.C. May 8, 2012) ("[I]it is also true that disclosure of the [independent
consultant] Reports 'would effectively moot any appeal.' *Ctr. for Nat'l Sec. Studies v. U.S.
Dep't of Justice*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002). This type of harm suffices to show
irreparable injury."); *Buntzman v. Springfield Redev. Auth.*, 918 F. Supp. 29, 30 (D. Mass. 1996)
(granting stay pending appeal in action challenging seizure of plaintiff's building by eminent
domain—"regarding irreparable harm, it is also clear that if the City of Springfield were to
dispose of the property during the pendency of the appeal, the entire appellate process would be
mooted"). Just as the Court declined to order the Secretary to pay the disputed funds to federally
recognized tribes at the preliminary injunction stage and allowed the litigation process to play
out, PI Op. 34, it should reject Defendants' invitation to short circuit that process now.

The Secretary and Defendant-Intervenors seek to shift attention away from the
deprivation of appellate review that would follow from an immediate disbursement of funds by
arguing about the relative need for the funding. While they nowhere fully acknowledge the
tremendous human toll and suffering inflicted by the pandemic on the federally recognized tribes
and their members both in Alaska and the lower 48 states, and the continuing shortfall of funds
to combat that suffering, they do not dispute that Plaintiffs and other federally recognized tribes

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 13

Kanji & Katzen, P.L.L.C.
811 1ˢᵗ Ave., Suite 630
Seattle, WA 98104
206-344-8100

are in need of additional funding to support the essential governmental services they are providing in response to the COVID-19 pandemic.[2]  *See, e.g.*, Calista Br. 2 ("To be sure, federally recognized tribes in the lower 48 and in Alaska face significant challenges[.]"); Sec. Br. 15 ("Defendant does not doubt that Plaintiffs are struggling with the burdens of COVID-19, or that additional funds would provide some benefit[.]").  Instead, they argue that because Plaintiffs have already been paid a share of Title V funds, while ANCs have not, Plaintiffs should just grit their teeth and bear the irreparable harm of the Secretary's diversion of over $500 million away from Plaintiffs and other tribal governments to these state-chartered corporations.  *See, e.g.*, Sec. Br. 15; ANC Br. 9.  Defendants cite no legal authority for this proposition.  And it badly misses the point.  No one has ever disputed that federally recognized Indian tribes are entitled to Title V funds.  The only dispute is over the Secretary's desire to allocate a portion of those funds to ANCs—and with respect to those funds, Plaintiffs and Defendant-Intervenors *equally* have been denied access since the filing of this case, and it is only appropriate that this status quo should be maintained until the dispute is finally resolved.

Defendant-Intervenors also argue that Plaintiffs fail to establish irreparable harm because they do not show that "*they specifically* stand to receive additional funds but for the ANC allocation."  ANC Br. 2.  The Court has already rejected this argument—twice.  At the preliminary injunction phase, the Secretary claimed that Plaintiffs must establish "the delta

---

[2] *See, e.g.*, https://www.ndoh.navajo-nsn.gov/COVID-19 (Navajo Nation reporting, as of July 1, 2020, 7,613 positive cases and 369 deaths; Executive Orders extending state of emergency and closure of government offices, and imposing weekend lockdowns, travel restrictions, and curfews); https://www.wagmtv.com/content/news/Maine-CDC-Investiages-COVID-19-Outbreak-Involving-Houlton-First-Responders--571408931.html (June 2020 outbreak of COVID-19 among first responders in Plaintiff Houlton Band of Maliseet Indians' community).

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 14

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

between the payment amounts they stand to receive under Defendant's determination, and the amounts they would receive if ANCs were excluded[.]" PI Op. 17 (quotation marks omitted). The Court found that this "imposes an impossible burden" on Plaintiffs. *Id.* The Court rejected the same argument in *Agua Caliente Band of Cahuilla Indians v. Mnuchin*, Case No. 20-cv-01136-APM, 2020 WL 3250701, at *3 (D.D.C. June 15, 2020) (Mehta, J.) ("The Secretary faults Plaintiffs for not providing current information about how their portion of the withheld monies will adversely impact them, but that criticism is misplaced in two respects."). In any event, if the Court of Appeals determines that ANCs are not eligible to receive Title V funds, hundreds of millions of dollars will be available to federally recognized tribes. The Secretary may choose to distribute those funds to all tribes nationwide according to the formulas he has already established, or the Secretary may choose to distribute a greater portion of those funds to Alaska Native villages, including Plaintiffs Asa'carsarmiut Tribe, Akiak Native Community, Aleut Community of St. Paul Island, Nondalton Tribal Council, Arctic Village Council, and Native Village of Venetie Tribal Government. In the former scenario, each Plaintiff will receive anywhere between $100,000 and $47 million to support its continuing efforts to fight the pandemic. In the latter scenario, Alaska Native villages would receive additional, desperately needed funds to support the essential governmental services they are providing to Alaska Natives. *See* ECF Nos. 3-1, 3-2, 3-3, 76-19, 76-20, 76-22.

## III.    The Balance of Equities and Public Interest Weigh in Favor of Granting an Injunction Pending Appeal.

In arguing the balance of equities and the public interest, Defendants stress that an injunction pending appeal would deprive ANCs of the funds presently allocated to them by the Secretary. If Defendants are not correct on the merits, ANCs have no legal right to these funds

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 15

Kanji & Katzen, P.L.L.C.
811 1ˢᵗ Ave., Suite 630
Seattle, WA 98104
206-344-8100

in the first instance.  But if they are, ANCs would be deprived of these funds for only a brief period.  As for-profit corporations, ANCs are built to endure this temporary deprivation.  To be blunt, these incremental funds are far less important to ANCs than they are to the 229 federally recognized Alaska Native village governments and other federally recognized tribes throughout the country.  It is these cash-starved governments that would otherwise receive additional Title V funds to support services for Alaska Natives and other Indians, and the Secretary's implication that through this motion Plaintiffs—which include six Alaska Native villages—seek to deprive Alaska Natives of services during the pandemic, Sec. Br. 13-15, is deeply offensive and unbecoming of the Federal Government.

Based on their multinational employment figures and corporate expenditures, it is apparent that the vast majority of the disputed funds would be paid to regional ANCs.  *See* https://home.treasury.gov/system/files/136/Tribal-Allocation-Methodology-for-Second-Distribution.pdf (allocation methodology for second tranche); PI Op. 5 (discussing ANCs' economic size).  But these regional ANCs already have substantial assets available to them.  For example, Bristol Bay Native Corporation, for fiscal year 2019, reported almost $1.7 billion in revenue; $53 million in net earnings attributable to the corporation; and $13 million cash liquidity, $151 million in marketable securities, and $71 million in available line of credit, for a total liquidity of approximately $230 million.[3]  Similarly, Cook Inlet Region, Inc. reported over $1 billion in total assets and $39 million in net income.[4]  The ANCs cannot claim with a straight

---

[3] https://www.bbnc.net/wp-content/uploads/2019/08/BBNC_2019_Annual_Report_Complete_R202_Spreads.pdf.
[4] https://www.ciri.com/our-corporation/financials/.

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 16

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

face that they are in dire need of Title V relief funds when the top ten regional ANC executives earned a combined annual compensation of $25 million in 2018.[5]  That some of the ANCs, like many corporations throughout the country, have engaged in charitable endeavors during this time is surely to be lauded.  But especially given their corporate coffers, the fact that they have done so does not transform a short-term delay, while it is finally determined whether they are legally entitled to be treated as Tribal governments, into irreparable harm.

The balance of equities and the public interest weigh in favor of ensuring that the Secretary's final distribution of Title V funds complies with the law.  Especially given the significance of the issues presented, deprivation of appellate review would constitute irreparable and irreversible harm to the Plaintiffs.  The appropriate course, as the Secretary and Defendant-Intervenors surely would have argued had the shoe been on the other foot, is to preserve the status quo while that review takes place.

## IV.    The Court Should Not Pass the Buck to the Court of Appeals.

All parties to this case have a strong interest in reaching a final resolution of the merits of this case in an expedited manner.  Both Plaintiffs and Defendant-Intervenors want to receive the remaining Title V funds as soon as possible, and the Secretary seeks to timely fulfill his payment obligations under Title V, 42 U.S.C. § 801(b)(1).  Accordingly, following the Court's entry of a preliminary injunction, Plaintiffs readily agreed to an expedited case schedule.  ECF No. 57 at 2-4 ("The Plaintiff Tribes appreciate the opportunity provided by the Court to address the motions to intervene in an expedited manner so as to avoid any unnecessary delay in reaching a final

---

[5] https://www.kinyradio.com/news/news-of-the-north/report-top-10-native-corporation-executives-earned-a-combined-25-million-in-2018/.

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 17

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

decision on the merits in this action.  Time is of the utmost importance to the Tribes, their

citizens, and their communities, and in the interest of expediency, Plaintiffs do not oppose

permissive intervention.").  To that same end, as part of the meet and confer for this motion,

Plaintiffs indicated their commitment to pursue an expedited appeal, Conf. Tr. Br. 2-3 n.1, and

invited Defendants to support a joint request to expedite in the Court of Appeals.

     Defendants, however, did not respond to Plaintiffs' proposal to expedite appellate

proceedings and instead filed four separate briefs in opposition to Plaintiffs' motion.  The

Defendant-Intervenors, moreover, urge the Court to summarily deny Plaintiffs' motion and to

force a *second* round of briefing on Plaintiffs' motion for injunction pending appeal, this time

before the Court of Appeals.  Calista Br. 2-3; ECF No. 105 at 4.  But passing the buck to the

Court of Appeals would help nobody—it would only multiply proceedings and litigation

expenses, while introducing further delay in the final distribution of Title V funds.  And it is

entirely unnecessary.

     This Court's intimate familiarity with the relevant legal issues and harms makes it best-

situated to apply the four-factor injunction test, and it has the ability to carefully tailor its

injunction to avoid any risk of undue delay in the payment of the disputed funds to ANCs or

federally recognized Indian tribes as the case may be.  The Court may "grant the requested

[injunction] only for a limited time and on the condition that [Plaintiffs] seek expedited

consideration from the court of appeals," which Plaintiffs here have already committed to do.

*Ctr. for Int'l Envtl. Law*, 240 F. Supp. 2d at 24;[6] *see also Citizens for Responsibility & Ethics in*

---

[6] For example, in *Ctr. for Int'l Envtl. Law*, 240 F. Supp. 2d at 24, the Court stated: "Specifically, the Court will stay its December 19 Order only until January 30, 2003.  If defendants file a notice

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 18

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

*Wash. v. Office of Admin.*, 565 F. Supp. 2d 23, 32 (D.D.C. 2008) (granting injunction "pending the resolution of [plaintiff's] expedited appeal or January 5, 2009, whichever event is earlier");

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,* 217 F. Supp. 2d 58, 58 (D.D.C. 2002) (granting stay pending appeal where "the Government has promised to seek expedited consideration from the Court of Appeals").  Thus, to address any concern that Title V's reference to "fiscal year 2020" requires payment to issue by September 30, 2020, *see* SJ Op. 10 n.6, the Court's injunction could sunset prior to that date.

Finally, while the Court of Appeals is certain to recognize the unique exigencies of this case, especially if the Secretary and Defendant-Intervenors accept Plaintiffs' invitation to join with them in seeking expedited review, the remaining Title V funds appropriated for Tribal governments will *not* lapse while an appeal is pending, contrary to Defendant-Intervenors' claim to the contrary.  *See* Calista Br. 2-3; ANC Br. 10.  "There is an equitable doctrine … that permits a court to award funds based on an appropriation even after the date when the appropriation lapses, so long as the lawsuit was instituted on or before that date."  *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1426 (D.C. Cir. 1994) (quotations and emphasis omitted); *Nat'l Ass'n of Regional Councils v. Costle*, 564 F.2d 583, 588 (D.C. Cir. 1977) ("Decisions that a court may act to prevent the expiration of budget authority which has not terminated at the time suit is filed are completely consistent with the accepted principle that the equity powers of the courts allow them to take action to preserve the status quo of a dispute and to protect their ability

---

of an appeal and a motion for expedited consideration by this date, the Court's stay will remain in effect.  If, however, defendants fail to exercise their right to appeal or fail to seek expedited consideration by January 30, the Court's stay will *expire*."

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 19

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

to decide a case properly before them.  In such situations, the courts simply suspend the operation of a lapse provision and extend the term of already existing budget authority."); *see also generally* 31 U.S.C. § 1502(b).  The pendency of Plaintiffs' lawsuit ensures that the roughly $530 million presently allocated by the Secretary to ANCs will not lapse, even if proceedings extend beyond September 30, 2020.

To be crystal clear, though, Plaintiffs have no more interest in a prolonged resolution of this matter than do the Defendants, and will urge that the Circuit Court move as expeditiously as possible.  At the same time, Plaintiffs have a strong and legitimate interest in not having the judicial process short-circuited.  The appropriate way in which to recognize all of these interests is to enter an injunction maintaining the status quo, and for a time-limited period if the Court so desires, while expedited appellate review is pursued of the substantial, challenging issues presented by this case.

## CONCLUSION

For the foregoing reasons, the Confederated Tribes Plaintiffs respectfully request that the Court grant their motion for an injunction pending appeal.

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 20

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

Dated this 3rd day of July, 2020.

KANJI & KATZEN, P.L.L.C.

/s/ Riyaz A. Kanji
Riyaz A. Kanji, D.C. Bar # 455165
303 Detroit Street, Suite 400
Ann Arbor, MI 48104
Telephone:  734-769-5400
Email:  rkanji@kanjikatzen.com

/s/ Cory J. Albright
Cory J. Albright, D.C. Bar # WA0013
811 1st Avenue, Suite 630
Seattle, WA  98104
Telephone:  206-344-8100
Email:  calbright@kanjikatzen.com

*Co-Counsel for the Confederated Tribes of the
Chehalis Reservation and the Tulalip Tribes*

*Counsel for the Houlton Band of Maliseet Indians,
Akiak Native Community, Asa'carsarmiut Tribe
and Aleut Community of St. Paul Island*

CONFEDERATED TRIBES OF THE CHEHALIS
RESERVATION

/s/ Harold Chesnin
Harold Chesnin, WSBA # 398
Lead Counsel for the Tribe
420 Howanut Road
Oakville, WA  98568
Telephone:  360-529-7465
Email:  hchesnin@chehalistribe.org

TULALIP TRIBES

/s/ Lisa Koop Gunn
Lisa Koop Gunn, WSBA # 37115
Tulalip Tribes, Office of the Reservation Attorney

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 21

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

6406 Marine Drive
Tulalip, WA  98271
Telephone:  360-716-4550
Email:  lkoop@tulaliptribes-nsn.gov


THE NAVAJO NATION

/s/ Paul Spruhan
Doreen McPaul, AZ Bar No. 021136
Attorney General
Paul Spruhan, D.C. Bar No. AZ0017
Assistant Attorney General
P.O. Box 2010
Window Rock, AZ 86515
Telephone:  (928) 871-6345
Email: dmcpaul@nndoj.org
Email: pspruhan@nndoj.org


ROTHSTEIN DONATELLI LLP

/s/ Eric Dahlstrom
Eric Dahlstrom, AZ Bar No. 004680
April E. Olson, AZ Bar No. 025281
1501 West Fountainhead, Suite 360
Tempe, AZ 85282
Telephone:  (480) 921-9296
Email: edahlstrom@rothsteinlaw.com
Email: aeolson@rothsteinlaw.com

Richard W. Hughes, NM Bar No. 1230
Donna M. Connolly, NM Bar No. 9202
Reed C. Bienvenu, NM Bar No. 147363
1215 Paseo de Peralta
Santa Fe, NM 87505
Telephone:  (505) 988-8004
Email:  rwhughes@rothsteinlaw.com
Email:  dconnolly@rothsteinlaw.com
Email:  rbienvenu@rothsteinlaw.com

*Counsel for Pueblo of Picuris*

*Co-Counsel for the Navajo Nation*

CONFEDERATED TRIBES PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR INJUNCTION PENDING
APPEAL
– Page 22

Kanji & Katzen, P.L.L.C.
811 1st Ave., Suite 630
Seattle, WA 98104
206-344-8100

1

2          QUINAULT INDIAN NATION

3          /s/ Lori Bruner
           Lori Bruner, WSBA # 26652
4          Quinault Office of the Attorney General
           136 Cuitan Street
5          Taholah, WA 98587
           Telephone: 360.276-8215, Ext. 1406
6          Email: LBruner@quinault.org

7

8          ELK VALLEY RANCHERIA, CALIFORNIA

9          /s/ Bradley G. Bledsoe Downes
           Bradley G. Bledsoe Downes, CA Bar No. 176291
10         General Counsel
           2332 Howland Hill Road
11         Crescent City, CA 95531
           Telephone: 707.465.2610
12         Email: bdownes@elk-valley.com

13

14         SAN CARLOS APACHE TRIBE

15         /s/ Alexander B. Ritchie
           Alexander B. Ritchie, AZ Bar # 019579
16         Attorney General
           San Carlos Apache Tribe
17         Post Office Box 40
           16 San Carlos Avenue
18         San Carlos, AZ 85550
           Telephone:  (928) 475-3344
19         Email:  alex.ritchie@scat-nsn.gov

20

21

22

23

24

25