# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: <u>1:20–cv–01002–APM</u>

CONFEDERATED TRIBES OF THE CHEHALIS
RESERVATION et al v. MNUCHIN
Assigned to: Judge Amit P. Mehta
 Cases:  1:20–cv–01059–APM
         1:20–cv–01070–APM
         1:20–cv–01491–APM
 Case in other court:  USCA, 20–05204
                       USCA, 20–05205
Cause: 05:0706 Judicial Review of Agency Actions

Date Filed: 04/17/2020
Jury Demand: None
Nature of Suit: 899 Administrative
Procedure Act/Review or Appeal of
Agency Decision
Jurisdiction: U.S. Government Defendant

**<u>Plaintiff</u>**

**CONFEDERATED TRIBES OF THE
CHEHALIS RESERVATION**

represented by **Nicole E. Ducheneaux**
Big Fire Law & Policy Group LLP
1404 Fort Crook Road South
Bellevue, NE 68005
United Sta
531–466–8725
Email: nducheneaux@bigfirelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
KANJI & KATZEN, PLLC
303 Detroit Street
Suite 400
Ann Arbor, MI 48104
(734) 769–5400
Fax: (734) 769–2701
Email: rkanji@kanjikatzen.com
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**TULALIP TRIBES**

represented by **Nicole E. Ducheneaux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**HOULTON BAND OF MALISEET**

represented by **Nicole E. Ducheneaux**

**INDIANS**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**AKIAK NATIVE COMMUNITY**                  represented by **Nicole E. Ducheneaux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Kenneth Walker**
WALKER REAUSAW
800 Connecticut Ave. NW #300
Ste 800
20006
Washington, DC 20006
202–857–7910
Fax: 202–857–7910
Email: wkw@att.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**ASA'CARSARMIUT TRIBE**                  represented by **Nicole E. Ducheneaux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**ALEUT COMMUNITY OF ST. PAUL**          represented by **Nicole E. Ducheneaux**
**ISLAND**                                (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**PUEBLO OF PICURIS**　　　　represented by **Nicole E. Ducheneaux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**ELK VALLEY RANCHERIA,**　　　represented by **Nicole E. Ducheneaux**
**CALIFORNIA**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**SAN CARLOS APACHE TRIBE**　　represented by **Nicole E. Ducheneaux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**QUINAULT INDIAN NATION**　　represented by **Nicole E. Ducheneaux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**NAVAJO NATION**　　　　　represented by **Nicole E. Ducheneaux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley James Furlong**
NATIVE AMERICAN RIGHTS FUND
745 w. 4th Avenue
Suite 502
Anchorage, AK 99501

907−276−0680
Fax: 907−276−2466
Email: wfurlong@narf.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul W. Spruhan**
NAVAJO NATION DEPARTMENT OF
JUSTICE
P.O. Box 2010
Window Rock, AZ 86515
(928) 871−6210
Email: pspruhan@nndoj.org
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CHEYENNE RIVER SIOUX TRIBE**
*20−cv−01059*

represented by

**Nicole E. Ducheneaux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley James Furlong**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rose Michele Weckenmann**
BIG FIRE LAW & POLICY GROUP
1404 Fort Crook Road South
68005
Bellevue, NE 68005
531−466−8725
Fax: 531−466−8792
Email: rweckenmann@bigfirelaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**OGLALA SIOUX TRIBE**
*20−cv−01059*

represented by

**Jennifer Bear Eagle**
OGLALA SIOUX TRIBE
P.O. Box 1204
Pine Ridge, SD 57770

402–617–3553
Fax: 605–867–2140
Email: JenniferBE@ostlegal.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicole E. Ducheneaux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley James Furlong**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ROSEBUD SIOUX TRIBE**
*20–cv–01059*

represented by **Matthew Newman**
NATIVE AMERICAN RIGHTS FUND
745 w. 4th Avenue
Suite 502
Anchorage, AK 99501
907–276–0680
Email: mnewman@narf.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Megan Rachel Condon**
NATIVE AMERICAN RIGHTS FUND
745 w. 4th Avenue
Suite 502
Anchorage, AK 99501
303–246–7023
Email: mcondon@narf.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Natalie A. Landreth**
NATIVE AMERICAN RIGHTS FUND
745 w. 4th Avenue
Suite 502
Anchorage, AK 99501
(907) 276–0680
Fax: (907) 276–2466
Email: landreth@narf.org
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Nicole E. Ducheneaux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley James Furlong**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**NONDALTON TRIBAL COUNCIL**          represented by          **Matthew Newman**
*20−cv−01059*                                                  (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *PRO HAC VICE*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Nicole E. Ducheneaux**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Wesley James Furlong**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**ARTIC VILLAGE COUNCIL**          represented by          **Matthew Newman**
*20−cv−01059*                                              (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Nicole E. Ducheneaux**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Wesley James Furlong**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Plaintiff**

**NATIVE VILLAGE OF VENETIE**
**TRIBAL GOVERNMENT**
*20−cv−01059*

represented by **Matthew Newman**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicole E. Ducheneaux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley James Furlong**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**UTE TRIBE OF THE UINTAH AND**
**OURAY INDIAN RESERVATION**
*20−cv−01070*

represented by **Frances C. Bassett**
PATTERSON EARNHART REAL BIRD
& WILSON LLP
357 S. McCaslin Blvd.
Suite 200
Louisville, CO 80027
303−926−5292
Fax: 303−926−5293
Email: fbassett@nativelawgroup.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey S. Rasmussen**
PATTERSON EARNHART REAL BIRD
& WILSON LLP
357 S. McCaslin Blvd.
Suite 200
Louisville, CO 80027
303−926−5292
Fax: 303−926−5293
Email: jrasmussen@nativelawgroup.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicole E. Ducheneaux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rollie Wilson**
PATTERSON EARNHART REAL BIRD
& WILSON LLP
601 Pennsylvania Ave., NW, South Bldg.
Suite 900
Washington, Suite 900
Washington, DC 20004
202–340–8232
Fax: 202–639–8238
Email: rwilson@nativelawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley James Furlong**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeremy J. Patterson**
PATTERSON EARNHART REAL BIRD
& WILSON LLP
357 S. McCaslin Blvd.
Suite 200
Louisville, CO 80027
303–926–5292
Fax: 303–926–5293
Email: jpatterson@nativelawgroup.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**STEVEN MNUCHIN**                    represented by    **Jason C. Lynch**
*in his official capacity as Secretary of*              U.S. DEPARTMENT OF JUSTICE
*U.S. Department of the Treasury*                       Federal Programs Branch
                                                        1100 L Street NW
                                                        Washington, DC 20005
                                                        202–514–1359
                                                        Email: Jason.Lynch@usdoj.gov
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

V.

**Intervenor Defendant**

**AHTNA, INC.**                       represented by

**Jonathan W Katchen**
HOLLAND & HART LLP
1029 W Third Avenue
Suite 550
Anchorage, AK 99501
907–865–2600
Email: jwkatchen@hollandhart.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. O'Leary**
HOLLAND & HART LLP
901 K Street, NW
Suite 850
Washington, DC 20001
202–654–6922
Email: mjoleary@hollandhart.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC.**

represented by
**Daniel W. Wolff**
CROWELL & MORING
1001 Pennsylvania Avenue, NW
Washington, DC 20004–2595
(202) 624–2500
Email: dwolff@crowell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Yolun Chung**
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, NW
1001 Pennsylvania Avenue, NW
Washington, DC 20004
202–624–2587
Email: dchung@crowell.com
*ATTORNEY TO BE NOTICED*

**Kirsten L. Nathanson**
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624–2887
Fax: (202) 628–5116
Email: knathanson@crowell.com
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

represented by

**ASSOCIATION OF ANCSA**
**REGIONAL CORPORATION**
**PRESIDENTS/CEO'S, INC.**

**Daniel W. Wolff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kirsten L. Nathanson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**CALISTA CORPORATION**          represented by **Paul Clement**
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389–5000
Fax: (202) 389–5200
Email: paul.clement@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ragan Naresh**
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, NW
Washington, DC 20004
(202) 389–5267
Fax: (202) 389–5200
Email: ragan.naresh@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**KWETHLUK, INCORPORATED**          represented by **Paul Clement**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ragan Naresh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**SEA LION CORPORATION**          represented by **Paul Clement**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ragan Naresh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**ST. MARY'S NATIVE CORPORATION**

represented by **Paul Clement**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ragan Naresh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**NAPASKIAK, INCORPORATED**

represented by **Paul Clement**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ragan Naresh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**AKIACHAK, LIMITED**

represented by **Paul Clement**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ragan Naresh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC.**

represented by **Daniel W. Wolff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC.**

represented by **Daniel W. Wolff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Yolun Chung**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**NATIONAL CONGRESS OF AMERICAN INDIANS**

represented by **Kaighn Smith , Jr**
DRUMMOND WOODSUM
84 Marginal Way
Suite 600
Portland, ME 04101
(207) 772–1941
Fax: 207–772–3627
Email: ksmith@dwmlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**AFFILIATED TRIBES OF NORTHWEST INDIANS**

represented by **Kaighn Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**ALL PUEBLO COUNCIL OF GOVERNORS**

represented by **Kaighn Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**ARIZONA INDIAN GAMING ASSOCIATION**

represented by **Kaighn Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CALIFORNIA NATIONS INDIAN GAMING ASSOCIATION**

represented by **Kaighn Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**CALIFORNIA TRIBAL CHAIRPERSON'S ASSOCIATION**

represented by **Kaighn Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**GREAT PLAINS TRIBAL CHAIRMEN'S ASSOCIATION, INC.**

represented by **Kaighn Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**INTER TRIBAL ASSOCIATION OF ARIZONA, INC.**

represented by **Kaighn Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**INTER–TRIBAL COUNCIL OF THE FIVE CIVILIZED TRIBES**

represented by **Kaighn Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**MIDWEST ALLIANCE OF SOVEREIGN TRIBES**

represented by **Kaighn Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**NATIONAL INDIAN GAMING ASSOCIATION**

represented by **Kaighn Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**UNITED SOUTH AND EASTERN TRIBES SOVEREIGNTY PROTECTION FUND**

represented by **Kaighn Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**ALASKA NATIVE VILLAGE ASSOCIATION**

represented by **Christine Williams**
OUTLOOK LAW LLC
1016 W. 6th Avenue
Suite 306
Anchorage, AK 99501
907–258–2200
Email: christinewilliams@outlooklaw.com
*TERMINATED: 07/07/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William Kenneth Walker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Harrison Powell , II**
OUTLOOK LAW LLC
1769 Jamestown Road, Suite 122

Suite 122
Williamsburg, VA 23185
757–349–3119
Email: harrisonpowell@outlooklaw.com
*TERMINATED: 07/07/2020*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**ANCSA REGIONAL ASSOCIATION**     represented by **Christine Williams**
(See above for address)
*TERMINATED: 07/07/2020*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel W. Wolff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Kenneth Walker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Harrison Powell , II**
(See above for address)
*TERMINATED: 07/07/2020*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**AHTNA, INC.**     represented by **Jonathan W Katchen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. O'Leary**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**GILA RIVER INDIAN COMMUNITY**     represented by **Merrill C. Godfrey**
AKIN GUMP STRAUSS HAUER &
FELD LLP
Robert S. Strauss Tower
2001 K Street, NW
Washington, DC 20006

(202) 887–4000
Fax: (202) 887–4288
Email: mgodfrey@akingump.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**NATIVE AMERICAN FINANCE OFFICERS ASSOCIATION**

represented by **Merrill C. Godfrey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**PENOBSCOT NATION**

represented by **Merrill C. Godfrey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**NOTTAWASEPPI HURON BAND OF THE POTAWATOMI**

represented by **Merrill C. Godfrey**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**ALASKA FEDERATION OF NATIVES, INC.**

represented by **James Hardwick Lister**
BIRCH HORTON BITTNER AND
CHEROT, P.C.
1100 Connecticut Ave, NW
Suite 825
Washington, DC 20036
(202) 659–5800
Fax: (202) 659–1027
Email: jlister@dc.bhb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 04/17/2020 | 1 | | COMPLAINT against STEVEN MNUCHIN *in his official capacity as Secretary of U.S. Department of the Treasury* ( Filing fee $ 400 receipt number BDCDC–7031496) filed by ALEUT COMMUNITY OF ST. PAUL ISLAND, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, AKIAK NATIVE COMMUNITY, HOULTON BAND OF MALISEET INDIANS, TULALIP TRIBES, ASA CARSARMIUT TRIBE. (Attachments: # 1 Civil Cover Sheet, # 2 Summons)(Kanji, Riyaz) (Entered: 04/17/2020) |
| 04/17/2020 | | | Case Assigned to Judge Amit P. Mehta. (adh, ) (Entered: 04/17/2020) |
| 04/17/2020 | 2 | | |

| | | | |
|---|---|---|---|
| | | | SUMMONS (1) Issued Electronically as to STEVEN MNUCHIN. (Attachment: # 1 Notice and Consent)(adh, ) (Entered: 04/17/2020) |
| 04/20/2020 | 3 | | MOTION for Temporary Restraining Order, MOTION for Preliminary Injunction by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ASA CARSARMIUT TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, HOULTON BAND OF MALISEET INDIANS, TULALIP TRIBES (Attachments: # 1 Declaration Akiak Native Communit, # 2 Declaration Aleut Community of St, # 3 Declaration Asacarsarmiut, # 4 Declaration Chehalis – Pickernell, # 5 Declaration HBMI – Sabattis, # 6 Declaration Tulalip – Gobin, # 7 Text of Proposed Order, # 8 Declaration RAK Certificate of Counsel, # 9 Declaration RAK 2nd Decl)(Kanji, Riyaz). Added MOTION for Preliminary Injunction on 4/20/2020 (eg). (Entered: 04/20/2020) |
| 04/20/2020 | 4 | | NOTICE of Appearance by Jason C. Lynch on behalf of STEVEN MNUCHIN (Lynch, Jason) (Entered: 04/20/2020) |
| 04/20/2020 | | | MINUTE ORDER. The parties shall meet and confer and, by 5:00 p.m. on April 20, 2020, file a Joint Status Report that proposes a schedule for briefing on Plaintiffs' Motion for Temporary Restraining Order. Signed by Judge Amit P. Mehta on 04/20/2020. (lcapm2) (Entered: 04/20/2020) |
| 04/20/2020 | 5 | | Joint STATUS REPORT *and Proposed Briefing Schedule for Plaintiffs' 3 Motion* by STEVEN MNUCHIN. (Lynch, Jason) (Entered: 04/20/2020) |
| 04/20/2020 | | | MINUTE ORDER setting the following schedule for further proceedings in this matter: (1) Defendant's Opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction shall be filed on or before 5:00 p.m. on April 22, 2020; (2) Plaintiffs' Reply brief, if any, shall be filed on or before 12:00 p.m. on April 23, 2020; and (3) a video conference hearing is set for April 23, 2020, at 2:00 p.m. The court will circulate access information to counsel. Signed by Judge Amit P. Mehta on 04/20/2020. (lcapm2) (Entered: 04/20/2020) |
| 04/21/2020 | | | MINUTE ORDER resetting the video conference hearing on Plaintiffs' Motion for a Temporary Restraining Order to 3:00 p.m. on April 23, 2020. Should any member of the public or media require access to the hearing, they should reach out to the Courtroom Deputy, Mr. Douyon, at Jean–Claude_Douyon@dcd.uscourts.gov for further instructions. Signed by Judge Amit P. Mehta on 04/21/2020. (lcapm2) Modified on 04/21/2020 (lcapm2). (Entered: 04/21/2020) |
| 04/21/2020 | 6 | | Consent MOTION for Leave to File amicus brief re 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction by NATIONAL CONGRESS OF AMERICAN INDIANS, AFFILIATED TRIBES OF NORTHWEST INDIANS, All Pueblo Council of Governors, Arizona Indian Gaming Association, California Nations Indian Gaming Association, California Tribal Chairpersons Association, Great Plains Tribal Chairmens Association, Inc., Inter Tribal Association of Arizona, Inc., Inter–Tribal Council of the Five Civilized Tribes, Midwest Alliance of Sovereign Tribes, National Indian Gaming Association, United South and Eastern Tribes Sovereignty Protection Fund (Attachments: # 1 Proposed Order)(Smith, Kaighn) Modified event on 4/23/2020 (znmw). (Entered: 04/21/2020) |

| 04/21/2020 | | | Set/Reset Deadlines/Hearings: Opposition due by 5:00 pm on 4/22/2020. Reply due by 12:00 pm on 4/23/2020. Motion Hearing set for 4/23/2020 at 3:00 PM before Judge Amit P. Mehta. (zjd) (Entered: 04/21/2020) |
|---|---|---|---|
| 04/21/2020 | 7 | | AMENDED COMPLAINT against STEVEN MNUCHIN filed by TULALIP TRIBES, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ALEUT COMMUNITY OF ST. PAUL ISLAND, HOULTON BAND OF MALISEET INDIANS, AKIAK NATIVE COMMUNITY, ASA CARSARMIUT TRIBE, PUEBLO OF PICURIS, ELK VALLEY RANCHERIA, CALIFORNIA, SAN CARLOS APACHE TRIBE, QUINAULT INDIAN NATION, NAVAJO NATION.(Kanji, Riyaz) (Entered: 04/21/2020) |
| 04/22/2020 | 8 | | ORDER granting 6 Motion to File Amicus Brief. The Tribal Organizations shall file their amicus brief by April 22, 2020. See attached Order for further details. Signed by Judge Amit P. Mehta on 04/22/2020. (lcapm2) (Entered: 04/22/2020) |
| 04/22/2020 | 9 | | MOTION for Extension of Time to File Response/Reply *to Plaintiffs' 3 Motion for TRO/PI* by STEVEN MNUCHIN (Lynch, Jason) (Entered: 04/22/2020) |
| 04/22/2020 | | | MINUTE ORDER granting 9 Defendant's Motion for an Extension of Time to File a Response. The court will set a schedule for further briefing following a telephonic conference on April 23, 2020, at 9:30 a.m. Members of the public or media may access the hearing by dialing the court's toll–free public access line: (877) 848–7030, access code 321–8747. Signed by Judge Amit P. Mehta on 04/22/2020. (lcapm2). Modified on 4/22/2020 (lcapm2). (Entered: 04/22/2020) |
| 04/22/2020 | | | Set/Reset Hearings: Telephone Conference set for 4/23/2020 at 9:30 AM before Judge Amit P. Mehta. (zjd) (Entered: 04/22/2020) |
| 04/22/2020 | 10 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Christine V. Williams, Filing fee $ 100, receipt number BDCDC–7049323. Fee Status: Fee Paid. by Alaska Native Village Association, ANCSA Regional Association (Attachments: # 1 Affidavit, # 2 Text of Proposed Order)(Walker, William) (Entered: 04/22/2020) |
| 04/22/2020 | | | MINUTE ORDER vacating the April 23, 2020, 3:00 p.m. hearing on Plaintiffs' Motion for a Temporary Restraining Order. Signed by Judge Amit P. Mehta on 04/22/2020. (lcapm2) (Entered: 04/22/2020) |
| 04/22/2020 | 11 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– J. Harrison Powell II, Filing fee $ 100, receipt number ADCDC–7049350. Fee Status: Fee Paid. by ANCSA Regional Association (Attachments: # 1 Affidavit, # 2 Text of Proposed Order)(Walker, William) (Entered: 04/22/2020) |
| 04/22/2020 | | | MINUTE ORDER granting 10 Motion for Leave to Appear Pro Hac Vice. Christine V. Williams is hereby admitted pro hac vice to appear in this matter on behalf of Amici Curiae Alaska Native Village Corporation Association and ANCSA Regional Association. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Amit P. Mehta o n 04/22/2020. (lcapm2) (Entered: 04/22/2020) |
| 04/22/2020 | | | |

| | | | |
|---|---|---|---|
| | | | MINUTE ORDER granting 11 Motion for Leave to Appear Pro Hac Vice. James Harrison Powell, II is hereby admitted pro hac vice to appear in this matter on behalf of Amici Curiae Alaska Native Village Corporation Association and ANCSA Regional Association. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Amit P. Meh ta on 04/22/2020. (lcapm2) (Entered: 04/22/2020) |
| 04/22/2020 | 12 | | Consent MOTION for Leave to File *Amici Curiae* by ANCSA Regional Association, Alaska Native Village Association (Attachments: # 1 Text of Proposed Order)(Walker, William) (Entered: 04/22/2020) |
| 04/22/2020 | 13 | | Consent MOTION for Leave to File *Amicus Curiae Brief* by AHTNA, INC. (Attachments: # 1 Exhibit Proposed Brief, # 2 Exhibit Declaration of Ken Johns, # 3 Exhibit Proposed Order)(O'Leary, Michael) (Entered: 04/22/2020) |
| 04/22/2020 | 14 | | ENTERED IN ERROR.....NOTICE of Appearance by William Kenneth Walker on behalf of AKIAK NATIVE COMMUNITY, ANCSA Regional Association (Walker, William) Modified on 4/24/2020 (znmw). (Entered: 04/22/2020) |
| 04/22/2020 | 15 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jonathan Katchen, Filing fee $ 100, receipt number ADCDC–7049884. Fee Status: Fee Paid. by AHTNA, INC. (Attachments: # 1 Exhibit Declaration of Jonathan Katchen, # 2 Exhibit Proposed Order)(O'Leary, Michael) (Entered: 04/22/2020) |
| 04/22/2020 | 16 | | MOTION to Withdraw as Attorney by AKIAK NATIVE COMMUNITY (Walker, William) (Entered: 04/22/2020) |
| 04/22/2020 | 17 | | ENTERED IN ERROR.....NOTICE of Appearance by William Kenneth Walker on behalf of Alaska Native Village Association (Walker, William) Modified on 4/24/2020 (znmw). (Entered: 04/22/2020) |
| 04/22/2020 | 18 | | Amended MOTION for Leave to File *Amici Curiae Brief with Consent* by ANCSA Regional Association, Alaska Native Village Association (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Walker, William) (Entered: 04/22/2020) |
| 04/23/2020 | | | MINUTE ORDER granting 15 Motion for Leave to Appear Pro Hac Vice. Jonathan Katchen is hereby admitted pro hac vice in this matter on behalf of Ahtna, Inc. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Amit P. Mehta on 04/23/2020. (lcapm2) (Entered: 04/23/2020) |
| 04/23/2020 | | | Minute Entry for proceedings held before Judge Amit P. Mehta: Telephone Conference held on 4/23/2020. Defendant's Opposition due by 5:00 pm on 4/23/2020. Plaintiffs' Reply Brief due by 12:00 pm on 4/24/2020. Motion Hearing set for 4/24/2020 at 3:00 PM before Judge Amit P. Mehta. Should any member of the public or media require access to the motion hearing, they should reach out to the Courtroom Deputy, Mr. Douyon, at Jean–Claude_Douyon@dcd.uscourts.gov for further instructions. (Court Reporter: Lisa Moreira) (zjd) (Entered: 04/23/2020) |

| | | | |
|---|---|---|---|
| 04/23/2020 | | | MINUTE ORDER. Pursuant to the Telephonic Scheduling Conference held today, April 23, 2020, the court orders the following schedule for further proceedings in this matter: (1) Defendant shall file its response to Plaintiffs' Motion for a Temporary Restraining Order by 5 p.m. today, April 23, 2020; (2) Plaintiffs shall file their reply, if any, by 12 p.m. on April 24, 2020; (3) a video conference hearing on Plaintiffs' motion is set for April 24, 2020, at 3 p.m.; and (4) Amici Tribal Governments shall file their amici curiae brief by 12 p.m. today, April 23, 2020. The 13 Consent Motion for Leave to File Amicus Curiae Brief by AHTNA, Inc., and the 18 Amended Motion for Leave to File Amici Curiae Brief by ANCSA Regional Association and Alaska Native Village Association are granted. Should any member of the public or media require access to the April 24 hearing, they should reach out to the Courtroom Deputy, Mr. Douyon, at Jean–Claude_Douyon@dcd.uscourts.gov for further instructions. Signed by Judge Amit P. Mehta on 04/23/2020. (lcapm2) (Entered: 04/23/2020) |
| 04/23/2020 | 20 | | AMICUS BRIEF re 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by ALEUT COMMUNITY OF ST. PAUL ISLAND, ASA CARSARMIUT TRIBE, AKIAK NATIVE COMMUNITY, TULALIP TRIBES, HOULTON BAND OF MALISEET INDIANS, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION by AFFILIATED TRIBES OF NORTHWEST INDIANS, ALL PUEBLO COUNCIL OF GOVERNORS, ARIZONA INDIAN GAMING ASSOCIATION, CALIFORNIA NATIONS INDIAN GAMING ASSOCIATION, CALIFORNIA TRIBAL CHAIRPERSON'S ASSOCIATION, GREAT PLAINS TRIBAL CHAIRMEN'S ASSOCIATION, INC., INTER TRIBAL ASSOCIATION OF ARIZONA, INC., INTER–TRIBAL COUNCIL OF THE FIVE CIVILIZED TRIBES, MIDWEST ALLIANCE OF SOVEREIGN TRIBES, NATIONAL CONGRESS OF AMERICAN INDIANS, NATIONAL INDIAN GAMING ASSOCIATION, UNITED SOUTH AND EASTERN TRIBES SOVEREIGNTY PROTECTION FUND. (Attachments: # 1 Exhibit Declaration of Maria Dadgar, Executive Director of the Inter Tribal Association of Arizona, Inc, # 2 Exhibit Declaration of Chuck Hoskin, Jr., Principal Chief of the Cherokee Nation and President of the Inter–Tribal Council of the Five Civilized Tribes, # 3 Exhibit Declaration of Michael Chavarria, Chairman of the All Pueblo Council of Governors, # 4 Exhibit Declaration of Bo Mazzetti, Chairman of the California Tribal Chairpersons Association, # 5 Exhibit Declaration of Leonard Forsman, President of the Affiliated Tribes of Northwest Indians, # 6 Exhibit Declaration of Yvette Roubideaux)(Smith, Kaighn) Modified event title on 4/23/2020 (znmw). (Entered: 04/23/2020) |
| 04/23/2020 | 21 | | Memorandum in opposition to re 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by STEVEN MNUCHIN. (Lynch, Jason) (Entered: 04/23/2020) |
| 04/23/2020 | 22 | | Unopposed MOTION for Leave to File *Amicus Brief in Support of Plaintiffs Motions for Temporary Restraining Order and Preliminary Injunction* by GILA RIVER INDIAN COMMUNITY, NATIVE AMERICAN FINANCE OFFICERS ASSOCIATION, PENOBSCOT NATION, NOTTAWASEPPI HURON BAND OF THE POTAWATOMI (Attachments: # 1 Exhibit Lodged Amicus Brief, # 2 Text of Proposed Order)(Godfrey, Merrill) (Entered: |

| | | | |
|---|---|---|---|
| | | | 04/23/2020 |
| 04/23/2020 | 23 | | AMICUS BRIEF by AHTNA, INC.. (znmw) (Entered: 04/24/2020) |
| 04/23/2020 | 24 | | AMICUS BRIEF by ALASKA NATIVE VILLAGE ASSOCIATION, ANCSA REGIONAL ASSOCIATION. (znmw) (Entered: 04/24/2020) |
| 04/24/2020 | | | NOTICE OF CORRECTED DOCKET ENTRY: Docket Entries 17 Notice of Appearance and 14 Notice of Appearance were entered in error and counsel is instructed to refile; each appearing counsel must file their own appearance using individual login credentials. (znmw) (Entered: 04/24/2020) |
| 04/24/2020 | | | MINUTE ORDER granting 22 Motion for Leave to File to File Amicus Curiae Brief. Signed by Judge Amit P. Mehta on 04/24/2020. (lcapm2) (Entered: 04/24/2020) |
| 04/24/2020 | 25 | | AMICUS BRIEF by GILA RIVER INDIAN COMMUNITY, NATIVE AMERICAN FINANCE OFFICERS ASSOCIATION, NOTTAWASEPPI HURON BAND OF THE POTAWATOMI, PENOBSCOT NATION. (eg) (Entered: 04/24/2020) |
| 04/24/2020 | 26 | | NOTICE of Appearance by Christine Williams on behalf of ALASKA NATIVE VILLAGE ASSOCIATION (Williams, Christine) (Entered: 04/24/2020) |
| 04/24/2020 | 27 | | NOTICE of Appearance by James Harrison Powell, II on behalf of ALASKA NATIVE VILLAGE ASSOCIATION (Powell, James) (Entered: 04/24/2020) |
| 04/24/2020 | 28 | | NOTICE of Appearance by Christine Williams on behalf of ANCSA REGIONAL ASSOCIATION (Williams, Christine) (Entered: 04/24/2020) |
| 04/24/2020 | 29 | | NOTICE of Appearance by James Harrison Powell, II on behalf of ANCSA REGIONAL ASSOCIATION (Powell, James) (Entered: 04/24/2020) |
| 04/24/2020 | 30 | | REPLY to opposition to motion re 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ASA'CARSARMIUT TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ELK VALLEY RANCHERIA, CALIFORNIA, HOULTON BAND OF MALISEET INDIANS, NAVAJO NATION, PUEBLO OF PICURIS, QUINAULT INDIAN NATION, SAN CARLOS APACHE TRIBE, TULALIP TRIBES. (Attachments: # 1 Declaration)(Kanji, Riyaz) (Entered: 04/24/2020) |
| 04/24/2020 | 31 | | NOTICE of Change of Address by William Kenneth Walker (Walker, William) (Entered: 04/24/2020) |
| 04/24/2020 | | | MINUTE ORDER. Members of the public or media who wish to access the hearing on Plaintiffs' Motion for a Temporary Restraining Order scheduled for today, April 24, 2020, at 3:00 p.m., may now access the hearing by dialing the court's toll–free public access line: (877) 848–7030, access code 321–8747. Signed by Judge Amit P. Mehta on 04/24/2020. (lcapm2) (Entered: 04/24/2020) |
| 04/24/2020 | | | Minute Entry for proceedings held before Judge Amit P. Mehta: Motion Hearing held on 4/24/2020 re 3 Motion for Temporary Restraining Order and |

| | | | |
|---|---|---|---|
| | | | Preliminary Injunction. (Court Reporter: William Zaremba) (zjd) (Entered: 04/24/2020) |
| 04/24/2020 | 32 | | NOTICE *in Response to the Court's Questions at the Telephonic Hearing* by STEVEN MNUCHIN (Lynch, Jason) (Entered: 04/24/2020) |
| 04/25/2020 | 33 | | NOTICE by ALASKA NATIVE VILLAGE ASSOCIATION (Williams, Christine) (Entered: 04/25/2020) |
| 04/25/2020 | 34 | | MOTION to Correct *Procedural Defect/Controlling Authority* by ANCSA REGIONAL ASSOCIATION (Williams, Christine) Modified on 4/28/2020 to correct docket event/text (eg). (Entered: 04/25/2020) |
| 04/27/2020 | | | NOTICE OF ERROR re 31 Notice of Change of Address; emailed to wkw@att.net, cc'd 17 associated attorneys –– The PDF file you docketed contained errors: 1. Counsel must change their address via Pacer (zeg, ) (Entered: 04/27/2020) |
| 04/27/2020 | 35 | | REPLY to opposition to motion re 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by UTE TRIBE OF THE UINTAH AND OURAY RESERVATION. (Rasmussen, Jeffrey) (Entered: 04/27/2020) |
| 04/27/2020 | 36 | | MEMORANDUM AND OPINION as to 3 Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction. See attached Memorandum Opinion for further details. Signed by Judge Amit P. Mehta on 04/27/2020. (lcapm2) (Entered: 04/27/2020) |
| 04/27/2020 | 37 | | ORDER. For the reasons stated in the 36 Memorandum Opinion, the court grants in part and denies in part Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction. See attached Order for further details. Signed by Judge Amit P. Mehta on 04/27/2020. (lcapm2) (Entered: 04/27/2020) |
| 04/28/2020 | | | MINUTE ORDER. The parties shall meet and confer and, by May 1, 2020, file a Joint Status Report that proposes a schedule for further proceedings in this matter. The Joint Status Report shall also update the court on any developments in the disbursement of Title V funds to federally recognized Indian tribes, as well as any funds withheld from ANCs pursuant to the court's preliminary injunction order. Signed by Judge Amit P. Mehta on 04/28/2020. (lcapm2) (Entered: 04/28/2020) |
| 04/28/2020 | 38 | | NOTICE of Appearance by Matthew Newman on behalf of ARTIC VILLAGE COUNCIL, NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, NONDALTON TRIBAL COUNCIL, ROSEBUD SIOUX TRIBE (Newman, Matthew) (Entered: 04/28/2020) |
| 04/28/2020 | | | Set/Reset Deadlines: Joint Status Report due by 5/1/2020. (zjd) (Entered: 04/28/2020) |
| 04/28/2020 | 39 | | NOTICE of Appearance by Jonathan W Katchen on behalf of AHTNA, INC. (Katchen, Jonathan) (Entered: 04/28/2020) |
| 04/29/2020 | 40 | | NOTICE of Appearance by Jeremy J. Patterson on behalf of UTE TRIBE OF THE UINTAH AND OURAY RESERVATION (Patterson, Jeremy) (Entered: 04/29/2020) |

| 04/29/2020 | 41 | TRANSCRIPT OF TELEPHONIC STATUS HEARING before Judge Amit P. Mehta held on April 23, 2020; Page Numbers: 1–23. Date of Issuance:April 29, 2020. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number (202) 354–3187, Transcripts may be ordered by submitting the Transcript Order Form |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from t he court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 5/20/2020. Redacted Transcript Deadline set for 5/30/2020. Release of Transcript Restriction set for 7/28/2020.(Moreira, Lisa) (Entered: 04/29/2020) |
| 04/30/2020 | 42 | TRANSCRIPT OF TELEPHONIC/VIDEOCONFERENCE HEARING ON MOTION FOR TEMPORARY RETRAINING ORDER PROCEEDINGS before Judge Amit P. Mehta held on April 24, 2020; Page Numbers: 1–82. Date of Issuance: April 30, 2020. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354–3249. Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at th e courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 5/21/2020. Redacted Transcript Deadline set for 5/31/2020. Release of Transcript Restriction set for 7/29/2020.(wz) (Entered: 04/30/2020) |
| 04/30/2020 | 43 | MOTION to Intervene by AHTNA, INC. (Attachments: # 1 Exhibit Declaration of Ken Johns, # 2 Exhibit Proposed Answer to Chehalis Plaintiffs' Complaint, # 3 Exhibit Proposed Answer to Sioux Plaintiffs' Complaint, # 4 Exhibit Proposed Answer to Ute Indian Tribe Complaint, # 5 Rule 26.1 Certificate, # 6 Text of Proposed Order)(O'Leary, Michael) (Entered: |

| | | | |
|---|---|---|---|
| | | | 04/30/2020) |
| 05/01/2020 | 44 | | Joint STATUS REPORT *pursuant to the Court's April 28, 2020, minute order* by STEVEN MNUCHIN. (Lynch, Jason) (Entered: 05/01/2020) |
| 05/05/2020 | 45 | | MOTION to Intervene *and Memorandum of Points and Authorities in Support* by Alaska Native Village Corporation Association, Inc., Association of ANCSA Regional Corporation Presidents/CEO's, Inc. (Attachments: # 1 Declaration Aaron M. Schutt, # 2 Declaration Anthony Mallott, # 3 Declaration Richard Glenn, # 4 Declaration Shuana Z. Hegna, # 5 Declaration Sherri Buretta, # 6 Declaration Sophie Minich, # 7 Declaration Wayne Westlake, # 8 Declaration Nancy Andrew, # 9 Declaration Alfred Thomas Harris, # 10 Declaration Clifford Blair, # 11 Declaration Dean Gould, # 12 Declaration Ed Herndon, # 13 Declaration Janine Avner, # 14 Declaration Kenneth A. Hughes IV, # 15 Declaration Leo Barlow, # 16 Declaration Melissa M. Kookesh, # 17 Declaration Michele Christiansen, # 18 Declaration Patrick McCarty, # 19 Declaration Robert D. Mills, # 20 Declaration Ron Philemonoff, # 21 Declaration Thomas Kirk, # 22 Declaration Gail Schubert, # 23 Declaration Thomas Mack, # 24 Declaration George Sam, # 25 Exhibit Ex. 25 – Proposed Answer to Chehalis Complaint, # 26 Exhibit Ex. 26 – Propsed Answer to Cheyenne River Complaint, # 27 Exhibit Ex. 27 – Proposed Answer to Ute Tribe Complaint, # 28 ANVCA Rule 26.1 Disclosure, # 29 ARA Rule 26.1 Disclosure, # 30 Text of Proposed Order)(Wolff, Daniel) (Entered: 05/05/2020) |
| 05/05/2020 | 46 | | MOTION to Intervene by CALISTA CORPORATION, Kwethluk, Incorporated, Sea Lion Corporation, St. Marys Native Corporation, Napaskiak, Incorporated, Akiachak, Limited (Attachments: # 1 Exhibit A – Declaration of A. Guy, # 2 Exhibit B – Declaration of G. Guy, # 3 Exhibit C – Declaration of N. Andrew, # 4 Exhibit D – Declaration of M. Naneng, # 5 Exhibit E – Declaration of M. Kaganak, # 6 Exhibit F – Declaration of J. George, # 7 Exhibit G – Proposed Answer to Chehalis Plaintiffs' Complaint, # 8 Exhibit H – Proposed Answer to Sioux Plaintiffs' Complaint, # 9 Exhibit I – Proposed Answer to Ute Indian Tribe Complaint, # 10 Rule 26.1 Certificate, # 11 Text of Proposed Order)(Naresh, Ragan) (Entered: 05/05/2020) |
| 05/05/2020 | 47 | | NOTICE of Appearance by Kirsten L. Nathanson on behalf of ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC., ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC. (Nathanson, Kirsten) (Entered: 05/05/2020) |
| 05/05/2020 | | | MINUTE ORDER. The parties and Proposed Intervenors shall appear for a telephonic scheduling conference on May 7, 2020, at 1:00 p.m. The courtroom deputy shall distribute dial–in information to counsel. Members of the public who wish to access the hearing may dial in to the court's toll–free public access line: (877) 848–7030, access code 321–8747. Signed by Judge Amit P. Mehta on 05/05/2020. (lcapm2) (Entered: 05/05/2020) |
| 05/05/2020 | 48 | | NOTICE of Appearance by David Yolun Chung on behalf of ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC., ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC. (Chung, David) (Entered: 05/05/2020) |
| 05/05/2020 | | | Set/Reset Hearings: Telephone Conference set for 5/7/2020 at 1:00 PM before Judge Amit P. Mehta. (zjd) (Entered: 05/05/2020) |

| 05/05/2020 | 49 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Rose M. Weckenmann, Filing fee $ 100, receipt number ADCDC–7093364. Fee Status: Fee Paid. by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 05/05/2020) |
|---|---|---|---|
| 05/05/2020 | | | MINUTE ORDER granting 49 Motion for Leave to Appear Pro Hac Vice. Rose M. Weckenmann is hereby admitted pro hac vice in this matter on behalf of Plaintiff Cheyenne River Sioux Tribe. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Amit P. Mehta on 05/05/2020. (lcapm2) (Entered: 05/05/2020) |
| 05/06/2020 | 50 | | NOTICE of Appearance by Rose Michele Weckenmann on behalf of CHEYENNE RIVER SIOUX TRIBE (Weckenmann, Rose) (Entered: 05/06/2020) |
| 05/07/2020 | | | Minute Entry for proceedings held before Judge Amit P. Mehta: Telephone Conference held on 5/7/2020. Plaintiff's Status Report due by 5/8/2020 at 4:00 pm. (Court Reporter: William Zaremba) (zjd) (Entered: 05/07/2020) |
| 05/07/2020 | | | MINUTE ORDER. Pursuant to the Telephonic Status Conference held today, May 7, 2020, Plaintiffs shall file a Status Report by May 8, 2020, at 4:00 p.m., which informs the court whether Plaintiffs intend to oppose the pending motions to intervene. Signed by Judge Amit P. Mehta on 05/07/2020. (lcapm2) (Entered: 05/07/2020) |
| 05/08/2020 | 51 | | WITHDRAWN PURSUANT TO NOTICE 52 FILED 5/8/2020.....NOTICE *of Intent To Oppose Motions to Intervene* by UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION re 46 MOTION to Intervene , 43 MOTION to Intervene , 45 MOTION to Intervene *and Memorandum of Points and Authorities in Support* (Rasmussen, Jeffrey) Modified on 5/12/2020 (znmw). (Entered: 05/08/2020) |
| 05/08/2020 | 52 | | NOTICE OF WITHDRAWAL OF MOTION by UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION re 51 Notice (Other), (Rasmussen, Jeffrey) (Entered: 05/08/2020) |
| 05/08/2020 | 53 | | WITHDRAWN PURSUANT TO NOTICE 54 FILED 5/8/2020.....NOTICE by CHEYENNE RIVER SIOUX TRIBE, OGLALA SIOUX TRIBE, ROSEBUD SIOUX TRIBE (Ducheneaux, Nicole) Modified on 5/12/2020 (znmw). (Entered: 05/08/2020) |
| 05/08/2020 | 54 | | NOTICE *of Conditional Withdrawal of Statement Regarding ANCs Motions for Intervention* by ARTIC VILLAGE COUNCIL, CHEYENNE RIVER SIOUX TRIBE, NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, NONDALTON TRIBAL COUNCIL, OGLALA SIOUX TRIBE, ROSEBUD SIOUX TRIBE re 53 Notice (Other) (Furlong, Wesley) (Entered: 05/08/2020) |
| 05/08/2020 | 55 | | MOTION for Extension of Time to File *Notice Regarding Motions to Intervene* by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ASA'CARSARMIUT TRIBE, CHEYENNE RIVER SIOUX TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ELK VALLEY RANCHERIA, CALIFORNIA, HOULTON BAND OF MALISEET |

| | | | |
|---|---|---|---|
| | | | INDIANS, NAVAJO NATION, OGLALA SIOUX TRIBE, PUEBLO OF PICURIS, QUINAULT INDIAN NATION, ROSEBUD SIOUX TRIBE, SAN CARLOS APACHE TRIBE, TULALIP TRIBES, UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION (Attachments: # 1 Text of Proposed Order)(Kanji, Riyaz) (Entered: 05/08/2020) |
| 05/09/2020 | | | MINUTE ORDER granting 55 Motion for Extension of Time. Plaintiffs shall file their status report by Tuesday, May 12, 2020, at 4:00 p.m. Signed by Judge Amit P. Mehta on 05/09/2020. (lcapm2) (Entered: 05/09/2020) |
| 05/09/2020 | | | Set/Reset Deadlines: Plaintiffs' Status Report due by 5/12/2020 at 4:00 PM. (zjd) (Entered: 05/11/2020) |
| 05/12/2020 | 56 | | NOTICE *of Intent to Oppose Motions to Intervene* by UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION re 46 MOTION to Intervene , 43 MOTION to Intervene , 45 MOTION to Intervene *and Memorandum of Points and Authorities in Support* (Bassett, Frances) (Entered: 05/12/2020) |
| 05/12/2020 | 57 | | STATUS REPORT by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ARTIC VILLAGE COUNCIL, ASA'CARSARMIUT TRIBE, CHEYENNE RIVER SIOUX TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ELK VALLEY RANCHERIA, CALIFORNIA, HOULTON BAND OF MALISEET INDIANS, NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, NAVAJO NATION, NONDALTON TRIBAL COUNCIL, OGLALA SIOUX TRIBE, PUEBLO OF PICURIS, QUINAULT INDIAN NATION, ROSEBUD SIOUX TRIBE, SAN CARLOS APACHE TRIBE, TULALIP TRIBES. (Kanji, Riyaz) (Entered: 05/12/2020) |
| 05/12/2020 | 58 | | RESPONSE re 57 Status Report,, *and Proposal for Further Proceedings* filed by STEVEN MNUCHIN. (Lynch, Jason) (Entered: 05/12/2020) |
| 05/13/2020 | | | MINUTE ORDER. The schedule for these consolidated proceedings shall be as follows. The Ute Tribe Plaintiffs shall file a consolidated response to all pending motions to intervene by May 14, 2020. The Proposed Intervenors shall file their respective reply briefs by May 19, 2020. To be clear, the Ute Tribe Plaintiffs' opposition to intervention extends only to the motions to intervene in their case. See Hall v. Hall, 138 S. Ct. 1118, 1127–28 (2018). Permissive intervention is not opposed in the Confederated Tribes of the Chehalis Reservation and Cheyenne River Sioux Tribe matters and therefore is granted. The Secretary shall produce the administrative record by May 22, 2020. All parties shall file cross–motions for summary judgment by May 29, 2020. The Plaintiff groups shall file a single consolidated summary judgment brief, and so too shall the Intervenor–Defendants. Cross–motions for summary judgment for each grouping of parties (Plaintiffs, Intervenor–Defendants, and the Secretary) shall be no more than 60 double–spaced pages. All parties shall file combined responses/replies by June 9, 2020. The Plaintiff groups shall file a single consolidated response/reply, and so too shall the Intervenor–Defendants. Responses/replies for each grouping of parties shall be no more than 35 double–spaced pages. The parties shall file the Joint Appendix required by Local Civil Rule 7(n)(1) by June 10, 2020. Oral argument on the cross–motions is set for June 12, 2020, at 1:00 p.m. Members of the public or media may access the hearing by dialing the court's toll–free public access line: |

| | | | |
|---|---|---|---|
| | | | (877) 848–7030, access code 321–8747. Signed by Judge Amit P. Mehta on 05/13/2020. (lcapm2) Modified on 6/11/2020 (lcapm2). (Entered: 05/13/2020) |
| 05/13/2020 | | | Set/Reset Deadlines/Hearings: Consolidated Response due by 5/14/2020. Reply Briefs due by 5/19/2020. Administrative Record due by 5/22/2020. Cross–Motions for Summary Judgment due by 5/29/2020. Combined Responses/Replies due by 6/9/2020. Joint Appendix due by 6/10/2020. Motion Hearing set for 6/12/2020 at 1:00 PM before Judge Amit P. Mehta. (zjd) (Entered: 05/13/2020) |
| 05/14/2020 | 59 | | Memorandum in opposition re 46 MOTION to Intervene , 43 MOTION to Intervene , 45 MOTION to Intervene *and Memorandum of Points and Authorities in Support* filed by UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION. (Rasmussen, Jeffrey) Modified on docket event/text 5/15/2020 (eg). (Entered: 05/15/2020) |
| 05/19/2020 | 60 | | TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS before Judge Amit P. Mehta held on May 7, 2020; Page Numbers: 1–35. Date of Issuance: May 19, 2020. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354–3249. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the cour t reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 6/9/2020. Redacted Transcript Deadline set for 6/19/2020. Release of Transcript Restriction set for 8/17/2020.(wz) (Entered: 05/19/2020) |
| 05/19/2020 | 61 | | NOTICE of Appearance by Paul Clement on behalf of AKIACHAK, LIMITED, CALISTA CORPORATION, KWETHLUK, INCORPORATED, NAPASKIAK, INCORPORATED, SEA LION CORPORATION, ST. MARY'S NATIVE CORPORATION (Clement, Paul) (Entered: 05/19/2020) |
| 05/19/2020 | 62 | | REPLY to opposition to motion re 46 MOTION to Intervene filed by AKIACHAK, LIMITED, CALISTA CORPORATION, KWETHLUK, INCORPORATED, NAPASKIAK, INCORPORATED, SEA LION CORPORATION, ST. MARY'S NATIVE CORPORATION. (Clement, Paul) (Entered: 05/19/2020) |
| 05/19/2020 | 63 | | ENTERED IN ERROR.....RESPONSE re 45 MOTION to Intervene *and Memorandum of Points and Authorities in Support* filed by ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC., ANCSA REGIONAL ASSOCIATION. (Wolff, Daniel) Modified on 5/20/2020 to enter |

| | | | |
|---|---|---|---|
| | | | in error at the request of the filer. (ztnr) (Entered: 05/19/2020) |
| 05/19/2020 | 64 | | ENTERED IN ERROR.....REPLY re 45 MOTION to Intervene *and Memorandum of Points and Authorities in Support* filed by ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC., ANCSA REGIONAL ASSOCIATION. (Wolff, Daniel). Modified on 5/20/2020 to enter in error at the request of the filer (eg). (Entered: 05/19/2020) |
| 05/19/2020 | 65 | | REPLY to opposition to motion re 45 MOTION to Intervene *and Memorandum of Points and Authorities in Support* filed by ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC., ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC.. (Wolff, Daniel) (Entered: 05/19/2020) |
| 05/19/2020 | 66 | | NOTICE of Appearance by Paul W. Spruhan on behalf of NAVAJO NATION (Spruhan, Paul) (Entered: 05/19/2020) |
| 05/19/2020 | 67 | | NOTICE of Appearance by Jonathan W Katchen on behalf of AHTNA, INC. (Katchen, Jonathan) (Entered: 05/19/2020) |
| 05/19/2020 | 68 | | REPLY to opposition to motion re 43 MOTION to Intervene filed by AHTNA, INC.. (O'Leary, Michael) (Entered: 05/19/2020) |
| 05/19/2020 | 69 | | MOTION for Leave to File *surreply brief* by UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION (Attachments: # 1 Exhibit Proposed surreply)(Rasmussen, Jeffrey) (Entered: 05/20/2020) |
| 05/20/2020 | 70 | | ORDER granting the Motions to Intervene, ECF Nos. 43 , 45 , and 46 . Plaintiff Ute Tribe's 69 Motion for Leave to File Surreply is denied as moot. See the attached Order for further details. Signed by Judge Amit P. Metha on 05/20/2020. (lcapm2) (Entered: 05/20/2020) |
| 05/22/2020 | 71 | | ADMINISTRATIVE RECORD *Index & Certification* by STEVEN MNUCHIN. (Attachments: # 1 Kowalski AR Certification)(Lynch, Jason) (Entered: 05/22/2020) |
| 05/26/2020 | 72 | | PROPOSED BRIEFING SCHEDULE re Order,,,,,, *Plaintiffs' Request for Separate Briefing* by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ARTIC VILLAGE COUNCIL, ASA'CARSARMIUT TRIBE, CHEYENNE RIVER SIOUX TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ELK VALLEY RANCHERIA, CALIFORNIA, HOULTON BAND OF MALISEET INDIANS, NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, NAVAJO NATION, NONDALTON TRIBAL COUNCIL, OGLALA SIOUX TRIBE, PUEBLO OF PICURIS, QUINAULT INDIAN NATION, ROSEBUD SIOUX TRIBE, SAN CARLOS APACHE TRIBE, TULALIP TRIBES, UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION. (Furlong, Wesley) (Entered: 05/26/2020) |
| 05/27/2020 | | | MINUTE ORDER granting 72 Plaintiffs' Request for Separate Briefing. Plaintiffs may file two summary judgment briefs totaling no more than 60 pages. Signed by Judge Amit P. Mehta on 05/27/2020. (lcapm2) (Entered: 05/27/2020) |
| 05/28/2020 | 73 | | NOTICE *of Change of Firm Affiliation and Address* by UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION (Bassett, Frances) |

| | | | |
|---|---|---|---|
| | | | (Entered: 05/28/2020) |
| 05/29/2020 | | | NOTICE OF ERROR re 73 Notice (Other); emailed to fbassett@ndnlaw.com, cc'd 56 associated attorneys –– The PDF file you docketed contained errors: 1. All address changes must be done thru pacer. (zeg, ) (Entered: 05/29/2020) |
| 05/29/2020 | 74 | | Consent MOTION for Leave to File *Amicus Brief in Support of Plaintiffs' Motions for Summary Judgment* by AFFILIATED TRIBES OF NORTHWEST INDIANS, ARIZONA INDIAN GAMING ASSOCIATION, CALIFORNIA NATIONS INDIAN GAMING ASSOCIATION, GREAT PLAINS TRIBAL CHAIRMEN'S ASSOCIATION, INC., INTER TRIBAL ASSOCIATION OF ARIZONA, INC., MIDWEST ALLIANCE OF SOVEREIGN TRIBES, NATIONAL CONGRESS OF AMERICAN INDIANS, NATIONAL INDIAN GAMING ASSOCIATION (Attachments: # 1 Text of Proposed Order Proposed Order)(Smith, Kaighn) (Entered: 05/29/2020) |
| 05/29/2020 | | | MINUTE ORDER granting 74 Consent Motion for Leave to File to File Amicus Brief. Signed by Judge Amit P. Mehta on 05/29/2020. (lcapm2) (Entered: 05/29/2020) |
| 05/29/2020 | 75 | | Unopposed MOTION for Leave to File *Amicus Curiae Brief* by ALASKA FEDERATION OF NATIVES, INC. (Attachments: # 1 Exhibit Local Rule 7.1 Certificate, # 2 Text of Proposed Order)(Lister, James) (Entered: 05/29/2020) |
| 05/29/2020 | 76 | | Joint MOTION for Summary Judgment by ARTIC VILLAGE COUNCIL, CHEYENNE RIVER SIOUX TRIBE, NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, NAVAJO NATION, NONDALTON TRIBAL COUNCIL, OGLALA SIOUX TRIBE, ROSEBUD SIOUX TRIBE, UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION (Attachments: # 1 Text of Proposed Order, # 2 Memorandum in Support, # 3 Declaration Frazier, # 4 Exhibit Frazier, # 5 Exhibit Frazier, # 6 Exhibit Frazier, # 7 Exhibit Frazier, # 8 Exhibit Frazier, # 9 Exhibit Frazier, # 10 Exhibit Frazier, # 11 Exhibit Frazier, # 12 Exhibit Frazier, # 13 Exhibit Frazier, # 14 Declaration Herman, # 15 Exhibit Herman, # 16 Exhibit Herman, # 17 Exhibit Herman, # 18 Exhibit Herman, # 19 Declaration Yatlin, # 20 Declaration Thumma, # 21 Exhibit Thumma, # 22 Declaration Alexie, # 23 Exhibit Alexie)(Ducheneaux, Nicole) (Entered: 05/29/2020) |
| 05/29/2020 | 77 | | MOTION for Summary Judgment by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ASA'CARSARMIUT TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ELK VALLEY RANCHERIA, CALIFORNIA, HOULTON BAND OF MALISEET INDIANS, NAVAJO NATION, PUEBLO OF PICURIS, QUINAULT INDIAN NATION, SAN CARLOS APACHE TRIBE, TULALIP TRIBES (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Kanji, Riyaz) (Entered: 05/29/2020) |
| 05/29/2020 | 78 | | MOTION for Summary Judgment by AHTNA, INC., AKIACHAK, LIMITED, ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC., ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC., CALISTA CORPORATION, KWETHLUK, INCORPORATED, NAPASKIAK, INCORPORATED, SEA LION CORPORATION, ST. MARY'S NATIVE CORPORATION (Attachments: # 1 Memorandum in Support, # 2 Declaration S. Minich Supp. Decl., # 3 Text of |

| | | | |
|---|---|---|---|
| | | | Proposed Order)(Wolff, Daniel) (Entered: 05/29/2020) |
| 05/29/2020 | 79 | | MOTION for Summary Judgment by STEVEN MNUCHIN (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 – 1977 Final Report, # 3 Text of Proposed Order)(Lynch, Jason) (Entered: 05/29/2020) |
| 05/29/2020 | 80 | | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by ALASKA FEDERATION OF NATIVES, INC. (eg) (Entered: 06/01/2020) |
| 05/31/2020 | | | MINUTE ORDER granting 75 Unopposed Motion for Leave to File Amicus Curiae Brief. Signed by Judge Amit P. Mehta on 05/31/2020. (lcapm2) (Entered: 05/31/2020) |
| 06/04/2020 | 81 | | AMICUS BRIEF re 79 MOTION for Summary Judgment , 78 MOTION for Summary Judgment , 76 Joint MOTION for Summary Judgment , 77 MOTION for Summary Judgment filed by ALASKA FEDERATION OF NATIVES, INC.. (Attachments: # 1 Affidavit Local Rule 7.1 Certificate)(Lister, James) Modified docket event/text on 6/8/2020 (eg). (Entered: 06/04/2020) |
| 06/04/2020 | 82 | | AMICUS BRIEF re 76 Joint MOTION for Summary Judgment filed by ROSEBUD SIOUX TRIBE, NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, CHEYENNE RIVER SIOUX TRIBE, NAVAJO NATION, UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, OGLALA SIOUX TRIBE, NONDALTON TRIBAL COUNCIL, ARTIC VILLAGE COUNCIL, 77 MOTION for Summary Judgment filed by QUINAULT INDIAN NATION, PUEBLO OF PICURIS, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ASA'CARSARMIUT TRIBE, ALEUT COMMUNITY OF ST. PAUL ISLAND, NAVAJO NATION, AKIAK NATIVE COMMUNITY, TULALIP TRIBES, SAN CARLOS APACHE TRIBE, HOULTON BAND OF MALISEET INDIANS, ELK VALLEY RANCHERIA, CALIFORNIA by AFFILIATED TRIBES OF NORTHWEST INDIANS, ALL PUEBLO COUNCIL OF GOVERNORS, ARIZONA INDIAN GAMING ASSOCIATION, CALIFORNIA NATIONS INDIAN GAMING ASSOCIATION, CALIFORNIA TRIBAL CHAIRPERSON'S ASSOCIATION, GREAT PLAINS TRIBAL CHAIRMEN'S ASSOCIATION, INC., INTER TRIBAL ASSOCIATION OF ARIZONA, INC., INTER–TRIBAL COUNCIL OF THE FIVE CIVILIZED TRIBES, MIDWEST ALLIANCE OF SOVEREIGN TRIBES, NATIONAL CONGRESS OF AMERICAN INDIANS, NATIONAL INDIAN GAMING ASSOCIATION, UNITED SOUTH AND EASTERN TRIBES SOVEREIGNTY PROTECTION FUND. (Smith, Kaighn) Modified event title on 6/9/2020 (znmw). (Entered: 06/04/2020) |
| 06/04/2020 | 85 | | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by ALASKA FEDERATION OF NATIVES, INC. (eg) (Entered: 06/09/2020) |
| 06/08/2020 | | | MINUTE ORDER regarding the June 12, 2020, hearing on the parties' cross–motions for summary judgment. One lawyer shall present argument on behalf of each grouping of parties (Plaintiffs, Intervenor–Defendants, and the Secretary). In light of the comprehensive briefing presented by the parties, the court will not hear argument by any amici curiae. Signed by Judge Amit P. |

| | | | Mehta on 06/08/2020. (lcapm2) (Entered: 06/08/2020) |
|---|---|---|---|
| 06/08/2020 | 83 | | Joint MOTION to Expedite by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ASA'CARSARMIUT TRIBE, CHEYENNE RIVER SIOUX TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, HOULTON BAND OF MALISEET INDIANS, NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, NAVAJO NATION, NONDALTON TRIBAL COUNCIL, OGLALA SIOUX TRIBE, PUEBLO OF PICURIS, QUINAULT INDIAN NATION, ROSEBUD SIOUX TRIBE, SAN CARLOS APACHE TRIBE, TULALIP TRIBES (Attachments: # 1 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 06/08/2020) |
| 06/08/2020 | 84 | | Joint MOTION for Leave to File Excess Pages by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ARTIC VILLAGE COUNCIL, ASA'CARSARMIUT TRIBE, CHEYENNE RIVER SIOUX TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ELK VALLEY RANCHERIA, CALIFORNIA, HOULTON BAND OF MALISEET INDIANS, NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, NAVAJO NATION, NONDALTON TRIBAL COUNCIL, OGLALA SIOUX TRIBE, PUEBLO OF PICURIS, QUINAULT INDIAN NATION, ROSEBUD SIOUX TRIBE, SAN CARLOS APACHE TRIBE, TULALIP TRIBES, UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION (Attachments: # 1 Text of Proposed Order)(Ducheneaux, Nicole) Modified event title on 6/9/2020 (znmw). (Entered: 06/08/2020) |
| 06/08/2020 | | | MINUTE ORDER granting 84 Motion for Separate Briefing and Additional Pages. Plaintiffs may file two response/reply briefs that do not exceed a combined total of fifty pages. Signed by Judge Amit P. Mehta on 06/08/2020. (lcapm2) (Entered: 06/08/2020) |
| 06/09/2020 | 86 | | RESPONSE re 76 Joint MOTION for Summary Judgment , 77 MOTION for Summary Judgment filed by AHTNA, INC., AKIACHAK, LIMITED, ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC., ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC., CALISTA CORPORATION, KWETHLUK, INCORPORATED, NAPASKIAK, INCORPORATED, SEA LION CORPORATION, ST. MARY'S NATIVE CORPORATION. (Attachments: # 1 Declaration S. Buretta Supp. Decl.)(Wolff, Daniel) (Entered: 06/09/2020) |
| 06/09/2020 | 87 | | RESPONSE re 79 MOTION for Summary Judgment , 78 MOTION for Summary Judgment , 77 MOTION for Summary Judgment filed by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ASA'CARSARMIUT TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ELK VALLEY RANCHERIA, CALIFORNIA, HOULTON BAND OF MALISEET INDIANS, NAVAJO NATION, PUEBLO OF PICURIS, QUINAULT INDIAN NATION, SAN CARLOS APACHE TRIBE, TULALIP TRIBES. (Kanji, Riyaz) (Entered: 06/09/2020) |
| 06/09/2020 | 88 | | RESPONSE re 76 Joint MOTION for Summary Judgment , 77 MOTION for Summary Judgment filed by STEVEN MNUCHIN. (Lynch, Jason) (Entered: 06/09/2020) |
| 06/09/2020 | 89 | | |

| | | | |
|---|---|---|---|
| | | | RESPONSE re <u>79</u> MOTION for Summary Judgment , <u>78</u> MOTION for Summary Judgment , <u>76</u> Joint MOTION for Summary Judgment *Response/Reply in Support of Joint Motion for Summary Judgment* filed by ARTIC VILLAGE COUNCIL, CHEYENNE RIVER SIOUX TRIBE, NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, NAVAJO NATION, NONDALTON TRIBAL COUNCIL, OGLALA SIOUX TRIBE, ROSEBUD SIOUX TRIBE, UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION. (Furlong, Wesley) (Entered: 06/09/2020) |
| 06/10/2020 | <u>90</u> | | JOINT APPENDIX by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ASA'CARSARMIUT TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ELK VALLEY RANCHERIA, CALIFORNIA, HOULTON BAND OF MALISEET INDIANS, NAVAJO NATION, PUEBLO OF PICURIS, QUINAULT INDIAN NATION, SAN CARLOS APACHE TRIBE, TULALIP TRIBES. (Attachments: # <u>1</u> Appendix)(Kanji, Riyaz) (Entered: 06/10/2020) |
| 06/11/2020 | <u>91</u> | | MOTION to Divide Argument Time by AHTNA, INC., AKIACHAK, LIMITED, ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC., ARTIC VILLAGE COUNCIL, ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC., CALISTA CORPORATION, CHEYENNE RIVER SIOUX TRIBE, KWETHLUK, INCORPORATED, NAPASKIAK, INCORPORATED, NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, NONDALTON TRIBAL COUNCIL, OGLALA SIOUX TRIBE, ROSEBUD SIOUX TRIBE, SEA LION CORPORATION, ST. MARY'S NATIVE CORPORATION (Attachments: # <u>1</u> Text of Proposed Order)(Wolff, Daniel) (Entered: 06/11/2020) |
| 06/11/2020 | | | MINUTE ORDER granting <u>91</u> Motion to Divide Argument Time. The court also will afford the Ute Tribe Plaintiffs time for argument, if they wish to present one. Members of the public or media may access the hearing by dialing the court's toll–free public access line: (877) 848–7030, access code 321–8747. Signed by Judge Amit P. Mehta on 06/11/2020. (lcapm2) Modified on 6/11/2020 (lcapm2). (Entered: 06/11/2020) |
| 06/12/2020 | | | Minute Entry for proceedings held via video conference before Judge Amit P. Mehta: Motion Hearing held on 6/12/2020 re <u>76</u> <u>77</u> <u>78</u> <u>79</u> Cross–Motions for Summary Judgment. Arguments heard and taken under advisement. (Court Reporter: William Zaremba)(zjd) Modified on 6/12/2020 (zjd). (Entered: 06/12/2020) |
| 06/16/2020 | <u>92</u> | | MOTION for Leave to File *Second Amended Complaint* by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ASA'CARSARMIUT TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ELK VALLEY RANCHERIA, CALIFORNIA, HOULTON BAND OF MALISEET INDIANS, NAVAJO NATION, PUEBLO OF PICURIS, QUINAULT INDIAN NATION, SAN CARLOS APACHE TRIBE, TULALIP TRIBES (Attachments: # <u>1</u> Proposed Second Amended Complaint, # <u>2</u> Text of Proposed Order)(Kanji, Riyaz) (Entered: 06/16/2020) |
| 06/17/2020 | | | MINUTE ORDER granting <u>92</u> Motion for Leave to File Amended Complaint. Signed by Judge Amit P. Mehta on 06/17/2020. (lcapm2) (Entered: |

| | | | |
|---|---|---|---|
| | | | 06/17/2020) |
| 06/17/2020 | 93 | | Second AMENDED COMPLAINT against STEVEN MNUCHIN filed by PUEBLO OF PICURIS, SAN CARLOS APACHE TRIBE, TULALIP TRIBES, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, NAVAJO NATION, ELK VALLEY RANCHERIA, CALIFORNIA, ALEUT COMMUNITY OF ST. PAUL ISLAND, HOULTON BAND OF MALISEET INDIANS, AKIAK NATIVE COMMUNITY, QUINAULT INDIAN NATION, ASA'CARSARMIUT TRIBE.(eg) (Entered: 06/17/2020) |
| 06/17/2020 | 94 | | TRANSCRIPT OF MOTION HEARING VIA VIDEOCONFERENCING PROCEEDINGS before Judge Amit P. Mehta held on June 12, 2020; Page Numbers: 1–145. Date of Issuance: June 17, 2020. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354–3249. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, PDF or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 7/8/2020. Redacted Transcript Deadline set for 7/18/2020. Release of Transcript Restriction set for 9/15/2020.(wz) (Entered: 06/17/2020) |
| 06/24/2020 | 95 | | MOTION to Amend/Correct *Complaint* by ARTIC VILLAGE COUNCIL, CHEYENNE RIVER SIOUX TRIBE, NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, NONDALTON TRIBAL COUNCIL, OGLALA SIOUX TRIBE, ROSEBUD SIOUX TRIBE (Attachments: # 1 Proposed Amended Complaint)(Ducheneaux, Nicole) (Entered: 06/24/2020) |
| 06/25/2020 | | | MINUTE ORDER granting 95 Cheyenne River Sioux Tribe Plaintiffs' Motion for Leave to File Second Amended Complaint. Signed by Judge Amit P. Metha on 06/25/2020. (lcapm2) (Entered: 06/25/2020) |
| 06/25/2020 | 96 | | Second AMENDED COMPLAINT against STEVEN MNUCHIN filed by ARTIC VILLAGE COUNCIL, OGLALA SIOUX TRIBE, NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, NONDALTON TRIBAL COUNCIL, ROSEBUD SIOUX TRIBE, CHEYENNE RIVER SIOUX TRIBE.(eg) (Entered: 06/26/2020) |
| 06/26/2020 | 97 | | MEMORANDUM OPINION granting the Secretary's and Defendant–Intervenors' Motions for Summary Judgment, ECF Nos. 79 and 78 , and denying Plaintiffs' Motions for Summary Judgment, ECF Nos. 76 and 77 . See the attached Memorandum Opinion for further details. Signed by Judge |

| | | | |
|---|---|---|---|
| | | | Amit P. Mehta on 06/26/2020. (lcapm2) (Entered: 06/26/2020) |
| 06/26/2020 | 98 | | ORDER. For the reasons set forth in the 97 Memorandum Opinion, the court grants 79 the Secretary's and 78 Defendant–Intervenors' Motions for Summary Judgment, and enters judgment in favor of Defendants in each of the consolidated cases. The preliminary injunction entered on April 27, 2020, ECF No. 37 , is hereby dissolved. See the attached Order for further details. Signed by Judge Amit P. Mehta on 06/26/2020. (lcapm2) (Entered: 06/26/2020) |
| 06/29/2020 | 99 | | MOTION for Leave to File *Injunction Pending Appeal* by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ASA'CARSARMIUT TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ELK VALLEY RANCHERIA, CALIFORNIA, HOULTON BAND OF MALISEET INDIANS, NAVAJO NATION, PUEBLO OF PICURIS, QUINAULT INDIAN NATION, SAN CARLOS APACHE TRIBE, TULALIP TRIBES (Attachments: # 1 Text of Proposed Order)(Kanji, Riyaz) (Entered: 06/29/2020) |
| 06/29/2020 | | | MINUTE ORDER. To ensure that Plaintiff Confederated Tribes' Motion for Injunction Pending Appeal receives the court's full consideration, Defendant Secretary of Treasury shall provide the court at least one business day's notice before he disburses any CARES Act funds designated for Alaska regional or village corporations. The parties shall meet and confer and advise the court by July 1, 2020, whether any defendant opposes the requested injunction pending appeal and, if there is such objection, propose a briefing schedule. Signed by Judge Amit P. Mehta on 06/29/2020. (lcapm2) (Entered: 06/29/2020) |
| 06/29/2020 | | | Set/Reset Deadlines: Meet & Confer Statement due by 7/1/2020. (zjd) (Entered: 06/29/2020) |
| 07/01/2020 | 100 | | MOTION for Joinder by UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION re 99 MOTION for Leave to File *Injunction Pending Appeal* (Rasmussen, Jeffrey) Modified docket event/text on 7/2/2020 (eg). (Entered: 07/01/2020) |
| 07/01/2020 | 101 | | RESPONSE TO ORDER OF THE COURT re Order,, filed by STEVEN MNUCHIN. (Lynch, Jason) (Entered: 07/01/2020) |
| 07/01/2020 | 102 | | RESPONSE re 99 MOTION for Leave to File *Injunction Pending Appeal* filed by AKIACHAK, LIMITED, CALISTA CORPORATION, KWETHLUK, INCORPORATED, NAPASKIAK, INCORPORATED, SEA LION CORPORATION, ST. MARY'S NATIVE CORPORATION. (Clement, Paul) (Entered: 07/01/2020) |
| 07/01/2020 | 103 | | RESPONSE re 99 MOTION for Leave to File *Injunction Pending Appeal* filed by STEVEN MNUCHIN. (Lynch, Jason) (Entered: 07/01/2020) |
| 07/01/2020 | 104 | | RESPONSE re 99 MOTION for Leave to File *Injunction Pending Appeal* filed by ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC., ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC.. (Wolff, Daniel) (Entered: 07/01/2020) |
| 07/01/2020 | 105 | | RESPONSE re 99 MOTION for Leave to File *Injunction Pending Appeal* filed by AHTNA, INC.. (Attachments: # 1 Exhibit Declaration of Ken Johns)(O'Leary, Michael) (Entered: 07/01/2020) |

| 07/03/2020 | 106 | RESPONSE re 99 MOTION for Leave to File *Injunction Pending Appeal* filed by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ASA'CARSARMIUT TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ELK VALLEY RANCHERIA, CALIFORNIA, HOULTON BAND OF MALISEET INDIANS, NAVAJO NATION, PUEBLO OF PICURIS, QUINAULT INDIAN NATION, SAN CARLOS APACHE TRIBE, TULALIP TRIBES. (Kanji, Riyaz) (Entered: 07/03/2020) |
|---|---|---|
| 07/07/2020 | 107 | MEMORANDUM OPINION AND ORDER granting 99 Confederated Tribes Plaintiffs' Motion for Injunction Pending Appeal. The court's Order of June 26, 2020, ECF No. 98 , is hereby stayed until the earlier of September 15, 2020, or resolution of this matter by a three–judge panel of the D.C. Circuit, so long as Plaintiffs file a notice of appeal and seek expedited review by July 14, 2020. See the attached Memorandum Opinion for further details. Signed by Judge Amit P. Mehta on 07/07/2020. (lcapm2) Modified on 7/7/2020 (lcapm2). (Entered: 07/07/2020) |
| 07/07/2020 |  | Set/Reset Deadlines: Notice of Appeal due by 7/14/2020. (zjd) (Entered: 07/07/2020) |
| 07/07/2020 | 108 | NOTICE OF WITHDRAWAL OF APPEARANCE as to ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC., ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC.. Attorney Christine Williams terminated. (Williams, Christine) (Entered: 07/07/2020) |
| 07/07/2020 | 109 | NOTICE OF WITHDRAWAL OF APPEARANCE as to ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC., ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC.. Attorney James Harrison Powell, II terminated. (Williams, Christine) (Entered: 07/07/2020) |
| 07/08/2020 | 110 | ERRATA by ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC., ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC. 109 Notice of Withdrawal of Appearance filed by ASSOCIATION OF ANCSA REGIONAL CORPORATION PRESIDENTS/CEO'S, INC., ALASKA NATIVE VILLAGE CORPORATION ASSOCIATION, INC.. (Attachments: # 1 Errata Consent by ANVCA)(Williams, Christine) (Entered: 07/08/2020) |
| 07/13/2020 | 111 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 98 Order, 97 Memorandum & Opinion, by UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION. Filing fee $ 505, receipt number ADCDC–7333262. Fee Status: Fee Paid. Parties have been notified. (Rasmussen, Jeffrey) (Entered: 07/13/2020) |
| 07/14/2020 | 112 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 111 Notice of Appeal to DC Circuit Court,. (eg) (Entered: 07/14/2020) |
| 07/14/2020 | 113 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 97 Memorandum & Opinion, by AKIAK NATIVE COMMUNITY, ALEUT COMMUNITY OF ST. PAUL ISLAND, ASA'CARSARMIUT TRIBE, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ELK VALLEY RANCHERIA, CALIFORNIA, HOULTON BAND OF MALISEET |

| | | | |
|---|---|---|---|
| | | | INDIANS, NAVAJO NATION, PUEBLO OF PICURIS, QUINAULT INDIAN NATION, SAN CARLOS APACHE TRIBE, TULALIP TRIBES. Filing fee $ 505, receipt number ADCDC−7336116. Fee Status: Fee Paid. Parties have been notified. (Kanji, Riyaz) (Entered: 07/14/2020) |
| 07/14/2020 | 114 | | ERRATA by UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION 111 Notice of Appeal to DC Circuit Court, filed by UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION. (Attachments: # 1 Exhibit Ute Indian Tribe's Corrected Notice of Appeal)(Rasmussen, Jeffrey) (Entered: 07/14/2020) |
| 07/14/2020 | 115 | | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 113 Notice of Appeal to DC Circuit Court,. (eg) (Entered: 07/14/2020) |
| 07/14/2020 | | | USCA Case Number 20−5204 for 111 Notice of Appeal to DC Circuit Court, filed by UTE TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION. (zrdj) (Entered: 07/14/2020) |
| 07/14/2020 | | | USCA Case Number 20−5205 for 113 Notice of Appeal to DC Circuit Court, filed by QUINAULT INDIAN NATION, PUEBLO OF PICURIS, CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION, ASA'CARSARMIUT TRIBE, ALEUT COMMUNITY OF ST. PAUL ISLAND, NAVAJO NATION, AKIAK NATIVE COMMUNITY, TULALIP TRIBES, SAN CARLOS APACHE TRIBE, HOULTON BAND OF MALISEET INDIANS, ELK VALLEY RANCHERIA, CALIFORNIA. (zrdj) (Entered: 07/14/2020) |
| 07/14/2020 | 116 | | NOTICE OF APPEAL TO DC CIRCUIT COURT by CHEYENNE RIVER SIOUX TRIBE. Filing fee $ 505, receipt number ADCDC−7338328. Fee Status: Fee Paid. Parties have been notified. (Ducheneaux, Nicole) (Entered: 07/14/2020) |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONFEDERATED TRIBES OF THE CHEHALIS RESERVATION *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN MNUCHIN, in his official capacity, <br><br> Defendant. | Case No. 1:20-cv-1002-APM |
| CHEYENNE RIVER SIOUX TRIBE *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN MNUCHIN, in his official capacity, <br><br> Defendant. | Case No. 1:20-cv-01059-APM |
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN MNUCHIN, in his official capacity, <br><br> Defendant. | Case No. 1:20-cv-01070-APM <br><br> **CONSOLIDATED CASES** |

### CHEYENNE RIVER SIOUX PLAINTIFFS' NOTICE OF APPEAL

Notice is hereby given that Plaintiffs in Case No. 1:20-cv-01059-APM—Cheyenne River Sioux Tribe, Rosebud Sioux Tribe, Nondalton Tribal Council, Arctic Village Council, and Native Village of Venetie (collectively "Cheyenne River Sioux Plaintiffs")—appeal to the United States Court of Appeals for the District of Columbia Circuit from the order and final judgment entered in this action on June 26, 2020, ECF No. 98, and all other orders and rulings entered in this case.

RESPECTFULLY SUBMITTED this 14th day of July, 2020.

36

*/s/ Nicole E. Ducheneaux*
*/s/ Rose Weckenmann*
Nicole E. Ducheneaux (D.C. Bar No. NE001)
Rose Weckenmann (pro hac vice)
BIG FIRE LAW & POLICY GROUP LLP
1404 South Fort Crook Road
Bellevue, NE 68005
Telephone: (531) 466-8725
Facsimile: (531) 466-8792
Email: nducheneaux@bigfirelaw.com

*Counsel for Plaintiff Cheyenne River Sioux Tribe*

*/s/ Natalie A. Landreth*
*/s/ Erin C. Dougherty Lynch*
*/s/ Matthew N. Newman*
*/s/ Wesley James Furlong*
*/s/ Megan R. Condon*
Natalie A. Landreth (D.D.C. Bar No.
AK0001) Erin C. Dougherty Lynch (*pro hac
vice*) Matthew N. Newman (*pro hac vice*)
Wesley James Furlong (D.D.C. Bar No. AK0003)
Megan R Condon (*pro hac vice*)
NATIVE AMERICAN RIGHTS FUND
745 West 4th Avenue, Suite 502
Anchorage, AK 99501
Telephone: (907) 276-2466
Facsimile: (907) 276-
2466 Email:
landreth@narf.org
dougherty@narf.org
mnewman@narf.org
wfurlong@narf.org
mcondon@narf.org

*Counsel for Plaintiffs Rosebud Sioux Tribe,
Nondalton Tribal Council, Arctic Village
Council, Native Village of Venetie Tribal
Government.*

2

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of July, 2020, I electronically filed the foregoing **CHEYENNE RIVER PLAINTIFFS' NOTICE OF APPEAL** with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Nicole E. Ducheneaux*
Nicole E. Ducheneaux (D.C. Bar No. NE001) BIG FIRE LAW & POLICY GROUP LLP
1404 South Fort Crook Road Bellevue, NE 68005
Telephone: (531) 466-8725
Facsimile: (531) 466-8792
Email: nducheneaux@bigfirelaw.com

| | |
|---|---|
| **CONFEDERATED TRIBES OF THE** ) | |
| **CHEHALIS RESERVATION, et al.,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
|     **v.** ) | **Case No. 20-cv-01002 (APM)** |
| ) | |
| **STEVEN MNUCHIN, in his official capacity** ) | |
| **as Secretary of the Treasury,** ) | |
| ) | |
|     **Defendant.** ) | |
| ) | |
| **CHEYENNE RIVER SIOUX TRIBE, et al.** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
|     **v.** ) | **Case No. 20-cv-01059 (APM)** |
| ) | |
| **STEVEN MNUCHIN, in his official capacity** ) | |
| **as Secretary of the Treasury,** ) | |
| ) | |
|     **Defendant.** ) | |
| ) | |
| **UTE TRIBE OF THE UINTAH AND** ) | |
| **OURAY RESERVATION,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
|     **v.** ) | **Case No. 20-cv-01070 (APM)** |
| ) | |
| **STEVEN MNUCHIN, in his official capacity** ) | |
| **as Secretary of the Treasury,** ) | |
| ) | |
|     **Defendant.** ) | |
| ) | |

## ORDER

For the reasons set forth in the court's Memorandum Opinion, ECF No. 97, the court grants

the Secretary's and Defendant-Intervenors' Motions for Summary Judgment, ECF Nos. 78 and 79,

and denies Plaintiffs' Motions for Summary Judgment, ECF Nos. 76 and 77, and enters judgment in favor of Defendants in each of the consolidated cases. The preliminary injunction entered on April 27, 2020, ECF No. 37, is hereby dissolved.

This is a final, appealable order.

Dated: June 26, 2020

Amit P. Mehta
United States District Court Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CONFEDERATED TRIBES OF THE** ) <br> **CHEHALIS RESERVATION, et al.,** ) <br> ) <br>     **Plaintiffs,** ) <br> ) <br>     **v.** ) <br> ) <br> **STEVEN MNUCHIN, in his official capacity** ) <br> **as Secretary of the Treasury,** ) <br> ) <br>     **Defendant.** ) <br> ) | **Case No. 20-cv-01002 (APM)** |
| **CHEYENNE RIVER SIOUX TRIBE, et al.** ) <br> ) <br>     **Plaintiffs,** ) <br> ) <br>     **v.** ) <br> ) <br> **STEVEN MNUCHIN, in his official capacity** ) <br> **as Secretary of the Treasury,** ) <br> ) <br>     **Defendant.** ) <br> ) | **Case No. 20-cv-01059 (APM)** |
| **UTE TRIBE OF THE UINTAH AND** ) <br> **OURAY RESERVATION,** ) <br> ) <br>     **Plaintiff,** ) <br> ) <br>     **v.** ) <br> ) <br> **STEVEN MNUCHIN, in his official capacity** ) <br> **as Secretary of the Treasury,** ) <br> ) <br>     **Defendant.** ) <br> ) | **Case No. 20-cv-01070 (APM)** |

## MEMORANDUM OPINION

Under Title V of the Coronavirus Aid, Relief, and Economic Security Act, or CARES Act,

Congress appropriated $8 billion for "Tribal governments" to combat the COVID-19 pandemic.

This consolidated case concerns who qualifies as a "Tribal government" under the CARES Act. Plaintiffs are a group of federally recognized tribes from the lower 48 states and Alaska; they ask this court to permanently enjoin the Secretary of the Treasury from making Title V payments to Alaska Native regional and village corporations, or ANCs. ANCs are not federally recognized tribes; rather, they are for-profit corporations established by Congress in 1971 under the Alaska Native Claims Settlement Act and recognized under Alaska law.

The CARES Act defines "Tribal governments" to mean "the recognized governing body of an Indian Tribe." The Act in turn defines "Indian Tribe" by cross-referencing the definition of that term in another statute: the Indian Self-Determination and Education Assistance Act. In Plaintiffs' view, ANCs do not meet the statutory definition of either "Indian Tribe" or "Tribal government." The Secretary of the Treasury, whom Congress vested with authority to allocate Title V funds, on the other hand, reads the CARES Act to allow payment of Title V funds to ANCs. The court previously agreed with Plaintiffs, at least tentatively, and preliminarily enjoined the Secretary from distributing CARES Act funds to ANCs. *See Confederated Tribes of the Chehalis Reservation v. Mnuchin*, Case No. 20-cv-1002 (APM), 2020 WL 1984297 (D.D.C. April 27, 2020) ("*Confederated Tribes*"). In that decision, the court found that Plaintiffs would be irreparably harmed absent emergency relief, and that they had established a substantial likelihood of success on the merits.

The matter is before the court on cross-motions for summary judgment. Although the court initially determined that Plaintiffs were likely to succeed on the merits of their claim, after reviewing the parties' arguments on summary judgment, the court now holds that ANCs are "Indian Tribes," and that their boards of directors are "Tribal governments," for purposes of the

CARES Act. Accordingly, ANCs are eligible to receive Title V funds. As a result, the court dissolves the preliminary injunction and enters judgment in favor of Defendants.

**I.**

### A.     Background

The court begins with a brief overview of the relevant statutes and the history of this case.[1]

#### 1.     Statutory Background

Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), to respond to the devastating impacts of the COVID-19 pandemic. Title V of the CARES Act, the title relevant here, appropriates $150 billion for fiscal year 2020 for "payments to States, Tribal governments, and units of local government." 42 U.S.C. § 801(a)(1). Of that sum, $8 billion is "reserve[d] . . . for making payments to Tribal governments." *Id.* § 801(a)(2)(B). Congress directed the Secretary of the Treasury ("Secretary") to disburse those monies to "Tribal governments" within 30 day of the law's enactment, or by April 26, 2020. § 801(b)(1).

The CARES Act defines "Tribal government" as "the recognized governing body of an Indian tribe." *Id.* § 801(g)(5). The Act further provides that "[t]he term 'Indian Tribe' has the meaning given that term" in section 4(e) of the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 5304(e)). *Id.* § 801(g)(1). The Indian Self-Determination and Education Assistance Act, or ISDEAA, defines "Indian tribe" as "any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act

---

[1]  For a more detailed factual and procedural background, the court directs the reader to its Memorandum Opinion granting preliminary injunctive relief. *See Confederated Tribes*, 2020 WL 1984297.

43

(85 Stat. 688) [43 U.S.C. § 1601 *et seq.* ("ANCSA")], which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 5304(e). The court refers to "Alaska Native . . . regional or village corporation[s]" in this opinion as ANCs.

Congress enacted ISDEAA in 1975 "to help Indian tribes assume responsibility for aid programs that benefit their members." *Menominee Indian Tribes of Wis. v. United States*, 136 S. Ct. 750, 753 (2016). Under ISDEAA, federally recognized Indian tribes, tribal organizations, and tribal consortiums can choose to have the Bureau of Indian Affairs (BIA) provide direct services, or they can operate the programs themselves by entering into "self-determination contracts" with these federal agencies to provide services that otherwise would have been provided by the federal government, such as education, law enforcement, and health care. 25 U.S.C. § 5321(a)(1); *see also Menominee Indian Tribes of Wis.*, 136 S. Ct. at 753. A contracting tribal organization is eligible to receive the amount of money that the federal government would have otherwise spent on the program, *see* 25 U.S.C. § 5325(a)(1), as well as reimbursement for reasonable "contract support costs," which include administrative and overhead costs associated with carrying out the contracted programs, *id.* § 5325(a)(2), (3)(A). ISDEAA was amended in 1988, 1994, and 2000, and now includes health care programs administered by the Indian Health Service. *See* Pub. L. 100-472 (Oct. 5, 1988); Pub. L. 103-413 (Oct. 25, 1994); Pub. L. 106-260 (Aug. 18, 2000).

2. *Factual and Procedural Background*

Congress instructed the Secretary to distribute Title V funding quickly—within 30 days of the law's enactment. So, on April 13, 2020, shortly after the CARES Act became law, the Secretary published on the Treasury Department's website a form titled "Certification for

4

Requested Tribal Data," which sought certain data to effectuate disbursement of CARES Act funds. *See* Confederated Tribes of the Chehalis Pls.' Mot. for TRO & Prelim. Inj., ECF No. 3, Decl. of Riyaz Kanji, Ex. 2, ECF No. 3-8 [hereinafter Certification], at 15–16. The Certification identified metrics specific to ANCs. ANCs are not federally recognized Indian tribes but are for-profit corporations established by Congress under the Alaska Native Claims Settlement Act. *See* 43 U.S.C. §§ 1606, 1607. The metrics specific to ANCs identified by the Secretary included "shareholders" as of January 1, 2020, and total land base, which expressly included lands "selected pursuant to the Alaska Native Claims Settlement Act." Certification.

The Certification's posting prompted three groups of Tribes to bring suit against the Secretary under the Administrative Procedure Act ("APA"), challenging the Secretary's anticipated treatment of ANCs as eligible for Title V funding. *Id.* On April 17, 2020, the Confederated Tribes of the Chehalis Reservation, the Tulalip Tribes, the Houlton Band of Maliseet Indians, the Akiak Native Community, the Asa'carsarmiut Tribe, and the Aleut Community of St. Paul Island (collectively, "Confederated Tribes Plaintiffs") filed an action against the Secretary. Confederated Tribes Compl., ECF No. 1.[2] Shortly afterward, Plaintiffs Cheyenne River Sioux Tribe, Oglala Sioux Tribe, and Rosebud Sioux Tribe filed their suit, *see* Cheyenne River Sioux Compl., ECF No. 1, and Plaintiff Ute Indian Tribe of the Uintah and Ouray Reservation filed a third lawsuit the next day, *see* Ute Compl., ECF No. 1. The court consolidated all three cases. *See* Docket 20-cv-1070, Minute Order, April 24, 2020; Docket 20-cv-1059, Minute Order, April 23, 2020.

---

[2] The Confederated Tribes Plaintiffs filed an amended complaint, which added the Navajo Nation; Quinault Indian Tribe; Pueblo of Picuris; Elk Valley Rancheria, California; and San Carlos Apache Tribe as plaintiffs. *See* Am. Confederated Tribes Compl., ECF No. 7. Plaintiffs again brought the same single count for violations of the APA. *Id.* ¶¶ 117–23.

On April 23, 2020, the Treasury Department formally announced its position that it intended to distribute Title V funds to ANCs: "After consultation with the Department of the Interior, Treasury has concluded that Alaska Native regional and village corporations as defined in or established pursuant to the Alaska Native Claims Settlement Act are eligible to receive payments from the Fund in the amounts to be determined by the Secretary of the Treasury." U.S. TREASURY DEP'T, Coronavirus Relief Fund Payments to Tribal Governments (April 23, 2020) (footnote omitted).[3]

All Plaintiffs moved for preliminary injunctive relief, which this court granted on April 27, 2020. *See Confederated Tribes*, 2020 WL 1984297. In granting that relief, the court rejected the Secretary's threshold contention that the Treasury Department's legal determination that ANCs are eligible for Title V funds is a presumptively unreviewable discretionary action under the APA. *See id.* at *5–6. The court concluded that, "while the Secretary's decisions as to *how* much to disburse might not be reviewable, his decisions *to whom* to disburse those funds most certainly is." *Id.* at *5 (footnote omitted). As for the injunction factors, the court evaluated them on a sliding scale and found that they weighed in favor of granting relief. *See id.* at *7–15. In particular, on the merits of the APA claim, the court preliminarily agreed with Plaintiffs that no ANC satisfied the CARES Act's definition of "Tribal government" and therefore no ANC was eligible for Title V funds. *Id.* at *10. The court declined, however, to grant the full relief that Plaintiffs sought. Instead of compelling the Secretary to distribute all $8 billion in Title V funds only to federally recognized Indian tribes, the court entered a "more limited remedy," *id.* at *16, which enjoined the

---

[3] Available at https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Payments-to-Tribal-Governments.pdf. The Confederated Tribes and the Cheyenne River Sioux Plaintiffs both amended their complaints a second time following summary judgment briefing to include an additional allegation regarding the Secretary's April 23, 2020 statement, which was not issued until after the date of the Confederated Tribes Plaintiffs' first amended complaint. *See* Confederated Tribes Second Am. Compl., ECF No. 93; Cheyenne River Sioux Second Am. Compl., ECF No. 96.

46

Secretary from disbursing Title V funds to any ANC pending entry of a final judgment in the case, *see* Order, ECF No. 37.

On May 5, 2020, the Treasury Department began distributing 60 percent, or $4.8 billion, of the $8 billion in Title V funds designated for Tribal governments. The Secretary allocated that sum based not on any information collected through the Certification, but rather on pre-existing tribal population data maintained by the U.S. Department of Housing and Urban Development ("HUD"). *See* U.S. DEP'T OF TREASURY, Coronavirus Relief Fund Allocations to Tribal Governments (May 5, 2020), at 2.[4] Based on the HUD data, the Secretary determined that ANCs would receive $162.3 million in Title V funds but withheld that amount to comply with the preliminary injunction. *See Agua Caliente Band of Cahuilla Indians v. Mnuchin*, No. 20-cv-01136 (APM) [hereinafter *Agua Caliente Band*], 5/8/2020 Hr'g Tr., ECF No. 30, at 18.

The Secretary began disbursing the balance of the Title V funds on June 17, 2020. *See* Notice, *Agua Caliente Band*, ECF No. 43 [hereinafter Notice]. This second tranche of emergency relief was distributed based on employment and expenditure data submitted by Tribal governments, including ANCs. *See* Def.'s Status Report, *Agua Caliente Band*, ECF No. 39. The Secretary once again allocated Title V funds to ANCs but withheld making payments per the court's order, *see* Notice, and he has not publicly announced the exact amount withheld for ANCs in this second tranche of funding.

Meanwhile, a number of ANCs and ANC associations filed motions to intervene as defendants in this case,[5] which the court granted. *See* Minute Order, May 13, 2020; Order, ECF

---

[4] Available at https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Tribal-Allocation-Methodology.pdf.

[5] *See* Mot. of Ahtna, Inc. to Intervene as Defendant & Incorporated Mem. of Law, ECF No. 43; Mot. of Alaska Native Village Corp. Ass'n, Inc. & Ass'n of ANCSA Regional Corp. Presidents/CEO's, Inc. to Intervene and Mem. of P. & A., ECF No. 45; Mot. to Intervene as Defendants & Supp. Mem. of Law, ECF No. 46.

7

No. 70.  Summary judgment briefing concluded on June 9, 2020, and the court heard argument on the parties' cross-motions on June 12, 2020.  *See* Minute Entry, June 12, 2020.

## II.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  However, in cases such as this one involving review of a final agency action, the standard set forth in Rule 56 does not apply. *See AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 81 (D.D.C. 2007).  The court's role in an APA action "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Charter Operators of Ala. v. Blank*, 844 F. Supp. 2d 122, 127 (D.D.C. 2012) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985)).  Summary judgment "serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Id*.

## III.

The Secretary renews the jurisdictional argument that the court rejected at the preliminary injunction stage, which is that "Congress did not intend for emergency relief payments to be subject to judicial review."  Def.'s Mot for Summ. J., ECF No. 79, Def.'s Mem of Law in Supp. of its Mot. for Summ. J., ECF No. 79-1 [hereinafter Def.'s Mot.], at 11.  The Secretary points to two features of the CARES Act that he contends evince such congressional intent.  First, he points to the short statutory, 30-day timeline to distribute funds.  *Id*. at 11–12.  Second, he argues that the statutory scheme, which does not require Treasury to publish to "whom it will be paying, its methodology or the payment amounts" prior to disbursing the funds, makes clear Congress's intent

that the Secretary's decisions be insulated from review. *Id.* at 12. These arguments are refinements of the Secretary's prior assertion of judicial non-reviewability, but they fare no better.

There is a "strong presumption that Congress intends judicial review of administrative action." *Council for Urological Interests v. Sebelius*, 668 F.3d 704, 708 (D.C. Cir. 2011) (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986)). That presumption can be overcome if "congressional intent to preclude judicial review is fairly discernible from the statutory scheme." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 390 (1984). But such a showing entails a "heavy burden," which must be carried by "clear and convincing evidence." *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975) (citation omitted), *overruled on other grounds by Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526 (1984).

A tight statutory deadline by itself is not sufficient to overcome the strong presumption in favor of judicial review. *See id.* at 562 n.2 & 567 (holding that a decision by the Secretary of Labor subject to a 60-day deadline is reviewable); *In re FTC Corp. Patterns Report Litig.*, 432 F. Supp. 274, 289–90 (D.D.C. 1977) (rejecting argument that 45-day timeline for agency action evinced Congress'[s] intent to preclude judicial review, and reasoning that "[a]t best, a court could indirectly imply from Congress's obvious desire to prevent undue delays an intent to protect the [Secretary's] actions from judicial scrutiny. This tenuous link, however, does not constitute clear and convincing evidence of Congressional intent to preclude judicial review."). The cases Defendant cites to the contrary are easily distinguishable. In *Morris v. Gressette*, 432 U.S. 491 (1977), for example, the Court pointed to numerous features of the statute, including "the potential severity of the . . . remedy, the statutory language, and the legislative history," from which "nonreviewability [could] fairly be inferred." *Id.* at 501, 504 (citation omitted). No such additional

9

indicia are present here. *Dalton v. Specter* also is inapposite. There, four concurring Justices found that a series of "tight and rigid deadlines" prescribed in a statutory scheme for military base closings was an indication that Congress did not intend for judicial review of an individual closing determination. 511 U.S. 462, 479 (1994) (Souter, J., concurring, joined by Blackmun, Stevens, Ginsburg, JJ.). But there was also more at play in *Dalton*: the Justices observed that "the Act's text and intricate structure . . . plainly express congressional intent that action on a base-closing package be quick and final, or no action be taken at all." *Id.* That included not only a series of "unbending" time deadlines, but also the speed with which the base closures were to occur if approved and the disbanding of the base-closing Commission at the end of each decision round, and its eventual automatic termination. *See id.* at 480–81. Here, in sharp contrast, Congress did not tie the 30-day distribution period to any other deadline for congressional or agency action; and there is no impending automatic expiration of authority to distribute the funds.[6] Nor can it be said that the deadline is "unbending," as the Secretary—independent of any litigation—did not begin distributing the second tranche of funds until June 12, 2020, 47 days past the 30-day deadline, *see* Def.'s Status Report, *Agua Caliente Band*, ECF No. 39; 42 U.S.C. § 801(b)(1). A stand-alone deadline, even one of a mere 30 days, cannot without more overcome the strong presumption in favor of agency review.

Nor does the fact that Congress did not require the Secretary to identify aid recipients before making payments indicate an intent to foreclose judicial review. The Secretary points to no evidence that Congress even considered such a pre-publication requirement, let alone consciously elected not to adopt one. The court cannot draw any inference of non-reviewability

---

[6] At most, Title V mandates payment of funds for "fiscal year 2020," which expires September 30, 2020. 42 U.S.C. § 801(b). That leaves sufficient time to litigate this matter to its conclusion, including possible expedited appellate review.

10

from Congress's failure to enact a provision that it did not even consider. The presumption of reviewability therefore applies, and the Secretary has failed to defeat it.

**IV.**

The court turns now to the merits. Recall, the CARES Act grants $8 billion in emergency aid to "Tribal governments," which the Act defines as "the recognized governing body of an Indian Tribe." 42 U.S.C. § 801(g)(5). "Indian Tribe," in turn, "has the meaning given that term" under ISDEAA. *Id.* § 801(g)(1). ISDEAA defines "Indian tribe" as:

> [A]ny Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act (85 Stat. 688), which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians.

25 U.S.C. § 5304(e). Plaintiffs argue that ANCs do not qualify for Title V funds for two reasons: (1) ANCs do not meet ISDEAA's definition of "Indian Tribe," and (2) ANCs are not a "recognized governing body" of an Indian tribe, nor do they have such a body. Though these arguments seem straightforward at first blush, the parties have staked out varied approaches in addressing them.

Whether ANCs are "Indian Tribes" under ISDEAA turns on how one reads the dependent clause that appears at the end of the ISDEAA definition—"which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." The court refers to this as the "eligibility clause." According to the Confederated Tribes Plaintiffs, the eligibility clause applies to each listed entity that comes before it, including most critically "Alaska Native . . . regional or village corporations"—ANCs. *See* Confederated Tribes Mot. for Summ. J. and Mem. of P. & A., ECF No. 77 [hereinafter Confederated Tribes Mot.], at

11

13 (citing 25 U.S.C. § 5304(e)).  Because no ANC presently satisfies the eligibility clause, those Plaintiffs say, none qualifies for CARES Act funds.  *Id.* at 13–14.

The Confederated Tribes Plaintiffs, however, are the only Plaintiffs that press this interpretation.  The Cheyenne River Sioux and Ute Plaintiffs (collectively, "Cheyenne River Sioux Plaintiffs") acknowledge that "ANCs can be treated as 'Indian tribe[s]' for limited purposes" under ISDEAA.  *See* Pls. Cheyenne River Sioux Tribe's, Rosebud Sioux Tribe's, Oglala Sioux Tribe's, Nondalton Tribal Council's Arctic Village Council's Native Village of Venetie Tribal Government's, Navajo Nation's, & Ute Indian of the Uintah & Ouray Indian Reservation's Mem. in Supp. of Jt. Mot. for Summ. J., ECF No. 76-2 [hereinafter Cheyenne River Sioux Mot.], at 4. Thus, there is a split among Plaintiffs as to whether ANCs qualify as "Indian Tribes" for purposes of the CARES Act.

Ironically, the Secretary agrees with the Confederated Tribe Plaintiffs that ANCs do not satisfy, and never have satisfied, the eligibility clause; and yet he contends that ANCs qualify for CARES Act funding as "Indian Tribes" under ISDEAA.  Def.'s Mot. at 1.  The Secretary asserts that the ISDEAA definition must be read to, in effect, exempt ANCs from satisfying the eligibility clause.  That interpretation, the Secretary claims, is faithful to congressional design, because the Confederated Tribes' alternative reading, if accepted, would render the listing of ANCs in the ISDEAA definition surplusage and defeat Congress's intent to make ANCs eligible for ISDEAA self-determination contracts.  The ANC-Intervenors, by contrast, take a "heads-I-win, tails-I-win" approach to reading the ISDEAA definition.  They say that ANCs *do* satisfy the ordinary meaning of the eligibility clause, because they are "eligible for the special programs and services provided by the United States to Indians because of their status as Indians."  Mem. of P. & A. in Supp. of Intervenor-Defs.' Mot. for Summ. J., ECF No. 78-1 [hereinafter Intervenors' Mot.], at 47;

Intervenor-Defs.' Resp. in Opp'n to Pls.' Cross-Mots. for Summ. J., ECF No. 86 [hereinafter Intervenors' Opp'n], at 5. The Secretary expressly rejects this reading, contending that the eligibility clause conveys the principle of federal recognition of Indian tribes, which ANCs as corporations cannot satisfy (the Confederated Tribe Plaintiffs agree). *See* Def.'s Combined Opp'n & Reply in Supp. of Mot. for Summ. J., ECF No. 88 [hereinafter Def.'s Opp'n], at 4 n.3; Confederated Tribes Mot. at 14; Confederated Tribes Pls.' Reply in Supp. of its Mot. for Summ. J. & Resp. in Opp'n to Defs.' Mots. for Summ. J., ECF No. 87 [hereinafter Confederated Tribes Opp'n], at 7–8. No matter, say the ANC-Intervenors. If their primary reading is incorrect, they then embrace the Secretary's reading, which exempts ANCs from the eligibility clause. *See* 6/12/2020 Hr'g Tr., ECF No. 94, at 88–89. Either way, according to the ANC-Intervenors, they qualify as "Indian Tribes" under ISDEAA and therefore are eligible for Title V funds. *Id.*

There is greater alignment among the parties on the second question: whether an ANC qualifies as a "Tribal government" for the purposes of the CARES Act. The Cheyenne River Sioux Plaintiffs urge the court not to get bogged down in the morass of whether ANCs qualify as "Indian Tribes" because, in their view, "ANCs are not Tribal governments under any measure." Cheyenne River Sioux Mot. at 2. The Confederated Tribes Plaintiffs agree, though this is their secondary position. Confederated Tribes Mot. at 12–13. The Secretary and the ANC-Intervenors see eye-to-eye on this question, too. They agree that an ANC's board of directors qualifies as a "recognized governing body of an Indian tribe" for purposes of the CARES Act. Def.'s Mot. at 34; Intervenors' Mot. at 38–39. Their argument, as will be seen below, relies on a similar definitional phrase contained in ISDEAA, "tribal organization," that appears nearly verbatim as the CARES Act's definition of "Tribal government," *compare* 25 U.S.C. § 5304(l) (defining "tribal organization" to mean in part "the recognized governing body of any Indian tribe") *with* 42 U.S.C. § 801(g)(5)

13

(defining "Tribal government" to mean "the recognized governing body of an Indian Tribe"), which they assert encompasses an ANC's board of directors for ISDEAA contracting purposes. Def.'s Mot. at 30–31, 33; Intervenors' Mot. at 38–39.

As the above summation shows, this case does not present easy, straightforward questions of statutory interpretation. The court has wrestled with them. Each side has marshaled an impressive array of textual, historical, and practical evidence, all of which must be viewed against the unique treatment of Native Alaskans by Congress and Executive Branch agencies. Though the court ruled at the preliminary injunction stage that ANCs likely did not qualify for CARES Act funds, as explained below, the court now concludes otherwise: ANCs qualify as "Indian Tribes," and their boards of directors are "recognized governing bod[ies]," for purposes of the CARES Act. Accordingly, the court holds that ANCs are eligible for Title V funding.

### A. "Indian Tribe" under ISDEAA

The parties agree that, as a matter of pure grammar, the eligibility clause contained in the definition of "Indian Tribe" in ISDEAA and the CARES Act applies to ANCs. *See* Hr'g Tr. at 54–55; Intervenors' Opp'n at 4–5; Confederated Tribes Mot. at 13–14. The eligibility clause plainly modifies each of the nouns that precedes it, including ANCs. The parties diverge, however, on whether that grammatical structure both begins and ends the statutory interpretation debate.

Each side comes armed with its own preferred canon of statutory construction. The Confederated Tribes Plaintiffs contend that the series-qualifier canon of statutory interpretation settles this case. *See* Confederated Tribes Mot. at 13–14. Under that canon, "'[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series,'" *Lockhart v. United States*, 136 S. Ct. 958, 970 (2016) (Kagan, J., dissenting) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING

14

LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (2012) (SCALIA & GARNER)). Relatedly, under the last antecedent rule, "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Applying either of these canons dictates that "any Alaska Native village or regional or village corporation" qualifies as an "Indian tribe" *only* if it is "recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians," 25 U.S.C. § 5304(e); *see also* Confederated Tribes Mot. at 13 n.8. Because no ANC is so recognized as eligible for the special programs and services provided by the United States, the argument goes, no ANC is an "Indian tribe" under ISDEAA.

The Secretary, on the other hand, urges the court to look beyond the statute's grammatical structure. He argues that a blind application of the series-qualifier canon would violate the "'cardinal principle' of statutory interpretation"—that is, "to adopt a reading that gives effect to every term in the statute." Def.'s Opp'n at 7 (quoting *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019)). Here, according to the Secretary, Congress expressly inserted ANCs into the statutory text, despite knowing that ANCs could not satisfy the eligibility clause because of their status as for-profit corporations. Subjecting ANCs to the eligibility clause therefore would negate their addition, rendering the inclusion of "Alaska Native [ ] regional or village corporation" surplusage.

Although a close question, the court is now convinced that, in 2020 when Congress passed the CARES Act, it could not have intended the eligibility clause to apply ANCs. Several considerations lead the court to this result. First, while the Confederated Tribes Plaintiffs emphasize the importance of the series-qualifier canon, the court's proper role is not to apply a single canon of statutory construction—"canons of construction are no more than rules of thumb

that help courts determine the meaning of legislation," *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). The court must interpret the statute as whole to give effect to congressional intent. *Parker Drilling*, 139 S. Ct. at 1890. Consequently, the court cannot simply disregard the inclusion of ANCs in the definition that Congress chose for purposes of the CARES Act. Second, the court's interpretation is consistent with ISDEAA's legislative history, which reveals that Congress took pains to include ANCs in the ISDEAA definition. Third, to the extent the competing canons of construction give rise to ambiguity, *Skidmore* deference to the BIA's interpretation of ISDEAA is warranted, given the reasonableness of the agency's approach and its longstanding adherence to it. The court discusses each of these reasons below. Because the court reads the eligibility clause as inapplicable to ANCs, the court does not address the ANC's alternative argument that they satisfy the ordinary meaning of the eligibility clause.

## 1.

Applying the series-qualifier canon in this case does not resolve the statutory interpretation debate. "[A]s with any canon of statutory interpretation," the series-qualifier canon "'is not an absolute and can assuredly be overcome by other indicia of meaning.'" *Lockhart*, 136 S. Ct. at 963, 965 (quoting *Barnhart*, 540 U.S. at 26). Indeed, as the Tenth Circuit has observed, the series-qualifier canon, "perhaps more than most canons, is subject to defeasance by other canons—that is, it is perhaps more prone than most to have its effect nullified by other canons." *Jordan v. Maxim Healthcare Servs., Inc.*, 950 F.3d 724, 745 (10th Cir. 2020) (cleaned up); *see also* SCALIA & GARNER at 150 ("Perhaps more than most of the other canons, [the series-qualifier canon] is highly sensitive to context.").

Such is the case here, where the series-qualifier canon runs headlong into another canon of interpretation: the rule against superfluity. It is "the 'cardinal principle' of interpretation that

courts 'must give effect, if possible, to every clause and word of a statute.'" *Parker Drilling*, 139 S. Ct. at 1890 (quoting *Loughrin v. United States*, 573 U. S. 351, 358 (2014)). As a result, courts are "reluctant to treat statutory terms as surplusage in any setting." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (cleaned up). Such reluctance is particularly apt here, where adopting Plaintiffs' construction would render Congress's purposeful inclusion of ANCs in the ISDEAA definition "wholly superfluous." *Id.* at 174. ANCs would become "wholly superfluous" under the Confederated Tribes' preferred reading, because all agree (except the ANCs themselves) that ANCs never have, and almost certainly never will, satisfy the eligibility clause. ANCs cannot be recognized "as eligible for the special programs and services provided by the United States to Indians *because of their status as Indians*." 25 U.S.C. § 5304(e) (emphasis added). ANCs, after all, are for-profit corporations established by Congress and recognized under Alaska law, and thus do not enjoy "status as Indians." Indeed, under the Alaska Native Claims Settlement Act, the statute that established ANCs by extinguishing all aboriginal claims to Alaska land, the transfer of land to the new, state-chartered private business corporations "was without any restraints on alienation or significant use restrictions" precisely because Congress intended to avoid "'any permanent racially defined institutions, rights, privileges, or obligations.'" *Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 532–33 (1998) (quoting 43 U.S.C. § 1601(b)). Thus, while the first ANC shareholders were required to be Alaska Natives, the corporations could immediately convey former reservation lands and ANC stock to non-Natives. *Id.* at 533; 43 U.S.C. § 1606(h). It cannot be said, then, that ANCs enjoy "status as Indians."

Moreover, both the Secretary and the Confederated Tribes read the eligibility clause as conveying the principle of federal recognition, which confers upon tribes a distinct political and legal status in relation to the United States. *See* 6/12/2020 Hr'g Tr. at 60; Confederated Tribes

17

Mot. at 14–15. The Confederated Tribes contend that ISDEAA's eligibility clause must be read *in pari materia* with the nearly identical language in the Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454, 108 Stat. 4791, or List Act, which directs the Secretary of Interior to publish a "list of all Indian tribes that the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians" (quoting 25 U.S.C. § 5131(a))). No ANC has ever been federally recognized by the United States as an Indian tribe under the List Act because no ANC is "recognize[d] to be eligible for the special programs and services provided by the United States to Indians because of [its] status as Indians." The court agrees that the nearly identically worded eligibility clauses in both statutes are terms of art that convey the principle of federal recognition, and thus reading the eligibility clause to apply to ANCs would render as surplusage their listing in the ISDEAA definition of "Indian tribe."

The Confederated Tribes Plaintiffs attempt to sidestep this superfluity problem by asserting there is no such problem to begin with. They contend that the disjunctive nature of the clause in which ANCs appear—which they refer to as the "Alaska clause"—"means that the clause has effect as long as 'any Alaska Native village *or* regional *or* village corporation' satisfies the terms of the eligibility clause, and according to the Secretary of the Interior's own listing there are 229 Native villages[7] that do." Confederated Tribes Opp'n at 8. The court expressed a similar logic in its preliminary injunction opinion, writing that "[t]he possibility that ANCs might not qualify under the eligibility clause is hardly fatal to carrying out Congress's purpose under ISDEAA . . . [because] [Alaska Native villages] are also in the statute [and] [t]hey can and do satisfy the

---

[7] Alaska Native villages are not corporations. They are sovereign, political entities exercising governmental authority, much like "'Indian tribes,' as that term is commonly used to refer to Indian entities in the contiguous 48 states." *See* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 58 Fed. Reg. 54,364, 54,365 1993 WL 420646 (October 21, 1993).

eligibility clause." *Confederated Tribes*, 2020 WL 1984297 at *11. The court is no longer convinced of this rationale. ISDEAA says that "'Indian tribe' means *any* . . . organized group or community, including *any* Alaska Native [1] village or [2] regional [corporation] or [3] village corporation as defined in or established pursuant to [ANCSA]." 25 U.S.C. § 5304(e) (emphasis added). Congress thus intended for *any* of the nouns in the Alaska clause to satisfy the definition, and subjecting any of those nouns to a requirement that it cannot meet—as Plaintiffs seek to do— would still turn that noun into surplusage. The series-qualifier canon therefore must give way in this case to the rule against superfluity.[8]

Plaintiffs' cited authorities are not to the contrary. Plaintiffs rely on *Chickasaw Nation v. United States*, 534 U.S. 84 (2001), and *King v. Burwell*, 135 S. Ct. 2480 (2015), for the proposition that "the canon against surplusage should [not] be elevated to Holy Grail status and operate to subvert the plain meaning of the statutory text." Confederated Tribes Opp'n at 10. But these cases are readily distinguishable. *Chickasaw Nation* concerned a provision of the Indian Gaming Regulatory Act that, like ISDEAA, featured an "including" clause (akin to the Alaska clause) followed by a limiting clause (akin to the eligibility clause). 534 U.S. at 86–87. The Court there rejected the plaintiffs' reliance on the canon against surplusage and instead found that the limiting clause applied to the words before it—to find otherwise would "seriously rewrit[e] the language of the rest of the statute." *Id.* at 89. But critical to that conclusion was the Court's reasoning that the troublesome language in the statute—a cross-reference to another chapter of the Internal Revenue Code—was "simply a drafting mistake, a failure to delete an inappropriate cross-reference in the bill that Congress later enacted into law." *Id.* at 91.

---

[8] The Confederated Tribes Plaintiffs also suggest that applying the eligibility clause to ANCs does not render them superfluous under ISDEAA, because in 1975, when Congress passed the statute, it was an open question whether ANCs could satisfy the eligibility clause. Confederated Tribes Mot. at 31. The court addresses this argument in the following section.

The Court struck a similar chord in *King v. Burwell*. That case involved the Affordable Care Act, which the Court observed "contains more than a few examples of inartful drafting" and, by virtue of how the legislation was enacted, "does not reflect the type of care and deliberation that one might expect of such significant legislation." 135 S. Ct. at 2492. In light of these shortcomings, the Court found "specifically with respect to this Act, rigorous application of the [surplusage] canon does not seem a particularly useful guide to a fair construction of the statute." *Id.*

The reasons for discounting the surplusage canon that were present in *Chickaw Nation* and *King v. Burwell* simply are not present here. There is nothing to suggest that Congress's inclusion of ANCs in the ISDEAA definition of "Indian tribe" was a drafting error; nor is there any reason to question the Legislative Branch's diligence in drafting the definition. To the contrary, as discussed4 further below, the definition's legislative history reflects a conscious decision on the part of Congress to make ANCs eligible to contract with the United States to deliver public services to Alaska Native populations. Thus, while the "preference for avoiding surplusage constructions is not absolute," *Lamie v. United States Trustee*, 540 U.S. 526, 536 (2004), there is no good reason to abandon it here.

Admittedly, reading the ISDEAA definition as the Secretary posits gives rise to an odd grammatical result. No one disputes that an "Alaska Native village"—the first entity listed in the Alaska clause—must satisfy the eligibility clause to qualify as an "Indian tribe" under ISDEAA. *See Confederated Tribes*, 2020 WL 1984297 at *11. An Alaska Native village that is not "recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians" cannot contract with a federal agency under ISDEAA. That reading, however, creates the strange result that the eligibility clause modifies the first in the

20

series of three nouns that comprises the Alaska clause, but not the last two. That is an unnatural reading, to be sure. The court's primary goal, however, is to discern the "intent embodied in the statute Congress wrote." *Chickasaw Nation*, 534 U.S. at 94. Treating ANCs as not subject to the eligibility clause achieves that purpose. Congress expressly included ANCs in the definition of "Indian tribe" under ISDEAA to make them eligible to enter into self-determination contracts with federal agencies. By incorporating wholesale ISDEAA's definition of "Indian Tribes" into the CARES Act, Congress declared ANCs to be eligible for Title V emergency relief funds.

### 2.

ISDEAA's drafting history lends support to this conclusion. Neither the Senate's nor the House of Representative's initial versions of the ISDEAA definition of "Indian tribe" included ANCs, though each included the eligibility clause. *See* H.R. 6372, § 450b(b), 93rd Cong., 1st Sess. (1973); S. 1017, 93d Cong., 2d Sess. (1974), 120 Cong. Rec. 2813-19; *see also Cook Inlet Native Ass'n v. Bowen*, 810 F.2d 1471, 1474–75 (9th Cir. 1987) (discussing ISDEAA's legislative history). The House Committee on Interior and Insular Affairs, to whom the Senate bill was referred, "amended the definition of 'Indian tribe' to include regional and village corporations established by the Alaska Native Claims Settlement Act." H.R. Rep. 93-1600; 120 Cong. Rec. 40252 (Dec. 16, 1974). The amended definition that became law, and remains the same today, thus reads, "including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act." *See* Pub. L. 93-638 § 4(b), 88 Stat. 2203, 2204 (1975) (codified at 25 U.S.C. § 5304(e)). Importantly, not only did the amended definition expressly include ANCs, the latter portion of the clause—"established pursuant to [ANCSA]"—applies *only* to ANCs. As the Secretary points out, while "native villages" are *defined* in ANCSA, only Alaska regional and village corporations are "established" by it. *See*

Def.'s Opp'n at 5 & n.5 (citing H.R. Rep. 93-1600; 120 Cong. Rec. 40252 (Dec. 16, 1974)). That Congress went out of its way to add ANCs to the statutory definition of "Indian tribe" is compelling evidence that Congress intended ANCs to meet that definition. It would be an odd result indeed for Congress to include ANCs in one breath only to negate their inclusion in the very next breath through the eligibility clause.

The Confederated Tribes Plaintiffs endeavor to explain this ostensible statutory contradiction by positing that Congress "left the door open" for ANCs to satisfy the eligibility clause in ISDEAA, and only "over time" has the Secretary of the Interior declared that ANCs are not eligible for the special programs and services provided by the United States to Indians because of their status as Indians. Confederated Tribes Mot. at 31. In support, Plaintiffs point to two comments submitted in 1977—two years after Congress passed ISDEAA—to proposed BIA regulations regarding the development of uniform procedures for the recognition of Indian tribes. Confederated Tribes Opp'n at 20–21. These comments, submitted by two Alaska Native corporations, suggest some uncertainty as to whether ANCs could satisfy the eligibility clause. *See id.* But these isolated comments, from private enterprises, have little to no probative value in determining whether *Congress* in fact "left the door open" for ANCs to satisfy the eligibility clause when it passed ISDEAA. There is simply no legislative history before the court to support the notion that Congress in 1975 believed ANCs could ever meet the eligibility clause.

Moreover, whether ANC eligibility remained an unsettled question in 1975 is ultimately a distraction. The issue before the court is whether Congress meant for ANCs to be eligible for CARES Act relief *in 2020*. The Confederated Tribes Plaintiffs concede that by 1978, when the BIA proposed revised regulations regarding the recognition of Indian tribes that expressly excluded ANCs, "the door was closed on [the] possibility" that ANCs could meet the eligibility

22

clause.  Confederated Tribes Opp'n at 21–22; 6/12/2020 Hr'g Tr. at 21.  And certainly by 2020, Congress understood that no ANC could satisfy the eligibility clause, as none had done so since ISDEAA's inception.  6/12/20202 Hr'g Tr. at 59–60.  Thus, by incorporating the ISDEAA definition into the CARES Act, Congress must have known that it had selected a definition of "Indian Tribe" that expressly encompasses ANCs, notwithstanding their falling outside the definition's eligibility clause.[9]  Congress therefore intended to make Title V funds available to ANCs.

**3.**

The court also concludes that, to the extent there is ambiguity in the definition of "Indian tribe," the Secretary's position is entitled to *Skidmore* deference.  Under *Skidmore v. Swift & Co*., the weight a court affords to an agency interpretation "will depend upon the thoroughness evident

---

[9] The parties tussle over what inference can be drawn, if any, from Congress's selection of the ISDEAA definition of "Indian tribe," as opposed to some other statutory definition of "Indian tribe" appearing in the U.S. Code.  *See* Intervenors' Mot. at 28; Confederated Tribes' Opp'n 12.  The answer is none.  As the parties point out, the U.S. Code contains multiple different definitions of "Indian tribe."  Some of those definitions expressly include ANCs.  *See, e.g.*, 20 U.S.C. § 1401(13) (defining "Indian tribe" as "any Federal or State Indian tribe, band, rancheria, pueblo, colony, or community, including any Alaska Native village or regional village corporation (as defined in or established under the Alaska Native Claims Settlement Act. . . .)").  Some do not.  *See, e.g.*, 25 U.S.C. § 5130(2) ("The term 'Indian Tribe' means any Indian or Alaska Native tribe, band, nation, pueblo, village or community that the Secretary of the Interior acknowledges to exist as an Indian Tribe.").  Some expressly *exclude* ANCs.  *See, e.g.*, 25 U.S.C. § 3501(4)(B) ("For the purpose of paragraph (12) and sections 3503(b)(1)(C) and 3504 of this title, the term 'Indian Tribe' does not include any Native Corporation.").  Some expressly *include* them.  Of those definitions that expressly include ANCs, some incorporate a similarly worded eligibility clause.  *See, e.g.*, 25 U.S.C. § 4103(13)(B) (defining "federally recognized tribe" as "any Indian tribe, band, nation, or other organized group or community of Indians, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act, that is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians pursuant to the Indian Self-Determination and Education Assistance Act").  Others do not.  *See, e.g.*, 16 U.S.C. § 470bb(5) (defining "Indian tribe" as "any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in, or established pursuant to, the Alaska Native Claims Settlement Act (85 Stat. 688) [43 U.S.C. §§ 1601-1629h]").

All this proves is that Congress, when it passed the CARES Act, had other statutory definitions available to it that could have provided greater clarity about the eligibility of ANCs.  Unfortunately, this availability sheds no useful light on the dispute at hand.  The Alaska Federation of Natives amicus suggest a neat dichotomy among the various statutory definitions: Congress includes ANCs within the definition of "Indian tribe" when the statute concerns economic legislation, but not when it concerns tribal self-governance, and the CARES Act falls into the former category.  Amicus Br. of the Alaska Federation of Natives, ECF No. 81, at 13–14.  The court need not pass on the merits of these proposed groupings, as the ordinary tools of statutory construction suffice to reach an answer.

in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. 134, 140 (1944). Ultimately, a court upholds an agency determination under *Skidmore* to the extent is has "power to persuade." *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (internal quotation marks and citation omitted); *see also Davis v. United States*, 495 U.S. 472, 484 (1990) ("[W]e give an agency's interpretations . . . considerable weight where they involve the contemporaneous construction of a statute and where they have been in long use.").

The position that the Secretary advances in this case is neither new nor cut from whole cloth. The Department of Interior, which administers the federal government's affairs with Indian tribes, has long taken the position that ANCs qualify as "Indian Tribes" for purposes of ISDEAA and therefore are permitted to contract with federal agencies. In 1976, the year after ISDEAA was enacted, the Assistant Solicitor for Indian Affairs, Charles M. Soller, issued a memorandum to the Commissioner of Indian Affairs that evaluated whether ANCs meet the ISDEAA definition of "Indian tribe." J.A., ECF No. 90-1, at 610–13 [hereinafter Soller Mem.] at 611. The Commissioner had asked Soller to address "whether [Alaska Native] village and regional corporations are within the scope of" ISDEAA. *Id.* at 610. The question arose due to the "qualifying language" in the statute's definition of "Indian tribe," i.e., the eligibility clause. *Id.* at 611. Soller concluded that, "[s]ince both regional and village corporations find express mention in the definition, customary rules of statutory construction would indicate that they should be regarded as Indian tribes for purposes of application of this Act." *Id.* at 610. Soller acknowledged that the eligibility clause added "qualifying language," and he observed that "profit-making regional and village corporations have not heretofore been recognized as eligible for [Bureau of

24

Indian Affairs] programs and services which are not provided for by the terms of the Settlement Act." *Id.* at 611. But, Soller concluded,

> if the quoted language operates to disqualify [ANCs] from the benefits of [ISDEAA], then their very mention in section 4(b) is superfluous. Therefore, we think the better view is that Congress intended the qualifying language not to apply to regional and village corporations but to pertain only to that part of the paragraph which comes before the word "including." Accordingly, regional and village corporations are within the scope of the Act.

*Id.*[10]

Thus, the argument against surplusage that the Secretary advances in this litigation has a long historical antecedent. It has been the position of the agency in charge of Indian affairs for nearly 45 years. Although the analysis is brief, Soller recognized the interpretive challenge presented by Congress's drafting of the ISDEAA definition, identified the competing canons of statutory construction, and evaluated those canons in light of contemporaneous understandings of the statutory terms used and Congress's intent. The Soller Memorandum therefore has the "power to persuade." *Christensen*, 529 U.S. at 587 (citation omitted).

The Confederated Tribes Plaintiffs seek to undermine the force of the Soller Memorandum by faulting its failure to consider the disjunctive nature of the Alaska clause. *See* Confederated Tribes Opp'n at 18. But, as explained, the use of the disjunctive does nothing to save the clause from superfluity. Soller's ultimate reading of the statute is reasonable. This was the conclusion of the only appellate court to have considered whether ANCs qualify as "Indian Tribes" for purposes of ISDEAA. *See Bowen*, 810 F.2d at 1471. Although a single appellate decision cannot amount to a judicial consensus that the court can presume Congress knew of and endorsed when

---

[10] Soller appears to have misspoken in one respect. To apply the eligibility clause only to those words that appear "before the word 'including'" would mean that the eligibility clause does not apply to "Alaska Native village[s]." But no one then, or now, takes the position that an Alaska Native village can contract under ISDEAA unless it satisfies the eligibility clause. *See Confederated Tribes*, 2020 WL 1984297 at *11.

it incorporated the ISDEAA definition into the CARES Act, *see Confederated Tribes*, 2020 WL 1984297, at *12, *Bowen* lends additional persuasive force to the agency's longstanding view that ANCs are "Indian tribes" under ISDEAA. Thus, to the extent that the ISDEAA definition of "Indian tribe" contains any ambiguity, *Skidmore* counsels affording deference to the agency's interpretation.

The Confederated Tribes Plaintiffs go to great lengths to cast the Department of Interior's position on ANCs under ISDEAA as inconsistent and lacking clarity. *See* Confederated Tribes Opp'n at 19–25. The court need not take on this complex history. For present purposes, it suffices to say that the Confederated Tribes have identified no point in time in last four decades in which the Department of Interior has not treated ANCs as "Indian Tribes" for purposes of ISDEAA.[11]

---

[11] The most interesting evidence of different agency treatment of ANCs is that, for a short period of time, from 1988 to 1994, the Department of Interior actually identified ANCs alongside federally recognized tribes on its list of "Indian Entities Recognized and Eligible to Receive Services from [BIA]." Confederated Tribes Mot. at 39 (citing 53 Fed. Reg. 52,829–02, 52,832–33 (Dec. 29, 1988)). The BIA removed ANCs from the 1994 version of the list but in so doing reaffirmed ANCs' status as "Indian tribes" for purposes of ISDEAA. The BIA observed that "a number of non-tribal Native entities in Alaska that currently contract with or receive services from the Bureau of Indian Affairs pursuant to specific statutory authority, including ANCSA village and regional corporations and various tribal organizations," were no longer on the list, but that their non-inclusion on the list "does not affect the continued *eligibility* of the entities for contracts and services." Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 58 FR 54,364, 54,366, 1993 WL 420646 (October 21, 1993) (emphasis added). ANC's on-and-off-again status on the BIA's list, then, only indicates that the BIA struggled with how to properly characterize Alaska entities, but has always acknowledged their continued eligibility for certain contracts, including under ISDEAA.

This understanding comports with the 1977 Report submitted to Congress by the American Indian Policy Review Commission. The 1977 Report made clear that while Alaska Native village and regional corporations are not "repositories of tribal sovereignty," they should not "be excluded from the benefits of existing and future legislation and programs designed to promote the development of Native peoples." Def.'s Mot., Ex. 1, ECF No. 79-2, at 495. While the Confederated Tribes Plaintiffs discount the 1977 Report as simply one report submitted to Congress, with "no indication that Congress ever agreed with these cursory and erroneous conclusions or has taken any action in reliance on them," Confederated Tribes Opp'n at 20, the court notes that the Report's author, the American Indian Policy Review Commission, was established through Congressional resolution and was composed of three senators, three members of the House of Representatives, and five Indian leaders. American Indian Policy Review Commission, Final Report (May 17, 1977) (Appendix A ("How the Commission Did Its Work") at 3, available at https://catalog.hathitrust.org/Record/011340209. Further, the investigations that contributed to the Report were conducted by eleven task forces "each composed of three members selected from among the leading authorities in their respective fields of expertise in Indian affairs." *Id.* The Commission's Report, "a product of Indian participation, represent[s] 'a compendium of information on a scale heretofore unavailable to the Federal Government'" and "represent[s] the most comprehensive review of Indian policies and programs ever conducted." *Id.* at 4. *See also* Cheyenne River Sioux Mot. at 16 n.14 (explaining that the Department of the Interior "still relies [on] this [1977]

26

As noted at the outset of this discussion, the Cheyenne River Sioux Plaintiffs do not dispute that ANCs qualify as "Indian tribes" under ISDEAA. But they do seek to diminish their role and status, explaining that ANCs have "limited tribal status" under certain narrow circumstances. *See* Cheyenne River Sioux Mot. at 14–17. Relying on agency contracting priority policies, they contend that "ANCs may qualify under ISDEAA's definition of 'Indian tribe' only as a stop-gap to ensure critical services are provided to Alaska Natives in regions where there are no actual federally recognized Tribal governments, or where Tribal governments choose to compact with ANCs to provide services under ISDEAA." *Id*. at 14. The court has no reason to doubt the accuracy of that characterization. But ANCs' status as a contracting partner of "last resort" only underscores that ANCs are nevertheless *eligible* for ISDEAA contracts. For *definitional* purposes, ANCs are not considered "Indian tribes" only as a last resort under ISDEAA; they are always "Indian tribes." The same thus holds true under the CARES Act.

### 4.

Before moving on, the court must address some of the reasons it set forth in its preliminary injunction opinion when ruling that Plaintiffs were likely to succeed on the merits. Of course, the "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits," *see Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), and the additional briefing in this case has convinced the court to change its mind.

First, the court described the Secretary's reading of ISDEAA as "counter-textual." *Confederated Tribes*, 2020 WL 1984297, at *11. The court no longer ascribes to that view for the reasons already discussed. Second, the court deemed inconsistent and unexplained the

---

Report"). Thus, the court has no reason to doubt the accuracy of the 1977 Report generally and considers the Report as providing some evidence that, close to the time of IDEAA's enactment, Congress understood ISDEAA to treat ANCs as "eligible" Indian tribes.

government's position taken in other cases, but not here, that "the definition of 'Indian tribe' in various federal statutes must be read in conjunction with the List Act. In other words, unless the entity or group appears on the Interior Secretary's List, it does not qualify as an 'Indian tribe.'" *Id.* at \*12–13 (citing *Wyandot Nation of Kan. v. United States*, 858 F.3d 1392, 1396, 1397–98 (Fed. Cir. 2017); *Slockish v. U.S. Fed. Highway Admin.*, 682 F. Supp. 2d 1178, 1202 (D. Or. 2010)). As the Secretary now points out, *Wyandot* and *Slockish* were cases that did not involve ANCs but entities claiming tribal status even though not federally recognized. Def.'s Mot. at 19–20. It was therefore appropriate in those cases for the government to insist on identification on the Interior Department's List, whereas the same insistence is not necessary here, because ANCs are already treated as "Indian tribes" for purposes of ISDEAA. Finally, the court reasoned that "Congress's adoption of the ISDEAA definition cannot be divorced from actual agency practice under ISDEAA, which seemingly is to contract with ANCs only, if at all, with tribal consent or as a last resort." *Id.* at \*13. The flaw in that logic is now apparent. Even if actual agency practice is to rarely contract with ANCs to deliver services under ISDEAA, the fact remains that ANCs are "Indian tribes" for purposes of ISDEAA contracting *eligibility*. By importing ISDEAA's definition into the CARES Act, Congress carried forward that same treatment.[12]

\* \* \*

Accordingly, the court holds that Alaska Native village and regional corporations meet ISDEAA's definition of "Indian tribe," and therefore ANCs qualify as "Indian tribes" for the purposes of CARES Act funding.

---

[12] The decision whether to award ANCs Title V funds in proportion to their status as a service provider of "last resort" is an allocation determination that rests squarely within the broad discretion that Congress vested in the Secretary. *See generally Prairie Band Potawatomi Nation v. Mnuchin*, No. 20-cv-1491 (APM), 2020 WL 3402298, at \*1–2 (D.D.C. June 11, 2020) (holding that the Secretary's selected allocation method under Title V of the CARES Act is an unreviewable discretionary agency action under the APA).

### B. "Recognized Governing Bodies" under ISDEAA

Having concluded that ANCs qualify as "Indian tribes" under ISDEAA, the court now turns to the second question: Are ANCs "recognized governing bod[ies]," or do they have such bodies? Remember, Title V provides that the Secretary shall make payments only to "the recognized governing bod[ies]" of Indian Tribes. *See* 42 U.S.C. § 801(g)(5). The parties dispute whether "recognized" is a legal term of art meaning "federally recognized"—in which case, only federally recognized tribes, and not ANCs, meet the definition—or whether it carries an ordinary meaning. Confederated Tribes Mot. at 19; Cheyenne River Sioux Opp'n at 7–8; Def.'s Opp'n at 31–32; Intervenors' Opp'n. at 16–17. They also dispute whether "governing body" refers to "government status or attributes of sovereignty," *see* Cheyenne River Sioux Mot. at 4, or whether it "simply references the entity or individuals authorized to govern the organization in its charter or other organizing documents," Intervenors' Opp'n at 15.

In evaluating the parties' arguments, ISDEAA once more serves as the starting point. ISDEAA authorizes the federal government to contract not with an Indian tribe, but with a tribal *organization*, to deliver public services. 25 U.S.C. § 5321. ISDEAA defines "tribal organization" in two ways: (1) "the recognized governing body of any Indian tribe"; and

> (2) any legally established organization of Indians which is controlled, sanctioned, or chartered by such governing body or which is democratically elected by the adult members of the Indian community to be served by such organization and which includes the maximum participation of Indians in all phases of its activities: *Provided,* That in any case where a contract is let or grant made to an organization to perform services benefiting more than one Indian tribe, the approval of each such Indian tribe shall be a prerequisite to the letting or making of such contract or grant.

25 U.S.C. § 5304(l). The first definition of "tribal organization" should ring familiar as Congress used almost the same exact words to define "Tribal government" for purposes of the CARES Act.

*Compare id.* with 42 U.S.C. § 801(g)(5) ("The term 'Tribal government' means the recognized governing body of an Indian Tribe."). The ISDEAA definition of "tribal organization" is therefore instructive in understanding the term "Tribal government" under the CARES Act. *See Branch v. Smith*, 538 U.S. 254, 281 (2003) (explaining that "courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part").

All parties, even the Confederated Tribe Plaintiffs, concede that ANCs may enter into ISDEAA contracts. *See* Confederated Tribes Mot. at 36 (describing ANC contracting under ISDEAA as occurring in "exceptional" or "narrow" circumstances). Thus, to enjoy such status, ANCs, or some constituent part of them, necessarily must meet at least one of ISDEAA's two definitions of "Tribal organization," because only a "tribal organization" may enter into an ISDEAA contract, *see* 25 U.S.C. § 5321(a)(1). The Plaintiffs part ways on which of the two definitions apply. The Cheyenne River Sioux Plaintiffs say that ANCs satisfy the first definition of "tribal organization"—"the recognized governing body of any Indian tribe"; yet they resist the logical next step that ANCs also are, or have, a "recognized governing body" for purposes of the CARES Act, even though the two statutes use the exact same terms. The Confederated Tribes Plaintiffs attempt to dodge this trap. They argue that ANCs fall into the second, longer definition of "tribal organization," which Congress did not incorporate into the CARES Act. *See id.* at 35. In their view, ANCs qualify as "tribal organization[s]" only because they are a "legally established organizations of Indians . . . sanctioned by" the governing body of an Indian tribe, in this case, "a Native village." 6/12/2020 Hr'g Tr. at 14. This reading, in their view, harmonizes how ANCs are not, or do not have, a "recognized governing body," but still can enter into ISDEAA contracts as a "tribal organization." *Id.* The court takes Plaintiffs' arguments in reverse order.

30

The Confederated Tribes' reading cannot be squared with ISDEAA's text. ANCs are not "controlled, sanctioned, or chartered" by the governing body of an Indian Tribe.[13] ANCs are corporate entities established by Congress and chartered under Alaska state law. *See generally* 43 U.S.C. § 1601 *et seq*. Though the ISDEAA definition of "tribal organization" uses the word "sanctioned," it does not use that term in the sense of tribal approval of ISDEAA contracts. The term "sanction" in the definition of "tribal organization" is entirely disconnected from contract approval. It is true, as the Confederated Tribes Plaintiffs point out, that ANCs ordinarily obtain the approval of governing bodies of Native Villages as a condition of ISDEAA contracts. But that requirement stems not from the word "sanctioned," but rather from the "Provided" clause found later in the definition: "in any case where a contract is let or grant made to an organization to perform services benefiting more than one Indian tribe, *the approval of each such Indian tribe shall be a prerequisite* to the letting or making of such contract or grant." 25 U.S.C. § 5304(l) (emphasis added). Thus, if an ANC seeks to enter into a contract that benefits a Native Village, it must logically obtain the approval of that Native Village's governing body as a condition of doing so.[14]

This interpretation of ISDEAA is consistent with the longstanding view of the Department of Interior. As the Soller Memorandum explains, ANCs as "Indian tribes" under ISDEAA can seek self-determination contracts on their own behalf, and their boards of directors qualify as the

---

[13] Nor do they satisfy the second half of the second "tribal organization" definition: ANCs are not "democratically elected by the adult members of the Indian community to be served by such organization." 25 U.S.C. § 5304(l).

[14] Plaintiffs make the point that, absent specific approval from a Tribal government, an ANC can receive an ISDEAA contract "[o]nly if a Tribal government does not exist for a specific area." Cheyenne River Sioux Mot. at 17; 6/12/2020 Hr'g Tr. at 40; *see also* Confederated Tribes Mot. at 36. This fact only underscores that ANCs must fit under the first category of "tribal organization," because in these circumstances—limited though they may be—there is no Tribe to "sanction" the ISDEAA contract. That such ISDEAA contracts arise only as a "last resort" or in "exceptional circumstances" is of no moment. Nothing in the text of the statute limits ANCs' functioning as, or having, "recognized governing bodies" only to these "last resort" circumstances.

"governing body" for such purposes. *See* Soller Mem. at 611 (stating that "regional and village corporations may request to contract for the provision of BIA services under section 102 of the Act"). The Memorandum further recognizes that, as a practical matter, ANCs almost always must obtain tribal consent because such self-determination contracts are likely in some way to be for the benefit of one or more Native Villages, rather than the corporation itself. *Id.* at 612 ("[T]he language of the Act is unambiguous. If a contract or grant benefits more than one village or village corporation, the approval of each must be obtained."); *id.* ("Indeed, it is not clear to us what it means for a contract to 'benefit' a village corporation, as opposed to the Native village. . . . However, it does seem clear that if a contract is let to a regional tribal organization for the purpose of providing services in a given village, some governing body in that village must approve that contract.").[15] Thus, under a straightforward reading of "tribal organization," ANCs must be eligible for contracting under the first definition of "tribal organization"—"the recognized governing body of any Indian tribe." 25 U.S.C. § 5304(l).[16] And by the terms of that definition, they must have a "recognized governing body" for purposes of ISDEAA. If ANCs have a "recognized governing body" for purposes of ISDEAA, it stands to reason that Congress brought that same meaning forward in the CARES Act, as the first definition of "tribal organization" in

---

[15] The sole case that the Confederated Tribes Plaintiffs cite, *Ukpeagvik Inupiat Corp.* ("UIC") *v. U.S. Dep't of Health and Human Svcs*, No. 3:13-cv-00073-TMB, 2013 WL 12119576 (D. Alaska May 20, 2013), at *2–3), does not help them. There, an ANC obtained a contract to provide services at a hospital. Of the approvals it obtained, two were from other ANCs and one was from the contracting ANC itself. 2013 WL 12119576 at *1 & n.5 (listing, in addition to UIC (the contracting ANC), Atqasuk Village Corporation and Kuukpik Village Corporation). This case thus supports the understanding that ANCs are "Indian Tribes." Otherwise, the ANCs' "approvals" would not have been required under the proviso in ISDEAA's definition of "tribal organization." *See* 25 U.S.C. § 5304(l) ("[I]n any case where a contract is let or grant made to an organization to perform services benefitting more than one *Indian tribe*, the approval of *each such Indian tribe* shall be a prerequisite.") (emphasis added).

[16] ANCs plainly fall under the first definition for another reason. If, as the Confederated Tribes Plaintiffs contend, they fall under the second definition of "Tribal organization," there would have been no need to expressly include them in the definition of "Indian Tribe," *see* 25 U.S.C. § 5304(e), because ANCs could simply contract under the second definition, *see id.* § 5304(l). Accepting the Confederated Tribes Plaintiffs' position would thus render ANCs' inclusion in the "Indian Tribe" definition surplusage twice over.

ISDEAA and the definition of "Tribal government" in the CARES Act are essentially identical. *See Branch*, 538 U.S. at 281.

Plaintiffs resist this logic. They contend that Congress's use of the word "recognized" was intended as a term of art, meant to convey the unique political and legal status afforded to federally recognized tribes. *See* Confederated Tribes Mot. at 21–23; Cheyenne River Sioux Opp'n at 6–8. The Confederated Tribes Plaintiffs, for example, point to a federal regulation that defines "[r]ecognized governing body" as "the tribe's governing body recognized by the Bureau [of Indian Affairs] for the purposes of government-to-government relations." Confederated Tribes Mot. at 21 (quoting 25 C.F.R. § 81.4). But that regulation by its own terms "applies only to federally recognized tribes," *id*. § 81.2, because the regulation concerns election procedures to "adopt, amend, or revoke tribal governing documents" and charters, *id.* § 81.1. It is unsurprising, then, that ANCs would not be included in such a regulation. Likewise, the Cheyenne River Sioux Plaintiffs point to a slew of cases holding that ANCs are not "governing bodies" or "tribal governments." *See* Cheyenne River Sioux Mot. at 11–12 (collecting cases); Cheyenne River Sioux Opp'n at 6–8; *see also* Confederated Tribes Mot. at 22–23 (same). Not only are these cases from non-ISDEAA contexts, they concern a proposition that is simply not at issue here; no one disputes that ANCs are not Tribal governments in the traditional sense. This case concerns the entirely separate question whether ANCs have "recognized governing bodies" for purposes of the CARES Act. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 455 (2012) ("Congress remains free, as always, to give [a] word a broader or different meaning" than the one suggested by the word's plain meaning.).

On this question, while the court agreed with Plaintiffs' argument at the preliminary injunction stage, *see Confederated Tribes*, 2020 WL 1984297, at *10, upon further reflection the

court now concludes the opposite—"recognized" standing alone, as it is used in the CARES Act's definition of "Tribal government," does not convey federal recognition of an Indian tribe. The best evidence of this reading is that Congress used nearly the exact same words, "recognized governing body of any Indian tribe," found in the first definition of "tribal organization" in ISDEAA, 25 U.S.C. § 5304(l). While the Cheyenne River Sioux Plaintiffs point out that the CARES Act incorporated only ISDEAA's definition of "Indian Tribe" and did not import ISDEAA "whole cloth," 6/12/2020 Hr'g Tr. at 120, ISDEAA nevertheless demonstrates that when Congress uses the word "recognized," or even "recognized governing body," it does not a fortiori mean "federally recognized." "Recognition" is not used as a term of art in the IDEAA definition of "tribal organization";[17] it follows that the same is true under the CARES Act.

Another interpretive clue leads to this conclusion. The Cheyenne River Sioux's reading, if accepted, would produce the result that Congress expressly granted eligibility in one definition under the CARES Act—by incorporating the ISDEAA definition of "Indian tribe"—but silently took it away in another—by excluding ANCs from the definition of "Tribal government." It would be passing strange to exclude ANCs so obliquely, and the court cannot presume that Congress intended such a result.

Finally, and contrary to what the court previously concluded, *see Confederated Tribes*, 2020 WL 1984297, at *10, Plaintiffs' appeal to statutory context is ultimately not convincing. Specifically, they contend that the statute's "definition of 'Tribal government' must be read in th[e] context" of Title V of the CARES Act, which they argue is "directed to sovereign

---

[17] Relevant agencies have long understood this. Under the 1981 guidelines promulgated by Interior and HHS, for example, ANCs can be "recognize[d] as the village governing body" for "the purposes of contracting under Pub. L. 93-628 [ISDEAA]." 46 Fed. Reg. 27,178-02, 27,179 (May 18, 1981). And the 1988 list of Tribes published by Interior described ANCs as "Alaska entities which are *recognized* and eligible to receive funding and services from the Bureau of Indian Affairs." 53 Fed. Reg. at 52,832 (emphasis added).

34

governments and their political subdivisions." Confederated Tribes Mot. at 24; *see also* Cheyenne River Sioux Mot. at 2 (emphasizing that the CARES Act uses the term "Tribal governments" "15 times in just over three pages"). But there is nothing inconsistent with treating ANCs alongside tribal governments for these limited purposes. ISDEAA is aimed at providing government services—including health care—to Indians by partnering with Tribal organizations, including, at times, ANCs. It stands to reason that Congress, in its effort to distribute emergency funds quickly to Indians under the CARES Act, intended to get those dollars in the hands of the same entities that deliver public services to Indians. In the lower 48 states, those entities are largely Tribal governments in the traditional sense, but in Alaska, those entities include Alaska Native village and regional corporations. *See* Intervenors' Mot. at 14–18. ANCs' inclusion in Title V alongside other types of traditional governments is therefore not incongruous with Congress's purpose of appropriating emergency funds for "governments" to deliver public services to address and manage a national health emergency. In the end, the question before the court is whether ANCs are "Tribal governments" for the limited purpose of delivering public services to combat the COVID-19 pandemic. For all the foregoing reasons, they are.

\* \* \*

Before concluding, the court addresses Plaintiffs' concern that deeming ANCs eligible for Title V funding will enact a sea-change in Tribal law. *See, e.g.*, 6/12/2020 Hr'g Tr. at 42–43. Not so. The court does no more than opine on the status of ANCs under ISDEAA and the CARES Act, and it reaches a holding that is consistent with longstanding treatment of ANCs under ISDEAA by the federal government. The court's ruling in no way elevates ANCs to "super-tribal status" as the Confederated Tribes Plaintiffs maintain, Confederated Tribes Opp'n at 10; nor does it allow ANCs to "compete" with federally recognized tribes in any other context as the Cheyenne

River Sioux Plaintiffs fear, Cheyenne River Sioux Mot. at 12. The court's decision simply recognizes that ANCs are eligible for CARES Act funds, as Congress intended—no more, no less.

**IV.**

For the foregoing reasons, the court grants the Secretary's and Defendant-Intervenors' Motions for Summary Judgment, ECF Nos. 78 and 79, and denies Plaintiffs' Motions for Summary Judgment, ECF Nos. 76 and 77. A final, appealable Order accompanies this Memorandum Opinion.

Dated: June 26, 2020

_____
Amit P. Mehta
United States District Court Judge